# EXHIBIT 7

## NOTE EXCHANGE AGREEMENT

This Note Exchange Agreement (this "*Agreement*") is made and entered into as of December 13, 2019, by and between FTE Networks, Inc., a Nevada corporation (the "*Company*"), and TTP8, LLC, a Delaware limited liability company ("*TTP8*").

### RECITALS

WHEREAS, TTP8 is the holder, by purchase and assignment, of (i) a promissory note dated December 8, 2016 issued by the Company to Suwyn Investments LLC, with an aggregate of $3,339,365 of principal and accrued interest outstanding as of November 3, 2019 (as amended to date, the "*Suwyn Note*") and (ii) three promissory notes issued by the Company, or issued by a subsidiary of the Company and guaranteed by the Company, payable (either as the original payee or by assignment) to 327 Partners, LLC, issued on January 23, 2014, May 16, 2014 and July 11, 2017, respectively, with an aggregate of $580,000 of principal and accrued interest outstanding as of November 8, 2019 (as amended to date, the "*327 Notes*," and together with the Suwyn Note, the "*Promissory Notes*");

WHEREAS, TTP8 desires to surrender to the Company the Promissory Notes for cancellation (including any and all interest accruing thereon) in exchange for 4,193,684 shares of the Company's common stock, par value $0.001 per share ("*Common Stock*"), on the terms and conditions set forth herein; and

WHEREAS, the Company desires to issue and sell the shares of Common Stock to TTP8 in exchange for the cancellation of the Promissory Notes on the terms and conditions set forth herein.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises, representations, warranties, and covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **AGREEMENT TO EXCHANGE PROMISSORY NOTES.**

      1.1      **Exchange.**  Upon and subject to the terms set forth in this Agreement, at the Closing (as defined herein), TTP8 agrees to surrender to the Company for cancellation the Promissory

Notes in exchange for Four Million One Hundred Ninety-Three Thousand Six Hundred Eighty-Four (4,193,684) shares of Common Stock (the "*Shares*").

**1.2     Cancellation of Promissory Notes.**  Subject to the terms and conditions of this Agreement, TTP8 hereby agrees as follows: (a) all indebtedness owed to the holder of the Promissory Notes, including any interest accrued and any fees, penalties or other amounts accrued thereunder through the date of Closing, shall be fully satisfied by the issuance of the Shares to TTP8; (b) upon the issuance of the Shares to TTP8, the Promissory Notes shall be deemed automatically cancelled and of no further force or effect and (c) effective upon the Closing, TTP8 hereby releases and discharges the Company from any and all claims TTP8 or its predecessors in interest may now have, or may have in the future, arising out of, or related to, such Promissory Notes..

**2.     CLOSING, DELIVERY AND PAYMENT.**

**2.1     Closing.**  The closing of the exchange of the Promissory Notes for the Shares to be issued by the Company under this Agreement (the "*Closing*") shall take place telephonically and/or remotely by exchange of signature pages at 1:00 p.m. on the business day following the satisfaction (or waiver) of all of the conditions to closing set forth in Section 5 hereof, or at such other time or place as the Company and TTP8 may mutually agree (such date is hereinafter referred to as the "*Closing Date*").

**2.2     Delivery.**  At the Closing, subject to the terms and conditions hereof, the Company will deliver to TTP8 the Shares by means of book entry direct registration system, against delivery of the Promissory Notes for cancellation as provided in Section 1.2.

**3.     REPRESENTATIONS AND WARRANTIES OF THE COMPANY.**  The Company hereby represents and warrants to TTP8 as of the Closing Date as set forth below:

**3.1     Organization, Requisite Authority.**  The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada.  The Company has all requisite corporate power and authority to execute and deliver this Agreement, to issue and sell the Shares, and to carry out the provisions of this Agreement.

**3.2     Authorization.**  All corporate action on the part of the Company, its officers, directors and shareholders necessary for the authorization, execution and delivery of this Agreement, the performance of all obligations of the Company hereunder at the Closing and the authorization, sale, issuance and delivery of the Shares pursuant hereto have been taken.  This Agreement, when executed and delivered, will be a valid and binding obligation of the Company enforceable in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights and general principles of equity that restrict the availability of equitable remedies (the "*Enforceability Exceptions*").  The Company has obtained all consents, permits, or waivers necessary for the consummation of the transactions contemplated by this Agreement, other than the approval of a supplemental listing application to be filed with respect to the issuance of the Shares hereunder (the "*SLAP*") and except as otherwise expressly set forth herein.

**3.3     Offering Valid.**  Assuming the accuracy of the representations and warranties of TTP8 contained in Section 4.4 hereof, the offer, sale and issuance of the Shares will be exempt from the registration requirements of the Securities Act of 1933, as amended (the "*Securities Act*"), and will have been registered or qualified (or are exempt from registration and qualification) under the registration, permit or qualification requirements of all applicable state securities laws. No "bad actor" disqualifying event described in Rule 506(d)(1)(i)-(viii) of the Securities Act (a "*Disqualification*

*Event*"), is applicable to the Company or, to the Company's knowledge, any officer or director of the Company, except for a Disqualification Event as to which Rule 506(d)(2)(ii-iv) or (d)(3), is applicable.

**3.4   NYSE American Supplemental Listing Application.**  The Company has not received any communication, whether written or oral, from the NYSE expressing any concerns that may cause the NYSE American LLC (the "*Exchange*") not to the SLAP.  TTP8 acknowledges that it has been informed of the current status of the listing of the Common Stock with the Exchange, including that the trading of the Common Stock on the Exchange has been halted, that the continued listing of the Common Stock is under review by Exchange compliance staff, and that the Common Stock is in jeopardy of being delisted.

**4.     REPRESENTATIONS AND WARRANTIES OF TTP8.**     TTP8 hereby represents and warrants to the Company as follows:

**4.1     Organization, Requisite Authority.**  TTP8 is a limited liability company duly formed, validly existing and in good standing under the laws of the State of Delaware.  TTP8 has all requisite limited liability company power and authority to execute and deliver this Agreement, to deliver for cancellation the Promissory Notes in exchange for the Shares, and to carry out the provisions of this Agreement.

**4.2     Authorization.**  All limited liability company action on the part of TTP8, its officers, directors and members necessary for the authorization, execution and delivery of this Agreement, the performance of all obligations of TTP8 hereunder at the Closing and the delivery of the Promissory Notes for cancellation in exchange for the Shares pursuant hereto have been taken.  This Agreement, when executed and delivered, will be a valid and binding obligation of TTP8, enforceable in accordance with its terms, except as limited by the Enforceability Exceptions.

**4.3     Title to Promissory Notes.**  TTP8 has good and marketable title to the Promissory Notes and has not sold, transferred, conveyed, pledged, encumbered or otherwise disposed of any of the Promissory Notes, or any interest in any of the Promissory Notes, and no third party has any claim of any nature with respect to the Promissory Notes.

**4.4     Investment Representations.**  TTP8 understands that the Shares have not been registered under the Securities Act.  TTP8 also understands that the Shares are being offered and sold pursuant to an exemption from registration contained in the Securities Act based in part upon TTP8's representations contained in the Agreement.  TTP8 hereby represents and warrants to the Company as follows:

**(a)     Economic Risk.**  TTP8 has substantial experience in evaluating and investing in private placement transactions of securities in companies similar to the Company so that it is capable of evaluating the merits and risks of its investment in the Company and has the capacity to protect its own interests.  TTP8 understands that (i) it must bear the economic risk of this investment indefinitely unless the Shares are registered pursuant to the Securities Act, or an exemption from registration is available; (ii) the Company has no present obligation to register the Shares; and (iii) there is no assurance that any exemption from registration under the Securities Act will be available and that, even if available, such exemption may not allow TTP8 to transfer all or any portion of the Shares under the circumstances, in the amounts or at the times TTP8 might propose.

**(b)     Acquisition for Own Account.**  This Agreement is made with TTP8 in reliance upon TTP8's representation to the Company, which by TTP8's execution of this Agreement, TTP8 hereby confirms, that the Shares to be acquired by TTP8 will be acquired for investment for TTP8's

own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that TTP8 has no present intention of selling, granting any participation in, or otherwise distributing the same.   By executing this Agreement, TTP8 further represents that TTP8 does not presently have any contract, undertaking, agreement or arrangement with any person or entity to sell, transfer or grant participations to such person or entity or to any third party, with respect to any of the Shares. TTP8 has not been formed for the specific purpose of acquiring the Shares.

          **(c)**    **Accredited Investor.**   TTP8 represents that it is an accredited investor within the meaning of Rule 501(a) Regulation D promulgated under the Securities Act.

          **(d)**    **Company Information.**   TTP8 has had an opportunity to discuss the Company's business, management and financial affairs with directors, officers and management of the Company and has had the opportunity to review the Company's operations and facilities.   TTP8 has also had the opportunity to ask questions of and receive answers from, the Company and its management regarding the terms and conditions of this investment.   TTP8 confirms that it is familiar with the Company's business, management and financial affairs and that Company management has satisfactorily answered TTP8's questions regarding the same.

          **(e)**    **Rule 144.** TTP8 acknowledges and agrees that the Shares are "restricted securities" as defined in Rule 144 promulgated under the Securities Act as in effect from time to time and must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available.   TTP8 has been advised or is aware of the provisions of Rule 144, which permits limited resale of shares purchased in a private placement subject to the satisfaction of certain conditions, including, among other things: the availability of certain current public information about the Company, the resale occurring following the required holding period under Rule 144 and the number of shares being sold during any three-month period not exceeding specified limitations.

          **(f)**    **Residence.**   The office or offices of TTP8 in which its investment decision was made is located at the address or addresses of TTP8 set forth in Section 6.3.

        **4.5**    **No General Solicitation.**   Neither TTP8, nor any of its officers, directors, employees, agents or members has either directly or indirectly, including, through a broker or finder (a) engaged in any general solicitation, or (b) published any advertisement in connection with the offer and sale of the Shares.

        **4.6**    **Disqualification**.   TTP8 represents that no Disqualification Event is applicable to TTP8, or to any party with whom TTP8 shares beneficial ownership of Company securities.

    **5.**    **CONDITIONS TO CLOSING.**

        **5.1**    **Conditions to Each Party's Obligations at the Closing.**   Each party's obligations in connection with the exchange of the Promissory Notes for the Shares at the Closing are subject to the satisfaction, at or prior to the Closing Date, of the following conditions:

          **(a)**    **Legal Investment.**   On the Closing Date, (i) no order or legal prohibition issued by any governmental authority of competent jurisdiction or other valid legal restraint preventing the consummation of the transactions contemplated by this Agreement shall be in effect and (ii) there shall be no lawsuits or investigations, pending or threatened, involving or relating to the Promissory Notes or the Shares.

      **(b)**     **NYSE American Supplemental Listing Application.** The Company shall have filed the SLAP with the Exchange within one business day of the date of this Agreement, and the SLAP shall have been approved by the Exchange. This condition deemed to be satisfied, null and void in the event that the Company's Common Stock is delisted from the Exchange.

      **5.2**     **Conditions to TTP8's Obligations at the Closing.** TTP8's obligations to purchase the Shares at the Closing are subject to the satisfaction, at or prior to the Closing Date, of the following conditions:

      **(a)**     **Representations and Warranties True; Performance of Obligations.** The representations and warranties made by the Company in <u>Section 3</u> hereof shall be true and correct in all material respects as of the Closing Date with the same force and effect as if they had been made as of the Closing Date, and the Company shall have performed all obligations and conditions herein required to be performed or observed by it on or prior to the Closing.

      **5.3**     **Conditions to Obligations of the Company.** The Company's obligation to issue and sell the Shares at the Closing is subject to the satisfaction of the following conditions:

      **(a)**     **Representations and Warranties True; Performance of Obligations.** The representations and warranties in <u>Section 4</u> made by TTP8 shall be true and correct in all material respects at the Closing, with the same force and effect as if they had been made on and as of said date, and TTP8 shall have performed and complied with all agreements and conditions herein required to be performed or complied with by it on or before the Closing.

      **(b)**     **Delivery of Promissory Notes.** TTP8 shall have surrendered to the Company for cancellation the original copy of each Promissory Note, free and clear of all liens, pledges or other encumbrances. In the event that TTP8 is unable to locate any such original copy, or if any such original copy has been mutilated or destroyed, TTP8 shall have delivered to the Company a lost note affidavit in form reasonably acceptable to the Company, which affidavit shall contain a customary indemnity in favor of the Company.

    **6.**     **MISCELLANEOUS.**

      **6.1**     **Successors and Assigns.** This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and permitted assigns, but is not assignable by any party without the other party's prior written consent.

      **6.2**     **Further Assurances.** The parties shall execute such further documents, conveyances, assurances and instruments and take such further actions as may reasonably be necessary, proper or advisable to carry out the intent or purposes of this Agreement. Each party hereto shall cooperate affirmatively with the other parties, to the extent reasonably requested by such other parties, to enforce rights and obligations herein and therein provided.

      **6.3**     **Notices.** Any notice or other communication provided for herein or given hereunder to a party hereto must be in writing, and: (a) sent by electronic mail; (b) delivered in person; (c) mailed by first class registered or certified mail, postage prepaid; or (d) sent by Federal Express or other overnight courier of national reputation, in each case addressed as follows:

If to the Company:

FTE Networks, Inc.
237 West 35th Street, Suite 806
New York, NY 10001
Attention: Legal Department Email: legal@ftenet.com


If to TTP8:

TTP8
2355 Gold Meadow Way, Suite 160
Gold River, CA 95670
Attention: Suneet Singal
Email: s@firstcapitalre.com

With a copy to:
Eiseman Levine Lehrhaupt & Kakoyiannis, P.C.
805 Third Avenue, 10th floor
New York , New York 10022
Attention: Eric Levine
Email: elevine@eisemanlevine.com

or to such other address with respect to a party as such party notifies the other in writing as above provided. Each such notice or communication will be effective:  (i)  if given by electronic mail, then when confirmation of successful transmission is received; or (ii) if given by any other means specified in the first sentence of this Section 6.3, then upon delivery or refusal of delivery at the address specified in this Section 6.3.

      **6.4**     **Headings**.  The headings contained in this Agreement are for convenience of reference only and do not form a part of this Agreement.

      **6.5**     **Governing Law**.  This Agreement, including all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby (including all claims, whether sounding in contract, tort or otherwise), are to be governed by, and construed and enforced in accordance with, the laws of the State of New York, without regard to its rules of conflict of laws.

      **6.6**     **Severability**.  Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.  If any provision of this Agreement is so broad as to be unenforceable, the provision will be interpreted to be only so broad as is enforceable.

      **6.7**     **Construction**.  If an ambiguity or question of intent or interpretation arises, then this Agreement will be construed as drafted jointly by the parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.  The words "include", "including" and "or" mean without limitation by reason of enumeration.  Any reference to the singular in this Agreement will also include the plural and vice versa.

**6.8** **Complete Agreement.** The terms of this Agreement are intended by the parties to be the final expression of their agreement with respect to the subject matter hereof and supersede all prior understandings and agreements, whether written or oral between the parties.

**6.9** **Expenses.** Each party shall pay all costs and expenses that it incurs with respect to the negotiation, execution, delivery and performance of the Agreement.

**6.10** **Broker's Fees.** Each party hereto represents and warrants that no agent, broker, investment banker, person or firm acting on behalf of or under the authority of such party hereto is or will be entitled to any broker's or finder's fee or any other commission directly or indirectly in connection with the transactions contemplated herein. Each party hereto further agrees to indemnify each other party for any claims, losses or expenses incurred by such other party as a result of the representation in this <u>Section 6.10</u> being untrue.

**6.11** **Counterparts; Electronic Transmission.** This Agreement may be executed in separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Delivery of an executed signature page to this Agreement by facsimile or other electronic transmission (including in Adobe PDF format) will be effective as delivery of a manually executed counterpart to this Agreement.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** the parties have caused this Note Exchange Agreement to be executed as of the date first written above.

**FTE NETWORKS, INC.**

By: _____

Michael Beys
Interim Chief Executive Officer

**TTP8, LLC**

By: _____

Suneet Singal
Chief Executive Officer