# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FTE NETWORKS, INC.,

                Plaintiff,

    v.

SUNEET SINGAL, *ET AL.*,

                Defendants.

Case No. 22-cv-5960 (JHR)

**REPLY OF DEFENDANTS SUNEET SINGAL; TTP8, LLC; FIRST CAPITAL MASTER ADVISOR, LLC; MAJIQUE LADNIER; INNOVATIV MEDIA GROUP, INC.; AND THOMAS COLEMAN TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Andrew K. Stutzman, Esq. (#5034517)
Stradley Ronon Steven & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(P) 215-564-8008
astutzman@stradley.com

*Counsel for Defendants Suneet Singal; Majique Ladnier; TTP 8, LLC; First Capital Master Advisor, LLC; Innovativ Media Group, Inc.; and Thomas Coleman*

## <u>TABLE OF CONTENTS</u>

I.      FTE's claims are contrary to rulings in its other cases ................................- 1 -

II.     FTE has not pled a Section 1962(c) RICO claim ...................................- 5 -

        A.  Predicate Acts are not sufficiently pled ..............................- 6 -

        B.  The Complaint fails to establish a closed-ended pattern of predicate acts..........- 8 -

        C.  FTE's damages, if any, are not clear and definite ............................- 10 -

III.    FTE has not pled a Section 1962(d) RICO conspiracy claim
        against Moving Defendants ................................................- 11 -

IV.     FTE has not pled a viable claim for fraudulent inducement or fraud ...................- 12 -

V.      FTE has not pled a viable claim for tortious interference......................- 13 -

VI.     Coleman should be dismissed for lack of service .................................- 14 -

VII.    Conclusion ...........................................................- 15 -

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*American United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ...............................................................................3

*Anhui Konka Green Lighting Co., LTD. v. Green Logic LED Elec. Supply, Inc.,*
    *No. 118CV12255MKVKHP, 2021 WL 621205 (S.D.N.Y. Feb. 17, 2021)* ................................1

*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*,
    57 F.3d 146 (2d Cir. 1995)......................................................................................12

*Bates v. Long Island R. Co.*,
    997 F.2d 1028 (2d Cir. 1993)....................................................................................4

*Cofacredit, S.A. v. Windosor Plumbing Supply Co.*,
    187 F.3d 299 (2d Cir. 1999)....................................................................................10

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)......................................................................................1

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) ...................................................................................3

*FinancialApps, LLC v. Envestnet, Inc.*,
    No. CV 19-1337-CFC/CJB, 2021 WL 131458 (D. Del. Jan. 14, 2021) ...................................7

*Holland v. Bouchard,*
    *No. 16-CV-5936 (VSB)* 2017 WL 4180019 (S.D.N.Y. Sept. 19, 2017)...................................5

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir.2001)........................................................................................2

*Koulkina v. City of New York*,
    559 F. Supp. 2d 300 (S.D.N.Y. 2008).......................................................................14

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F. Supp. 222 (S.D.N.Y. 1989) .............................................................................3

*In re Old Carco LLC*,
    500 B.R. 683 (Bankr. S.D.N.Y. 2013).........................................................................7

*Rodriguez v. Lahar*,
    No. 15-CV-3446 (CS), 2016 WL 5376217 (S.D.N.Y. Sept. 26, 2016)...................................14

*Topps Co. v. Cadbury Stani S.A.I.C.*,
    380 F. Supp. 2d 250 (S.D.N.Y. 2005)........................................................................12

*United States v. Dinome,*
    86 F.3d 277 (2d Cir. 1996) ...................................................................................6

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.,*
    *451 F. Supp. 2d 585 (S.D.N.Y. 2006)* .............................................................1

**Statutes**

Cal. Civ. Proc. Code § 415.20 .................................................................................15

RICO Section 1962(c) ...............................................................................................5

RICO Section 1962(d) .............................................................................................11

**Other Authorities**

Rule 9(b) .............................................................................................................3, 6

Rule 12(b)(5) .........................................................................................................15

Defendants Suneet Singal ("Singal"); TTP8, LLC ("TTP8"); First Capital Master Advisor, LLC ("FCMA"); Majique Ladnier ("Ladnier"); Innovativ Media Group, Inc. ("Innovativ"); and Thomas Coleman ("Coleman") (collectively, the "Moving Defendants"), submit this Reply to the Opposition of Plaintiff FTE Networks, Inc. ("FTE") to the Motion to Dismiss Complaint.[1] [2]

## I.     FTE's claims are contrary to rulings in its other cases.

FTE's new explanations of its theories of this case run smack into rulings against FTE in other cases. The Nevada State Court case ("State Corporate Case") concerns the subject February 3, 2022 shareholders' written consent to amend FTE's bylaws and transfers of FTE's stock. There, FTE received numerous adverse rulings that the Bylaws Amendments are likely valid, rejecting repeated efforts to alter and stack the board of directors, requiring maintenance of the status quo, and enjoining FTE's attempted cancellation of Moving Defendants' stock. *See* State Corporate Case Orders dated August 25, August 29, September 14, September 22, November 7, 2022, March 8, March 30, 2023; transcript of April 12, 2023 hearing at pp. 67-71) annexed to Stutzman Dec. at Exs. 1 - 9. [3] Yet FTE persists in claiming that Moving Defendants fraudulently voted shares to pass Bylaws Amendment. Opp. at pp. 11-13, 16-17, 20, 24; 26; Compl. at ¶¶15, 126-127.

---

[1] For ease of reference, capitalized terms and abbreviations will the same meaning as ascribed to them in Moving Defendants' Memorandum in Support of Motion to Dismiss ("Memo"). References to Plaintiff's Opposition Memorandum will appear as "Opp."

[2] On March 10, 2023, this Court ordered that Moving Defendants may file a 15-page Reply. [ECF 65].

[3] Moving Defendants' Motion to Dismiss included two exhibits attached to the accompanying Memorandum of Law, which are a Litigation Schedule from FTE's Stock Purchase Agreement and a declaration contesting service over Tom Coleman. This Reply includes a separate Declaration from counsel for those exhibits and filings from FTE's litigation in Nevada and Delaware. As FTE's allegations are enmeshed in these documents, they should be considered for the present motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (district court may consider "documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint."); *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 587 (S.D.N.Y. 2006) (in reviewing a motion to dismiss, the court may consider documents integral to the complaint and otherwise subject to judicial notice, such as judicial records). Although FTE complains that the documents were not included in a declaration, they are FTE's own materials and should not be ignored. *See Anhui Konka Green Lighting Co., LTD. v. Green Logic LED Elec. Supply, Inc.*, No. 118CV12255MKVKHP, 2021 WL 621205, at *1 (S.D.N.Y. Feb. 17, 2021) (courts in this circuit prefer to resolve motions on the merits rather than

The case in Delaware Federal Court involves competing claims between FTE and the Szkaradeks bearing on the claims it advances here. On March 8, 2023, the Delaware Court ruled that the Szkaradeks are entitled to vote their stock at this time despite FTE's cries of fraud. *See* Szkaradek Voting Order annexed to Stutzman Dec. at Ex. 15. Yet FTE ignores this ruling and continues to claim that voting the Szkaradeks' stock for the Bylaws Amendment and otherwise constitutes fraud and conspiracy. Opp. at pp. 11-13, 20, 24, and 26.

FTE's Opposition posits three alleged steps in Moving Defendants' "scheme to fraudulently take over FTE." Opp. at p. 5. Each is without foundation as explained below.

***Step One.*** FTE alleges that Moving Defendants fraudulently acquired interests in FTE through fraudulent transactions. Id., pp. 5-9. FTE first alleges that TTP8 fraudulently obtained its stock from FTE because TTP8 did not actually discharge FTE's debt as contemplated. Id., p. 6 ("TTP8 did not actually discharge any of the debt as promised, and therefore received the 4,193,684 shares of FTE for no consideration to FTE."). However, FTE's Opposition overstates the allegation in the Complaint, which does <u>not</u> allege that the debt was not discharged or that the debt was not acquired. Instead, the Complaint's allegations are that unsecured debt holders were not paid any money and Singal never had any intention of paying for the debt. Compl. at ¶¶ 8, 104. But that is <u>not</u> to say that the debt was not retired or converted, which is what the Complaint avers was given in exchange for the stock. Id. While the Complaint also avers that Singal made knowingly false representations that he would secure further future financing for FTE to acquire stock, id. at ¶ 104, it elsewhere avers that the stock was acquired for retiring or converting debt, id. at ¶¶ 8, 104. Taken together, these averments do not amount to a fraud claim consistent with

---

procedural deficiencies as it better serves the interest of justice); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

Rule 9(b) and FTE may not amend its allegation through its Opposition. *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss").

Regardless, FTE's stock issuance to TTP8 is under active litigation in the State Corporate Case. Indeed, the court recently entered an order against FTE's purported cancellation of the stock flowing from that transaction. *See* State Corporate Case (Order dated March 30, transcript of April 12, 2023 hearing at pp. 67-71) annexed to Stutzman Dec. at Exs. 8, 9. FTE has also moved for summary judgment on the transaction in the State Corporate Case and in both Nevada Federal Cases (Derivative Case and the Proxy Case). *See* Derivative Case and Proxy Case dockets at ECF 62 and ECF 62, respectively, annexed to Stutzman Dec. at Exs. 10-11. There is also a motion to amend in the State Corporate Case to add a declaratory judgment claim on FTE's stock cancellation. *See* State Corporate Case docket at # 219 annexed to Stutzman Dec. at Ex. 1.

Next, FTE claims that it was fraudulently induced into the Vision Portfolio Transaction, because it was unaware of the extent of legal liabilities involving the portfolio. Opp. at pp. 7-9. However, the Purchase Agreement contained a Litigation Schedule. *See* Schedule 3.14(a), Litigation Schedule annexed to Stutzman Dec at Ex. 12. In addition, FTE has not alleged that any Moving Defendant had a duty to disclose to FTE arising from the Purchase Agreement. *See Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme" or predicate act of mail or wire fraud); *see also American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (same). In any event, the Delaware Action is already litigating FTE's fraud claims involving that transaction.

***Step Two.*** FTE next alleges that Moving Defendants "accumulated ownership of FTE's shares through [Moving] Defendants' illicit and secretive transfers in violation of the Vision Purchase Agreement." Opp. at pp. 10-11. Yet FTE judicially admits that FTE received an Opinion Letter for each transaction. Compl. at ¶¶ 107-110. Moreover, FTE fails to explain how these transfers furthered a scheme to accumulate ownership of FTE. If, as FTE alleges, Singal, as the mastermind, was attempting to take control of FTE, it is not clear how transferring shares away from himself accumulated ownership. Compl. at ¶ 104, 136, 141-142. At best, the recipients might vote with Singal, but that would not change the total number of votes.

FTE also attacks transfers of stock from the Szkaradeks to Innovativ and EEME LLC, owned by Ladnier, in violation of the Purchase Agreement. Compl. at ¶¶ 120-123. However, FTE has conceded that the Szkaradeks are the record owners of all the shares received under the Purchase Agreement. *See* Szkaradeks' Answer with Affirmative Defenses and Counterclaims annexed to Stutzman Dec. at Ex. 13 at ¶ 271 (in which the Szkaradeks allege they are the current record shareholder of FTE), FTE's Amended Answer to Counterclaims and Affirmative Defenses annexed to Stutzman Dec. at Ex. 14 at ¶ 271 (in which FTE admits the same). *See generally Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) ("judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding" which was adopted by the court in some manner).

***Step Three.*** FTE alleges that Moving Defendants "use[d] the illicitly acquired FTE shares, along with fraudulently voting the FC RE[I]T shares, to purportedly pass *ultra vires* amendments to FTE bylaws that would give [Moving] Defendants control over FTE." Opp. At pp. 11–13. However, each component of this step crumbles under scrutiny. First, FTE has not set forth a fraud claim for the stock it issued to TTP8 and the validity of that transaction is already before the

Nevada State and Federal Courts. Second, the Delaware Court already held that the Szkaradeks are entitled to vote their record shares, including anything relating to FC RET. *See* Szkaradek Voting Order annexed to Stutzman Dec. at Ex. 15. Third, the Nevada court already held that the Bylaws Amendment is likely valid. *See* State Corporate Case (Order dated Nov. 7, 2022 at ¶ 15).

In sum, not only has FTE not made out fraud claims, but it cannot re-litigate what has already been decided against it. In addition, to the extent that FTE seeks to litigate here what it is currently litigating elsewhere the *Younger* abstention doctrine may apply. That is, FTE's claims inherently require factual findings of issues that are being litigated in the parallel State Corporate Case, which uniquely involve state interests, i.e., state court adjudication of matters of local corporate governance. *See Holland v. Bouchard, No. 16-CV-5936 (VSB)*, 2017 WL 4180019, at *3 (S.D.N.Y. Sept. 19, 2017) (invoking *Younger* abstention "because the Delaware Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations"; noting abstention is warranted to avoid undue interference with state proceedings; and noting that Younger abstention may apply to the claims of parties who are not directly involved in any pending state proceeding). Here, the Nevada state court has recently issued orders requiring, *inter alia*, FTE to cease any efforts to interfere with Innovativ's voting rights and to maintain the status quo. *See* State Corporate Case (Order dated March 30, transcript of April 12, 2023 hearing at pp. 67-71) annexed to Stutzman Dec. at Exs. 8-9. The relief requested in FTE's Complaint, including disgorging Innovativ's stock, is inconsistent with the Nevada orders.

## II.    FTE has not pled a Section 1962(c) RICO claim.

As an initial matter, FTE concedes that this claim is alleged only against Singal. Opp. at p. 14 ("FTE is only asserting its 18 U.S.C. § 1962 (c) claim (First Cause of Action) against Singal."). Yet even narrowed, the claim still fails.

### A.  Predicate Acts are not sufficiently pled.

FTE has not alleged consistent with Rule 9(b) that Singal committed the minimum predicate acts of mail or wire fraud to sustain a RICO claim. In Opposition, FTE identifies specific acts, none of which are sufficient. Opp. at pp. 16-17. First, FTE alleges that Singal falsely claimed he would secure additional funding via debt discharge in exchange for FTE shares issued to TTP8, which were subsequently not registered leading to FTE's stock de-listing. Id. at p. 16. However, FTE's Complaint contradicts this characterization. As explained above, the Complaint does not allege that Singal failed to discharge the debt in exchange for the shares issued to TTP8. FTE also admits that it was FTE's improper share transfer to Singal - violating a NYSE prohibition against issuing shares equal to 20% of company - that was the impetus for the stock de-listing. Compl. at ¶170 (Singal/TTP8, vii) ("the improper share transfer to Singal is the impetus for the NYSE commencing delisting proceedings against FTE"). Therefore, FTE's proffer is meaningless.

Second, FTE alleges that Singal knowingly misrepresented the liabilities facing the Vision Portfolio in communications to FTE's board. Opp. at p. 16. However, the Complaint alleges that Singal made those representations in person, i.e., not by mail or wire. Compl. at ¶ 45. *See United States v. Dinome,* 86 F.3d 277, 283 (2d Cir. 1996) (identifying the essential elements of mail or wire fraud to include, *inter alia,* "use of the mails [or wires] to further the scheme."). It is also unclear what duty Singal allegedly had to FTE such that FTE would have justifiably relied upon Singal, especially when the Purchase Agreement contained clear merger and integration terms. *See* Compl., Ex. D, Purchase Agreement at § 11.5 (Entire Agreement) ("This Agreement … represents the entire understanding and agreement among the parties . . . This Agreement supersedes all prior and contemporaneous agreements, arrangements, undertakings and understandings between the parties with respect to such subject matter.").

Third, FTE alleges that Singal issued a press release falsely pledging his finder's fee (initially cash, later changed to FTE stock) under the Vision Purchase Agreement to the shareholders of FC RET. Opp. at p. 16-17; Compl. at 50. However, FTE concedes that the Purchase Agreement "was restructured to ensure" that "any amount payable to Singal would instead be paid directly to … FC RE[I]T and its shareholders." Compl. at ¶69, *see also* Ex. D at §4.7(b), Ex. F at § 1.5, Schedule A (noting "one-half of these shares are being immediately transferred to First Capital Realty Trust, Inc. [sic]"). The fact that the shares were not later transferred to FC RET does not mean that the press release was inaccurate. In any event, the press release was issued the same day of the Purchase Agreement, December 20, 2019, and the Complaint does not allege that FTE relied upon the press release. Further, Singal, as a non-party, to the Purchase Agreement has no ability to enforce its terms.[4] *See In re Old Carco LLC*, 500 B.R. 683, 692 (Bankr. S.D.N.Y. 2013) ("Under general contract rules, a non-party to a contract who is not an intended beneficiary cannot enforce the contract or recover for its breach.); *see also FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-CFC/CJB, 2021 WL 131458, at *3 (D. Del. Jan. 14, 2021) (nonparties to contract lack standing to enforce its terms).

Fourth, FTE alleges Singal directed TTP8 to transfer shares under false pretenses. Opp. at p. 17, Compl. at ¶¶ 107-109. However, even if the Court accepts that the transfers necessarily would have involved mail or wire communications, FTE has not alleged sufficient factual allegations to demonstrate that the stated purpose of the transfers were false. As explained above, FTE has not alleged how transfers from Singal furthered a goal of taking over FTE because the transfers did not change the votes, but only redistributed those votes. Further, FTE received

---

[4] In its Opposition, FTE rejects the notion that Singal is an intended third-party beneficiary of the Purchase Agreement. Opp. at p. 32, fn. 6.

Opinion Letters from counsel before each transfer. Comp. at ¶¶107-110. Nothing about those transactions smacks of fraud.

Fifth, FTE alleges that Singal had "clandestine interstate communications with Bansal in December 2020 in violation of the FTE firewall." Opp. at p. 17, Compl. at ¶ 114. This allegation, even if true, is insufficient. FTE's "firewall" was a self-imposed ban on communicating with Singal and alleged communications from Singal do not establish fraud. The allegation that Bansal and others – but not Singal – lied about communications is not enough either.

Sixth, FTE alleges Singal (with others) fraudulently attempted to vote FC RET's promised shares without authorization. Opp. at p. 17, Compl. at ¶¶ 126-127. However, this allegation flies in the face of the Szkaradek Voting Order. The Delaware Court rejected FTE's assertion and ruled that the Szkaradeks could vote those shares so they cannot have committed fraud when they did. *See* Szkaradek Voting Order annexed to Stutzman Dec. at Ex. 15. Indeed, FTE's own admission that the Szkaradeks are the record owners of that stock led to this determination. Id. at p. 2 ("[I]t is undisputed that FTE is the record owner of all 22,063,376 shares of FTE stock that were the subject to the [Purchase] Agreement."). Moreover, the mere fact that Singal also signed the Bylaws Amendment in his capacity as manager for First Capital Master Advisor, LLC has nothing to do with the other signatories to the amendment. Compl. at Ex. B at p.3 (ECF 1-1, p. 81).

**B.  The Complaint fails to establish a closed-ended pattern of predicate acts.**

FTE's Opposition argues that the Complaint alleges a closed-ended pattern of predicate acts beginning on October 22, 2019 and concluding on February 3, 2022; a period of 2 years, 3 months and 12 days, which is just over the two-year minimum. Opp. at p. 20. However, a closer examination of the alleged predicate acts on the front and back ends reveal that the actually claimed duration was much shorter.

The first predicate acts alleged occurred on October 2, 2019 at FTE's board meeting. Id. FTE alleges that Singal (A) misrepresented the value of the Vision Portfolio while failing to disclose its liabilities, and (B) falsely promised to discharge debt and failed to register the securities received causing FTE's stock to be de-listed. As explained above, neither of these allegations constitute predicate acts of mail or wire fraud, because the alleged misrepresentations and omissions occurred in person (not via wire or mail), FTE has not alleged Singal owed it a duty of disclosure, FTE has not alleged a failure to discharge its debt as promised, and FTE has conceded its own improper stock transfer was the impetus for the de-listing. Accordingly, the alleged closed-ended pattern did not start on October 2, 2019.

The last act claimed is the February 3, 2022 execution of the Bylaws Amendment, which FTE asserts involved false representations about voting rights. Opp. at p. 17, Compl. at Ex. B. However, the Nevada State Court has found that it is more likely than not that the signers of the Bylaws Amendment held a majority of the votes. *See* State Corporate Case (Order dated Nov. 7, 2022) annexed to Stutzman Dec. at Ex. 6. In addition, the Delaware Court has ruled that the Szkaradeks can vote their shares, which include whatever FC RET may claim. *See* Szkaradek Voting Order annexed to Stutzman Dec. at Ex. 15. Accordingly, the alleged closed-ended pattern did not end on February 3, 2022 because there was no relevant fraud at that time.

The only remaining acts identified in the Opposition as forming the closed-end pattern were the pledge of Singal's finder fee compensation to FC RET (December 20, 2019), various stock transfers from TTP8 to other Moving Defendants (May 2020), alleged violations of FTE's "firewall" (December 2020), and claimed violations of the transfer restriction in the Purchase Agreement (November 10, 2021). Opp. 20, Compl. at ¶¶ 63, 69, 107-110, 120. For the reasons explained above, none of these allegations are predicate acts. But even if they were predicate acts,

they only span a period from December 20, 2019 to November 10, 2021, which is 1 year, 10 months, and 3 weeks. That is <u>less</u> than the two years that the cases that FTE cites require. Opp. at 20-21; *see also Cofacredit, S.A. v. Windosor Plumbing Supply Co.*, 187 F.3d 299, 242 (2d Cir. 1999) ("To satisfy closed-ended continuity, the plaintiff must prove a series of related predicates extending over a substantial period of time . . . this Court has never held a period of less than two years to constitute a 'substantial period of time.'").

### C.  FTE's damages, if any, are not clear and definite.

FTE identifies four sources of claimed damages. However, none of those can sustain a RICO claim, which does not accrue until the damages are concrete, clear and definite.

First, FTE alleges it was damaged by Singal's fraudulent promise to discharge its debt in exchange for FTE stock, which it claims ultimately resulted in FTE's de-listing from the NYSE. Opp. at p. 22. However, as noted above, the Complaint does not allege that Singal failed to discharge the debt but does admit that it was FTE's improper stock issuance that caused the de-listing. Compl. at ¶¶ 104, 170 (Singal/TTP8, viii).

Second, FTE alleges it was damaged by the amount it expended purchasing the Vision Portfolio after being fraudulently induced into the transaction. Opp. at p. 22. But the amount FTE expended is not yet clear or definite for several reasons including because that consideration is the subject of claims and counterclaims as well as rescission demands in Delaware, and because FTE never completely paid for the Vision Portfolio. Third, FTE alleges it was damaged by the number of shares it issued to the Szkaradeks under the Purchase Agreement. Id. But those damages are not yet clear or definite because those shares are also the subject of the Delaware Action and may be returned to FTE through FTE's claims or rescission of the Purchase Agreement.

Fourth, FTE alleges it was damaged in the amount of its attorney's fees to contest the Bylaws Amendment. Id. However, the Nevada State Court has already found that the Bylaws

- 10 -

Amendment is likely valid. *See* State Corporate Case (Order dated Nov. 7, 2022) annexed to Stutzman Dec. at Ex. 6, ¶15. Moreover, under § 1964(c), attorney's fees are only recoverable under a RICO claim if FTE prevails on the merits of its claim. Accordingly, these alleged damages are too speculative and not yet concrete, clear, and definite. Therefore, despite FTE's insistence, it has not been damaged sufficient to meet this essential element.

### III.    FTE has not pled a Section 1962(d) RICO conspiracy claim against Moving Defendants.

The RICO conspiracy claim as alleged against Moving Defendants fails for two separately dispositive reasons: first because FTE has not pled a viable underlying RICO claim against Singal for the reasons outlined above; and second because FTE has not pled sufficient facts to demonstrate each Moving Defendants' knowledge and consent to participate in the conspiracy.

In Opposition, FTE relies upon both the execution of the Bylaws Amendment and participation in stock transfers as evidence of the Moving Defendants' agreement to the alleged conspiracy to fraudulently take control of FTE. Opp. at pp. 23-27. But these allegations are not sufficient to evidence an intention to fraudulently take over FTE. Merely redistributing voting stock does not change the total number of votes. Compl. at ¶¶107-110. Further, execution of the Bylaws Amendment was not a fraudulent act because the signatories actually represented a majority of the FTE shareholders entitled to vote as the Nevada court has already held and the Delaware Court deemed permissible.[5] *See* Szkaradek Voting Order and State Corporate Case (Order dated Nov. 7, 2022) annexed to Stutzman Dec. at Exs. 12 and 5 at ¶ 15, respectively.

---

[5] FTE's Opposition alleges that Innovativ, through Coleman, and Ladnier, through EEME LLC, voted shares impermissibly obtained from the Szkaradeks in the Bylaws Amendment. Opp. at p. 24. However, the Complaint contains no such allegations, FTE conceded that the Szkaradeks never transferred shares to either Innovativ or EEME LLC, *see* FTE's Amended Answer to Counterclaims with Affirmative Defenses annexed to Stutzman Dec., Ex.14 at ¶ 271, and the Bylaws Amendment is not even signed by EEME LLC. Compl. at Ex. B at p. 3.

**IV.     FTE has not pled a viable claim for fraudulent inducement or fraud.**

FTE's Opposition concedes that the claim for fraudulent inducement and/or fraud is alleged only against Singal. Opp. at pp. 28-31. The Opposition also clarifies the allegations against Singal as (1) misrepresenting the value of the Vision Portfolio and its liabilities including pending complaints from homeowners to their respective state attorneys general, (2) misrepresenting his status as a broker, while concealing his relationship with the Szkaradeks, (3) misrepresenting that he would discharge FTE debt in exchange for FTE shares, (4) misrepresenting that he would give his consideration under the Purchase Agreement to the shareholders of FC RET, and (5) misrepresenting that he would not be involved in the Vision Portfolio transaction post-closing. Opp. at p. 29. However, the Complaint does not support these allegations and sometimes contradicts them. The Complaint alleges that the Szkaradeks, not Singal, misrepresented Singal's status as a broker, his relationship with the Szkaradeks, and promised that Singal would not be involved in the Vision Portfolio Transaction post-closing. Compl. at ¶¶ 48 ("[T]he Szkaradeks represented to FTE and its board members that Singal was merely a broker, and would not be involved in the transaction after its close."), 78. Thus, as those representations were not made by Singal, he is not liable for them. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 265 (S.D.N.Y. 2005) ("Under New York law, a claim for fraudulent inducement requires proof (1) that the defendant made a representation …."); *see also Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,* 57 F.3d 146, 153 (2d Cir. 1995) (under New York law, to state a fraud claim one must show that the defendant made a material, false representation).

The remaining allegations are equally unavailing. As to the purported misrepresentation concerning the value of the Vision Portfolio and its liabilities, FTE has not alleged that Singal, as a non-party to the transaction, owed FTE a duty of disclosure. Further, FTE has not and cannot credibly allege that it relied upon Singal's purported misrepresentations when it had earlier decided

he was so untrustworthy that it needed to erect a "firewall" around him. Compl. at ¶¶ 47, 65. Additionally, more than 1 year and 3 months later, FTE affirmed the Purchase Agreement via the Second Amendment to Purchase Agreement. Compl. at Ex. F. FTE has not alleged Singal induced it into the amendment or was otherwise involved in either amendment to the Purchase Agreement.

Moreover, as to the discharge of FTE's debt in exchange for FTE stock issued to TTP8, the Complaint does not establish a fraud as explained above. About Singal's pledge to give his compensation under the Purchase Agreement to the shareholders of FC RET, FTE states that the Purchase Agreement was drafted to do just that. *Id.* at ¶ 69. Further, Singal, as a non-party to the Purchase Agreement, cannot enforce that term anyway. Finally, FTE's alleged damages for these acts remain, at best, speculative pending resolution of the claims in Delaware and Nevada relating to the Vision Portfolio and TTP8 transactions.

### V.      FTE has not pled a viable claim for tortious interference.

FTE concedes in its Opposition that the tortious interference claim only concerns Singal. Nevertheless, FTE has not pled a facially viable claim against him because FTE cannot allege a breach of the contract, which is an essential element.

In its Opposition, FTE alleges that Singal "conspired to breach the Vision Purchase Agreement by inducing the Szkaradeks to transfer their FTE shares to TTP8 and his wife, Ladnier, in violation of the Agreement." Opp. at p. 31. However, FTE has already conceded that the Szkaradeks remain the record owners of all their FTE shares received under the Purchase Agreement. *See* FTE's Amended Answer to Counterclaims with Affirmative Defenses annexed to Stutzman Dec., Ex 11 at ¶ 271; *see also* Szkaradek Voting Order annexed to Stuzman Dec. at Ex. 15 at p. 2. Thus, no transfer occurred, there was no breach, and this is fatal to the tortious interference claim. As to other stock transfers, FTE admits that it received opinions from legal counsel prior to all transfers. Compl. at ¶107-110.

Additionally, FTE's theorized conspiracy is at odds with its tortious interference claim. FTE alleges that the Szkaradeks and Singal conspired together to induce FTE into the Vision Portfolio Transaction to take over FTE and that the Szkaradeks never intended to abide by the Purchase Agreement's transfer restrictions. Compl. at ¶¶ 11-12, 14, 78, 103, 176. Yet, in this claim, FTE separately alleges that Singal fraudulently induced the Szkaradeks to breach the Purchase Agreement after execution. The allegations directly contradict each other and cannot both be true.

Finally, despite its assertion otherwise, FTE's damages for this claim remain speculative until the Delaware court adjudicates the pending claims including FTE's fraud and breach of contract claims, as well the Szkaradeks' recission claim. This is because, FTE's damages, if any, can only be calculated upon the disposition of those claims, which may unwind the subject transaction or award offsetting monetary damages.

**VI.    Coleman should be dismissed for lack of service.**

Despite having several extensions, FTE never completed service on Coleman. [ECF 32, 33, 56]. Now it attempts to waive away the Trihn Declaration, despite admittedly receiving the sworn declaration with the motion to dismiss papers. Clearly, it should be considered. *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 311 (S.D.N.Y. 2008) (when deciding a motion to dismiss for insufficiency of service, "a Court must look to matters outside the complaint to determine whether has jurisdiction.") (internal citations omitted); *see also Rodriguez v. Lahar*, No. 15-CV-3446 (CS), 2016 WL 5376217, at *3 (S.D.N.Y. Sept. 26, 2016) (the court may consider affidavits and other evidence submitted by the parties under Rule 12(b)(5)). In it, Mr. Trihn, who FTE admits received the process intended for Coleman, declares under penalty of perjury that he did <u>not</u> state that Coleman worked at that address, and that Coleman does not work at that address, Coleman is not associated with Demand Brands, he never met Coleman, and Mr. Trihn is not otherwise

authorized to accept service for Coleman. *See* Declaration of Dean Trihn annexed to Stutzman Dec., Ex. 16. FTE offers nothing in response to these sworn facts except internet searches.

In addition, the Affidavit of Service is deficient on its face. Under California law, substitute service may be done at somebody's place of business, but a copy of the summons and complaint then must be mailed to the recipient where putative service occurred. Cal. Civ. Proc. Code § 415.20. FTE's Affidavit of Service is silent on this requirement. Thus, service on Coleman is again deficient, and he should be dismissed for that reason.

**VII.    Conclusion.**

For the reasons explained both above and in Moving Defendants' Motion to Dismiss and accompanying Memorandum, Plaintiff's Complaint fails to state a claim against Moving Defendants and should be dismissed with prejudice.

Respectfully Submitted,

Date: May 1, 2023

 /s/Andrew K. Stutzman
Andrew K. Stutzman, Esq. (#5034517)
Stradley Ronon Steven & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(P) 215-564-8008
astutzman@stradley.com

*Counsel for Defendants Suneet Singal; Majique Ladnier; TTP 8, LLC; First Capital Master Advisor, LLC; Innovativ Media Group, Inc.; and Thomas Coleman*

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2023, I caused the foregoing Reply, along with the accompanying Declaration and exhibits to be electronically filed and served via this Court's ECF system to all counsel of record.

/s/Andrew K. Stutzman
Andrew K. Stutzman