# EXHIBIT 9

Electronically Filed
4/18/2023 5:25 PM
Steven D. Grierson
CLERK OF THE COURT

TRAN

DISTRICT COURT
CLARK COUNTY, NEVADA
* * * * *

INNOVATIV MEDIA GROUP, INC.,    )
                                )
            Plaintiff,          )        CASE NO. A-22-849188-B
                                )        DEPT NO. XXXI
vs.                             )
                                )
FTE NETWORKS, INC.,             )
                                )        **TRANSCRIPT OF**
                                )         **PROCEEDINGS**
            Defendant.          )
                                )
AND RELATED PARTIES             )


BEFORE THE HONORABLE JOANNA S. KISHNER, DISTRICT COURT JUDGE

WEDNESDAY, APRIL 12, 2023

**TRANSCRIPT RE:**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**


APPEARANCES:

 FOR INNOVATIV MEDIA:        THERESE M. SHANKS, ESQ.
                             Via BlueJeans




 FOR THE DEFENDANTS:         DANIEL CEREGHINO, ESQ.


RECORDED BY: LARA CORCORAN, COURT RECORDER
TRANSCRIBED BY:  JD REPORTING, INC.

1

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1     **LAS VEGAS, CLARK COUNTY, NEVADA, APRIL 12, 2023, 9:56 A.M.**

2                          * * * * *

3              THE COURT:  Okay.  We are going to call --

4         Madam Court Recorder?

5              THE COURT RECORDER:  You're on the record.

6              THE COURT:  We're on the record.  We're good?

7              THE COURT RECORDER:  Uh-huh.

8              THE COURT:  Beautiful.  Okay.

9              Pages 5, Case 849188, Innovativ Media Group versus

10    FTE Networks.

11             Counsel for Innovativ, please make your appearance.

12             MS. SHANKS:  Good morning, Your Honor. Therese Shanks

13    on behalf of plaintiff Innovativ Media Group.

14             THE COURT:  Thank you so much.

15             On behalf of FTE, please.

16             MR. CEREGHINO:  Good morning, Your Honor.  Dan

17    Cereghino on behalf of FTE and the Lateral entity and

18    Mr. De Silva.

19             THE COURT:  Okay.  I appreciate it.  Thanks.

20             Okay.  So what we have today is the -- I have a

21    special setting so that we could address the motion for

22    preliminary injunction.  Got the motion.  Got the opposition.

23    Got the reply.

24             There's a little bit -- I will tell you the Court

25    will end up -- let me give some -- the motion is Document 227.

1   The opposition is Document 234.  And the reply is Document 236.

2          So I will tell you the Court's going to have a

3   question.  You kind of both addressed this a little bit at the

4   time of the TRO hearing, but just to flush out each party's

5   viewpoint on the scope of the requested relief and the

6   authority of the Court with regards to the requested relief

7   because of the differences in viewpoints as to who may or may

8   not own, previously own or whatever verbiage you would like to

9   do that will take my question as making a determination of

10  that, but of some of the various shares.

11         So I'm sure you're both going to cover that anyway in

12  your standards, but that is going to be a question that the

13  Court was going to ask.  If it's not covered, I'll just ask it

14  at the end, or if you want to incorporate it, that's fine.  If

15  you have a preset presentation, then I'll ask at the end.  No

16  worries.

17         So, Counsel for the movant, since it's your motion

18  for a preliminary injunction, you get to go first, please.

19         MS. SHANKS:  Thank you, Your Honor.  Therese Shanks

20  for Innovativ Media Group.

21         Our request in this motion is simple.  We just want

22  this Court to maintain the status quo.  We have asked this

23  Court to restrain FTE from taking any action reliant upon the

24  putative stop cancellation from acting under the newly amended

25  or restated bylaws, from issuing any new stock and just

1   allowing us to litigate this case.

2          At the hearing on the TRO, we noted the orders we

3   believe FTE's latest conduct violates, if not directly, then in

4   spirit and intent.

5          What is clear to us is that FTE is attempting to

6   undermine our pending case by a maneuver prohibited by Nevada

7   law while simultaneously delaying our ability to litigate this

8   case by delaying discovery.  And as we argued to this Court, we

9   think that this is pure obstruction.  All that FTE has done to

10  date is to obstruct Innovativ at every step of this litigation.

11         We believe that the cancellation of Innovativ shares

12  is an active conversion of a personal property right, which is

13  not permitted by Nevada law.  We have significant concern over

14  this new amended and restated bylaws, which would permit

15  embattled directors to remove an independent director, which is

16  also not permitted by Nevada law.  And it all appears to be

17  approved by a less than a majority of shareholders or by

18  shareholders whose stock would have been issued in violation of

19  either the bylaws amendment whose validity is currently pending

20  before this Court and/or Nevada law because it would not have

21  been issued with director consent.

22         So all that we are asking in this motion, Your Honor,

23  is to maintain the status quo so that we can litigate the

24  merits of the case.

25         Our request we think is fairly straightforward.  We

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1  are not asking this Court to exceed its jurisdiction or to

2  restrain third parties.

3          What we are asking this Court to do is can FTE, who

4  is a party over whom this Court has jurisdiction, do what it

5  did?  And we think the answer is no, and we think that this

6  Court unquestionably has jurisdiction to tell FTE to maintain

7  the status quo until we can figure that out.

8          We are not asking this Court to determine the rights

9  of third parties.  We are not asking this Court to restrain

10  third parties.  We are just asking this Court that FTE maintain

11  the status quo, and to get to that order, all that this Court

12  will have to do is look at FTE's conduct.  Can a Nevada

13  corporation, i.e., FTE unilaterally cancel shareholders' stock

14  under Nevada law?  The answer is no.

15          Can FTE, over whom this Court has jurisdiction, act

16  pursuant to these new bylaws?  Well, we think we should figure

17  that out.  But in the meantime, we want a status quo order

18  because if those bylaws aren't valid and the director gets

19  removed, there's void director action.

20          FTE's thrust of its opposition is that Innovativ

21  lacked standing because FTE canceled Innovativ's stock, but

22  then FTE turns around and simultaneously argues that Innovativ

23  cannot challenge the cancellation of stock because FTE actually

24  canceled TTP8 stock.

25          Well, Innovativ stock was bought from TTP8.

JD Reporting, Inc.

1   Cancellation of one is the cancellation of the other.  FTE

2   cannot have it both ways.  It cannot deprive Innovativ of a

3   property right and then simultaneously argue that Innovativ

4   lacked standing because it no longer has that property right.

5   That's the epitome of standing.  You take something away from

6   me, I disagree that you should have taken away from me, I

7   clearly have standing to bring a suit for that.  That is the

8   justiciable case of controversy, and I have a vested interest

9   in whether or not I now own that property.  That's standing.

10          But this argument again overlooks what Innovativ is

11  asking.  Asking FTE to refrain from acting upon the

12  cancellation of stock is just a request for the status quo.

13  That's it.  FTE filed a motion for summary judgment on

14  Innovativ standing.  That's in the process of being briefed,

15  and that will be heard by this Court.  FTE didn't provide any

16  reason or identify the harm as to why the status quo should be

17  maintained until this Court can get to that decision on the

18  merits.  And in the course of that motion, this Court will have

19  to determine as a matter of law whether FTE can even cancel

20  stock unilaterally under Nevada law.

21          I can tell you, Your Honor, that the law does not

22  support FTE's actions.  We've provided this Court with

23  authority demonstrating that.  We, you know, the Delaware Court

24  has rejected this theory of FTE's, which you did take judicial

25  notice of during the TRO hearing, that corporations in Nevada

 1    cannot deprive shareholders based upon unproven allegations of

 2    fraud.

 3         We have demonstrated that nothing in the plain

 4    language of NRS 78.211 permits a corporation to unilaterally

 5    cancel stock.  We've provided this Court with case law finding

 6    that a corporation cannot do it, both under NRS 78.211 and

 7    under related sister statutes out of Florida.

 8         And we -- contrary to FTE's assertion at the last

 9    hearing, that case law is not outdated.  It's from the 2000s

10    and onward.

11         Also, we've provided this Court with evidence that

12    FTE cannot rely upon Subpart 3 of that statute because that

13    would have required FTE to place TTP8 stock into escrow.  The

14    stock transfers to TTP8 from FTE March 2020 are in evidence in

15    our appendix.  If you look at Exhibit 17, 18, 19 and 20, those

16    demonstrate that TTP8 stock was never placed into escrow.  So

17    Subpart 3 is not available.  That argument was raised under the

18    case law, the *Jacob versus Bernatek* case, a Florida case

19    addressing virtually identical statutory language, and that

20    Court similarly rejected the argument where there was no

21    evidence that the stock was ever in escrow, that Subpart is not

22    available.  And so you cannot unilaterally cancel the stock.

23         There's no alternative authority that FTE provided to

24    this in their opposition.

25         The thrust of the opposition again is that we are

1 purportedly asking this Court to exercise jurisdiction over

2 nonparties, which we are not and that we lack standing, which

3 we do not.  This Court unquestionably has jurisdiction over

4 FTE, and Innovativ clearly has standing to challenge the

5 conversion of its stock.  Stock is personal property under

6 Nevada law.  It cannot just be taken away.  And to read

7 NRS 78.211 to permit that is directly contrary to NRS 78.240.

8           Furthermore, Innovativ is a protected purchaser, and

9 there was no evidence provided to refute that Innovativ was

10 not.  The only argument is that to be a protected purchaser you

11 must have evidence of, quote, "good faith," unquote, but that

12 again is inaccurate.

13           Under NRS 104.8202 and .8303, the protected purchaser

14 statutes, Innovativ took title to its stock free of any adverse

15 claims.  There is no requirement that this be done in good

16 faith.  The UCC comments make it clear that they took out that

17 language because it was confusing because what the UCC meant by

18 good faith was without notice of adverse claims.  And Innovativ

19 did not have notice of adverse claims.  Innovativ has met those

20 elements.

21           It provided compensation to TTP8 for that stock,

22 i.e., gave value.  It did not know, and there was not a notice,

23 and she could not have been on notice of adverse claims because

24 TTP's performance wasn't even due by the time Innovativ got its

25 stock in May 2020, and it did get the stock.  The stock was

1    issued.  So we think that Innovativ has -- should still be a

2    shareholder.

3            FTE has also raised the question of whether our

4    current request relates to the presently pending complaint, and

5    it absolutely does.  The bylaws that -- the newly amended and

6    restated bylaws that FTE has already recognized, Your Honor.

7    They already filed an 8-K telling the shareholders these are

8    our new bylaws.  These bylaws unwind the --

9            THE COURT:  Counsel.  Counsel.  I want to stop you

10   for one quick second.  They filed it on what date in comparison

11   to the Court's order?  Was it before or after the Court's

12   order?

13           MS. SHANKS:  Before.

14           THE COURT:  Okay.  Thank you.  Go ahead, please.

15           MS. SHANKS:  Yeah.  The bylaws unwind the

16   restrictions that the bylaw's amendment placed upon FTE and its

17   directors, and this Court hasn't had a chance to reach the

18   merits of that amendment yet.  So really what we're trying to

19   do is keep the status quo when we asked them not to act under

20   those bylaws.

21           But more importantly, as we point out in our moving

22   papers, the signatories of that amendment only constitute

23   19 percent of the voting power of the shareholders who appear

24   on the shareholder list, and that means that in order for that

25   amendment to be valid, more stock must have been issued, but

1    the signatories are all either Richard De Silva and his

2    affiliated entities because he signs it eight times, or

3    entities that we now know from litigation across the country

4    are acting in concert with Mr. De Silva.  And our bylaws

5    amendment, if valid, would prohibit the issuance of the stock

6    to those affiliate entities without shareholder approval.

7           So we cannot determine the validity of these newly

8    amended and restated bylaws until we determine the validity of

9    our bylaws amendment.  Because if stock was issued in violation

10   of our bylaws amendment, that calls into question the validity

11   of these newly amended bylaws.  They are inextricably

12   interrelated, and our bylaws amendment is not mooted by this

13   new amended and restated bylaws.  It just makes it that much

14   more important to get to the merits of the case.

15          Furthermore, if the stock was issued, Joseph

16   Cunningham did not know about it.  So it would arguably be void

17   for lack of director consent.  There were no director meetings

18   to issue this stock, which means it had to have been done by

19   written unanimous consent under Nevada law and FTE's bylaws and

20   Mr. Cunningham has told this Court, you have his declaration,

21   he didn't know about it, and he didn't approve it.  So that's

22   another issue with these newly amended and restated bylaws that

23   may pose a threat of void director action.

24          And the most apparent action that they're going to

25   take because they tried it with the shareholder meeting, tried

1   it with the appointment of (indiscernible) is to remove

2   Cunningham, and that is the most problematic provision of these

3   amended and restated bylaws.  It gives Beys and De Silva the

4   ability to remove Cunningham for cause, but that is directly

5   contrary, as we argued during the TRO hearing, to Nevada law,

6   which never permits a director to remove another director.  It

7   must be done by shareholders, and only shareholders can remove

8   another director.  This again would result in void director

9   action.

10          FTE has also asked this Court that -- or tells this

11  Court that our request would ask this Court to make some sort

12  of a determination about the underlying TTP8 rights, but that's

13  not accurate.  All that we want this Court to do is to maintain

14  the status quo of FTE.  This Court is going to directly

15  confront the standing issues in a motion for summary judgment,

16  as I already noted, and there's no evidence as to why we

17  should, you know, not maintain the status quo until that

18  hearing.

19          It's also confusing to me as to why FTE wants this

20  Court to find some sort of waiver on the part of TTP8 by not

21  coming in as a plaintiff when it argues this Court has no

22  jurisdiction over TTP8, but that is beside the point because

23  all that we are asking this Court to do is maintain the status

24  quo, and we're doing it in four main ways.

25          Status quo request Number 1, do not act upon the

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1  cancellation of the stock.  FTE admits that it only canceled

2  TTP8 stock.  They argue that to this Court, but then they argue

3  to this Court and to other Courts that that means Innovativ

4  stock is canceled too.  Okay.  Fine.  Just maintain the status

5  quo.  Whatever stock got canceled, don't act upon it until we

6  can determine whether that stock cancellation was valid.

7        Status quo request Number 2, don't mess with

8  Innovativ stock or shareholder rights in any other way.  I wish

9  I could be more specific in that request, but every time I get

10  an order or I think this Court's intent was clear that it just

11  wants these parties to maintain the status quo and litigate the

12  case, FTE goes and does something else that I could not have

13  foreseen.  So our status quo request Number 2 is just stop

14  messing with Innovativ shareholders' rights.  Maintain the

15  status quo.

16        Status request Number 3, don't act under these

17  amended and restated bylaws.  FTE did not identify anything it

18  feels that it needs to do under these bylaws.  It didn't

19  identify anything that it cannot do under its current bylaws.

20  It's been operating with three directors, the same three

21  directors for years.  It does not identify any new purpose for

22  these new bylaws other than that well, the shareholders wanted

23  it.  Well, guess what, the shareholders wanted our bylaws

24  amendment too.  That is all the more reason for a status quo

25  order.

1          And then the final one is just to stop issuing

2     dilutive stock or don't issue dilutive stock.  This one is we

3     have a caveat that I will address for this Court, but it is

4     unclear why FTE would be issuing stock to these new third

5     parties.  It is delisted from a public stock exchange.  It's

6     deficient on its SEC filing.  It's in imminent risk of being

7     deregistered from the SEC.  By its own admissions it is not

8     turning a profit.  There is just no reason why it should be

9     issuing stock to third parties.

10          It did not issue stock since April 2021, and now all

11    of a sudden, if this bylaws amendment that they've done in this

12    month is any indication, they went out and issued a whole bunch

13    of stock after this Court's rulings against them without

14    director consent.  And so we just want a status quo on that as

15    well until we can figure all of these issues out.

16          However, we do have an important caveat which is that

17    if there is some agreement or settlement or some reason why FTE

18    thinks it should issue that stock, come to the Court and get an

19    order, you know, just be upfront about it.  You know, we're not

20    trying to stop FTE from operating business in the ordinary

21    course.  We just want it to maintain the ordinary course, and

22    we want this Court to maintain the status quo.

23          So that brings me to my final point, which is have we

24    met the elements for preliminary injunction?  Yes, we have.  We

25    have demonstrated irreparable harm.  I'm not going to go

1   through it again because I know this Court is very familiar

2   with our arguments to that extent, but, you know, interference

3   with property rights, deprivation of a property right,

4   interference with the right to participate in corporate

5   governance, potential void director action.  These are all the

6   irreparable harms that we have discussed, and these are not

7   speculative because FTE has already announced these actions

8   and/or has taken action upon them.

9           Second, we do believe we stand a likelihood of

10  success on the merits of our dec relief claim.  There is no

11  question that the shareholder Innovativ and TTP8 whose stock

12  has may or may not have been canceled, they were shareholders

13  of record when they signed that bylaws amendment in

14  February 2022.  Innovativ was definitely a shareholder of

15  record in February of 2022, and FTE's cancellation this month

16  would not work retroactively.  The Delaware Court order is

17  instructed in that regard as well because it rejects this whole

18  retroactive deprivation of rights argument.  You cannot

19  retroactively take away shareholder rights based upon unproven

20  allegations of fraud.

21          You already granted summary judgment in our favor on

22  the J stock claiming that it never had voting rights.  So we

23  think that we have met the burden that we will provide --

24  prevail on our bylaws amendment, and as we've demonstrated, the

25  conduct that we are asking you to restrain directly affects it.

1    It affects our standing to pursue that bylaws amendment

2    validity dec relief claim.

3          You know, it the -- our bylaws amendment contradicts

4    what they're trying to do with them in the restated bylaws.  We

5    think that we have met those elements of preliminary

6    injunction.

7          We have also filed, as we noted, a motion for leave

8    to file a supplemental complaint.  That is in the process of

9    being briefed and will be heard by this Court that will

10   directly challenge FTE's actions, but contrary to FTE's

11   contentions, our argument today relates directly to the pending

12   claim before this Court; however, we think that we will also

13   likely prevail on our challenge to the cancellation.  We think

14   that we will defeat the motion for summary judgment because we

15   do not believe that NRS 78.211 for all the reasons I set forth

16   already today would permit this.

17         We also think that we will prevail on our challenges

18   to the purported amended and restated bylaws agreement and the

19   issuance of the stock.

20         So we do think that there is a likelihood of success

21   for us on the merits, and FTE did not provide evidence related

22   to these stock issuances.  So we don't even know if stock was

23   issued to these people as from the record before this Court,

24   the people who signed it have 19 percent of the voting power of

25   FTE, and it's not even valid.

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1        Third, the public interest and the balance of the

2   harms favor Innovativ.  FTE doesn't even dispute that.  Nothing

3   in their brief about this, and public interest clearly favors

4   compliance with Nevada law, and Innovativ is definitely more

5   affected by FTE's actions than FTE would be by simply

6   maintaining the status quo that it has been maintaining since

7   April 2021.

8        So that is what we're asking this Court to do.  We

9   just want a preliminary injunction asking them to maintain the

10  status quo.  That's all we are asking.

11       THE COURT:  Okay.  Counsel, in response, go ahead,

12  please.

13       MR. CEREGHINO:  Yes.  Thank you.

14       So what you heard just now was improper burden

15  shifting.  FTE didn't provide evidence of this.  FTE didn't

16  provide evidence of that.  FTE is not the movant.  It's not my

17  job.

18       Innovativ didn't provide evidence.  I will attack

19  their inadmissible lack of evidence as I go through my

20  argument, but the point is they have not supported their burden

21  as the movant.

22       So we'll start with a summary.  The same problems

23  remain.  Number 1, Innovativ has no legal right to assert

24  claims that are specifically and uniquely reserved to valid

25  shareholders.

1          Number 2, Innovativ has no legal right to seek relief

2     for TTP8.

3          3, Innovativ has no legal right as the case is

4     presently postured, and you just heard them admit there's going

5     to be a change in posture.  Well, okay, we can get to issues

6     when it's correctly postured, but we can't put carts before

7     horses.  It cannot seek relief that would deprive nonparty

8     shareholders of their statutorily protected rights.

9          4, The equal application of the law, which was

10    already decided by this Court -- you heard Ms. Shanks reference

11    it -- requires that the I Series also be treated as nonvoting.

12    That, that one aspect alone is the Jenga title that topples the

13    entire case.

14         The February 3rd bylaws amendment is invalid the

15    moment the same law and the same facts are equally applied to

16    get to the same result, which is that the I Series have no

17    voting rights.  Done.

18         THE COURT:  Is that before -- hold on one second.  We

19    have someone who just added on.  This is the only hearing we're

20    in the middle of, and I'm sorry.  I'm pausing you for one

21    second because we had someone come on --

22         MR. CEREGHINO:  Sure.

23         THE COURT:  -- remotely and I want to make sure that

24    they're not --

25         Is that one of you all's clients?  People are more

1   than welcome to observe.  It's a public courtroom, but if

2   somebody else thinks that you have a different hearing, so

3   whatever that phone number is that ends in 2200, this is --

4          MS. SHANKS:  That is, yeah, that is Mr. Coleman from

5   Innovativ Media Group, Your Honor.

6          THE COURT:  Okay.  No worries.  Like I said, it's a

7   public courtroom.  I just want to make sure someone didn't

8   think they had a hearing because you are the only ones on for

9   now.

10          Go ahead, please.  Sorry, Counsel.

11          MR. CEREGHINO:  No.  Thank you, Your Honor.

12          THE COURT:  So you were saying your fourth point

13   about the February 3rd and the I --

14          MR. CEREGHINO:  Sure.  The I Series, once we apply

15   the same exact law, which this Court made in the summary

16   judgment decision that Ms. Shanks referenced, which was the

17   March 8th, 2023, order, paragraph 18, the Court holds

18   preferred stock is only granted voting rights if those voting

19   rights are set forth in a formal written, resolution signed by

20   the Board of Directors.  There is no formal written resolution

21   signed by the Board of Directors for the I Series to have

22   voting rights.

23          THE COURT:  Is that before me today though?

24          MR. CEREGHINO:  Yes.

25          THE COURT:  And why are you saying that's before me?

1      MR. CEREGHINO:  I say that because of the 11 -- the

2  November 7, 2022, preliminary injunction hearing order which

3  talks about at paragraphs 28 and 29,

4                  The Court finds that Innovativ has

5              demonstrated a likelihood that the preferred

6              Series J-1 and J-2 shares have no votes that can

7              be counted towards the voting power.

8          Great.

9                  29, While the Court is cognizant of the

10             factual disputes remaining of whether beneficial

11             owners can vote, what the A Series has,

12             et cetera, it says if there's a likelihood that

13             the Series J-1 and J-2 do not have voting

14             rights, then the bylaws amendment is valid

15             according to the vote calculation.

16         Great.  It's just the inverse.

17      So the same analysis that the Court already did in

18  granting a preliminary injunction in November has to be done by

19  now as to the I Series because it goes to the likelihood of

20  their success on the claim.

21          THE COURT:  That's what the question -- okay.

22      MR. CEREGHINO:  They could have waited until the

23  motion for summary judgment, absolutely, and if we were here on

24  some other issue, like, for example, amendment, I would still

25  be able to raise it from a futility standpoint, but I could see

1    where the Court would say, no, no, no, that's not before us.

2           No.  This is they have to show likelihood of success

3    on the merits.  The merits of what?  Not the merits of whether

4    the sky is blue, not the merits of whether speed limits should

5    be what they are, the merits of the claim, and there's only one

6    that's currently pending.  The validity of the bylaws amendment

7    in February.  That's what they have put at issue.  So I get to

8    challenge it.

9           And as I challenge it, I go you have, in fact, not

10   even close to the requisite reasonable likelihood of success.

11   You have zero likelihood of success because all I'm asking for

12   is the equal treatment of the law for the same exact facts.

13   Once the I series is removed, the math is the math.  We're

14   done.  And I'll get to that a little later.

15          MS. SHANKS:  I would just like to make an objection

16   for the record that this was not in the opposition brief.  I

17   did not have a chance to respond to this argument.  This is

18   newly raised.  I will address it in my rebuttal argument, but I

19   would just like the record to be clear that this is an argument

20   that was not briefed in the briefs before this Court.

21          THE COURT:  Counsel, in light of her objection, can

22   you please point me to the provisions in your oppositions if

23   you're asserting it was.

24          Are you asserting it was in your opposition, this

25   argument?

1          MR. CEREGHINO:  I'd have to go back and relook.  I

2   don't know that I -- I mean, I certainly challenged the

3   likelihood of success.  So let me go ahead and try and pull up

4   my opposition.

5          THE COURT:  I can do it at the end if you want to

6   complete.  It's up to you.

7          THE COURT RECORDER:  Judge, in the meantime.

8          Ms. Shanks, I don't know if she has a telephone on or

9   something.  You guys can't hear it, but I have this constant

10  feedback in the recording.

11         THE COURT:  Sure.  Ms. Shanks, did you hear the court

12  recorder?  You've got something going on in your background.

13  Do you have a phone vibrating?

14         MS. SHANKS:  On it.  No, I don't.  I don't know what

15  that is.

16         THE COURT:  An air purifier?  Sometimes people have

17  air purifiers on or something like that that makes that noise.

18         THE COURT RECORDER:  It's not that.

19         MS. SHANKS:  I don't have anything going on.  No.

20         THE COURT:  Okay.  Would you mind just keeping

21  yourself on mute while counsel is speaking.  And then we'll

22  circle back.  Thank you so much.

23         MR. CEREGHINO:  So I don't think I specifically

24  raised the I Series.  I will however note this was on an order

25  shortening time basis.  So I only had a couple days to do it,

 1    but it also doesn't change the fact that we have, in fact, in

 2    other context talked about this exact issue which is now a

 3    binding law of the case concept.

 4            The I Series, just like the J Series has to have had

 5    a formal written resolution.  And because it didn't, they don't

 6    count.  It's simple.

 7            So, if Your Honor wants to ignore that for today and

 8    then we're going to deal with it at the summary judgment, fine,

 9    but there are still other reasons why the preliminary

10    injunction cannot issue because it's not supported by competent

11    evidence, and the elements are not met.

12            So let's see here.  So again, the issues are the

13    Court can't give relief as the claim's not before it that

14    adversely impact the parties not before it.

15            Now, I'd like to turn to that point.  So Ms. Shanks

16    made an interesting statement:  Cancellation of one is

17    cancellation of the other.  Huh.  Well, that's interesting.

18    Let's take that concept and apply it to what they're asking you

19    to do.

20            Judge, stop the other shareholders from doing exactly

21    what we did.  Well, that's canceling the rights of the other

22    FTE shareholders.  Those rights exist regardless of this case.

23    Those other shareholders have every right to do what they want

24    to do.  We experience this every year or every two years in our

25    political system.  That's the way politics works.  One group of

1   people does something.  Another group of people decide they

2   don't like it and later change it.  There is nothing illegal or

3   even controversial about that concept.  Those people have

4   rights.

5           So just because they are indirectly trying to impact

6   those rights doesn't mean they're not impacting them.  They

7   are.  So if they want to challenge that March 2023 bylaws

8   amendment, they can do what they concede they had to do, which

9   by the way they could have done before bringing this motion.

10  They could have done it parallel to bringing this motion.  They

11  chose not to.  Not my problem.  Not this Court's place to fix.

12  Procedurally, it's wrong.

13          So if Your Honor wants to continue this until after

14  we -- that's fine too, but there can't be preliminary

15  injunctive relief when it's related to claims not before the

16  Court and parties not before the Court.

17          THE COURT:  And, Counsel, the reason why I asked -- I

18  said at the beginning I was going to ask that question.

19          MR. CEREGHINO:  Sure.

20          THE COURT:  I'm hearing you say it in a summary

21  fashion.

22          MR. CEREGHINO:  Sure.

23          THE COURT:  So there is four -- it's asserted as four

24  claims, albeit one (indiscernible) remedy right.

25          MR. CEREGHINO:  Uh-huh.


JD Reporting, Inc.

1          THE COURT:  But four claims before the Court.

2          MR. CEREGHINO:  Not quite.

3          THE COURT:  I said four claims, but one of them was

4     really a remedy.

5          MR. CEREGHINO:  No, but that -- even that statement

6     is not quite right because Your Honor dismissed the election

7     claim back in June 30th because Innovativ doesn't have the

8     number of shares by itself, assuming that they validly owned

9     them, to trigger them.  So that thing is gone.

10          So we're down to two, which was the shareholder list

11    demand, which Your Honor already gave them relief on.  So we're

12    down to one.  We're down to one claim, the declaratory relief

13    claim.

14          THE COURT:  Well --

15          MR. CEREGHINO:  That's it, and it's not about whether

16    someone has breached the bylaw amendment of February 3rd.  It's

17    not about anything other than is it valid.  That means what is

18    the math on February 3rd?  That's the only claim.  That's the

19    only claim.  So how are we giving injunctive relief on things

20    that don't relate to what is the math on February 3rd?

21          We can do it after the Court grants leave to amend if

22    they've asserted a different claim, but, you know, the Court

23    (indiscernible) is bound by the claims and the parties that are

24    before it.  That's it.  It's pretty simple.

25          Right, and so here, in their reply, page 2,

1    paragraph 20, I'm going to go through the things they actually

2    are asking the Court to do:

3                        Innovativ asks this Court to restrain FTE

4                    from acting pursuant to the newly purportedly

5                    amended and restated bylaws.

6            Great.  That has to be rephrased to Innovativ asks

7    this Court to require FTE to ignore the validly effectuated

8    rights of other parties, of the other shareholders.  That's

9    what they're asking you for.  They can't do it.  They can't do

10   that because it wasn't FTE that amended the bylaws.  It wasn't

11   Mr. Beys that amended the bylaws.  It wasn't Mr. De Silva, as

12   much as they want to point to that.

13           We have a pretty strong and lengthy tradition in

14   Nevada about corporate distinctions.  Corporations can't do

15   anything except but through people.  You can ask Mr. Coleman

16   that.  Innovativ can't act except through Mr. Coleman or one of

17   its other employees.  So Mr. De Silva did not do it.  The other

18   shareholder entities did it, and they have rights.

19           THE COURT:  But, Counsel, and this is where I have to

20   as the question; right?  Because isn't there presently a

21   dispute before the Court with regards to the declaratory relief

22   component is what actually you keep on phrasing the math;

23   right?

24           MR. CEREGHINO:  Right.

25           THE COURT:  So was there a sufficient number of

1  individuals in your language, right, or people that did what

2  they did in March according to --

3          MR. CEREGHINO:  Yes.

4          THE COURT:  -- what your position is and how does

5  that -- how do you get there based on what is currently before

6  the Court?

7          MR. CEREGHINO:  I don't need to because the claim

8  isn't before the Court.  I don't have to give a free look to

9  Ms. Shanks at information she's not entitled to or her client

10  is not entitled to.  I'm not basing the objection on the

11  validity of it.  Yes, that is another reason, but that's not

12  the only reason.  All I'm saying is there are people whose

13  rights they want you to curtail.  It doesn't matter what the

14  right is.  So whether they have a majority or not --

15          THE COURT:  But every -- every injunction works that

16  way; right?  I mean, think about it.  Every injunction has --

17          MR. CEREGHINO:  No.

18          THE COURT:   -- it declares that the person can't do

19  it if people have knowledge of because you can't then assign

20  your rights to some third party to then do the very things that

21  the parties who are actually part of the complaint can't do.

22          MR. CEREGHINO:  Which is fine, but completely

23  different than nonparty shareholders who have just been sitting

24  on the sidelines watching this nonsense.  Again, it's like

25  Congress.  There was a certain -- or a composition, a certain

1   number of Democrats, certain number of Republicans.  Great.

2   And then the rest of us sit around and go, you know what, I

3   don't like what was happening.  I don't think there's any Court

4   in the country that can say, you know what, we're canceling

5   elections.  Until we figure out whether a prior election was

6   valid, we're just canceling elections for everyone going

7   forward.  That's what they want.

8          Whether or not it's a majority is a different

9   question than whether these people have rights that are being

10  infringed.  They do if you give them what they want.

11         I'm not asking you to decide that that is a majority

12  and it moots the whole thing.  We'll get there, but right now

13  it's totally unnecessary, okay, but they have rights that are

14  being infringed.  Can't do it.  Until they have a voice; that's

15  called due process.

16         Let's see here.  Secondly, it is absolutely clear

17  that Innovativ is asking for you to protect TTP8 who can't be

18  bothered to come in here.  The reply, page 2, line 8:

19  Innovativ asks this Court to restrain FTE from acting upon the

20  cancellation of stock.

21         You'll note it does not say cancellation of

22  Innovativ's stock, which would be a different question.  They

23  are attempting to protect every share that was canceled.  By

24  definition, that means TTP8.

25         And look at what the TRO papers under

1   (indiscernible)have said at the emergency motion at page 3,

2   lines 22 to 24:  Unless and until it is determined that

3   Innovativ's and any other shares FTE has purportedly canceled.

4   Of course, they're trying to protect TTP8.  They say it

5   themselves.

6            At page 5, line 21.  Instead, what FTE did was to

7   illegally and unilaterally cancel stock issued to TTP8.  Well,

8   TTP8 can come in and complain.  Absolutely.  We canceled their

9   stock.  Hundred percent.  Dated a month ago.

10           Your Honor can see how much has been achieved in this

11  case in one month.  Why can't TTP8 come in?  They can assert

12  their rights, not the other people, not Innovativ.  So

13  whatever, Your Honor, wants to do, if Your Honor is going to do

14  something, fine.  Can't be the TTP8.  They have chosen and

15  chosen and chosen and chosen not to come here.  That's on them.

16           And you don't get to avoid a factual predicate just

17  by hiding, and that's all that's happening because they can't

18  give you any evidence.

19           And on a separate procedural technical note, yes,

20  TTP8 would, in fact, be required to a separate (indiscernible)

21  because their interests diverge from Innovativ's now that

22  Innovativ has asserted the bona fide purchaser defense because

23  the bona fide purchaser offense only arises when the person

24  asserting it says, yes, there was a problem with the underlying

25  transaction, but, no, it should not apply to me.  So their

1   interests diverge.

2          So TTP8 has to come in here and explain itself.  And

3   it's choice to not do that is TTP8's, and choices have

4   consequences.

5          Third, Innovativ asked this Court to restrain FTE

6   from taking any action which will interfere with Innovativ's

7   shareholder rights.  And there again you go.  You get back to

8   square one.  So what, magically Innovativ is the only one that

9   has shareholder rights?

10          THE COURT RECORDER:  Mr. Cereghino, you can't move,

11   please.

12          MR. CEREGHINO:  Sorry.  Sorry.

13          Innovativ does not have special license for some

14   superpriority shareholder rights.  The rights that belong to

15   shareholders belong to others as well.  It's that simple.

16   Can't interfere with other people's rights who aren't even

17   here.

18          But it also raises -- that statement also raises an

19   interesting question about, back to square one, does Innovativ

20   even have valid shareholder rights that deserve protection?

21   And again, the answer is no.

22          Now, again, this idea of standing, and, of course

23   Innovativ has standing to come in and sue.  So right, the

24   procedure is no one can stop a plaintiff from walking in and

25   filing a suit.  There is no prefiling screening unless someone

1    has been deemed a vexatious litigant.  Plaintiff just gets to

2    hit the send button, and there we go.  That's not the point.

3    After that there is a legal or a factual analysis as to whether

4    or not they are allowed to continue.  That's what we're talking

5    about.  They have no right to continue this case because

6    contrary to what they say they are, in fact, not a valid

7    shareholder.

8           Another question that statement raises about, we're

9    just asking you, Court, to stop them from interfering with

10   Innovativ shareholder rights.  Again, which shareholder rights?

11   Okay.  The Court has already interfered with and rejected one

12   of their claimed shareholder rights, the election demand.  They

13   don't deserve it.  Shareholder -- a shareholder gets, just like

14   a real property owner, a set of rights.  There's not one

15   all-encompassing right.  No, there's multiple rights.

16          One is if you have a conditional right if you have

17   enough shares you can demand an election.  Great.  Rejected.

18   They don't.  Assuming that they even have a valid one, their

19   500,000 is not enough.

20          Two, well, let me just get to what they actually are

21   asserting.  The right, the one right that is at issue in this

22   case is did they have a right to participate in a bylaws

23   amendment in February of 2022?  That's the only right that's at

24   issue.  No other rights have been triggered.

25          So now interestingly, I mean, what it really sounds

1   like they're complaining of is they don't like that a different

2   group of people did exactly what they did.  They went, which is

3   their -- assuming they're a valid shareholder, they went off

4   with a group of their own other shareholders and decided to

5   amend the bylaws, and they didn't tell anybody about it.  But

6   here's the thing.  Don't have to.  We're not making an argument

7   that they didn't give sufficient notice to other shareholders

8   or give notice to the FTE board that they were attempting this

9   bylaws amendment.

10          So again, equal application of the law is that these

11  other shareholders don't have to tell Innovativ what they're

12  planning, don't have to tell Innovativ that they don't like the

13  prior bylaws amendment, which they reject.  They just went out

14  and changed them.  Again, Republicans get together.  They

15  organize an election campaign.  They win.  Great.  And then the

16  next cycle, maybe the Democrats do it in reverse, and it goes

17  on and on and on.  Nothing unusual.  Nothing controversial.

18  Certainly nothing illegal.

19          Again, it's a -- it's a protect me, but don't let

20  anyone else do exactly what I just did, which is nonsense.

21          And then it says Innovativ is asking the Court to

22  restrain FTE from issuing stock absent Court approval.  Why?

23  What's the legal basis?  The contention is that this motion,

24  this one, not a different one, this preliminary injunction

25  motion is that it's required because their bylaws amendment in

1    February of '22 is valid.  Well, okay.

2            Let's see what that bylaws amendment says and see if

3    it matters if that bylaws amendment is valid or not.  And you

4    can -- they tell you what they want to have achieved in that

5    bylaws amendment in their amended complaint.  Paragraph 17, it

6    says, No new issuances to insiders, insiders.  Now, there

7    haven't been issuances.  Ms. Shanks' speculation on that and

8    Innovativ's speculation on that is just wrong, but it's also in

9    evidence, but again, that claim isn't here.  So I don't have to

10   say anything about it.  But for purposes of the bylaws

11   amendment, it doesn't say no new issuances to anybody.  It says

12   no new issuances to insiders.  Okay.  No poison pills.  Great.

13   There haven't been any.  No new voting rights.  Okay.  Great.

14   There haven't been any, but there's been no evidence of any of

15   those either.

16           Paragraph 18, all it says is the board shall be

17   limited to three people.  It doesn't say one of which shall be

18   Mr. Cunningham.  It just says three people.  Okay.  There are

19   three people, and that's it, and we gave you evidence from

20   Mr. Beys's declaration in the prior briefing.

21           THE COURT:  Counsel, remember I've got to keep you

22   near a microphone.

23           MR. CEREGHINO:  Sorry about that.  I apologize.

24           THE COURT:  No worries.

25           MR. CEREGHINO:  But Mr. Beys declared there are only

1  three participating board members, one of which is

2  Mr. Cunningham.  So that's not an issue.

3          Paragraph 19, the bylaws say they delete Section 5,

4  which relates to unspecified emergency procedures or powers.

5  Okay.  Totally irrelevant.  That's not at issue in this case.

6          Paragraph 20, all it says is there are no new

7  restrictions that will be placed on the transferability of

8  already issued shares.  Okay.  Well, A, that hasn't happened,

9  and there's no evidence that it has, but Number 2, that is

10  really what is known as the get out of jail free for the

11  Szkaradeks and Singal to circumvent the promises they just made

12  in the vision purchase agreement that they would not transfer

13  their shares that were issued to them to certain parties.

14  That's all that is.  We want to undo the contractual promise we

15  made.  This is the duplicitousness, nothing that FTE is doing.

16  FTE is trying to fight this kind of garbage.  This is the

17  problem.

18          Paragraph 21 says it deletes Section C -- 6C in its

19  entirety.  Well, I might be wrong.  I looked through the

20  bylaw -- the underlying bylaws which these attempted to amend,

21  and there is no Section 6C.  So that's irrelevant.  There just

22  isn't.  There's 6.1 C or 6.5 C, but there is no

23  6 parenthetical, C.  So we can just cross that off the list.

24  Great.  That has no bearing on whether they deserve preliminary

25  injunction relief.

1           Paragraph 22, this is the last thing the bylaws

2    amendment attempts to do, and somehow we have to get their

3    motion for preliminary injunction back to these, and it says

4    the board cannot modify or amend the bylaws.  Okay.  They

5    didn't.  They didn't.  What's the problem?  All it is is

6    Innovativ isn't getting its way.  That's not a legal basis for

7    anything.  That is just complaining.

8           So there can't be any likelihood of success on the

9    merits of a claim that has nothing to do with what they're

10   asking for.  There can't be any harm if none of these things

11   that they wanted to achieve are being violated.  And certainly

12   not that they allege are being violated.  None of these things

13   has happened, or no action has been taken inconsistent with

14   these.

15          Now, again, that assumes that they're valid.  They're

16   not, but pretending that they are, nothing's happened.  So why

17   do we need injunctive relief?

18          Again, what's happening is a political dispute

19   between two factions to control their country.  That's what a

20   company is.  It's the equivalent of a country which has

21   constituents, and this is a political fight over who has

22   control over it.  That's all they are trying to achieve, and

23   they're trying to abuse the judicial process to achieve the

24   ends which they can't get correctly.

25          So now I'd like to turn back again to really square

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

 1    one, which is Innovativ has no valid claim to any FTE shares.

 2            Step one, there is no dispute that TTP8 did not

 3    validly obtain its shares.  TTP8 cannot, and nor can Innovativ

 4    actually, who is a co-litigant with TTP8 represented by the

 5    same counsel, cannot just take their ball and run and hide to

 6    avoid some sort of factual determination.  And again, I'm not

 7    asking for this Court to make a legal determination as to some

 8    sort of judgment in FTE's favor against FTE.  That's not at all

 9    what I'm asking.

10            We are asking for a factual determination, straight

11    up facts.  That's it.  There has been opportunity after

12    opportunity to dispute those facts.  They have not been

13    forthcoming.  The factual predicate is undisputed.  TTP8 did

14    not validly earn a single share, a single one.  Because here's

15    what the argument that is made in converse.

16            No, TTP8 should be given credit for these shares even

17    though it never paid a dime to anybody and even though it lied

18    to FTE that it had paid somebody.  That's such an absurd

19    conclusion.  It goes without even having to discuss.  If they

20    paid for it, we'd have a different issue.  They didn't pay for

21    it.  That's not in dispute.  That ends their claim to the FTE

22    shares.  The fact that they also lied about it, because what

23    they said in the note exchange agreement and rescission

24    agreement was that they had by purchase obtained the shares or

25    the debt.

JD Reporting, Inc.

1          Purchase, not we plan on it, not in the future we

2     have an obligation to pay.  By purchase we own the debt.  No,

3     you do not.  And they never have.  That is undisputed.  So that

4     takes care of them.  They're not entitled to get any different

5     outcome on that.  TTP8 can handle their own business.

6          And by the way, a little into the evidence here, I

7     believe in the appendix that Exhibits 14 and 20 or 15 and 20,

8     Innovativ has magically seemed to be able to get from TTP8

9     certain documents, just not other ones, and we'll get back to

10    that, that say from Mr. Suwyn and Mr. Ferguson, yeah, yeah,

11    yeah, TTP8 owns the debt.  That's what Innovativ has offered

12    them for.

13          The problem is what they actually say, which is there

14    is still payment outstanding.  It was a conditional statement.

15    The condition wasn't met.  Therefore, the statement is

16    ineffective.  That's the first point.

17          The second point, Innovativ produced a text message

18    between Mr. Singal, I think, and Mr. Ferguson I believe.  I

19    think that's -- excuse me, Exhibit 19 or 21.  Exhibit 21 to

20    their appendix.  Of course it has no time stamp that I could

21    tell.  So -- and it's not been authenticated.  So it's just

22    this text message.  Okay.  Great.  So I object to its

23    inclusion.

24          But even looking at it without the time stamp, the

25    Court has no way of knowing whether Mr. Singal got pushback

1   from someone at FTE who then said, I know what I'll will do.

2   I'll get Mr. Ferguson to write me a little note.  I'll lie to

3   him, and then I'll live to FTE, and there I'll get my shares,

4   which by the way is exactly what the man has been repeatedly

5   indicted for.  Mr. Singal has been repeatedly indicted for this

6   exact kind of conduct.  So there is no evidentiary support, nor

7   does the plain language of those two letters overcome the one

8   simple fact TTP8 never, still has not paid for that debt.

9           So what they want is a free lunch.  They want their

10  shares for free.  Sorry.  Too bad, that's not the way that

11  works.  But that's just TTP8.

12          Now we will turn to Innovativ.

13          THE COURT:  In fairness, right, for balance of time,

14  right, so --

15          MR. CEREGHINO:  I'm not far off.

16          THE COURT:  So sum up, and remember you're kind of

17  going to things that aren't even before the Court in which

18  there's --

19          MR. CEREGHINO:  I don't think so.  This goes to

20  the -- this goes to their likelihood of success on the merits.

21  It goes to their harm.  It goes to the balancing of the

22  interest.  It goes to the public policy.  All of it is tied to

23  whether or not Innovativ is valid.  If they're not valid, they

24  have no success, none.  If they're not valid, they have no

25  harm, not just irreparable, no irreparable harm, no harm

1   because they don't deserve the shares.  If they have no valid

2   shares, the balancing of the interest is to protect the company

3   and its valid shareholders, not some fly-by-night thief.  If

4   they have no valid shares, the public policy is the same.

5            THE COURT:  Counsel.  Counsel, to say in open court

6   somebody is a fly-by-night thief is really concerning.  That's

7   why the Court was politely saying the first time, please focus

8   on the argument --

9            MR. CEREGHINO:  Fine.

10           THE COURT:  -- before the Court --

11           MR. CEREGHINO:  Fine.

12           THE COURT:  -- and --

13           MR. CEREGHINO:  -- I retract that for purposes of

14   today.

15           Having said that, the argument is the same.  If they

16   are not valid, all four elements which are required for a

17   preliminary injunction are defeated.  All four, okay.

18           So turning to the bona fide purchaser argument, which

19   again is predicated on is a legally conditioned on, yes,

20   there's a fraud.  That's the only time BFP comes up.  Yes,

21   there's a fraud.  No, it shouldn't impact me.  That's the way

22   that works, and I have no obligation to prove any of the

23   elements.  Innovativ does.

24           So let's see here.  Let's go to Exhibit 26 of their

25   appendix, which is Mr. Coleman's declaration, and I object to

1   it under EDCR 2.21 and NRCP 56(c).

2         THE COURT:  And where in your opposition did you say

3   that you objected to it, please?  I didn't see the objections

4   saying --

5         MR. CEREGHINO:  I didn't -- I didn't object to it

6   formally in this manner.  I pointed out its substantive

7   defects, but I don't think I was required to object to it then.

8   I can object to it now, can't I?

9         THE COURT:  Feel free to finish it.  Go ahead,

10  Counsel.

11        MR. CEREGHINO:  Sure.  Because the issue is.

12              Each affidavit shall identify the

13              declarant, the party on whose behalf it was

14              submitted, the motion or application.

15        Fine.

16              Applications or affidavits in declarations

17              must contain only factual evidentiary matter

18              conform with the requirements of 56(c).

19        Great.

20              An affidavit used to support or oppose a

21              motion must be made on personal knowledge, set

22              up facts that would be admissible as evidence.

23        Well, there's the problem.  Because if we look at his

24  declaration -- again, it's Exhibit 26, we'll read it.  Sorry.

25  Nowhere does he say he has personal knowledge, right.  Nowhere

1  does it say he is confident.  One second, Your Honor, it's five

2  paragraphs long -- it's five sentences long.  That's it.  I am

3  the principal.

4            Okay.  So what.

5            When Innovativ purchased its stock, no one from FTE

6  ever told me.  Well, he's not the party, and he's not saying I

7  have personal knowledge of Innovativ's communications.  All

8  he's testifying is about himself.  So what?  No one from FTE

9  ever indicated to me -- there it is again -- I was not aware.

10  It's not about him.  It's about whether he has personal

11  knowledge of Innovativ's dealings.

12            But let's also go up to -- sorry.  I'm going to keep

13  going.  Paragraph 5, the last paragraph, Innovativ paid.  Well,

14  I object to that one on the basis of *Foster v. King*, case which

15  is 487 P.3d 398, Nevada Appellate Court (2021).

16            THE COURT:  And can you point where in the opposition

17  that was, please.  What page?

18            MR. CEREGHINO:  It's not in the opposition.

19            THE COURT:  Right, but, Counsel, how then would they

20  have a chance in the reply to respond to those objections;

21  right?  For the Court's purposes.  You remember you can't bring

22  something up for the first time during oral argument; right?

23            MR. CEREGHINO:  But in trial, if I object to a

24  document, I don't have to give an advance notice to every

25  objection I'm going to make to every document.

1          THE COURT:  But, Counsel, we're not in trial, right.

2   This is a preliminary injunction hearing.

3          MR. CEREGHINO:  Right.

4          THE COURT:  It's a pleading process.  That's why the

5   Court is asking you.  The Court has to determine what it can

6   and cannot take into account.

7          MR. CEREGHINO:  Right.

8          THE COURT:  In so doing, that's the reason why I

9   asked both counsel where it is in their respective pleadings;

10  right?  Or if it's a new issue brought up for the first time in

11  oral argument for the Court to take into account what it can

12  and cannot actually utilize for purposes of whatever ruling its

13  going to make.  So that's why I'm asking you the question, same

14  way I asked opposing counsel the question, okay.

15         MR. CEREGHINO:  Okay.

16         THE COURT:  I appreciate it.

17         MR. CEREGHINO:  I respectfully disagree, but I will

18  move on to the substantive issue, which is --

19         THE COURT:  Can you point me to the case --

20         MR. CEREGHINO:  -- where is the check register?

21         THE COURT:  -- law that says that you can raise for

22  the first time in oral argument case law and objections that

23  were not in the pleadings, Counsel?

24         MR. CEREGHINO:  No.  That's why I'm saying I'm moving

25  on to the substantive.

1          THE COURT:  Oh, no, you said you disagreed.  That's

2     the reason why --

3          MR. CEREGHINO:  I'm just stating -- okay.  I'll say

4     it this way.  I'm preserving the appellate issue on that

5     particular prevention of me discussing this.  So I will --

6     that's aside.  I will now talk about --

7          THE COURT:  The Court is not preventing you from

8     discussing it.  It's asking you -- remember, what I asked you

9     is do you have any case law or authority to support the

10    position that you can bring up new issues at the time of oral

11    argument that weren't in the pleadings?  I just --

12         MR. CEREGHINO:  I mean, I can -- I can supplement,

13    but no, I don't have any in my papers.  I simply am trying to

14    cite to good Nevada law about the admissibility of evidence

15    that's been offered.  I think I'm allowed to do that.

16         But I will move on to the substantive issue, the

17    defect, which is Mr. Coleman does not say he has personal

18    knowledge that Innovativ paid.  He just says Innovativ paid.

19    But where is the check?  Where is the ACH transfer?  Where is

20    the journal entry?  Where -- there is literally dozens of

21    documents that would support this.  Why can't they give it to

22    you?

23         Here's the kicker.  Payments are a two-way street,

24    and this one is between co-litigants.  So let's pretend that

25    Innovativ had their dog eat their homework, their documents.

1    They could have gone to TTP8 because they got other documents

2    from TTP8, and say, give us the canceled check.  Give us your

3    books that show that we paid.

4            There is no evidence that anybody paid TTP8 for those

5    shares, certainly not admitted.  That's the missing element.

6    Certainly on a preliminary injunction you -- that is a question

7    of fact at best for them.  In fact, it is an undisputed.  It's

8    just not supported.  But at best there is a question as to

9    whether they paid.  Therefore they don't get the BFP

10   protections.  They don't get the consequential preliminary

11   injunctive relief because they haven't established the true

12   threshold question regardless of the kind of relief that anyone

13   wants to be given, whether it's summary judgment, whether it's

14   injunctive relief, whether it's something else.  The first step

15   is, do they have a legal right?  They have failed and failed

16   and failed to demonstrate that Innovativ has a legal right.

17           Let's see here.

18           And then in terms of whether they have notice of

19   claims, again, Mr. Coleman only says that he didn't have

20   awareness of claims.  Well, that's -- he's different than

21   Innovativ.  He didn't say Innovativ didn't have notice.  Open

22   element.  They don't get the benefit of the bona fide purchase

23   protection.

24           But more than that, the TTP8 transactions with the

25   underlying debt holders, which are in the exhibits that the --

1    14, 15 and 20 that Innovativ adduced actually say the time for

2    performance was January 31st, 2020.  January 31st, 2020.

3    That is months before the May 2020 Innovativ purported unproven

4    purchase of the shares from TTP8.

5           It is also months after Singal, TTP8's principal was

6    indicted for securities fraud for claiming ownership of

7    properties to which he did not have title, the exact same kind

8    of transaction.  So of course they had notice.  Of course they

9    had notice of potential issues.

10          The second missing element.  They don't get the BFP.

11   What they have to do is stand up and either demonstrate that

12   TTP8 did not -- or had a valid basis.  Again, very simple, all

13   they had to do is show that TTP8 paid somebody.  Can't do that,

14   won't do that, haven't done it, will never do it.  So they have

15   to then default, which they concede to BFP, but they don't get

16   that either.  That means they're not a valid shareholder.  It's

17   simple.  They're not a valid shareholder.

18          So because it's not a valid shareholder, it has no

19   right to sue for any relief.  It has no chance of success on

20   shareholder specific claims.  It has no chance of being harmed

21   because it's not a shareholder.  It has no -- no interest in

22   the balancing because it's not one of FTE's shareholders.

23          The balance would be between a valid shareholder and

24   FTE, and the public policy is obviously only going to be for

25   protecting a company and its valid shareholders against the

1    incursions of invalid shareholders.  Every single preliminary

2    injunction element is against Innovativ.

3           So and I've already mentioned the I series.  Let me

4    just run through that math real quick.  There is no dispute.

5    You can look at Innovativ's motion for preliminary injunction

6    on page 9 and 10 -- sorry.  Let me back up.  Again, the

7    paragraph 18 of the Court's order on March 8th, preferred

8    stock is only granted voting rights if those voting rights are

9    set forth in a formal written resolution.

10          Well, there isn't one.  So you have to take the I

11   out.  Now, let's do the math.  Everyone agrees, and this is

12   giving credit to TTP8 and Innovativ.  So I am not at all doing

13   this math taking away a single share from these people who do

14   not deserve them.  55.2 million, okay.  That's the common

15   votes.

16          Now, it's actually different obviously based on the

17   cancellation, but for today, 55.2 million, and that is agreed

18   to by Innovativ.

19          Now, the A series, there's a dispute as to how many

20   votes, but just to make it easy, we'll use Innovativ's number.

21   I don't need the additional votes that the A series are

22   actually entitled to.  Let's used 2.5 million.  55.2 plus 2.5

23   because neither the I nor the J get to vote is 57.7.  To get a

24   majority of 57.7, you need at least 28.8, actually a little

25   higher.  The Szkaradeks, they only assert 22.1 million come.

1  The I don't get to vote.

2          THE COURT:  Counsel, in fairness --

3          MR. CEREGHINO:  I'm almost done, Your Honor.

4          THE COURT:  I know.  I know, but, Counsel, when the

5  Court asked you like 15 minutes ago to please wrap up, please,

6  okay.

7          MR. CEREGHINO:  Okay.  Okay.  I just want to get

8  through this arithmetic, and then I'm done.

9          22.1 that describes (indiscernible) common.

10  5.2 million in common that are not described is 27.3.  That is

11  1.5 million short of the $28.8 million number that is -- the

12  million number that is required.  Simple.  It's not a majority.

13  We can decide today that that February 3rd bylaws amendment

14  was not valid, is not valid.  It doesn't have a majority.  It's

15  very simple.  Thank you.

16          THE COURT:  Thank you so very much.

17          Okay.  You get last brief word, Counsel for movant.

18          MS. SHANKS:  Yes.  Thank you, Your Honor.

19          I am not quite certain where to start.  I might jump

20  around.  So I apologize.

21          I'll start with the math.  In light of

22  Mr. Cereghino's admission that no new stock was issued, the --

23  a part of the amended and restated bylaws, even if you take out

24  the Series I, was only approved by 25 percent of the

25  shareholders of FTE.  So that is a -- that's the math on the

1   new one.

2          I'm going to go to the protected purchaser argument.

3   Mr. Cereghino's started his argument by arguing to this Court

4   that companies can only act through people.  They have to act

5   through people.  They act through Mr. Beys and Mr. De Silva.

6   Well, Innovativ is a company, and it can only act through

7   people, and that person is Mr. Coleman.  The argument that

8   Mr. Coleman doesn't have personal knowledge is directly

9   contrary to Nevada law.  Under Nevada law, the knowledge of an

10  officer, agent or principal is imputed to the company.  That's

11  the *Strohecker versus Mutual Building & Loan Association* case,

12  55 Nevada 350.  That's *Bates v. Cottonwood Cove Corporation*,

13  840 -- 84 Nevada 388.  That's the restatement third of agency,

14  Section 5.03.

15          I don't know what requirement there is that a

16  person's statement, "I paid for this," is not sufficient

17  evidence.  I would dispute that, but I wasn't given the

18  opportunity to even provide the check and reply because I

19  didn't know that this would be an argument in opposition for

20  production.

21          Regarding the other elements, these are statutory

22  based.  We've met the statutory elements, and we believe that

23  Innovativ is a protected (video interference).

24          Going to the TTP8 argument, it's pure speculation on

25  FTE's part at this point, and I can tell this Court that, that

1   TTP8 will not be challenging it.  TTP8 is involved in

2   litigation in a different form in a different court.  I don't

3   know what form TTP8 will challenge this, but I can tell the

4   Court that FTE's arguments are just red herrings and

5   speculation.  And the argument that this is undisputed, that no

6   one has ever disputed this is so -- is so contradictory to what

7   we have filed.  We gave this Court like a 600-page appendix

8   disputing that the TTP8 transaction was the product of fraud.

9   And, yes, because they are alleging to cancel Innovativ shares

10  based on that transaction, Innovativ has standing to challenge

11  their argument on the merits of that cancellation based upon

12  that failure.  Those are the documents available to us.

13          We don't have other documents available to us because

14  FTE has them.  So the argument that we didn't give the Court

15  everything is disingenuous at best.  We've never been able to

16  get discovery from FTE.

17          As we noted, you know, but this Court doesn't have to

18  get TTP8.  And we do believe that Innovativ is a valid

19  shareholder and has been a valid shareholder from the

20  beginning.  That's why we're asking for the status quo order.

21          Going to the Series I.  Series I was not briefed.

22  Had Series I been briefed in the opposition, we could have

23  provided this Court with some analysis.

24          This is the Pope versus China Holdings (phonetic)

25  case.  We did talk about it in the Series J motion for summary

1   judgment.

2          Pope versus China Holdings is where Nevada deviated

3   from Delaware law.  So in Pope versus China Holdings, there was

4   not a formal director resolution approving a merger, and the

5   question was, Does there need to be, and the Nevada Supreme

6   Court said no because there's no evidence that the board did

7   anything in contradiction to what we have in the moving papers

8   before us, to what we have in this merger agreement and to what

9   we have in the public announcements.  There's no contradictory

10  evidence.  The board approved the merger, and nobody questions

11  that.

12          What Pope, as we pointed out in our Series J motion

13  for summary judgment, Pope did not breach and did not address

14  the question.

15          THE COURT:  Uh-oh.  Okay.  Counsel.  Counsel, I'm

16  going to stop you for a quick second.

17          MS. SHANKS:  Okay.

18          THE COURT:  You started to address, as you address in

19  your summary judgment motion.  Remember the summary judgment

20  motion is not before the Court today.  So to the extent if you

21  are responding to statements made in oral arguments that

22  counsel stated that were not in his opposition, it's going to

23  be fine, but we can't get into standards with the summary

24  judgment that's not before the Court right now.  I appreciate

25  it.  Thank you.

1          MS. SHANKS:  Right.  And I'm not.  And I'm not

2    raising this argument to state that we want this Court -- we

3    don't think that this is properly before the Court.  We do want

4    the Court to know that we have good faith arguments under

5    Nevada law that the Series I was validly issued with voting

6    rights, and we would have addressed it had we been given the

7    opportunity, but we weren't.  I do agree that that is not

8    before the Court, and there's no evidence.  There's no physical

9    evidence before the Court that there's not voting rights, and

10   that should not be considered.

11         You know, we again are faced with this sort of

12   circular argument from FTE that, well, don't deprive these

13   shareholders of their rights who voted to amend the bylaws, but

14   do deprive the other shareholders who voted to amend the bylaws

15   of their rights.  And do deprive them of their stock rights.  I

16   mean, it's a very circular argument.  Whose shareholder -- what

17   shareholders get rights?  Apparently only the shareholders that

18   FTE wants to recognize.

19         I would note that there are some misstatements of

20   fact regarding Mr. Singal.  He was not criminally indicted in

21   December of 2019.  Beside the point, that was a civil lawsuit.

22   It involved a wholly different company, a wholly different

23   transaction, did not relate to FTE in any manner at all and did

24   not relate to FTE's stock.  So it would not have put Innovativ

25   on notice of adverse claims to the stock being issued to it,

1   which is the protected purchaser element, NRS 104.8303.  Did

2   they provide compensation?  Were they on notice of the claims?

3   And did they get title?  And the answers to all of those are

4   yes.

5              This argument that TTP8 was never a purchaser is also

6   contradicted by the evidence in the record where you have this

7   agreement was first entered into in November.  All three -- the

8   TTP8's agreements with third parties and with FTE get entered

9   into November 2019.

10             FTE saw the agreements that TTP8 had with third

11   parties.  It didn't raise the argument that oh, this is for

12   future, you know, you haven't performed under these, and

13   therefore you can't get the stock.  No, it rescinded that prior

14   agreement, not because of that, but because they violated the

15   20 percent (indiscernible) rule, and entered into it again.

16   And we gave this Court e-mails of FTE making it very clear that

17   FTE did look at this and did determine that TTP8 was a

18   purchaser.

19             So what FTE is doing now is it's saying because there

20   may or may not have been a breach in the agreement between TTP

21   and a third party where there wasn't a breach between us, we're

22   going to, quote, take that separate agreement and provide it as

23   a basis to present.  That's sort of the argument that they're

24   making, but this Court doesn't have to get into it because

25   there is no question that Innovativ and TTP8 were shareholders

1   of record at the time of the bylaws, and I don't want to beat a

2   dead horse.  I've already explained all the ways that our

3   current request relates to our pending claim for declaratory

4   relief.  Again, we are just asking for a status quo order.

5   That's it.

6          THE COURT:  The Court's got a couple of questions.

7   Status quo order.  Status quo as of what date?  Because since

8   the claim, right, in the operative complaint, right, focuses on

9   things from February.  And then you assert that there's actions

10  that have changed the status quo from your allegations or

11  assertions or contentions or however you'd like to phrase it in

12  your motion for preliminary injunction occurred in March

13  of 2023.  What is the date that you're stating that you're

14  asking for a status quo as of?

15         MS. SHANKS:  Well, it's hard to provide a specific

16  date.  We aren't certain when some of these actions happened,

17  but we -- when we look at what we're asking, we -- the status

18  quo on don't act on the cancellation of the stock, that would

19  be a status quo back to the date that this complaint was filed

20  essentially because Innovativ was a shareholder at that time.

21         The issuance of new stock would just be from here

22  forward.

23         The bylaws amendment, don't act under it would be

24  from the date that that was announced forward.

25         And I guess arguably the cancellation would be from

1    the date that the cancellation occurred forward, right.  Like

2    up until this month or maybe February, we're not quite certain,

3    of 2023, that was the status quo.  Innovativ was a shareholder

4    of record.  We were trying to figure out the merits.  There

5    weren't these newly, you know, they weren't trying to unwind

6    everything that we have been litigating so hard to get

7    determined by this Court.  You know, they were making efforts

8    to remove Joseph Cunningham, but the status quo as to that has

9    been for years now.

10          So that's really what we are looking for is a status

11   quo until such time as we can determine the merits of our case,

12   and if this Court grants us leave to supplement, the validity

13   of what's going on in those claims, but for today's purposes,

14   it's really just can we figure out the merits of the bylaws

15   (video interference).

16          THE COURT:  Okay.  The reason why the Court is asking

17   the question, the Court asked a question somewhat similar at

18   the time of the TRO hearing is are you asking that the actions

19   taken in March that you assert were taken in March, okay, and

20   you heard counsel in opposition said certain actions weren't

21   even taken because he said there wasn't even a 6C, but, okay,

22   are you asking that the preliminary injunction be viewed as

23   prior to that date so it was as if those actions did not occur?

24          The reason why, I was looking at your different

25   prongs of relief request, and I was looking at the first one

1   versus some of the subsequent ones, and it was unclear.  Can

2   you clarify what scope of relief you're asking for.

3            MS. SHANKS:  Yeah.  So we're asking that they not act

4   upon the cancellation that purportedly occurred in March.  We

5   are asking that they not do anything from the date of any order

6   forward to interfere with Innovativ's shareholder rights

7   because I'm tired of filing emergency motions on that.  We are

8   asking that they not act under those newly amended bylaws that

9   were done in March.

10            THE COURT:  Okay.  That's where I'm going to have to

11   stop you because your 1 and 3 seems to this Court somewhat

12   inconsistent, okay.  The reason why the Court is saying that is

13   because if acting upon wasn't one of the actions by which you

14   are contending should not have occurred in your preliminary

15   injunction, what is being phrased as a cancellation of

16   Innovativ stock.  So if you're asking it prospectively not to

17   take further action, then are you saying it is canceled, and

18   then I -- there's a standing issued, or are you --

19   (indiscernible) your Number 1 and your Number 3?

20            You may have a different order of what you're trying

21   to get across to your request, but I need to ask you how it is

22   being viewed when I was reading it and listening to everybody's

23   oral argument, everybody's pleadings and everybody's oral

24   argument.  Go ahead, please.

25            MS. SHANKS:  We don't think that there is a standing

1   issue, Your Honor.  We don't think that the cancellation was

2   valid.  And so we think that any actions upon it would be

3   invalid, and so that is why we are asking them, you know,

4   don't -- don't continue to act upon this cancellation.

5          Now, I know that that is being briefed before this

6   Court.  So that preliminary relief may very well be decided

7   very quickly because that -- there is a current motion before

8   this Court on it.

9          So but what we are saying, we're not conceding that

10  there is a standing issue.  We absolutely don't believe that

11  there is a standing issue.  We do not think that a corporation

12  can unilaterally cancel shareholder stocks under the

13  circumstances that FTE has done it, and what we are doing is we

14  are asking this Court to restrain FTE from doing anything that

15  further interferes with the property right of Innovativ.

16          THE COURT:  Okay.  Once again, sorry if I'm not being

17  clear on my question, but when I get the further, right --

18          MS. SHANKS:  Right.

19          THE COURT:  -- so are you stating that Innovativ

20  concedes that the shares were canceled, and you're fine with

21  that, and that the status quo should be as Innovativ is in a

22  canceled state and just nothing further is happening, or are

23  you saying that the shares should never have been canceled or

24  some third option?  I'm not limiting you to those two; it's

25  just -- that's why I'm trying to get a clarification because

1    when you use the term, right, further action and things that

2    happened on March 14th, it's not clear what you are asking

3    specifically of the Court under the standards of a preliminary

4    injunction.

5         MS. SHANKS:  Oh, certainly.  We don't think that the

6    shares were ever canceled, and we don't think that they should

7    act as if they were.  That is -- that is our position, that

8    that was not a valid cancellation, and FTE should not take any

9    action upon that cancellation as if they were canceled.

10        THE COURT:  And I've got another question.  Your

11   third prong, I'm looking at your reply and evaluating all of

12   this, right, third prong, taking any action upon votes of

13   shareholders for stock issued after the bylaws amendment until

14   such time the validity of those stock rights are determined.

15   In light of the statements of counsel in open court, appreciate

16   there may or may not be things in the actual pleadings.

17        Is that a request or is the scope of the request if

18   it is a request can you please further explain?

19        MS. SHANKS:  Well, so we get this bylaws -- amended

20   and restated bylaws, Your Honor, and we go how possibly could

21   this have been, and then Mr. Cereghino gives us this written

22   shareholder consent, and I cross-reference it with the

23   shareholder list I have, and they're not shareholders of

24   record.  So we go either of these are not signed by

25   shareholders of record, or they issued a bunch of stock.  And

1   it looks like the stock would have been issued to people that

2   would have violated our bylaws amendment if valid.

3          So Mr. Cereghino today says that no stock was ever

4   issued.  Okay.  If that's true, but I don't have proof of that.

5   And why would a corporation, why would all of these people be

6   signing this if they weren't given stock?  It's a very weird --

7   I don't understand it.  I understand Mr. Cereghino's position

8   that it's not his place to prove it, but he is in a position of

9   greater knowledge than me, and that information just has not

10  been supplied to us.

11         So when we are asking them not to take any further

12  action on these votes, we're really trying to say, you know,

13  don't, maybe, you know, just follow Nevada law.  If they're not

14  shareholder of record, don't let them vote for things, and if

15  they are shareholders that you did issue stock to, then let's

16  not keep running in circles around each other and fighting over

17  this.  Let's do a status quo and figure out if this original

18  bylaws amendment is valid or not because that is going to

19  directly relate whether or not these shareholders validly have

20  stock.

21         THE COURT:  Is that not subsumed in Subpart 2 though,

22  taking action to interfere with Innovativ's shareholder rights?

23  Isn't three and four subsumed within that, or are you seeing

24  those distinct?

25         MS. SHANKS:  I think that those are subsumed in it.

1   I just was concerned that if I wasn't incredibly specific they

2   would do it.

3            THE COURT:  Okay.  Those are the Court's questions.

4   Okay.

5            So did you have an opportunity to finish?  I thought

6   you had finished before I asked my questions, but I'll just

7   make sure.  Same thing as I asked opposing counsel.  Did you

8   have an opportunity to finish?

9            MS. SHANKS:  Yes.  Thank you, Your Honor.

10           THE COURT:  Okay.  So here's what the Court has

11  before it.  The Court has before it plaintiff's motion for a

12  preliminary injunction, Document 227 with the appendix document

13  228, the OST, Document 232, defendant's opposition document 234

14  and the reply Document 236.  So that's the only issue the Court

15  has before it is a motion for preliminary injunction.  The

16  Court does not have before it today summary judgments, motions

17  to amend or other things that may be coming down on future

18  dates but are not before the Court today.

19           So the Court in making its ruling, a couple things,

20  let's be a hundred percent clear on.  First, the Court can only

21  take into account and is only taking into account what it can

22  take into account based on case law, rules, statutes and other

23  evidence for purposes of the present motion before the Court.

24           Next, so the first issue, I'm going to do it in this

25  particular order is whether or not, it's been phrased two

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1    different ways, whether, A, the Court has jurisdiction, slash

2    standing.  So those really are two distinct concepts.

3    Realistically, this Court has jurisdiction.  That's never been

4    challenged in the pleadings on this motion for preliminary

5    injunction that this case is here in Nevada.  It's dealing with

6    the parties to this case within the concept of a standard for a

7    motion for preliminary injunction.

8          Okay.  So here's what the Court is going to do.  So

9    the Court does have jurisdiction over FTE and can determine

10   whether Nevada law permits certain actions.  That straight

11   NRS 78 and lots of the subsections therein, okay.  So that is

12   dealing with the jurisdictional concept.

13         So the next concept distinct from that is Innovativ

14   does have standing the Court finds.  Innovativ, as is set forth

15   in the briefing, with citations thereof really do apply here.

16   *Heller versus Legislature of State of Nevada* 120 Nevada 456

17   (2004), Nevada Courts are bound by the federal standing

18   principle to draw from the case a controversy component of the

19   United States Constitution.

20         Here, standing for purposes of Nevada law requires

21   that Innovativ had the legal right to set the judicial

22   machinery in motion *Roethlisberger versus McNulty*, 127 Nevada

23   559 (2011).

24         So here you also look at NRCP 17 (a) which requires a

25   showing that Innovativ did possess the legal right to enforce

1   the claim and has a significant interest in the litigation,

2   which also is a citation to Szilagyi, S-z-i-l-a-g-y-i, versus

3   Testa, T-e-s-t-a, 99 Nevada 834 (1983).

4           So the issue here is you have to look at the

5   operative complaint, Innovativ's operative complaint, and it

6   has to show that there is, one, the justiciable controversy

7   between it and defendants, right, not just a single defendant,

8   but defendants, and a legally protectable interest in that

9   controversy as well as that the issue is ripe for judicial

10  determination.  That's *County of Clark versus Upchurch*, 114

11  Nevada 749 (1998).

12          As you know, the analysis, and you all don't disagree

13  with the underlying concept of what are the standards.

14  Something that's justiciable that is an actual present or

15  existing dispute; B, between parties having genuine opposite

16  interest; and C, which involves interest that must be direct

17  and substantial and D, will result in a final conclusive

18  judicial determination *Hornish versus King County*, and that's a

19  federal citation to Ninth Circuit which the Court -- Nevada

20  courts do look to the federal courts with regards to certain

21  case law, which would include here 889 F.3d 680, Ninth Circuit

22  (2019).

23          So the underlying dispute you agree is whether or not

24  particular February bylaws amendment is valid.  That issue is

25  not yet fully resolved, but, yes, it is an issue that is at

1    issue before the Court and what the Court has to look at.  The

2    Court has to look at it based on the laws thus far of the case

3    that at least at this juncture there has not been disproven.

4    So I have to treat Innovativ as a shareholder of record on

5    February 3rd, 2022.  That was Exhibit 32 set forth, okay, in

6    the pleadings.

7            So now the Court looks at which FTE also looked at is

8    whether or not there is a legal protectable interest, and this

9    goes to the TTP8 issue.  Realistically, the Court is focusing

10   on Innovativ stock because that is the party to this case.

11   While there is dispute between the parties of the role between

12   TTP8, individuals related to TTP8 and individuals related to

13   Innovativ, at the present structure of where the case is when

14   I'm looking at this at the preliminary injunction standard is

15   Innovativ is shown to at least have stock for purposes of

16   preliminary injunction analysis, and that is a personal

17   property right under NRS 78.

18           So therefore, what you can't do is FTE or any other

19   entity wouldn't be able to in the middle of litigation somehow

20   try and eliminate a party, so in this case Innovativ's rights

21   by somehow trying to cancel their stock.  In fact, I've cited

22   those by analogy, not a precedential case by analogy, the Fifth

23   Circuit.  It addresses issue.  They did apply Nevada law in

24   *Arthur W. Tifford versus Tandem Energy Corp.*, 562 F.3d 699,

25   Fifth Circuit (2009).  So there it's stated that the

1    shareholder couldn't lose standing merely due to cancellation

2    of their stock when they're potentially a protected purchaser.

3    So they had the interest that gave them a stake in the shares

4    of the real and substantial party to the controversy.  So

5    therefore that prong is met.

6           And then, of course, it's ripe.  You all have had

7    excellent briefing, excellent oral argument, and you've

8    definitely shown me that it's ripe because, realistically,

9    there has been a variety of different issues showing that these

10   are a hotly contested issues that need to be resolved by a

11   Court ultimately.

12          So there's nothing that -- so it is sufficiently

13   concrete.  It is not remote or hypothetical.  So therefore it

14   is ripe under *Herbst Gaming versus Heller*, 122 Nevada 877

15   (2006).

16          So the Court in finding that Innovativ does have the

17   appropriate standing now looks to the fact of whether or not

18   the motion relates to claims before the Court, and that really

19   goes to the complaint, but really the Court does find it's

20   related to the complaint because the issues are arising from

21   what is the declaratory relief.  Remember, we have a *Buzz Stew*

22   analysis in that, right, with giving notice of what the

23   contention is.  You can't super ordinarily read that.  Have to

24   read the complaint as it is the operative complaint.

25          So then you look at whether or not I have to address,

1    and I already address, realistically, a lot of the TTP8 issues.

2    That is not necessarily before the Court for purposes of this

3    preliminary injunction because when I get to the scope of the

4    preliminary injunction it will be clear that it is going to the

5    parties to this case.  So therefore we have the issue of also

6    with ripeness (indiscernible) the universal -- the unilateral

7    canceling of stock, whether or not it was proper or not proper.

8    Realistically, that's going to go to some of the various

9    standards with regards to whether or not the injunction should

10   be done.

11           So now let's go to the standards for an injunction.

12   Will Innovativ suffer irreparable harm?  The Court finds, yes.

13   Realistically, the irreparable harm is, that is shown, is that

14   Innovativ could lose all of its rights with regards to stock,

15   which at this juncture, subject to issues that have not yet

16   been resolved, same thing, I'm going to cite the Delaware case,

17   the Court case, which I cited in the TRO, mentioned at the TRO,

18   presented to me at the TRO and similarly also before me also at

19   the preliminary injunction as well as this Court.  Just because

20   there's issues at present as to the validity of this stock at

21   this juncture, those issues have not been resolved one way or

22   another.

23           So the Court has to take the fact that Innovativ will

24   be irreparably harmed if it loses all of its stock that it

25   contends it has.  And that also Innovativ would be irreparably

1    harmed because it doesn't get to participate in any of the

2    corporate governance or do anything with regards to what you

3    would otherwise be able to do as a stockholder.  So and also

4    the aspect of personal property, and it's a unique personal

5    property; right?  It's not something that is necessarily not

6    unique.

7              So then you do look at the balance of hardships of

8    public policy.  Public policy and the balance of hardships also

9    favor Innovativ because, realistically, what we're looking for

10   is a status quo injunction.  One of the reasons the Court asked

11   those series of questions with regards to the scope was being

12   asked is to see is it trying to gain any type of advantage with

13   regards to litigation, or is it merely status quo?

14             The Court really sees it as status quo.  You all have

15   been in here enough times with regards to the outstanding

16   issues in this case so that they can ultimately be resolved

17   when you're set for trial or prior motion practice.  And

18   realistically, if you need an earlier trial date, no way taking

19   any positions with regards to any pending motions that are not

20   yet before me, we could accommodate that, but you all set the

21   schedule you wanted in your JCCR which was adopted at 16.1 and

22   became part of your trial order, but realistically, the balance

23   of hardships, I'm not seeing any hardship to FTE.  There's not

24   been -- Innovativ has stated for its hardships all of the

25   issues.  It was lack of corporate governance.  It's not ability

1    to move forward.  It's not knowing the status of stock that it

2    thinks it owns.  It's not being able to participate or do

3    anything with regards to personal property.

4             Hardship with regards to FTE at this juncture does

5    not seem to be anything.  I'm not saying that they're anything

6    that was precluded from being done, anything that could be

7    deemed (indiscernible).  So the Court does have to look at the

8    balance there.  The balance does favor Innovativ.

9             Public policy.  Well, public policy is going to favor

10   Innovativ as well.  We've got a Nevada statute right on point.

11   NRS 78, compliance with that.  That's a huge public policy.

12   That the legislature has determined, right, that that's a

13   statutory requirement here in the state of Nevada, and so

14   compliance with statutory requirements are huge public policies

15   that do favor Innovativ.  The public policy in general of

16   trying to change things and try and change the status of

17   litigants in the middle of litigation despite there already

18   being orders from a Court, realistically, public policy there

19   also favors that FTE cannot do that and that public policy to

20   maintain the status quo goes in favor of Innovativ.

21            So therefore you have to look at the applied correct

22   application of Nevada corporate law and the governance aspects,

23   and those go to both to Innovativ.  So both the balance of the

24   hardships and the public policy also favor Innovativ.

25            So then you look to have all the standards been met.

1          Is there anything else the Court should take into

2    account with regards to a preliminary injunction?

3          And as a note to the Court mentioned a moment ago but

4    did not cite, *Dixon versus Thatcher* I should have cited 4103

5    Nevada 414 (1987), where it talks about the interference with

6    property rights is irreparable harm and warrants equitable

7    relief, and the Court was saying that the property was unique.

8    I meant to reference *Dixon versus Thatcher* at that point, but I

9    haven't.  So I'll go back and go to that.

10         So then you go to all the standards being met at the

11   preliminary injunction should issue and will issue, the Court

12   is going to find.

13         Now, the scope of the preliminary injunction, that's

14   where the Court needs to address a couple of things.  First

15   with regards to the request that since there's already $30,000

16   that has already been put away for bonds, the 5,000 of the TRO

17   and the prior 25,000, the Court is not going to find that an

18   additional bond is necessary because the Court is going to find

19   because FTE it really hasn't shown that there's any harm or any

20   issues.  30,000 should more than take care of it with regards

21   to the various stockholders, and no, the Court is not returning

22   the other 5,000 because, realistically the Court is finding

23   that the totality of the 30,000 would be appropriate.  So

24   therefore, realistically, that total amount would be

25   appropriate for purposes of a bond in keeping that amount

1   since, realistically, you could view that the TRO was expiring

2   tomorrow and whether the 5,000 would be returned pursuant to

3   that.

4          The Court is saying, no.  The Court is saying, no,

5   that (indiscernible) is going to stay, and I'm viewing that as

6   part of the bond for the total of 30,000.  And even if you

7   considered it only in the TRO amount, it still would be

8   sufficient because of what has been presented to this Court in

9   the pleadings, and in taking into account the entirety really

10  of everyone's oral argument and taking into account the

11  objections thereto.

12         So now let's go to the scope.  So since the Court has

13  found that a preliminary injunction should issue, the Court now

14  has to look at the scope and what is the actual relief that can

15  be requested and granted pursuant to a preliminary injunction.

16  So there was four prongs.  I'm going back to those prongs just

17  so we can get that taken into account.

18         One second, please.

19         Okay.  So the first one is -- the request is that the

20  preliminary injunction include that FTE Networks, FTE and any

21  of its agents, officers, affiliated entities, employees and/or

22  successors and assigns are prevented from taking any action

23  under the terms of the amended restated bylaws purportedly

24  amended on March 14th, 2023, including, but not limited to

25  the appointment of new directors.

1           The Court is going to find that that is an

2    appropriate -- part of an appropriate scope of a preliminary

3    injunction.  And the reasoning being everything the Court

4    previously said and taking whether you want to call it

5    self-help measures or whether you want to take it -- actions or

6    however you'd like to phrase it, but what would happen in

7    March, right in the middle of litigation, which could be viewed

8    as arguably, it was even argued by both sides, change the

9    posture of the current case, realistically does need to be

10   enjoined, does need to have to go back to the status quo.

11          Once again, there wasn't anything -- all the elements

12   that the Court already looked at is there's not seeing that

13   there's any harm for that for the preliminary injunction as

14   well.

15          So then you take 2.  2 is taking any action to

16   interfere with Innovativ's shareholders' rights.  With that

17   limitation, the Court is going to find it's appropriate.  The

18   Court finds Innovativ is a party before this Court.  Nobody's

19   disagreeing with that.  So Innovativ's shareholder rights, and

20   that means Innovativ's shareholder rights at the various times

21   since the litigation has commenced because you have various

22   orders of this Court which already addresses certain aspects of

23   that.  And so therefore that is maintaining the status quo, and

24   therefore it would be appropriate to make sure there's no

25   action taken to interfere with Innovativ shareholder rights.

1      The third prong is requesting taking any action upon

2  the votes of shareholders for stock issues after the bylaws

3  amended until such time related to those stock rights are

4  determined.  Here lies the challenge because, realistically,

5  it's been stated that there hasn't been anything other than the

6  potentiality with regards to the director, but that's already

7  addressed in 1.

8      So the Court would view that the actions requested in

9  3 are subsumed in the Court's granting the actions with regards

10 to Innovativ shareholder rights.  The Court in its last

11 statement is in no way expanding to include nonparties;

12 however, as the parties know, and the case law clearly shows,

13 preliminary injunctions do include agents, officers, affiliated

14 entities, employees and successors and assigns because you

15 couldn't assign everything to some third-party and somehow you

16 get around a preliminary injunction.  And, obviously, as you

17 both have stated, entities act through individuals, and those

18 individuals can be agents, officers, employees, et cetera.

19     So therefore the Court doesn't find that three is

20 independently appropriate because to the extent it applies to

21 Innovativ shareholder rights, it's already taken into account

22 with regards to Point 2.

23     Number 4, issuing any further stock without prior

24 permission from this Court, at this juncture, realistically,

25 the Court is going to modify for and say to issue any stock

1    that would somehow dilute or interfere with Innovativ's

2    shareholder rights without having some issue brought before

3    this Court with regards to that aspect if there is a question

4    about whether or not that is or is not going to happen.  And

5    the reason why the Court is doing that is because to the extent

6    that there may be some good cause work, fine, but what we want

7    to prevent is that it needs to be consistent with the

8    interfering with Innovativ's shareholder rights.

9            And so therefore, if there is stock that would be

10   issued that would interfere and dilute Innovativ shareholder

11   rights at some point while this preliminary injunction is in

12   effect, it really would eliminate the very actions that the

13   Court was saying is taking into account in subparagraph 2, but

14   to make that clear so that there isn't any issues, the Court is

15   also doing a modified version of 4, which really is now going

16   to become the third prong of the injunction.

17           So the Court has said the various three bases on

18   which the injunction shall issue.

19           The Court for the purposes of since the bond is going

20   to be held and continued instead of being released tomorrow,

21   that what the Court is going to do is obviously this injunction

22   is going to be valid upon presentation of an appropriate order,

23   right, and notice of entry order thereof; however, the Court is

24   cognizant in this juncture, and here's where I have a question

25   for the parties.  Under the terms of the TRO, it does expire

1    tomorrow.  I am appreciative that the parties may need more

2    than this afternoon to walk through the language in a

3    preliminary injunction order.

4              So we've got a couple of choices.  If there's an

5    agreement by the parties that the oral statements of the Court

6    can be viewed as if they were memorialized in writing under

7    *Rust versus Clark County* and *Division of Family Services*, then

8    the Court is going to ask you to what date you want that.  If

9    somehow you are going to say that you wanted the TRO extended,

10   then that's a different thing.

11             I need to hear what the parties want to do because I

12   want to make sure that everybody is on the same page so that

13   realistically no one inadvertently has some unintended

14   consequences, right.  So let me hear what the parties would

15   like to do, and if there's not an agreement, then the Court

16   will have to determine what it needs to do.

17             Counsel, you're standing up for FTE --

18             MR. CEREGHINO:  Sure.

19             THE COURT:  So let me hear your position first.  Go

20   ahead, please.

21             MR. CEREGHINO:  I want to make this as smooth as

22   possible.  I mean, we're not going to object to some gap in

23   time.  We're not going to do any actions in potentially some

24   gap of time.  However, Your Honor and Ms. Shanks want to handle

25   it, I don't care.

1          THE COURT:  Well, you see it --

2          MR. CEREGHINO:  But I am recognizing that the same

3    issues -- there's no -- to my mind, there's no time gap.  So

4    we'll just roll through.

5          THE COURT:  Okay.  So let's hear what Ms. Shanks

6    proposes and see if you're in agreement with that, okay.

7          Counsel, does that meet your needs?  Does that meet

8    your needs?

9          MS. SHANKS:  Yes, Your Honor, that would (video

10   interference).

11         THE COURT:  Go ahead.

12         MS. SHANKS:  Yes, and I'll get the order drafted as

13   expeditiously as possible.

14         THE COURT:  So, Ms. Shanks, let me hear what your

15   request is because then I'm going to ask opposing counsel,

16   right, what his -- if he's amenable to that.  Let's see what

17   you all want to do so everyone is figuratively and literally on

18   the same page, right.

19         MS. SHANKS:  Well, I think Mr. Cereghino and I are

20   both on the same page where I would want to get this written

21   order in as soon as possible.  I don't know if that will be by

22   tomorrow because he has to have the time to look over it as

23   well, and I don't know what his schedule is.  But with his

24   representations that FTE is not going to go out and do anything

25   squirrely in this gap, I think that he and I are both on the

1    same page, that we would just work together to get the order

2    entered.

3              THE COURT:  Okay.  So you're asking that the oral

4    pronouncement from the bench be viewed as if it were

5    memorialized in writing pending the actual written order, or

6    are you asking something different?

7              MS. SHANKS:  The first, Your Honor, that your oral

8    pronouncement be viewed as memorialized in a written order.

9              THE COURT:  Counsel?

10             MR. CEREGHINO:  Fine.

11             THE COURT:  Okay.  Perfect.  Thank you.

12             So can I view that agreement -- is that an agreement

13   under EDCR 7.50, stated in open court as if it were

14   memorialized in writing, or do you all need to do a stipulation

15   to that regard?  I'm just -- what meets your needs, folks?

16             MR. CEREGHINO:  Please.  Yes, I stipulate to the open

17   court memorializing.

18             THE COURT:  Okay.

19             MS. SHANKS:  I stipulate in open court too, Your

20   Honor.  Thank you.

21             THE COURT:  Okay.  So I do appreciate it.  Like I

22   said, excellent briefing, excellent oral argument.

23             Counsel, I believe you have a question.  Go ahead.

24             MR. CEREGHINO:  I do, just a couple sort of

25   housekeeping points.

1          THE COURT:  Sure.

2          MR. CEREGHINO:  One, and I may have missed it, but

3    when you went through the different factors, I didn't hear a

4    discussion of the reasonable likelihood of success on the

5    merits.  If it was there, fine.  If not, if I could just have

6    that articulated.

7          THE COURT:  Sure.  Sure.  It was the Court's

8    intention that I did, but to the extent that it may not have

9    been clear, then it may have been implied rather than

10   expressed.

11         MR. CEREGHINO:  Okay.

12         THE COURT:  -- I'll feel free to restate it.  I think

13   there's reasonable likelihood of the merits because what you

14   have here is you have a dec relief action.  You have prior

15   orders of this Court that has already found that Innovativ has

16   certain rights and certain aspects to it, and that was what I

17   was going through when I was going through the analysis of the

18   current position with regards to having the stock.  So

19   therefore having it lose its stock would be taking away its

20   declaratory relief rights under the complaint.  So it does have

21   a likelihood of success on the merits, and the Court has

22   already previously found that in prior orders of the Court.

23         So I have a law of the case issue as well as

24   presented for here, today's purposes for preliminary injunction

25   given the February 3rd amendment, the dec relief action.  I

1  have to treat that.

2         And I appreciate that you do distinguish -- the

3  distinction that the prior ruling of the Court on summary

4  judgment really was the second cause of action under 78 rather

5  than the third -- or rather than the first cause of action --

6         MR. CEREGHINO:  Yeah, it was one of them.

7         THE COURT:  -- was actually the second.  Yeah.

8  (Indiscernible) 78 is I also have that as law of the case.  So

9  that already -- and I have to look at the complaint as a whole.

10  And since I already have a summary judgment as to one of the

11  causes of action ruling as well as prior rulings with regards

12  to the other cause of action in addition to the indicia of what

13  has been stated, although there are some outstanding issues

14  about whether or not it was or is not by fraud, et cetera, I

15  still at this juncture for purposes of preliminary injunction,

16  that's a likelihood of success on the merits.

17         MR. CEREGHINO:  Okay.

18         THE COURT:  Does that answer that question?  Go

19  ahead, please.

20         MR. CEREGHINO:  No.  Please.  All I wanted was to

21  make sure there was some sort of articulation on the record,

22  which leads to the next point, which is that we will write it.

23  I won't take up the time today to orally request it, but we are

24  probably going to move to stay pending an appeal of the

25  preliminary injunctive relief.  So I just wanted to give Your

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1   Honor a heads up on that.

2            THE COURT:  I do appreciate.  Are you asking that

3   that be an oral motion today that the Court take into account?

4            MR. CEREGHINO:  No.  I will brief it so that there is

5   the appropriate full analysis, bond discussion, whatever is

6   appropriate.  It will probably come in short order, but I just

7   wanted to give a heads up and give a heads up to Ms. Shanks too

8   that that's probably coming.

9            THE COURT:  Sure.  No, I appreciate the heads up.

10  The reason why I was asking you the question, because if you

11  were asking it to be an oral motion without notice, then I'd

12  have to see what opposing counsel's position was, but since

13  you're not, since it's just a notification.

14           MR. CEREGHINO:  Yep.

15           THE COURT:  Counsel, do you have any housekeeping

16  clarifications or any other type of questions?  Counsel for

17  Innovative?

18           MS. SHANKS:  No, Your Honor.

19           THE COURT:  Pardon?

20           MS. SHANKS:  Not at this time, Your Honor.  Thank

21  you.

22           THE COURT:  Thank you.

23           Counsel for FTE, did I answer all of yours, or is

24  there any more that you have?

25           MR. CEREGHINO:  The only issue I have is I would like

1   to order a transcript, but I can do that separately.  So.

2               THE COURT:  That's a different person than me.  Okay.

3               MR. CEREGHINO:  Exactly.

4               THE COURT:  But in light of you all's oral -- there's

5   two things I just do want to mention is in light of it being

6   memorialized as if it were here in court today, you all need to

7   decide how that's going to be handled procedurally, depending

8   on what further action either party may wish to do; right?

9               MR. CEREGHINO:  Uh-huh.

10              THE COURT:  So that you're at least on the same page

11  or at least have the issues teed up for the Court for what you

12  want me to address, right, because the order for what you all

13  agreed to and then what you said may or may not have impacts

14  which aren't before me.  So I'm not making any decisions

15  because I give no advisory opinions.

16              MR. CEREGHINO:  Uh-huh.

17              THE COURT:  Okay.  The next thing is with regards to

18  your statement that you want to order a transcript, does that

19  mean that you all want additional time in which to have this

20  order be provided to the Court, or you're going to try and get

21  a transcript on -- or maybe you're trying to get just a DVD.

22              MR. CEREGHINO:  No.  That's --

23              THE COURT:  Are you going to get a DVD or something

24  or --

25              MR. CEREGHINO:  Yeah.  I was probably just going to

A-22-849188-B | Innovativ v. FTE | PI | 2023-04-12

1   ask for a written transcript, and it's just going to be for

2   purposes of --

3           THE COURT:  Whatever future actions.

4           MR. CEREGHINO:  Whenever I go into an appeal land.

5   That's all.  So, yeah.

6           THE COURT:  Okay.  The reason why I was asking is if

7   you all needed additional time under EDCR 7.21, it's easier to,

8   while I've got you both here than to --

9           MR. CEREGHINO:  No.  I think Your Honor was very

10  clear.  I trust that I will get an order that accurately

11  reflects it, and that's that.

12          THE COURT:  Okay.  So, Counsel, for Innovativ, I did

13  not hear a request for any additional time under EDCR 7.21.  So

14  I'm just going to leave it as please prepare the order.

15  Circulate it to opposing counsel.  Provide it back to the Court

16  in accordance with EDCR 7.21 to the DC 31 inbox.  And wish you

17  all a great rest of your day, rest of your week and thank you

18  so very much for your time.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

1          MR. CEREGHINO:  Thank you.

2          MS. SHANKS:  Thank you, Your Honor.

3          THE COURT:  Have a great one.  And that concludes our

4    morning.

5               (Proceedings concluded at 11:48 a.m.)

6                          -oOo-

7    ATTEST:  I do hereby certify that I have truly and correctly

8    transcribed the audio/video proceedings in the above-entitled

9    case to the best of my ability.

10

11

12                         Dana L. Williams
                            Transcriber
13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. CEREGHINO: [65]**
2/16 16/13 17/22 18/11
18/14 18/24 19/1 19/22
21/1 21/23 23/19 23/22
23/25 24/2 24/5 24/15
25/24 26/3 26/7 26/17
26/22 29/12 32/23
32/25 37/15 37/19 38/9
38/11 38/13 39/5 39/11
40/18 40/23 41/3 41/7
41/15 41/17 41/20
41/24 42/3 42/12 46/3
46/7 71/18 71/21 72/2
73/10 73/16 73/24 74/2
74/11 75/6 75/17 75/20
76/4 76/14 76/25 77/3
77/9 77/16 77/22 77/25
78/4 78/9 79/1
**MS. SHANKS: [27]**
2/12 3/19 9/13 9/15
18/4 20/15 21/14 21/19
46/18 49/17 50/1 52/15
54/3 54/25 55/18 56/5
56/19 57/25 58/9 72/9
72/12 72/19 73/7 73/19
76/18 76/20 79/2
**THE COURT**
**RECORDER: [5]** 2/5
2/7 21/7 21/18 29/10
**THE COURT: [93]**

**$**
**$28.8 [1]** 46/11
**$28.8 million [1]** 46/11
**$30,000 [1]** 66/15

**'**
**'22 [1]** 32/1

**-**
**-oOo [1]** 79/6

**.**
**.8303 [1]** 8/13

**1**
**1 and [1]** 54/11
**1.5 million [1]** 46/11
**10 [1]** 45/6
**104.8202 [1]** 8/13
**104.8303 [1]** 51/1
**11 [1]** 19/1
**114 [1]** 60/10
**11:48 a.m [1]** 79/5
**12 [1]** 1/12 2/1
**120 [1]** 59/16
**122 [1]** 62/14
**127 [1]** 59/22
**14 [2]** 36/7 44/1
**14th [2]** 56/2 67/24
**15 [3]** 36/7 44/1 46/5
**16.1 [1]** 64/21
**17 [3]** 7/15 32/5 59/24
**18 [4]** 7/15 18/17 32/16
45/7
**19 [3]** 7/15 33/3 36/19
**19 percent [2]** 9/23
15/24

**1983 [1]** 60/3
**1987 [1]** 66/5
**1998 [1]** 60/11

**2**
**2.21 [1]** 39/1
**2.5 [1]** 45/22
**2.5 million [1]** 45/22
**20 [7]** 7/15 25/1 33/6
36/7 36/7 44/1 51/15
**2000s [1]** 7/9
**2004 [1]** 59/17
**2006 [1]** 62/15
**2009 [1]** 61/25
**2011 [1]** 59/23
**2019 [3]** 50/21 51/9
60/22
**2020 [5]** 7/14 8/25 44/2
44/2 44/3
**2021 [3]** 13/10 16/7
40/15
**2022 [5]** 14/14 14/15
19/2 30/23 61/5
**2023 [7]** 1/12 2/1 18/17
23/7 52/13 53/3 67/24
**21 [4]** 28/6 33/18 36/19
36/19
**22 [2]** 28/2 34/1
**22.1 [1]** 46/9
**22.1 million [1]** 45/25
**2200 [1]** 18/3
**227 [2]** 2/25 58/12
**228 [1]** 58/13
**232 [1]** 58/13
**234 [2]** 3/1 58/13
**236 [2]** 3/1 58/14
**24 [1]** 28/2
**25 percent [1]** 46/24
**25,000 [1]** 66/17
**26 [2]** 38/24 39/24
**27.3 [1]** 46/10
**28 [1]** 19/3
**28.8 [1]** 45/24
**29 [2]** 19/3 19/9

**3**
**3 are [1]** 69/9
**3 seems [1]** 54/11
**30,000 [3]** 66/20 66/23
67/6
**30th [1]** 24/7
**31 [1]** 78/16
**31st [2]** 44/2 44/2
**32 [1]** 61/5
**350 [1]** 47/12
**388 [1]** 47/13
**398 [1]** 40/15
**3rd [8]** 17/14 18/13
24/16 24/18 24/20
46/13 61/5 74/25

**4**
**4103 [1]** 66/4
**414 [1]** 66/5
**456 [1]** 59/16
**487 [1]** 40/15

**5**
**5,000 [3]** 66/16 66/22

**67/2**
**5.03 [1]** 47/14
**5.2 million [1]** 46/10
**500,000 [1]** 30/19
**55 [1]** 47/12
**55.2 [1]** 45/22
**55.2 million [2]** 45/14
45/17
**559 [1]** 59/23
**56 [2]** 39/1 39/18
**562 [1]** 61/24
**57.7 [2]** 45/23 45/24

**6**
**6 parenthetical [1]**
33/23
**6.1 [1]** 33/22
**6.5 [1]** 33/22
**600-page [1]** 48/7
**680 [1]** 60/21
**699 [1]** 61/24
**6C [3]** 33/18 33/21
53/21

**7**
**7.21 [3]** 78/7 78/13
78/16
**7.50 [1]** 73/13
**749 [1]** 60/11
**78 [5]** 59/11 61/17
65/11 75/4 75/8
**78.211 [4]** 7/4 7/6 8/7
15/15
**78.240 [1]** 8/7

**8**
**8-K [1]** 9/7
**834 [1]** 60/3
**84 [1]** 47/13
**840 [1]** 47/13
**849188 [1]** 2/9
**877 [1]** 62/14
**889 [1]** 60/21
**8th [2]** 18/17 45/7

**9**
**99 [1]** 60/3
**9:56 [1]** 2/1

**A**
**a.m [2]** 2/1 79/5
**ability [4]** 4/7 11/4
64/25 79/9
**able [6]** 19/25 36/8
48/15 61/19 64/3 65/2
**about [29]** 10/16 10/21
11/12 13/19 16/3 18/13
19/3 22/2 23/3 24/15
24/17 25/14 26/16
29/19 30/5 30/8 31/5
32/10 32/23 35/22 40/8
40/10 40/10 42/6 42/14
48/25 66/5 70/4 75/14
**above [1]** 79/8
**above-entitled [1]** 79/8
**absent [1]** 31/22
**absolutely [5]** 9/5
19/23 27/16 28/8 55/10
**absurd [1]** 35/18

**abuse [1]** 34/23
**accommodate [1]**
64/20
**accordance [1]** 78/16
**according [2]** 19/15
26/2
**account [12]** 41/6
41/11 58/21 58/21
58/22 66/2 67/9 67/10
67/17 69/21 70/13 76/3
**accurate [1]** 11/13
**accurately [1]** 78/10
**ACH [1]** 42/19
**achieve [3]** 34/11
34/22 34/23
**achieved [2]** 28/10
32/4
**across [2]** 10/3 54/21
**act [17]** 5/15 9/19
11/25 12/5 12/16 25/16
47/4 47/4 47/5 47/6
52/18 52/23 54/3 54/8
55/4 56/7 69/17
**acting [6]** 3/24 6/11
10/4 25/4 27/19 54/13
**action [26]** 3/23 5/19
10/23 10/24 11/9 14/5
14/8 29/6 34/13 54/17
56/1 56/9 56/12 57/12
57/22 67/22 68/15
68/25 69/1 74/14 74/25
75/4 75/5 75/11 75/12
77/8
**actions [18]** 6/22 14/7
15/10 16/15 52/9 52/16
53/18 53/20 53/23
54/13 55/2 59/10 68/5
69/8 69/9 70/12 71/23
78/3
**active [1]** 4/12
**actual [4]** 56/16 60/14
67/14 73/5
**actually [13]** 5/23 25/1
25/22 26/21 30/20 35/4
36/13 41/12 44/1 45/16
45/22 45/24 75/7
**added [1]** 17/19
**addition [1]** 75/12
**additional [5]** 45/21
66/18 77/19 78/7 78/13
**address [10]** 2/21 13/3
20/18 49/13 49/18
49/18 62/25 63/1 66/14
77/12
**addressed [3]** 3/3 50/6
69/7
**addresses [2]** 61/23
68/22
**addressing [1]** 7/19
**adduced [1]** 44/1
**admissibility [1]** 42/14
**admissible [1]** 39/22
**admission [2]** 46/22
**admissions [1]** 13/7
**admit [1]** 17/4
**admits [1]** 12/1
**admitted [1]** 43/5
**adopted [1]** 64/21
**advance [1]** 40/24

**advantage [1]** 64/12
**adverse [5]** 8/14 8/18
8/19 8/23 50/25
**adversely [1]** 22/14
**advisory [1]** 77/15
**affected [1]** 16/5
**affects [2]** 14/25 15/1
**affidavit [2]** 39/12
39/20
**affidavits [1]** 39/16
**affiliate [1]** 10/6
**affiliated [3]** 10/2 67/21
69/13
**after [9]** 9/11 13/13
23/13 24/21 30/3 35/11
44/5 56/13 69/2
**afternoon [1]** 71/2
**again [30]** 6/10 7/25
8/12 11/8 14/1 22/12
26/24 29/7 29/21 29/22
30/10 31/10 31/14
31/19 32/9 34/15 34/18
34/25 35/6 38/19 39/24
40/9 43/19 44/12 45/6
50/11 51/15 52/4 55/16
68/11
**against [4]** 13/13 35/8
44/25 45/2
**agency [1]** 47/13
**agent [1]** 47/10
**agents [3]** 67/21 69/13
69/18
**ago [3]** 28/9 46/5 66/3
**agree [2]** 50/7 60/23
**agreed [2]** 45/17 77/13
**agreement [15]** 13/17
15/18 33/12 35/23
35/24 49/8 51/7 51/14
51/20 51/22 71/5 71/15
72/6 73/12 73/12
**agreements [2]** 51/8
51/10
**agrees [1]** 45/11
**ahead [10]** 9/14 16/11
18/10 21/3 39/9 54/24
71/20 72/11 73/23
75/19
**air [2]** 21/16 21/17
**albeit [1]** 23/24
**all [55]** 4/9 4/16 4/22
5/11 10/1 11/13 11/23
12/24 13/10 13/15 14/5
15/15 16/10 20/11
26/12 28/17 30/15
32/16 33/6 33/14 34/5
34/22 35/8 37/22 38/16
38/17 40/7 44/12 45/12
50/23 51/3 51/7 52/2
56/11 57/5 60/12 62/6
63/14 63/24 64/14
64/20 64/24 65/25
66/10 68/11 72/17
73/14 75/20 76/23 77/6
77/12 77/19 78/5 78/7
78/11
**all's [2]** 17/25 77/4
**all-encompassing [1]**
30/15
**allegations [3]** 7/1

**A**

allegations... [2] 14/20 52/10
allege [1] 34/12
alleging [1] 48/9
allowed [2] 30/4 42/15
allowing [1] 4/1
almost [1] 46/3
alone [1] 17/12
already [25] 9/6 9/7 11/16 14/7 14/21 15/16 17/10 19/17 24/11 30/11 33/8 45/3 52/2 63/1 65/17 66/15 66/16 68/12 68/22 69/6 69/21 74/15 74/22 75/9 75/10
also [30] 4/16 7/11 9/3 11/10 11/19 15/7 15/12 15/17 17/11 22/1 29/18 29/18 32/8 35/22 40/12 44/5 51/5 59/24 60/2 61/7 63/5 63/18 63/18 63/25 64/3 64/8 65/19 65/24 70/15 75/8
alternative [1] 7/23
although [1] 47/9
am [6] 40/2 42/13 45/12 46/19 71/1 72/2
amenable [1] 72/16
amend [7] 24/21 31/5 33/20 34/4 50/13 50/14 58/17
amended [20] 3/24 4/14 9/5 10/8 10/11 10/13 10/22 11/3 12/17 15/18 25/5 25/10 25/11 32/5 46/23 54/8 56/19 67/23 67/24 69/3
amendment [37] 4/19 9/16 9/18 9/22 9/25 10/5 10/9 10/10 10/12 12/24 13/11 14/13 14/24 15/1 15/3 17/14 19/14 19/24 20/6 23/8 24/16 30/23 31/9 31/13 31/25 32/2 32/3 32/5 32/11 34/2 46/13 52/23 56/13 57/2 57/18 60/24 74/25
amount [3] 66/24 66/25 67/7
analogy [2] 61/22 61/22
analysis [8] 19/17 30/3 48/23 60/12 61/16 62/22 74/17 76/5
announced [2] 14/7 52/24
announcements [1] 49/9
another [8] 10/22 11/6 11/8 23/1 26/11 30/8 56/10 63/22
answer [5] 5/5 5/14 29/21 75/18 76/23
answers [1] 51/3
any [50] 3/23 3/25 6/15 8/14 12/8 12/21 13/12

27/3 28/3 28/18 29/6 32/9 32/14 32/14 39/6 34/10 35/1 36/4 38/22 42/9 42/13 44/19 50/23 54/5 55/2 56/8 56/12 57/11 61/18 64/1 64/12 64/19 64/19 64/23 66/19 66/19 67/20 67/22 68/13 68/15 69/1 69/23 69/25 70/14 71/23 76/15 76/16 76/24 77/14 78/13
anybody [4] 31/5 32/11 35/17 43/4
anyone [2] 31/20 43/12
anything [19] 12/17 12/19 21/19 24/17 25/15 32/10 34/7 49/7 54/5 55/14 64/2 65/3 65/5 65/5 65/6 66/1 68/11 69/5 72/24
anyway [1] 3/11
apologize [2] 32/23 46/20
apparent [1] 10/24
Apparently [1] 50/17
appeal [2] 75/24 78/4
appear [1] 9/23
appearance [2] 2/11
APPEARANCES [1] 1/16
appears [1] 4/16
appellate [2] 40/15 42/4
appendix [6] 7/15 36/7 36/20 38/25 48/7 58/12
application [4] 17/9 31/10 39/14 65/22
Applications [1] 39/16
applied [2] 17/15 65/21
applies [1] 69/20
apply [5] 18/14 22/18 28/25 59/15 61/23
appointment [2] 11/1 67/25
appreciate [8] 2/19 41/16 49/24 56/15 73/21 75/2 76/2 76/9
appreciative [1] 71/1
appropriate [11] 62/17 66/23 66/25 68/2 68/2 68/17 68/24 69/20 70/22 76/5 76/6
approval [2] 10/6 31/22
approve [1] 10/21
approved [3] 4/17 46/24 49/10
approving [1] 49/4
APRIL [4] 1/12 2/1 13/10 16/7
April 2021 [2] 13/10 16/7
are [109]
aren't [5] 5/18 29/16 37/17 52/16 77/14
arguably [3] 10/16 52/25 68/8
argue [3] 6/3 12/2 12/2

argued [3] 4/8 11/5
argues [2] 5/22 11/21
arguing [1] 47/3
argument [39] 6/10 7/17 7/20 8/10 14/18 15/11 16/20 20/17 20/18 20/19 20/25 31/6 35/15 38/8 38/15 38/18 40/22 41/11 41/22 42/11 47/2 47/3 47/7 47/19 47/24 48/5 48/11 48/14 50/2 50/12 50/16 51/5 51/11 51/23 54/23 54/24 62/7 67/10 73/22
arguments [4] 14/2 48/4 49/21 50/4
arises [1] 28/23
arising [1] 62/20
arithmetic [1] 46/8
around [5] 5/22 27/2 46/20 57/16 69/16
Arthur [1] 61/24
articulated [1] 74/6
articulation [1] 75/21
as [87]
aside [1] 42/6
ask [10] 3/13 3/13 3/15 11/11 23/18 25/15 54/21 71/8 72/15 78/1
asked [14] 3/22 9/19 11/10 23/17 29/5 41/9 41/14 42/8 46/5 53/17 58/6 58/7 64/10 64/12
asking [51] 4/22 5/1 5/3 5/8 5/9 5/10 6/11 6/11 8/1 11/23 14/25 16/8 16/9 16/10 20/11 22/18 25/2 25/9 27/11 27/17 30/9 31/21 34/10 35/7 35/9 35/10 41/5 41/13 42/8 48/20 52/4 52/14 52/17 53/16 53/18 53/22 54/2 54/3 54/5 54/8 54/16 55/3 55/14 56/2 57/11 73/3 73/6 76/2 76/10 76/11 78/6
asks [3] 25/3 25/6 27/19
aspect [3] 17/12 64/4 70/3
aspects [3] 65/22 68/22 74/16
assert [5] 16/23 28/11 45/25 52/9 53/19
asserted [3] 23/23 24/22 28/22
asserting [4] 20/23 20/24 28/24 30/21
assertion [1] 7/8
assertions [1] 52/11
assign [2] 26/19 69/15
assigns [2] 67/22 69/14
Association [1] 47/11
assumes [1] 34/15
assuming [3] 24/8 30/18 31/3

at [90]
attack [1] 16/16
attempted [1] 33/20
attempting [3] 4/5 27/23 31/8
attempts [1] 34/2
ATTEST [1] 79/7
audio [1] 79/8
audio/video [1] 79/8
authenticated [1] 36/21
authority [3] 3/6 6/23 7/23 42/9
available [4] 7/17 7/22 48/12 48/13
avoid [2] 28/16 35/6
aware [1] 40/9
awareness [1] 43/20
away [7] 6/5 6/6 8/6 14/19 45/13 66/16 74/19

**B**

back [14] 21/1 21/22 24/7 29/7 29/19 34/3 34/25 36/9 45/6 52/19 66/9 67/16 68/10 78/15
background [1] 21/12
bad [1] 37/10
balance [9] 16/1 37/13 44/23 64/7 64/8 64/22 65/8 65/8 65/23
balancing [3] 37/21 38/2 44/22
ball [1] 35/5
based [9] 7/1 14/19 26/5 45/16 47/22 48/10 48/11 58/22 61/2
bases [1] 70/17
basing [1] 26/10
basis [6] 21/25 31/23 34/6 40/14 44/12 51/23
Bates [1] 47/12
be [95]
bearing [1] 33/24
beat [1] 52/1
Beautiful [1] 2/8
became [1] 64/22
because [88]
become [1] 70/16
been [50] 4/18 4/21 8/23 9/25 10/18 12/20 14/12 16/6 26/23 28/10 30/1 30/24 32/7 32/13 32/14 32/14 34/13 35/11 35/12 36/21 37/4 37/5 42/15 48/15 48/19 48/22 50/6 51/20 53/6 53/9 55/23 56/21 57/1 57/10 58/25 59/3 61/3 62/9 63/16 63/21 64/15 64/24 65/25 66/16 67/8 69/5 69/5 74/9 74/9 75/13
before [48] 1/11 4/20 9/11 9/13 15/12 15/23 17/6 17/18 18/23 18/25 20/1 20/20 22/13 22/14 23/9 23/15 23/16 24/1

24/24 25/21 26/5 26/8 37/17 38/10 44/3 49/8 49/20 49/24 50/3 50/8 50/9 55/5 55/7 58/6 58/11 58/11 58/15 58/16 58/18 58/23 61/1 62/18 63/2 63/18 64/20 68/18 70/2 77/14
beginning [2] 23/18 48/20
behalf [4] 2/13 2/15 2/17 39/13
being [21] 6/14 13/6 15/9 27/9 27/14 34/11 34/12 44/20 50/25 54/15 54/22 55/5 55/16 64/11 65/2 65/6 65/18 66/10 68/3 70/20 77/5
believe [10] 4/3 4/11 14/9 15/15 36/7 36/18 47/22 48/18 55/10 73/23
belong [2] 29/14 29/15
bench [1] 73/4
beneficial [1] 9/10
benefit [1] 43/22
Bernatek [1] 7/18
beside [1] 11/22 50/21
best [4] 43/7 43/8 48/15 79/9
between [10] 34/19 36/18 42/24 44/23 51/20 51/21 60/7 60/15 61/11 61/11
Beys [4] 11/3 25/11 32/25 47/5
Beys's [1] 32/20
BFP [4] 38/20 43/9 44/10 44/15
binding [1] 22/3
bit [2] 2/24 3/3
blue [1] 20/4
BlueJeans [1] 1/17
board [8] 18/20 18/21 31/8 32/16 33/1 34/4 49/6 49/10
bona [4] 28/22 28/23 38/18 43/22
bond [5] 66/18 66/25 67/6 70/19 76/6
bonds [1] 66/16
books [1] 43/3
both [12] 3/3 11/6 6/2 7/6 41/9 65/23 65/23 68/8 69/17 72/20 72/25 78/8
bothered [1] 27/18
bought [1] 5/25
bound [2] 24/23 59/17
breach [3] 49/13 51/20 51/21
breached [1] 24/16
brief [4] 16/3 20/16 46/17 76/4
briefed [6] 6/14 15/9 20/20 48/21 48/22 55/5
briefing [4] 32/20 59/15 62/7 73/22
briefs [1] 20/20

**B**

**bring [3]** 6/7 40/21 42/10
**bringing [2]** 23/9 23/10
**brings [1]** 13/23
**brought [2]** 41/10 70/2
**Building [1]** 47/11
**bunch [2]** 13/12 56/25
**burden [3]** 14/23 16/14 16/20
**business [2]** 13/20 36/5
**but [106]**
**button [1]** 30/2
**Buzz [1]** 62/21
**bylaw [2]** 24/16 33/20
**bylaw's [1]** 9/16
**bylaws [69]** 3/25 4/14 4/19 5/16 5/18 9/5 9/6 9/8 9/8 9/15 9/20 10/4 10/8 10/9 10/10 10/11 10/12 10/13 10/19 10/22 11/3 12/17 12/18 12/19 12/22 12/23 13/11 14/13 14/24 15/1 15/3 15/4 15/18 17/14 19/14 20/6 23/7 25/5 25/10 25/11 30/22 31/5 31/9 31/13 31/25 32/2 32/3 32/5 32/10 33/3 33/20 34/1 34/4 46/13 46/23 50/13 50/14 52/1 52/23 53/14 54/8 56/13 56/19 56/20 57/2 57/18 60/24 67/23 69/2

**C**

**calculation [1]** 19/15
**call [2]** 2/3 68/4
**called [1]** 27/15
**calls [1]** 10/10
**campaign [1]** 31/5
**can [59]** 4/23 5/3 5/7 5/12 5/15 6/17 6/19 6/21 11/7 12/6 13/15 17/5 19/6 19/11 20/21 21/5 23/8 24/21 25/15 27/4 28/8 28/10 28/11 29/24 30/17 32/4 33/23 35/3 36/5 39/8 40/16 41/5 41/11 41/19 41/21 42/10 42/12 42/42 45/5 46/13 47/4 47/6 47/25 48/3 53/11 53/14 54/1 55/12 56/18 58/20 58/21 59/9 64/16 67/14 67/17 69/18 71/6 73/12 77/1
**can't [29]** 17/6 21/9 22/13 23/14 25/9 25/9 25/14 25/16 26/18 26/19 26/21 27/14 27/17 28/11 28/14 28/17 29/10 29/16 34/8 34/10 34/24 39/8 40/21 42/21 44/13 49/23 51/13 61/18 62/23
**cancel [8]** 5/13 6/19

7/5 7/22 28/7 48/9 55/12 61/7 63/24 69/8
**canceled [16]** 5/21 5/24 12/1 12/4 12/5 14/12 27/23 28/3 28/8 43/2 54/17 55/20 55/22 55/23 56/6 56/9
**canceling [4]** 22/21 27/4 27/6 63/7
**cancellation [26]** 3/24 4/11 5/23 6/1 6/1 6/12 12/1 12/6 14/15 15/13 22/16 22/17 27/20 27/21 45/17 48/11 52/18 52/25 53/1 54/4 54/15 55/1 55/4 56/8 56/9 62/1
**cannot [19]** 5/23 6/2 6/2 7/1 7/6 7/12 7/22 8/6 10/7 12/19 14/18 17/7 22/10 34/4 35/3 35/5 41/6 41/12 65/19 66/4
**care [3]** 36/4 66/20 71/25
**carts [1]** 17/6
**case [48]** 1/5 2/9 4/1 4/6 4/8 4/24 6/8 7/5 7/9 7/18 7/18 7/18 10/14 12/12 17/3 17/13 22/3 22/22 28/11 30/5 30/22 33/5 40/14 41/19 41/22 42/9 47/11 48/25 53/11 58/22 59/5 59/6 59/18 60/21 61/2 61/10 61/13 61/20 61/22 63/5 63/16 63/17 64/16 68/9 69/12 74/23 75/8 79/9
**cause [5]** 11/4 70/6 75/4 75/5 75/12
**causes [1]** 75/11
**caveat [2]** 13/3 13/16
**CEREGHINO [6]** 1/21 2/17 29/10 56/21 57/3 72/19
**Cereghino's [3]** 46/22 47/3 57/7
**certain [14]** 26/25 26/25 27/1 33/13 36/9 46/19 52/16 53/2 53/20 59/10 60/20 68/22 74/16 74/16
**certainly [6]** 21/2 31/18 34/11 43/5 43/6 56/5
**certify [1]** 79/7
**cetera [3]** 19/12 69/18 75/14
**challenge [10]** 5/23 8/4 15/10 15/13 20/8 20/9 23/7 48/3 48/10 69/4
**challenged [2]** 21/2 59/4
**challenges [1]** 15/17
**challenging [1]** 48/1
**chance [5]** 9/17 20/17 40/20 44/19 44/20
**change [6]** 17/5 22/1 23/2 65/16 65/16 68/8
**changed [2]** 31/14 52/10

**check [4]** 41/20 42/18 43/12 47/18
**China [3]** 48/24 49/2 49/3
**choice [1]** 29/3
**choices [2]** 29/3 71/4
**chose [1]** 23/11
**chosen [4]** 28/14 28/15 28/15 28/15
**circle [1]** 21/22
**circles [1]** 57/16
**Circuit [4]** 60/19 60/21 61/23 61/25
**circular [2]** 50/12 50/16
**Circulate [1]** 78/15
**circumstances [1]** 55/13
**circumvent [1]** 33/11
**citation [2]** 60/2 60/19
**citations [1]** 59/15
**cite [3]** 42/14 63/16 66/4
**cited [3]** 61/21 63/17 66/4
**civil [1]** 50/21
**claim [19]** 14/10 15/2 15/12 19/20 20/5 24/7 24/12 24/13 24/18 24/19 24/22 26/7 32/9 34/9 35/1 35/21 52/3 52/8 60/1
**claim's [1]** 22/13
**claimed [1]** 30/12
**claiming [2]** 14/22 44/6
**claims [17]** 8/15 8/18 8/19 8/23 16/24 23/15 23/24 24/1 24/3 24/23 43/19 43/20 44/20 50/25 51/2 53/13 62/18
**clarification [1]** 55/25
**clarifications [1]** 76/16
**clarify [1]** 54/2
**CLARK [4]** 1/2 2/1 60/10 71/7
**clear [13]** 4/5 8/16 12/10 20/19 27/16 51/16 55/17 56/2 58/20 63/4 70/14 74/9 78/10 69/12
**clearly [4]** 6/7 8/4 16/3 69/12
**client [1]** 26/9
**clients [1]** 17/25
**close [1]** 20/10
**co [2]** 35/4 42/24
**co-litigant [1]** 35/4
**co-litigants [1]** 42/24
**cognizant [2]** 19/9 70/24
**Coleman [7]** 18/4 25/15 25/16 42/17 43/19 47/7 47/8
**Coleman's [1]** 38/25
**come [10]** 13/18 17/21 27/18 28/8 28/11 28/15 29/2 29/23 45/25 76/6
**comes [3]** 38/20
**coming [3]** 11/21 58/17 76/8

**commenced [1]** 88/21
**comments [1]** 78/16
**common [3]** 45/14 46/9 46/10
**communications [1]** 40/7
**companies [1]** 47/4
**company [6]** 34/20 38/2 44/25 47/6 47/10 50/22
**comparison [1]** 9/10
**compensation [2]** 8/21 51/2
**competent [1]** 22/10
**complain [1]** 28/8
**complaining [2]** 31/1 34/7
**complaint [14]** 9/4 15/8 26/21 32/5 52/8 52/19 60/5 60/5 62/19 62/20 62/24 64/24 74/20 75/9
**complete [1]** 21/6
**completely [1]** 26/22
**compliance [3]** 16/4 65/11 65/14
**component [2]** 25/22 59/18
**composition [1]** 26/25
**concede [2]** 23/8 44/15
**concedes [1]** 55/20
**conceding [1]** 55/9
**concept [7]** 22/3 22/18 23/3 59/6 59/12 59/13 60/13
**concepts [1]** 59/2
**concern [1]** 4/13
**concerned [1]** 58/1
**concerning [1]** 38/6
**concert [1]** 10/4
**concluded [1]** 79/5
**concludes [1]** 79/3
**conclusion [1]** 35/19
**conclusive [1]** 60/17
**concrete [1]** 62/13
**condition [1]** 36/15
**conditional [2]** 30/16 36/14
**conditioned [1]** 38/19
**conduct [4]** 4/3 5/12 14/25 37/6
**confident [1]** 40/1
**conform [1]** 39/18
**confront [1]** 11/15
**confusing [2]** 8/17 11/19
**Congress [1]** 26/25
**consent [5]** 4/21 10/17 10/19 13/14 56/22
**consequences [2]** 29/4 71/14
**consequential [1]** 43/10
**considered [2]** 50/10 67/7
**consistent [1]** 70/7
**constant [1]** 21/9
**constituents [1]** 34/21
**constitute [1]** 9/22

**Constitution [1]** 59/19
**contain [1]** 39/17
**contending [1]** 54/14
**contends [1]** 63/25
**contention [2]** 31/23 62/23
**contentions [2]** 15/11 52/11
**contested [1]** 62/10
**context [1]** 22/2
**continue [4]** 23/13 30/4 30/5 55/4
**continued [1]** 70/20
**contractual [1]** 33/14
**contradicted [1]** 51/6
**contradiction [1]** 49/7
**contradictory [2]** 48/6 49/9
**contradicts [1]** 15/3
**contrary [6]** 7/8 8/7 11/5 15/10 30/6 47/9
**control [2]** 34/19 34/22
**controversial [2]** 23/3 31/17
**controversy [5]** 6/8 59/18 60/6 60/9 62/4
**converse [1]** 35/15
**conversion [2]** 4/12 8/5
**CORCORAN [1]** 1/23
**Corp [1]** 61/24
**corporate [1]** 14/4 25/14 64/2 64/25 65/22
**corporation [6]** 5/13 7/4 7/6 47/12 55/11 57/5
**corporations [2]** 6/25 25/14
**correct [1]** 65/21
**correctly [1]** 17/6 34/24 79/7
**Cottonwood [1]** 47/12
**could [18]** 2/21 8/23 12/9 12/12 19/22 19/25 23/9 23/10 36/20 43/1 48/22 56/20 63/14 64/20 65/6 67/1 68/7 74/5
**couldn't [2]** 62/1 69/15
**counsel [39]** 2/11 3/17 9/9 9/9 16/11 18/10 20/21 21/21 23/17 25/19 32/21 35/5 38/5 38/5 39/10 40/19 41/1 41/9 41/14 41/23 46/2 46/4 46/17 49/15 49/15 49/22 53/20 56/15 58/7 71/17 72/7 72/15 73/9 73/23 76/15 76/16 76/23 78/12 78/15
**counsel's [1]** 76/12
**count [1]** 22/6
**counted [1]** 19/7
**country [4]** 10/3 27/4 34/19 34/20
**COUNTY [5]** 1/2 2/1 60/10 60/18 71/7
**couple [6]** 21/25 52/6 58/19 66/14 71/4 73/24

**C**

course [9] 6/18 13/21 13/21 28/4 29/22 36/20 44/8 44/8 62/6
court [201]
Court's [12] 3/2 9/11 9/11 12/10 13/13 23/11 40/21 45/7 52/6 58/3 69/9 74/7
courtroom [2] 18/1 18/7
courts [4] 12/3 59/11 60/20 60/20
Cove [1] 47/12
cover [1] 3/11
covered [1] 3/13
credit [2] 35/16 45/12
criminally [1] 50/20
cross [3] 33/23 56/22
cross-reference [1] 56/22
Cunningham [7] 10/16 10/20 11/2 11/4 32/18 33/2 53/8
current [6] 9/4 12/19 52/3 55/7 68/9 74/18
currently [3] 4/19 20/6 26/5
curtail [1] 26/13
cycle [1] 31/16

**D**

Dan [1] 2/16
Dana [1] 79/12
DANIEL [1] 1/21
date [12] 4/10 9/10 52/7 52/13 52/16 52/19 52/24 53/1 53/23 54/5 64/18 71/8
Dated [1] 28/9
dates [1] 58/18
day [1] 78/17
days [1] 21/25
DC [1] 78/16
De [7] 2/18 10/1 10/4 11/3 25/11 25/17 47/5
dead [1] 52/2
deal [1] 22/8
dealing [2] 59/5 59/12
dealings [1] 40/11
debt [5] 35/25 36/2 36/11 37/8 43/25
dec [4] 14/10 15/2 74/14 74/25
December [1] 50/21
decide [4] 23/1 27/11 46/13 77/7
decided [3] 17/10 31/4 55/6
decision [2] 6/17 18/16
decisions [1] 77/14
declarant [1] 39/13
declaration [4] 10/20 32/20 38/25 39/24
declarations [1] 39/16
declaratory [5] 24/12 25/21 52/3 62/21 74/20
declared [1] 32/25

declares [1] 26/18
deemed [2] 50/1 69/7
default [1] 44/15
defeat [1] 15/14
defeated [1] 38/17
defect [1] 42/17
defects [1] 39/7
defendant [2] 1/9 60/7
defendant's [1] 58/13
defendants [1] 1/21 60/7 60/8
defense [1] 28/22
deficient [1] 13/6
definitely [3] 14/14 16/4 62/6
definition [1] 27/24
Delaware [6] 6/23 14/16 49/3 63/16
delaying [2] 4/7 4/8
delete [1] 33/3
deletes [1] 33/18
delisted [1] 13/5
demand [3] 24/11 30/12 30/17
Democrats [2] 27/1 31/16
demonstrate [3] 7/16 43/16 44/11
demonstrated [4] 7/3 13/25 14/24 19/5
demonstrating [1] 6/23
depending [1] 77/7
deprivation [2] 14/3 14/18
deprive [6] 6/2 7/1 17/7 50/12 50/14 50/15
DEPT [1] 1/6
deregistered [1] 13/7
described [1] 46/10
describes [1] 46/9
deserve [5] 29/20 30/13 33/24 38/1 45/14
despite [1] 65/17
determination [7] 3/9 11/12 35/6 35/7 35/10 60/10 60/18
determine [10] 5/8 6/19 10/7 10/8 12/6 41/5 51/17 53/11 59/9 71/16
determined [5] 28/2 53/7 56/14 65/12 69/4
deviated [1] 49/2
did [47] 5/5 6/24 8/19 8/22 8/25 10/16 12/17 13/10 15/21 19/17 20/17 21/11 22/21 25/17 25/18 26/1 26/2 28/6 30/22 31/2 31/2 31/20 35/2 35/13 39/2 44/7 44/12 48/25 49/6 49/13 49/13 50/23 50/23 51/1 51/3 51/17 51/17 53/23 57/15 58/5 58/7 59/25 61/23 66/4 74/8 76/23 78/12
didn't [24] 6/15 10/21 10/21 12/18 16/15

18/15 18/18 18/7 22/5 22/5 31/9 34/5 34/9 35/20 35/9 39/5 39/5 43/19 43/21 43/21 47/19 48/14 51/11 74/3
differences [1] 3/7
different [23] 18/2 24/22 26/23 27/8 27/22 31/1 31/24 35/20 36/4 43/20 45/16 48/2 48/2 50/22 50/22 53/24 54/20 59/1 62/9 71/10 73/6 74/3 77/2
dilute [2] 70/1 70/10
dilutive [2] 13/2 13/2
dime [1] 35/17
direct [1] 60/16
directly [4] 4/3 8/7 11/4 11/14 14/25 15/10 15/11 47/8 57/19
director [15] 4/15 4/21 5/18 5/19 10/17 10/17 10/23 11/6 11/6 11/8 11/8 13/14 14/5 49/4 69/6
directors [7] 4/15 9/17 12/20 12/21 18/20 18/21 67/25
disagree [3] 6/6 41/17 60/12
disagreed [1] 42/1
disagreeing [1] 68/19
discovery [2] 4/8 48/16
discuss [1] 35/19
discussed [1] 14/6
discussing [2] 42/5 42/8
discussion [2] 74/4 76/5
disingenuous [1] 48/15
dismissed [1] 24/6
disproven [1] 61/3
dispute [12] 16/2 25/21 34/18 35/2 35/12 35/21 45/4 45/19 47/17 60/15 60/23 61/11
disputed [1] 48/6
disputes [1] 19/10
disputing [1] 48/8
distinct [3] 57/24 59/2 59/13
distinction [1] 75/3
distinctions [1] 25/14
distinguish [1] 75/2
DISTRICT [2] 1/2 1/11
diverge [2] 28/21 29/1
Division [1] 71/7
Dixon [2] 66/4 66/8
do [98]
document [10] 2/25 3/1 3/1 40/24 40/25 58/12 58/12 58/13 58/13 58/14
Document 227 [1] 58/12
Document 232 [1] 58/13
documents [6] 36/9

18/25 42/2 42/25 43/1 48/12 48/13
does [31] 6/2 9/1 9/5 12/12 12/21 23/1 26/4 27/21 29/13 29/19 37/7 38/23 39/25 40/1 42/17 49/5 58/16 59/9 59/14 62/16 62/19 65/4 65/7 65/8 68/9 68/10 70/25 72/7 72/7 74/20 75/18 77/18
doesn't [13] 16/2 22/1 23/6 24/7 26/13 32/11 32/17 46/14 47/8 48/17 51/24 64/1 69/19
dog [1] 42/25
doing [10] 11/24 22/20 33/15 41/8 45/12 51/19 55/13 55/14 70/5 70/15
don't [63] 12/5 12/7 12/16 13/2 15/22 21/2 21/8 21/14 21/14 21/19 21/23 22/5 23/2 24/20 26/7 26/8 27/3 27/3 28/16 30/13 30/18 31/1 31/6 31/11 31/12 31/12 31/19 32/9 37/19 38/1 39/7 40/24 42/13 43/9 43/10 43/22 44/10 44/15 45/21 46/1 47/15 48/2 48/13 50/3 50/12 52/1 52/18 52/23 54/25 55/1 55/4 55/4 55/10 56/5 56/6 57/4 57/7 57/13 57/14 60/12 71/25 72/7 72/23
done [17] 4/9 8/15 10/18 11/7 13/11 17/17 19/18 20/14 23/9 23/10 44/4 44/6 46/8 54/9 55/13 63/10 65/6
down [4] 24/10 24/12 24/12 58/17
dozens [1] 42/20
drafted [1] 72/12
draw [1] 59/18
due [3] 8/24 27/15 62/1
duplicitousness [1] 33/15
during [6] 6/25 11/5 40/22
DVD [2] 77/21 77/23

**E**

e-mails [1] 51/16
each [3] 3/4 39/12 57/16
earlier [1] 64/18
earn [1] 35/14
easier [1] 78/7
easy [1] 45/20
eat [1] 42/25
EDCR [5] 39/1 73/13 78/7 78/13 78/16
effect [1] 70/12
effectuated [1] 25/7
efforts [1] 53/7
eight [1] 10/2
either [7] 4/19 10/1

32/15 44/11 44/16 56/24 77/8
election [2] 24/6 27/5 30/12 30/17 31/15
elections [2] 27/5 27/6
element [5] 43/5 43/22 44/10 45/2 51/1
elements [8] 8/20 13/24 15/5 22/11 38/16 38/23 47/21 47/22 68/11
eliminate [2] 61/20 70/12
else [5] 12/12 18/2 31/20 43/14 66/1
embattled [1] 4/15
emergency [3] 28/1 33/4 54/7
employees [4] 25/17 67/21 69/14 69/18
encompassing [1] 30/15
end [4] 2/25 3/14 3/15 21/5
ends [3] 18/3 34/24 35/21
Energy [1] 61/24
enforce [1] 59/25
enjoined [1] 68/10
enough [3] 30/17 30/19 64/15
entered [4] 51/7 51/8 51/15 73/2
entire [1] 17/13
entirety [2] 33/19 67/9
entities [7] 10/2 10/3 10/6 25/18 67/21 69/14 69/17
entitled [5] 26/9 26/10 36/4 45/22 79/8
entity [2] 2/17 61/19
entry [2] 42/20 70/23
epitome [1] 6/5
equal [3] 17/9 20/12 31/10
equally [1] 17/15
equitable [1] 66/6
equivalent [1] 34/20
escrow [2] 7/13 7/16 7/21
ESQ [2] 1/17 1/21
essentially [1] 52/20
established [1] 43/11
et [3] 19/12 69/18 75/14
et cetera [3] 19/12 69/18 75/14
evaluating [1] 56/11
even [22] 6/19 8/24 15/22 15/25 16/2 20/10 23/3 24/5 29/16 29/20 30/18 35/16 35/17 35/19 36/24 37/17 46/23 47/18 53/21 53/21 67/6 68/8
ever [6] 7/21 40/6 40/9 48/6 56/6 57/3
every [12] 4/10 12/9 22/23 22/24 22/24

**E**

every... [7] 26/15 26/15 26/16 27/23 40/24 40/25 45/1
everybody [1] 71/12
everybody's [3] 54/22 54/23 54/23
everyone [3] 27/6 45/11 72/17
everyone's [1] 67/10
everything [4] 48/15 53/6 68/3 69/15
evidence [28] 7/11 7/14 7/21 8/9 8/11 11/16 15/21 16/15 16/16 16/18 16/19 22/11 28/18 32/9 32/14 32/19 33/9 36/6 39/22 42/14 43/4 47/17 49/6 49/10 50/8 50/9 51/6 58/23
evidentiary [2] 37/6 39/17
exact [5] 18/15 20/12 22/2 37/6 44/7
exactly [5] 22/20 31/2 31/20 37/4 77/3
example [1] 19/24
exceed [1] 5/1
excellent [4] 62/7 62/7 73/22 73/22
except [2] 25/15 25/16
exchange [2] 13/5 35/23
excuse [1] 36/19
exercise [1] 8/1
Exhibit [6] 7/15 36/19 36/19 38/24 39/24 61/5
Exhibit 17 [1] 7/15
Exhibit 19 [1] 36/19
Exhibit 21 [1] 36/19
Exhibit 26 [2] 38/24 39/24
Exhibit 32 [1] 61/5
exhibits [2] 36/7 43/25
Exhibits 14 [1] 36/7
exist [1] 22/22
existing [1] 60/15
expanding [1] 69/11
expeditiously [1] 72/13
experience [1] 22/24
expire [1] 70/25
expiring [1] 67/12
explain [2] 29/2 56/18
explained [1] 52/2
expressed [1] 74/10
extended [1] 71/9
extent [5] 12/4 49/20 69/20 70/5 74/8

**F**

F.3d [2] 60/21 61/24
faced [1] 50/11
fact [13] 20/9 22/1 22/1 28/20 30/6 35/22 37/8 43/7 43/7 50/20 61/21 62/17 63/23

factions [1] 34/19
factors [1] 14/3
facts [5] 17/15 20/12 35/11 35/12 39/22
factual [7] 19/10 28/16 30/3 35/6 35/10 35/13 39/17
failed [1] 43/15 43/15 43/16
failure [1] 48/12
fairly [1] 4/25
fairness [2] 37/13 46/2
faith [4] 8/11 8/16 18 50/4
familiar [1] 14/1
Family [1] 71/7
far [2] 37/15 61/2
fashion [1] 23/21
favor [9] 14/21 16/2 35/8 64/9 65/8 65/9 65/15 65/20 65/24
favors [2] 16/3 65/19
February [16] 14/14 14/15 17/14 18/13 20/7 24/16 24/18 24/20 30/23 32/1 46/13 52/9 53/2 60/24 61/5 74/25
February 2022 [1] 14/14
federal [3] 59/17 60/19 60/20
feedback [1] 21/10
feel [2] 39/9 74/12
feels [1] 12/18
Ferguson [2] 36/10 36/18 37/2
fide [4] 28/22 28/23 38/18 43/22
Fifth [2] 61/22 61/25
fight [2] 33/16 34/21
fighting [1] 57/16
figuratively [1] 72/17
figure [7] 5/7 5/16 13/15 27/5 53/4 53/14 57/17
file [1] 15/8
filed [6] 6/13 9/7 9/10 15/7 48/7 52/19
filing [3] 13/6 29/25 54/7
final [3] 13/1 13/23 60/17
find [8] 11/20 62/19 66/12 66/17 66/18 68/1 68/17 69/19
finding [3] 7/5 62/16 66/22
finds [6] 19/4 59/14 63/12 68/18
fine [14] 3/14 12/4 22/8 23/14 26/22 28/14 38/9 38/11 39/15 49/23 55/20 70/6 73/10 74/5
finish [3] 39/9 58/5 58/8
finished [1] 58/6
first [16] 3/18 36/16 38/7 40/22 41/10 41/22 43/14 51/7 53/25 58/20

58/24 66/14 67/19
five [2] 40/1 40/2
fix [1] 23/11
Florida [2] 7/7 7/18
flush [1] 3/4
fly [2] 38/3 38/6
focus [1] 38/7
focuses [1] 52/8
focusing [1] 61/9
folks [1] 73/15
follow [1] 57/13
foreseen [1] 12/13
form [2] 48/2 48/3
formal [5] 18/19 18/20 22/5 45/9 49/4
formally [1] 39/6
forth [5] 15/15 18/19 45/9 59/14 61/5
forthcoming [1] 35/13
forward [6] 27/7 52/22 52/24 53/1 54/6 65/1
Foster [1] 40/14
found [3] 67/13 74/15 74/22
four [9] 11/24 23/23 23/23 24/1 24/3 38/16 38/17 57/23 67/16
fourth [1] 18/12
fraud [7] 7/2 14/20 38/20 38/21 44/6 48/8 75/14
free [7] 8/14 26/8 33/10 37/9 37/10 39/9 74/12
FTE [92]
FTE's [16] 4/3 5/12 5/20 6/22 6/24 7/8 10/19 14/15 15/10 15/10 16/5 35/8 44/22 47/25 48/4 50/24
full [1] 76/5
fully [1] 60/25
further [9] 54/17 55/15 55/17 55/22 56/1 56/18 57/11 69/23 77/8
Furthermore [2] 8/8 10/15
futility [1] 19/25
future [4] 36/1 51/12 58/17 78/3

**G**

gain [1] 64/12
Gaming [1] 62/14
gap [4] 71/22 71/24 72/3 72/25
garbage [1] 33/16
gave [6] 8/22 24/11 32/19 48/7 51/16 62/3
general [1] 65/15
genuine [1] 60/15
get [59] 3/18 5/11 6/17 8/25 10/14 12/9 13/18 17/5 17/16 20/7 20/14 26/5 27/12 28/16 29/7 30/20 31/14 33/10 34/2 34/24 34/6 36/8 36/9 37/2 37/3 43/9 43/10 43/22 44/10 44/15

32/15 42/15 43/23 46/1 46/7 46/17 48/16 48/18
49/23 50/6 17 51/3 51/8 51/13 51/24 53/6 54/21 55/17 55/25 56/19 63/3 64/1 67/17 69/16 72/12 72/20 73/1 77/20 77/21 77/23 78/10
gets [5] 5/18 30/1 30/13
getting [1] 34/6
give [6] 2/25 22/13 26/8 27/10 28/18 31/7 31/8 40/24 42/21 43/2 43/2 48/14 75/25 76/7 76/7 77/15
given [6] 35/16 43/13 47/17 50/6 57/6 74/25
gives [2] 11/3 56/21
giving [5] 24/19 45/12 62/22
go [34] 3/18 9/14 13/25 16/11 16/19 18/10 20/9 21/1 21/3 25/1 27/2 29/7 30/2 38/24 39/9 40/12 47/2 54/24 56/20 56/24 63/8 63/11 65/23 66/9 66/9 66/10 67/12 68/10 71/19 72/11 72/24 73/23 75/18 78/4
goes [12] 12/12 19/19 31/16 35/19 37/19 37/20 37/21 37/21 37/22 61/9 62/19 65/20
going [65] 2/5 2/3 3/2 3/11 3/12 3/13 10/24 11/14 22/8 23/18 25/1 27/6 28/13 37/17 40/12 40/13 40/25 41/13 44/24 47/2 47/24 48/21 49/16 49/22 51/22 52/13 54/10 57/18 58/24 59/8 63/4 63/8 63/16 65/9 66/12 66/17 66/18 67/5 67/16 68/1 68/17 69/25 70/4 70/15 70/19 70/21 70/22 71/8 71/9 71/22 71/23 72/15 72/24 74/17 74/17 74/24 77/7 77/20 77/23 77/25 78/1 78/14
gone [2] 24/9 43/1
good [9] 2/6 2/12 2/16 8/11 8/15 8/18 42/14 50/4 70/6
got [14] 2/22 2/22 2/23 8/24 12/5 21/12 32/21 36/25 43/1 52/6 56/10 65/10 71/4 78/8
governance [4] 14/5 64/2 64/25 65/22
granted [4] 14/21 18/18 45/8 67/15
granting [1] 19/18 69/9
grants [2] 24/21 53/12
great [13] 19/8 19/16 25/6 27/1 30/17 31/15 32/12 32/13 33/24

36/22 39/19 78/17 79/3
greater [1] 57/9
group [7] 1/4 2/9 2/13 3/20 18/5 22/25 23/1 31/2 31/4
guess [2] 12/23 52/25
guys [1] 21/9

**H**

had [22] 9/17 10/18 14/22 17/21 18/8 21/25 22/4 23/8 35/18 35/24 42/25 44/8 44/9 44/12 44/13 48/22 50/6 51/10 58/6 59/21 62/3 62/6 62/12 63/2 66/22
handle [2] 36/5 71/24
handled [1] 77/7
happen [2] 68/6 70/4
happened [5] 33/8 34/13 34/16 52/16 56/2
happening [4] 27/3 28/17 34/18 55/22
hard [2] 52/15 53/6
hardship [2] 64/23 65/4
hardships [5] 64/7 64/8 64/23 64/24 65/24
harm [12] 6/16 13/25 34/10 37/21 37/25 37/25 37/25 63/12 63/13 66/6 66/19 68/13
harmed [3] 44/20 63/24 64/1
harms [2] 14/6 16/2
has [97]
hasn't [4] 9/17 33/8 66/19 69/5
have [188]
haven't [7] 32/7 32/13 32/14 43/11 44/14 51/12 66/9
having [6] 35/19 38/15 60/15 70/2 74/18 74/19
he [17] 10/2 10/21 10/21 39/25 39/25 40/1 40/10 42/17 42/18 43/19 43/21 44/7 50/20 53/21 57/8 72/22 76/16
he's [5] 40/6 40/6 40/8 43/20 72/16
heads [4] 76/1 76/7 76/7 76/9
hear [9] 21/9 21/11 71/11 71/14 71/19 72/5 72/14 74/3 78/13
heard [6] 6/15 15/9 16/14 17/4 17/10 53/20
hearing [13] 3/4 4/2 6/25 7/9 11/5 11/18 17/19 18/12 18/8 19/2 23/20 41/2 53/18
held [1] 70/20
Heller [2] 59/16 62/14
help [1] 68/5
her [2] 20/21 26/9
Herbst [1] 62/14
here [26] 19/23 22/12 24/25 27/16 27/18 28/15 29/2 29/17 32/9

## H

here... [17] 36/6 38/24
43/17 52/21 59/5 59/15
59/20 59/24 60/4 60/21
64/15 65/13 69/4 74/14
74/24 77/6 78/8
here's [6] 31/6 35/14
42/23 58/10 59/8 70/24
hereby [1] 79/7
herrings [1] 48/4
hide [1] 35/5
hiding [1] 28/17
higher [1] 45/25
him [2] 37/3 40/10
himself [1] 40/8
his [9] 10/1 10/20
39/23 47/3 49/22 57/8
72/16 72/23 72/23
hit [1] 30/2
hold [1] 17/18
holders [1] 43/25
Holdings [3] 48/24
49/2 49/3
holds [1] 18/17
homework [1] 42/25
Honor [30] 2/12 2/16
3/19 4/22 6/21 9/6 18/5
18/11 22/7 23/13 24/6
24/11 28/10 28/13
28/13 40/1 46/3 46/18
55/1 56/20 58/9 71/24
72/9 73/7 73/20 76/1
76/18 76/20 78/9 79/2
HONORABLE [1] 1/11
Hornish [1] 60/18
horse [1] 52/2
horses [1] 17/7
hotly [1] 62/10
housekeeping [2]
73/25 76/15
how [9] 24/19 26/4
26/5 28/10 40/19 45/19
54/21 56/20 77/7
however [8] 13/16
15/12 21/24 52/11 68/6
69/12 70/23 71/24
huge [2] 65/11 65/14
huh [5] 2/7 22/17 23/25
77/9 77/16
hundred [2] 28/9 58/20
hypothetical [1] 62/13

## I

I nor [1] 45/23
I Series [7] 17/11 17/16
18/14 18/21 19/19
21/24 22/4
I'd [4] 21/1 22/15 34/25
76/11
I'll [14] 3/13 3/15 20/14
37/1 37/2 37/2 37/3
37/3 42/3 46/21 58/6
66/9 72/12 74/12
I'm [44] 3/11 13/25
17/20 17/20 20/11
23/20 25/1 26/10 26/12
27/11 35/6 35/9 37/15
40/12 40/25 41/13

41/24 41/24 42/3 42/4
42/15 45/3 46/8 47/20
49/15 50/1 50/1 54/7
54/10 55/16 55/24
55/25 56/11 58/24
61/14 63/16 64/23 65/5
67/5 67/16 72/15 73/15
77/14 78/14
I've [6] 32/21 45/3 52/2
56/10 61/21 78/8
i.e [2] 5/13 8/22
idea [1] 29/22
identical [1] 7/19
identify [5] 6/16 12/17
12/19 12/21 39/12
if [78] 3/13 3/14 3/14
4/3 5/18 7/15 10/5 10/9
10/15 13/11 13/17
15/22 18/1 18/18 19/12
19/23 20/22 21/5 21/8
22/7 23/7 23/13 24/21
26/19 27/10 28/13
30/16 30/16 32/2 32/3
34/10 35/19 37/23
37/24 38/1 38/3 38/15
39/23 40/23 41/10 45/8
46/23 49/20 52/3 52/13
53/22 54/13 54/16
55/16 56/7 56/9 56/17
57/2 57/4 57/6 57/13
57/14 57/17 58/1 63/24
64/18 67/6 70/3 70/9
71/4 71/6 71/8 71/15
72/6 72/16 72/21 73/4
73/13 74/5 74/5 74/5
76/10 77/6 78/6
ignore [2] 22/7 25/7
illegal [2] 23/2 31/18
illegally [1] 28/7
imminent [1] 13/6
impact [3] 22/14 23/5
38/21
impacting [1] 23/6
impacts [1] 77/13
implied [1] 74/9
important [2] 10/14
13/16
importantly [1] 9/21
improper [1] 16/14
imputed [1] 47/10
in [222]
inaccurate [1] 8/12
inadmissible [1] 16/19
inadvertently [1] 71/13
inbox [1] 78/16
INC [3] 1/4 1/7 1/23
include [4] 60/21 67/20
69/11 69/13
including [1] 67/24
inclusion [1] 36/23
inconsistent [1] 34/13
54/12
incorporate [1] 3/14
incredibly [1] 58/1
incursions [1] 45/1
independent [1] 4/15
independently [1]
69/20
indicated [1] 40/9

indication [1] 13/12
indicia [1] 75/14
indicted [1] 37/5 37/5
44/6 50/20
indirectly [1] 23/5
indiscernible [12] 11/1
23/24 24/23 28/1 28/20
46/9 51/15 54/19 63/6
65/7 67/5 75/8
individuals [5] 26/1
61/12 61/12 69/17
69/18
ineffective [1] 36/16
inextricably [1] 10/11
information [2] 26/9
57/9
infringed [2] 27/10
27/14
injunction [51] 1/14
2/22 3/18 13/24 15/6
16/9 19/2 19/18 22/10
26/15 26/16 31/24
33/25 34/3 38/17 41/2
52/22 54/15 56/4 58/12
58/15 59/5 59/7 61/14
61/16 63/3 63/4 63/9
63/11 63/19 64/10 66/2
66/11 66/13 67/13
67/15 67/20 68/3 68/13
69/16 70/11 70/16
70/18 70/21 71/3 74/24
75/15
injunctions [1] 69/13
injunctive [6] 23/15
24/19 34/17 43/11
43/14 75/25
INNOVATIV [116]
Innovativ's [19] 5/21
27/22 28/3 28/21 29/6
32/8 40/7 40/11 45/5
45/20 54/6 57/22 60/5
61/20 68/16 68/19
68/20 70/1 70/8
Innovative [1] 76/17
insiders [3] 32/6 32/6
32/12
instead [2] 28/6 70/20
instructed [1] 14/17
intent [2] 4/4 12/10
intention [1] 74/8
interest [12] 6/8 16/1
16/3 37/22 38/2 44/21
60/1 60/8 60/16 60/16
61/8 62/3
interesting [3] 22/16
22/17 29/19
interestingly [1] 30/25
interests [2] 28/21
29/1
interfere [8] 29/6 29/16
54/6 57/22 68/16 68/25
70/1 70/10
interfered [1] 30/11
interference [6] 14/2
14/4 47/23 53/15 66/5
72/10
interferes [1] 55/15
interfering [1] 30/9

70/8
interrelated [1] 10/12
into [22] 7/13 7/16
10/10 36/6 41/6 41/11
49/23 51/7 51/9 51/15
51/24 58/21 58/21
58/22 66/1 67/9 67/10
67/17 69/21 70/13 76/3
78/4
invalid [3] 17/14 45/1
55/3
inverse [1] 19/16
involved [2] 48/1 50/22
involves [1] 60/16
irrelevant [2] 33/5
33/21
irreparable [7] 13/25
14/6 37/25 37/25 63/12
63/13 66/6
irreparably [2] 63/24
63/25
is [376]
isn't [8] 25/20 26/8
32/9 33/22 34/6 45/10
57/23 70/14
issuance [3] 10/5
15/19 52/21
issuances [5] 15/22
32/6 32/7 32/11 32/12
issue [41] 10/18 10/22
13/2 13/10 13/18 19/24
20/7 22/2 22/10 30/21
30/24 33/2 33/5 35/20
39/11 41/10 41/18 42/4
42/16 55/1 55/10 55/11
57/15 58/14 58/24 60/4
60/9 60/24 60/25 61/1
61/9 61/23 63/5 66/11
66/11 67/13 69/25 70/2
70/18 74/23 76/25
issued [20] 4/18 4/21
9/1 9/25 10/9 10/15
13/12 15/23 28/7 33/8
33/13 46/22 50/5 50/25
54/18 56/13 56/25 57/1
57/4 70/10
issues [21] 11/15
13/15 17/5 22/12 42/10
44/9 62/9 62/10 62/20
63/1 63/15 63/20 63/21
64/16 64/25 66/20 69/2
70/14 72/3 75/13 77/11
issuing [2] 3/25 13/1
13/4 13/9 31/22 69/23
it [278]
it's [82]
its [27] 5/1 5/20 8/5
8/14 8/24 9/16 12/19
13/6 13/7 25/17 33/18
34/6 35/3 36/22 38/3
39/6 40/5 41/12 44/25
58/19 63/14 63/24
64/24 67/21 69/10
74/19 74/19
itself [2] 24/8 29/2

## J

J-1 and [1] 19/6
J-2 [1] 19/13

J-2 shares [1] 19/6
Jacob [1] 7/18
jail [1] 33/10
January [2] 44/2 44/2
January 31st [1] 44/2
JCCR [1] 64/21
JD [1] 1/23
Jenga [1] 17/12
JOANNA [1] 1/11
job [1] 16/17
Joseph [2] 10/15 53/8
journal [1] 42/20
JUDGE [3] 1/11 21/7
22/20
judgment [16] 6/13
11/15 14/21 15/14
18/16 19/23 22/8 35/8
43/13 49/1 49/13 49/19
49/19 49/24 75/4 75/10
judgments [1] 58/16
judicial [5] 6/24 34/23
59/21 60/9 60/18
jump [1] 46/19
juncture [7] 61/3 63/15
63/21 65/4 69/24 70/24
75/15
June [1] 24/7
jurisdiction [10] 5/1
5/4 5/6 5/15 8/1 8/3
11/22 59/1 59/3 59/9
jurisdictional [1] 59/12
just [80]
justiciable [3] 6/8 60/6
60/14

## K

keep [5] 9/19 25/22
32/21 40/12 57/16
keeping [2] 21/20
66/25
kicker [1] 42/23
kind [6] 3/3 33/16 37/6
37/16 43/12 44/7
King [2] 40/14 60/18
KISHNER [1] 1/11
know [38] 6/23 8/22
10/3 10/16 10/21 11/17
13/19 13/19 14/1 14/2
15/3 15/22 21/2 21/8
21/14 24/22 27/2 27/4
37/1 46/4 46/4 47/15
47/19 48/3 48/17 50/4
50/11 51/12 53/5 53/7
55/3 55/5 57/12 57/13
60/12 69/12 72/21
72/23
knowing [2] 36/25 65/1
knowledge [9] 26/19
39/21 39/25 40/7 40/11
42/18 47/8 47/9 57/9
known [1] 33/10

## L

lack [4] 8/2 10/17
16/19 64/25
lacked [2] 5/21 6/4
land [1] 78/4
language [6] 7/4 7/19
8/17 26/1 37/7 71/2

**L**

**LARA [1]** 1/23
**LAS [1]** 1/24
**last [5]** 7/8 34/1 40/13 46/17 69/10
**later [2]** 20/14 23/2
**Lateral [1]** 2/17
**latest [1]** 4/3
**law [39]** 4/7 4/13 4/16 4/20 5/14 6/19 6/20 6/21 7/5 7/9 7/18 8/6 10/19 11/5 16/4 17/9 17/15 18/15 20/12 22/3 31/10 41/21 41/22 42/9 42/14 47/9 47/9 49/3 50/5 57/13 58/22 59/10 59/20 60/21 61/23 65/22 69/12 74/23 75/8
**laws [1]** 61/2
**lawsuit [1]** 50/21
**leads [1]** 75/22
**least [5]** 45/24 61/3 61/15 77/10 77/11
**leave [4]** 15/7 24/21 53/12 78/14
**legal [12]** 16/23 17/1 17/3 30/3 31/23 34/6 35/7 43/15 43/16 59/21 59/25 61/8
**legally [2]** 38/19 60/8
**legislature [1]** 59/16 65/12
**lengthy [1]** 25/13
**less [1]** 4/17
**let [10]** 2/25 21/3 30/20 31/19 45/3 45/6 57/14 71/14 71/19 72/14
**let's [18]** 22/12 22/18 27/16 32/2 38/24 38/24 40/12 42/24 43/17 45/11 45/22 57/15 57/17 58/20 63/11 67/12 72/5 72/16
**letters [1]** 37/7
**license [1]** 29/13
**lie [1]** 37/2
**lied [2]** 35/17 35/22
**lies [1]** 69/4
**light [5]** 20/21 46/21 56/15 77/4 77/5
**like [25]** 3/8 18/6 19/24 20/15 20/19 21/17 22/4 22/15 23/2 26/24 27/3 30/13 31/1 31/1 31/12 34/25 46/5 48/7 52/11 53/1 57/1 68/6 71/15 73/21 76/25
**likelihood [15]** 14/9 15/20 19/5 19/12 19/19 20/2 20/10 20/11 21/3 34/8 37/20 74/4 74/13 74/21 75/16
**likely [1]** 15/13
**limitation [1]** 68/17
**limited [2]** 32/17 67/24
**limiting [1]** 55/24
**limits [1]** 20/4
**line [2]** 27/18 28/6

**lines [1]** 28/2
**lines 22 [1]** 28/2
**list [4]** 9/24 24/10 33/23 56/23
**listening [1]** 54/22
**literally [2]** 42/20 72/17
**litigant [2]** 30/1 35/4
**litigants [2]** 42/24 65/17
**litigate [4]** 4/1 4/7 4/23 12/11
**litigating [1]** 53/6
**litigation [9]** 4/10 10/3 48/2 60/1 61/19 64/13 65/17 68/7 68/21
**little [6]** 2/24 3/3 20/14 36/6 37/2 45/24
**live [1]** 37/3
**Loan [1]** 47/11
**long [2]** 40/2 46/2
**longer [1]** 6/4
**look [21]** 5/12 7/15 26/8 27/25 39/23 45/5 51/7 52/17 59/24 60/4 60/20 61/1 61/2 62/25 64/7 65/7 65/21 65/25 67/14 72/22 75/9
**looked [3]** 33/19 61/7 68/12
**looking [1]** 36/24 53/10 53/24 53/25 56/11 61/14 64/9
**looks [3]** 57/1 61/7 62/17
**lose [3]** 62/1 63/14 74/19
**loses [1]** 63/24
**lot [1]** 63/1
**lots [1]** 59/11
**lunch [1]** 37/9

**M**

**machinery [1]** 59/22
**Madam [1]** 2/4
**made [7]** 18/15 22/16 33/11 33/15 35/15 39/21 49/21
**magically [2]** 29/8 36/8
**mails [1]** 51/16
**main [1]** 11/24
**maintain [14]** 3/22 4/23 5/6 5/10 11/13 11/17 11/23 12/4 12/11 12/14 13/21 13/22 16/9 65/20
**maintained [1]** 16/6
**maintaining [3]** 16/6 16/6 68/23
**majority [7]** 4/17 26/14 27/8 27/11 45/24 46/12 46/14
**make [16]** 2/11 8/16 11/11 17/23 18/7 20/15 35/7 40/25 41/13 45/20 58/7 68/24 70/14 71/12 71/21 75/21
**makes [2]** 10/13 21/17
**making [7]** 3/9 31/6 51/16 51/24 53/7 58/19 71/21 75/25

**man [1]** 37/4
**maneuver [1]** 4/6
**manner [2]** 39/6 50/23
**many [1]** 45/19
**March [13]** 7/14 18/17 23/7 26/2 45/7 52/12 52/19 53/19 54/4 54/9 56/2 67/24 68/7
**March 2020 [1]** 7/14
**March 2023 [1]** 23/7
**math [10]** 20/13 20/13 24/18 24/20 25/22 45/4 45/11 45/13 46/21 46/25
**matter [3]** 6/19 26/13 39/17
**matters [1]** 32/3
**may [22]** 3/7 3/7 8/25 10/23 14/12 14/12 44/3 51/20 51/20 54/20 55/6 56/16 56/16 58/17 70/6 71/1 74/2 74/8 74/9 77/8 77/13 77/13
**May 2020 [2]** 8/25 44/3
**maybe [4]** 31/16 53/2 57/13 77/21
**McNulty [1]** 59/22
**me [32]** 2/25 6/6 6/6 11/19 13/23 18/23 18/25 20/22 21/3 28/25 30/20 31/19 36/19 37/2 38/21 40/6 40/9 41/19 42/5 45/3 45/6 57/9 62/8 63/18 63/18 64/20 71/14 71/19 72/14 77/2 77/12 77/14
**mean [8]** 21/2 23/6 26/16 30/25 42/12 50/16 71/22 77/19
**means [7]** 9/24 10/18 12/3 24/17 27/24 44/16 68/20
**meant [2]** 8/17 66/8
**meantime [2]** 5/17 21/7
**measures [1]** 68/5
**MEDIA [6]** 1/4 1/17 2/9 2/13 3/20 18/5
**meet [2]** 72/7 72/7
**meeting [1]** 10/25
**meetings [1]** 10/17
**meets [1]** 73/15
**members [1]** 33/1
**memorialized [5]** 71/6 73/5 73/8 73/14 77/6
**memorializing [1]** 73/17
**mention [1]** 77/5
**mentioned [3]** 45/3 63/17 66/3
**merely [2]** 62/1 64/13
**merger [3]** 49/4 49/8 49/10
**merits [21]** 4/24 6/18 9/18 10/14 14/10 15/21 20/3 20/3 20/3 20/4 20/5 34/9 37/20 48/11 53/4 53/11 53/14 74/5 74/13 74/21 75/16
**mess [1]** 12/7

**message [2]** 36/17 38/22
**messing [1]** 12/14
**met [10]** 8/19 13/24 14/23 15/5 22/11 36/15 47/22 62/5 65/25 66/10
**microphone [1]** 32/22
**middle [4]** 17/20 61/19 65/17 68/7
**might [2]** 33/19 46/19
**million [8]** 45/14 45/17 45/22 45/25 46/10 46/11 46/11 46/12
**mind [2]** 21/20 72/3
**minutes [1]** 46/5
**missed [1]** 74/2
**missing [2]** 43/5 44/10
**misstatements [1]** 50/19
**modified [1]** 70/15
**modify [2]** 34/4 69/25
**moment [2]** 17/15 66/13
**month [5]** 13/12 14/15 28/9 28/11 53/2
**months [2]** 44/3 44/5
**mooted [1]** 10/12
**moots [1]** 27/12
**more [11]** 9/21 9/25 10/14 12/9 12/24 16/4 17/25 43/24 66/20 71/1 71/76/24
**morning [2]** 2/12 2/16 79/4
**most [2]** 10/24 11/2
**motion [38]** 1/14 2/21 2/22 2/25 3/17 3/21 4/22 6/13 6/18 11/15 15/7 15/14 19/23 23/9 23/10 28/1 31/23 31/25 34/3 39/14 39/21 45/5 48/25 49/12 49/19 49/20 52/12 55/7 58/11 58/15 58/23 59/4 59/7 59/22 62/18 64/17 76/3 76/11
**motions [3]** 54/7 58/16 64/19
**movant [4]** 3/17 16/16 16/21 46/17
**move [5]** 29/10 41/18 42/16 65/1 75/24
**moving [3]** 9/21 41/24 49/7
**Mr [2]** 25/11 47/5
**Mr. [33]** 2/18 10/4 10/20 18/4 25/11 25/15 25/16 25/17 29/10 32/18 32/20 32/25 33/2 36/10 36/10 36/18 36/18 36/25 37/2 37/5 38/25 42/17 43/19 46/22 47/3 47/5 47/7 47/8 50/20 56/21 57/3 57/7 72/19
**Mr. Beys [1]** 32/25
**Mr. Beys's [1]** 32/20
**Mr. Cereghino [4]** 29/10 56/21 57/3 72/19
**Mr. Cereghino's [3]**

**46/22 47/3 57/7
Mr. Coleman [7]** 18/4 25/15 25/16 42/17 43/19 47/7 47/8
**Mr. Coleman's [1]** 38/25
**Mr. Cunningham [3]** 10/20 32/18 33/2
**Mr. De [2]** 10/4 47/5
**Mr. De Silva [3]** 2/18 25/11 25/17
**Mr. Ferguson [2]** 36/10 36/18 37/2
**Mr. Singal [4]** 36/18 36/25 37/5 50/20
**Mr. Suwyn [1]** 36/10
**Ms [1]** 71/24
**Ms. [10]** 17/10 18/16 21/8 21/11 22/15 26/9 32/7 72/5 72/14 76/7
**Ms. Shanks [7]** 17/10 18/16 21/8 21/11 22/15 26/9 72/5 72/14 76/7
**Ms. Shanks' [1]** 32/7
**much [7]** 2/14 10/13 21/22 25/12 28/10 46/16 78/18
**multiple [1]** 30/15
**must [6]** 8/11 9/25 11/7 39/17 39/21 60/16
**mute [1]** 21/21
**Mutual [1]** 47/11
**my [13]** 3/9 13/23 16/16 16/19 20/18 21/4 23/11 37/3 42/13 55/17 58/6 72/3 79/9

**N**

**near [1]** 32/22
**necessarily [2]** 63/2 64/5
**necessary [1]** 66/18
**need [14]** 26/7 34/17 45/21 45/24 49/5 54/21 62/10 64/18 68/9 68/10 71/1 71/11 73/14 77/6
**needed [1]** 78/7
**needs [7]** 12/18 66/14 70/7 71/16 72/7 72/8 73/15
**neither [1]** 45/23
**NETWORKS [3]** 1/7 2/10 67/20
**NEVADA [41]** 1/2 2/1 4/6 4/13 4/16 4/20 5/12 5/14 6/20 6/25 8/6 10/19 11/5 16/4 25/14 40/15 42/14 47/9 47/9 47/12 47/13 49/2 49/5 50/5 57/13 59/5 59/10 59/16 59/16 59/17 59/20 59/22 60/3 60/11 60/19 61/23 62/14 65/10 65/13 65/22 66/5 never [11] 7/16 11/6 14/22 35/17 36/3 37/8 44/14 48/15 51/5 55/23 59/3
**new [19]** 3/25 4/14

**N**

**new...** [17] 5/16 9/8 10/13 12/21 12/22 13/4 32/6 32/11 32/12 32/13 33/6 41/10 42/10 46/22 47/1 52/21 67/25
**newly** [9] 3/24 9/5 10/7 10/11 10/22 20/18 25/4 53/5 54/8
**next** [5] 31/16 58/24 59/13 75/22 77/17
**night** [2] 38/3 38/6
**Ninth** [1] 60/19 60/21
**no** [104]
**nobody** [1] 49/10
**Nobody's** [1] 68/18
**noise** [1] 21/17
**none** [3] 34/10 34/12 37/24
**nonparties** [2] 8/2 69/11
**nonparty** [2] 17/7 26/23
**nonsense** [2] 26/24 31/20
**nonvoting** [1] 17/11
**nor** [3] 35/3 37/6 45/23
**not** [236]
**note** [7] 21/24 27/21 28/19 35/23 37/2 50/19 66/3
**noted** [4] 4/2 11/16 15/7 48/17
**nothing** [10] 7/3 16/2 23/2 31/17 31/17 31/18 33/15 34/9 55/22 68/12
**nothing's** [1] 34/16
**notice** [17] 6/25 8/18 8/19 8/22 8/23 31/7 31/8 40/24 43/18 43/21 44/8 44/9 50/25 51/2 62/22 70/23 76/11
**notification** [1] 76/13
**November** [4] 19/2 19/18 51/7 51/9
**November 2019** [1] 51/9
**November 7** [1] 19/2
**now** [32] 6/9 10/3 13/10 16/14 18/9 19/19 22/2 22/15 27/12 28/21 29/22 30/25 32/6 34/15 34/25 37/12 39/8 42/6 45/11 45/16 45/19 49/24 51/19 53/9 55/5 61/7 62/17 63/11 66/13 67/12 67/13 70/15
**Nowhere** [2] 39/25 39/25
**NRCP** [2] 39/1 59/24
**NRS** [10] 7/4 7/6 8/7 8/7 8/13 15/15 51/1 59/11 61/17 65/11
**NRS 104.8202** [1] 58/13
**NRS 104.8303** [1] 51/1
**NRS 78** [3] 59/11 61/17 65/11
**NRS 78.211** [3] 7/4 7/6

8/7
**NRS 78.240** [1] 8/7
**number** [18] 11/25 12/7 12/13 12/16 16/23 17/1 18/3 24/8 25/25 27/1 27/1 33/9 45/20 46/11 46/12 54/19 54/19 69/23
**Number 2 is** [1] 12/13
**Number 3** [1] 12/16

**O**

**object** [8] 36/22 38/25 39/5 39/7 39/8 40/14 40/23 71/22
**objected** [1] 39/3
**objection** [2] 20/15 20/21 26/10 40/25
**objections** [4] 39/3 40/20 41/22 67/11
**obligation** [2] 36/2 38/22
**observe** [1] 18/1
**obstruct** [1] 4/10
**obstruction** [1] 4/9
**obtain** [1] 35/3
**obtained** [1] 35/24
**obviously** [4] 44/24 45/16 69/16 70/21
**occur** [1] 53/23
**occurred** [4] 52/12 53/1 54/4 54/14
**off** [3] 31/3 33/23 37/15
**offense** [1] 28/23
**offered** [2] 36/11 42/15
**officer** [1] 47/10
**officers** [3] 67/21 69/13 69/18
**oh** [4] 42/1 49/15 51/11 56/5
**okay** [59] 2/3 2/8 2/19 2/20 9/14 12/4 16/11 17/5 18/6 19/21 21/20 27/13 30/11 32/1 32/12 32/13 32/18 33/5 33/8 34/4 36/22 38/17 40/4 41/14 41/15 42/3 45/14 46/6 46/7 46/7 46/17 49/15 49/17 53/16 53/19 53/21 54/10 54/12 55/16 57/4 58/3 58/4 58/10 59/8 59/11 61/5 67/19 72/5 72/6 73/3 73/11 73/18 73/21 74/11 75/17 77/2 77/17 78/6 78/12
**on** [109]
**once** [4] 18/14 20/13 55/16 68/11
**one** [55] 6/1 9/10 13/1 13/2 17/12 17/18 17/20 17/25 20/5 22/16 22/25 23/24 24/3 24/12 24/12 25/16 28/11 29/8 29/8 29/19 29/24 30/11 30/14 30/16 30/18 30/21 31/24 31/24 32/17 33/1 35/1 35/2 37/24 38/17 40/1 40/5

40/8 40/14 42/24 44/22 46/10 47/3 48/6 53/23 54/13 60/6 63/21 64/10 67/18 67/19 71/13 74/2 75/6 75/10 79/5
**ones** [3] 18/8 36/9 54/1
**only** [31] 8/10 9/22 11/7 12/1 17/19 18/8 18/18 20/5 21/25 24/18 24/19 26/12 28/23 29/8 30/23 32/25 38/20 39/17 43/19 44/24 45/8 45/25 46/24 47/4 47/6 50/17 58/14 58/20 58/21 67/7 76/25
**onward** [1] 7/10
**oOo** [1] 79/6
**open** [6] 38/5 43/21 56/15 73/13 73/16 73/19
**operating** [2] 12/20 13/20
**operative** [4] 52/8 60/5 60/5 62/24
**opinions** [1] 77/15
**opportunity** [6] 35/11 35/12 47/18 50/7 58/5 58/8
**oppose** [1] 39/20
**opposing** [5] 41/14 58/7 72/15 76/12 78/15
**opposite** [1] 60/15
**opposition** [16] 2/22 3/1 5/20 7/24 7/25 20/16 20/24 21/4 39/2 40/16 40/18 47/19 48/22 49/22 53/20 58/13
**oppositions** [1] 20/22
**option** [1] 55/24
**or** [99]
**oral** [16] 40/22 41/11 41/22 42/10 49/21 54/23 54/23 62/7 67/10 71/5 73/3 73/7 73/22 76/3 76/11 77/4
**orally** [1] 75/23
**order** [35] 5/11 5/17 9/11 9/12 9/24 12/10 12/25 13/19 14/16 18/17 19/2 21/24 45/7 48/20 52/4 54/7 54/5 54/20 58/25 64/22 70/22 70/23 71/3 72/12 72/21 73/1 73/5 73/8 76/6 77/1 77/12 77/18 77/20 78/10 78/14
**orders** [5] 4/2 65/18 68/22 74/15 74/22
**ordinarily** [1] 62/23
**ordinary** [2] 13/20 13/21
**organize** [1] 31/15
**original** [1] 57/17
**OST** [1] 58/13
**other** [36] 6/1 12/3 12/8 12/22 19/24 22/2 22/9 22/17 22/20 22/21 22/23 24/17 25/8 25/8

25/17 25/17 28/3 38/12 36/9 36/24 38/4 39/7 31/11 36/9 43/1 47/21 48/13 50/14 57/16 58/17 58/22 61/18 66/22 69/5 75/12 76/16
**others** [1] 29/15
**otherwise** [1] 64/3
**our** [32] 3/21 4/6 4/7 4/25 7/15 9/3 9/8 9/21 10/4 10/9 10/10 10/12 10/11 12/13 12/23 14/2 14/10 14/21 14/24 15/1 22/24 49/12 52/22 52/2 53/11 56/7 57/2 79/3
**out** [19] 3/4 5/7 5/17 7/7 8/16 9/2 13/12 13/15 27/5 31/13 33/10 39/6 45/11 46/23 49/12 53/4 53/14 57/17 72/24
**outcome** [1] 36/5
**outdated** [1] 7/9
**outstanding** [3] 36/14 64/15 75/13
**over** [11] 4/13 5/4 5/15 8/1 8/3 11/22 34/21 34/22 57/16 59/9 72/22
**overcome** [1] 37/7
**overlooks** [1] 6/10
**own** [7] 3/8 3/8 6/9 13/7 31/4 36/2 36/5
**owned** [1] 24/8
**owner** [1] 30/14
**owners** [1] 19/11
**ownership** [1] 44/6
**owns** [2] 36/11 65/2

**P**

**P.3d** [1] 40/15
**page** [12] 24/25 27/18 28/1 28/6 40/17 45/6 48/7 71/12 72/18 72/20 73/1 77/10
**page 2** [2] 24/25 27/18
**page 3** [1] 28/1
**page 5** [1] 28/6
**page 9 and** [1] 45/6
**Pages** [1] 2/9
**paid** [12] 35/17 35/18 35/20 37/8 40/13 42/18 42/18 43/3 43/4 43/9 44/13 47/16
**papers** [4] 9/22 27/25 42/13 49/7
**paragraph** [11] 18/17 25/1 32/5 32/16 33/3 33/6 33/18 34/1 40/13 40/13 45/7
**Paragraph 17** [1] 32/5
**paragraph 18** [1] 18/17 32/16 45/7
**Paragraph 19** [1] 33/3
**paragraph 20** [2] 25/1 33/6
**Paragraph 21** [1] 33/18
**Paragraph 22** [1] 34/1
**paragraphs** [2] 19/3 40/2

**parallel** [1] 23/10
**Pardon** [1] 76/19
**parenthetical** [1] 33/23
**part** [7] 11/20 26/21 46/23 47/25 64/22 67/6 68/2
**participate** [2] 14/4 30/22 64/1 65/2
**participating** [1] 33/1
**particular** [2] 42/5 58/25 60/24
**parties** [25] 1/10 5/2 5/9 5/10 12/11 13/5 13/9 22/14 23/16 24/23 25/8 26/21 33/13 51/8 51/11 59/6 60/15 61/11 63/5 69/12 70/25 71/1 71/5 71/11 71/14
**party** [11] 5/4 26/20 39/13 40/6 51/21 61/10 61/20 62/4 68/18 69/15 77/8
**party's** [1] 3/4
**pausing** [1] 17/20
**pay** [2] 35/20 36/2
**payment** [1] 36/14
**Payments** [1] 42/23
**pending** [9] 4/6 4/19 9/4 15/11 20/6 52/3 64/19 73/5 75/24
**people** [23] 15/23 15/24 17/25 21/16 23/1 23/1 23/3 25/15 26/1 26/12 26/19 27/9 28/12 32/17 32/18 32/19 45/13 47/4 47/5 47/7 57/1 57/5
**people's** [1] 29/16
**percent** [6] 9/23 15/24 28/9 46/24 51/15 58/20
**Perfect** [1] 73/11
**performance** [2] 8/24 44/2
**performed** [1] 51/12
**permission** [1] 69/24
**permit** [3] 4/14 8/7 15/16
**permits** [3] 7/4 11/6 59/10
**permitted** [4] 4/13 4/16 42/17 42/17 61/16 64/4 64/4 65/3
**person** [4] 26/18 28/23 47/7 77/2
**person's** [1] 47/16
**personal** [12] 4/12 8/5 39/21 39/25 40/7 40/10 42/17 47/8 61/16 64/4 64/4 65/3
**phone** [2] 18/3 21/13
**phonetic** [1] 48/24
**phrase** [2] 52/11 68/6
**phrased** [2] 54/15 58/25
**phrasing** [1] 25/22
**physical** [1] 50/8
**pills** [1] 32/12
**place** [3] 7/13 23/11 57/8
**placed** [3] 7/16 9/16 33/7

**P**

**plain [2]** 7/3 37/7
**plaintiff [5]** 1/5 2/13
11/21 29/24 30/1
**plaintiff's [2]** 1/14
58/11
**plan [1]** 36/1
**planning [1]** 31/12
**pleading [1]** 41/4
**pleadings [8]** 41/9
41/23 42/11 54/23
56/16 59/4 61/6 67/9
**please [21]** 2/11 2/15
3/18 9/14 16/12 18/10
20/22 29/11 38/7 39/3
40/17 46/5 46/5 54/24
56/18 67/18 71/20
73/16 75/19 75/20
78/14
**plus [1]** 45/22
**point [20]** 9/21 11/22
13/23 16/20 18/12
20/22 22/15 25/12 30/2
36/16 36/17 40/16
41/19 47/25 50/21
65/10 66/8 69/22 70/11
75/22
**pointed [2]** 39/6 49/12
**points [1]** 73/25
**poison [1]** 32/12
**policies [1]** 65/14
**policy [12]** 37/22 38/4
44/24 64/8 64/8 65/9
65/9 65/11 65/15 65/18
65/19 65/24
**politely [1]** 38/7
**political [3]** 22/25
34/18 34/21
**politics [1]** 22/25
**Pope [5]** 48/24 49/2
49/3 49/12 49/13
**pose [1]** 10/23
**position [8]** 26/4 42/10
56/7 57/7 57/8 71/19
74/18 76/12
**positions [1]** 64/19
**possess [1]** 59/25
**possible [3]** 71/22
72/13 72/21
**possibly [1]** 56/20
**posture [2]** 17/5 68/9
**postured [2]** 17/4 17/6
**potential [2]** 14/5 44/9
**potentiality [1]** 69/6
**potentially [2]** 62/2
71/23
**power [3]** 9/23 15/24
19/7
**powers [1]** 33/4
**practice [1]** 64/17
**precedential [1]** 61/22
**precluded [1]** 65/6
**predicate [2]** 28/16
35/13
**predicated [1]** 38/19
**preferred [3]** 18/18
19/5 45/7
**prefiling [1]** 29/25

**preliminary [48]** 1/14
2/23 3/18 13/24 16/8
16/9 19/2 19/18 22/9
23/14 31/24 33/24 34/3
38/17 41/2 43/6 43/10
45/1 45/5 52/12 53/22
54/14 55/6 56/3 58/12
58/15 59/4 59/7 61/14
61/16 63/3 63/4 63/19
66/2 66/11 66/13 67/13
67/15 67/20 68/2 68/13
69/13 69/16 70/11 71/3
74/24 75/15 75/25
**prepare [1]** 78/14
**present [5]** 51/23
58/23 60/14 61/13
63/20
**presentation [2]** 3/15
70/22
**presented [3]** 63/18
67/8 74/24
**presently [3]** 9/4 17/4
25/20
**preserving [1]** 42/4
**preset [1]** 3/15
**pretend [1]** 42/24
**pretending [1]** 34/16
**pretty [2]** 24/24 25/13
**prevail [3]** 14/24 15/13
15/17
**prevent [1]** 70/7
**prevented [1]** 67/22
**preventing [1]** 42/7
**prevention [1]** 42/5
**previously [3]** 3/8 68/4
74/22
**principal [3]** 40/3 44/5
47/10
**principle [1]** 59/18
**prior [12]** 27/5 31/13
32/20 51/13 53/23
64/17 66/17 69/23
74/14 74/22 75/3 75/11
**probably [4]** 75/24
76/6 76/8 77/25
**problem [6]** 23/11
28/24 33/17 34/5 36/13
39/23
**problematic [1]** 11/2
**problems [1]** 16/22
**procedural [1]** 28/19
**procedurally [2]** 23/12
77/7
**procedure [1]** 29/24
**procedures [1]** 3/14
**proceedings [3]** 1/8
79/5 79/8
**process [5]** 6/14 15/8
27/15 34/23 41/4
**produced [1]** 36/17
**product [1]** 48/8
**production [1]** 47/20
**profit [1]** 13/8
**prohibit [1]** 10/5
**prohibited [1]** 4/6
**promise [1]** 3/14
**promises [1]** 33/11
**prong [5]** 56/11 56/12
62/5 69/1 70/16

**prongs [3]** 53/25 67/16
66/16
**pronouncement [2]**
73/4 73/8
**proof [1]** 57/4
**proper [2]** 63/7 63/7
**properly [1]** 50/3
**properties [1]** 44/7
**property [15]** 4/12 6/3
6/4 6/9 8/5 14/3 14/3
30/14 55/15 61/17 64/4
64/5 65/3 66/6 66/7
**proposes [1]** 72/6
**prospectively [1]**
54/16
**protect [5]** 27/17 27/23
28/4 31/19 38/2
**protectable [2]** 60/8
61/8
**protected [8]** 8/8 8/10
8/13 17/8 47/2 47/23
51/1 62/2
**protecting [1]** 44/25
**protection [2]** 29/20
43/23
**protections [1]** 43/10
**prove [2]** 38/22 57/8
**provide [11]** 6/15
14/23 15/21 16/15
16/16 16/18 47/18 51/2
51/22 52/15 78/15
**provided [8]** 6/22 7/5
7/11 7/23 8/9 8/21
48/23 77/20
**provision [1]** 11/2
**provisions [1]** 20/22
**public [19]** 13/5 16/1
16/3 18/1 18/7 37/22
38/4 44/24 49/9 64/8
64/8 65/9 65/9 65/11
65/14 65/15 65/18
65/19 65/24
**pull [1]** 41/17
**purchase [6]** 33/12
35/24 36/1 36/2 43/22
44/4
**purchased [1]** 40/5
**purchaser [11]** 8/8
8/10 8/13 28/22 28/23
38/18 47/2 51/1 51/5
51/18 62/2
**pure [2]** 4/9 47/24
**purifier [1]** 21/16
**purifiers [1]** 21/17
**purported [2]** 15/18
44/3
**purportedly [5]** 8/1
25/4 28/3 54/4 67/23
**purpose [1]** 12/21
**purposes [14]** 32/10
38/13 40/21 41/12
53/13 58/23 59/20
61/15 63/2 66/25 70/19
74/24 75/15 78/2
**pursuant [4]** 5/16 25/4
67/2 67/15
**pursue [1]** 15/1
**pushback [1]** 36/25
**put [4]** 17/6 20/7 50/24

putative [1]** 9/24

**Q**

**question [30]** 3/3 3/9
3/12 9/3 10/10 14/11
19/21 23/18 25/20 27/9
27/22 29/19 30/8 41/13
41/14 43/6 43/8 43/12
49/5 49/14 51/25 53/17
53/17 55/17 56/10 70/3
70/24 73/23 75/18
76/10
**questions [6]** 49/10
52/6 58/3 58/6 64/11
76/16
**quick [3]** 9/10 45/4
49/16
**quickly [1]** 55/7
**quite [4]** 24/2 24/6
46/19 53/2
**quo [41]** 3/22 4/23 5/7
5/11 5/17 6/12 6/16
9/19 11/14 11/17 11/24
11/25 12/5 12/7 12/11
12/13 12/15 12/24
13/14 13/22 16/6 16/10
48/20 52/4 52/7 52/7
52/10 52/14 52/18
52/19 53/3 53/8 53/11
55/21 57/17 64/10
64/13 64/14 65/20
68/10 68/23
**quote [2]** 8/11 51/22

**R**

**raise [3]** 19/25 41/21
51/11
**raised [4]** 7/17 9/3
20/18 21/24
**raises [3]** 29/18 29/18
30/8
**raising [1]** 50/2
**rather [3]** 74/9 75/4
75/25
**RE [1]** 1/13
**reach [1]** 9/17
**read [4]** 8/6 39/24
62/23 62/24
**reading [1]** 54/22
**real [3]** 30/14 45/4 62/4
**realistically [17]** 59/3
6/19 62/8 63/1 63/8
63/13 64/9 64/18 64/22
65/18 66/22 66/24 67/1
68/9 69/4 69/24 71/13
**really [19]** 9/18 24/4
30/25 33/10 34/25 38/6
53/10 53/14 57/12 59/2
59/15 62/18 62/19
64/14 66/19 67/9 70/12
70/15 75/4
**reason [15]** 6/16 12/24
13/8 13/17 23/17 26/11
26/12 41/8 42/2 53/16
53/24 54/12 70/5 76/10
78/6
**reasonable [3]** 20/10
74/4 74/13

**reasoning [1]** 68/3
**reasons [3]** 15/15 22/9
64/10
**rebuttal [1]** 20/18
**recognize [1]** 50/18
**recognized [1]** 9/6
**recognizing [1]** 72/2
**record [15]** 2/5 2/6
14/13 14/15 15/23
20/16 20/19 51/6 52/1
53/4 56/24 56/25 57/14
61/4 75/21
**RECORDED [1]** 1/23
**recorder [3]** 1/23 2/4
21/12
**recording [1]** 21/10
**red [1]** 48/4
**reference [3]** 17/10
56/22 66/8
**referenced [1]** 18/16
**reflects [1]** 78/11
**refrain [1]** 6/11
**refute [1]** 8/9
**regard [2]** 14/17 73/15
**regarding [2]** 47/21
50/20
**regardless [2]** 22/22
43/12
**regards [22]** 3/6 25/21
60/20 63/9 63/14 64/2
64/11 64/13 64/15
64/19 65/3 65/4 66/2
66/15 66/20 66/6 69/9
69/22 70/3 74/18 75/11
77/17
**register [1]** 41/20
**reject [1]** 31/13
**rejected [4]** 6/24 7/20
30/11 30/17
**rejects [1]** 14/17
**relate [4]** 24/20 50/23
50/24 57/19
**related [8]** 1/10 7/7
15/21 23/15 61/12
61/12 62/20 69/3
**relates [5]** 9/4 15/11
33/4 52/3 62/18
**released [1]** 70/20
**reliant [1]** 3/23
**relief [29]** 3/5 3/6 14/10
15/2 17/11 17/7 22/13
23/15 24/11 24/12
24/19 25/21 33/25
34/17 43/11 43/12
43/14 44/19 52/4 53/25
54/2 55/6 62/21 66/7
67/14 74/14 74/20
74/25 75/25
**relook [1]** 21/1
**rely [1]** 7/12
**remain [1]** 16/23
**remaining [1]** 19/10
**remedy [2]** 23/24 24/4
**remember [6]** 32/21
37/16 40/21 42/8 49/19
62/21
**remote [1]** 62/13
**remotely [1]** 17/23
**remove [6]** 4/15 11/1

**R**

**remove... [4]** 11/4 11/6 11/7 53/8
**removed [2]** 5/19 20/13
**repeatedly [2]** 37/4 37/5
**rephrased [1]** 25/6
**reply [8]** 2/23 3/1 24/25 27/18 40/20 47/18 56/11 58/14
**REPORTING [1]** 1/23
**representations [1]** 72/24
**represented [1]** 35/4
**Republicans [2]** 27/1 31/14
**request [21]** 3/21 4/25 6/12 9/4 11/11 11/25 12/7 12/9 12/13 12/16 52/3 53/25 54/21 56/17 56/17 56/18 66/15 67/19 72/15 75/23 78/13
**requested [4]** 3/5 3/6 67/15 69/8
**requesting [1]** 69/1
**require [1]** 25/7
**required [6]** 7/13 48/20 31/25 38/16 39/7 46/12
**requirement [3]** 8/15 47/15 65/13
**requirements [2]** 39/18 65/14
**requires [3]** 17/11 59/20 59/24
**requisite [1]** 20/10
**rescinded [1]** 51/13
**rescission [1]** 35/23
**reserved [1]** 16/24
**resolution [5]** 18/19 18/20 22/5 45/9 49/4
**resolved [5]** 60/25 62/10 63/16 63/21 64/16
**respectfully [1]** 41/7
**respective [1]** 41/9
**respond [2]** 20/17 40/20
**responding [1]** 49/21
**response [1]** 16/11
**rest [3]** 27/2 78/17 78/17
**restate [1]** 74/12
**restated [14]** 3/25 4/14 9/6 10/8 10/13 10/22 11/3 12/17 15/4 15/18 25/5 46/23 56/20 67/23
**restatement [1]** 47/13
**restrain [9]** 3/23 5/2 5/9 14/25 25/3 27/19 29/5 31/22 55/14
**restrictions [2]** 9/16 33/7
**result [1]** 11/8 17/16 60/17
**retract [1]** 38/13
**retroactive [1]** 14/18

**retroactively [2]** 14/16 14/19
**returned [1]** 67/2
**returning [1]** 66/21
**reverse [1]** 31/16
**Richard [1]** 10/1
**right [65]** 4/12 6/3 6/4 14/3 14/4 16/23 17/1 17/3 22/23 23/24 24/6 24/25 25/20 25/23 25/24 26/1 26/14 26/16 27/12 29/23 30/5 30/15 30/16 30/21 30/21 30/22 30/23 37/13 37/14 39/25 40/19 40/21 40/22 41/1 41/3 41/7 41/10 43/15 43/16 44/19 49/24 50/1 52/8 52/8 53/1 55/15 55/17 55/18 56/1 56/12 59/21 59/25 60/7 61/17 62/22 64/5 65/10 65/12 68/7 70/23 71/14 72/16 72/18 77/8 77/12
**rights [64]** 5/8 11/12 12/8 12/14 14/3 14/18 14/19 14/22 17/8 17/17 18/18 18/19 18/22 19/14 22/21 22/22 23/4 23/6 25/8 25/18 26/13 26/20 27/9 27/13 28/12 29/7 29/9 29/14 29/14 29/16 29/20 30/10 30/10 30/12 30/14 30/15 30/24 32/13 45/8 45/8 50/6 50/9 50/13 50/15 50/15 50/17 54/6 56/14 57/22 61/20 63/14 66/6 68/16 68/19 68/20 68/25 69/3 69/10 69/21 70/2 70/8 70/11 74/16 74/20
**ripe [4]** 60/9 62/6 62/8 62/14
**ripeness [1]** 63/6
**risk [1]** 13/6
**Roethlisberger [1]** 59/22
**role [1]** 61/11
**roll [1]** 72/4
**rule [1]** 51/15
**rules [1]** 58/22
**ruling [4]** 41/12 58/19 75/3 75/11
**rulings [2]** 13/13 75/11
**run [2]** 35/5 45/4
**running [1]** 57/16
**Rust [1]** 71/7

**S**

**S-z-i-l-a-g-y-i [1]** 60/2
**said [15]** 18/6 23/18 24/3 28/1 35/23 37/1 38/15 42/1 49/6 53/20 53/21 68/4 70/17 73/22 77/13
**same [21]** 12/20 16/22 17/15 17/15 17/16 18/15 19/17 20/12 35/5

**38/4 38/15 41/13 44/7 50/7 63/18 71/12 72/2 72/8 72/18 72/20 73/1 77/10
**saw [1]** 51/10
**say [25]** 19/1 20/1 23/20 27/4 27/21 28/4 30/6 32/10 32/11 32/17 33/3 36/10 36/13 38/5 39/2 39/25 40/1 42/3 42/17 43/2 43/21 44/1 57/12 69/25 71/9
**saying [17]** 18/12 18/25 26/12 38/7 39/4 40/6 41/24 51/19 54/12 54/17 55/9 55/23 65/5 66/7 67/4 67/4 70/13
**says [15]** 19/12 28/24 31/21 32/2 32/6 32/11 32/16 32/18 33/6 33/18 34/3 41/21 42/18 43/19 57/3
**schedule [2]** 64/21 72/23
**scope [9]** 3/5 54/2 56/17 63/3 64/11 66/13 67/12 67/14 68/2
**screening [1]** 29/25
**SEC [2]** 13/6 13/7
**second [11]** 9/10 14/9 17/18 17/21 36/17 40/1 44/10 49/16 67/18 75/4 75/7
**Secondly [1]** 27/16
**Section [4]** 33/3 33/18 33/21 47/14
**Section 5 [1]** 33/3
**Section 5.03 [1]** 47/14
**Section 6C [1]** 33/21
**securities [1]** 44/6
**see [14]** 19/25 22/12 27/16 28/10 32/2 32/2 38/24 39/3 43/17 64/12 72/1 72/6 72/16 76/12
**seeing [1]** 57/23 64/23 68/12
**seek [2]** 17/1 17/7
**seem [1]** 65/5
**seemed [1]** 36/8
**seems [1]** 54/11
**sees [1]** 64/14
**self [1]** 68/5
**self-help [1]** 68/5
**send [1]** 30/2
**sentences [1]** 40/2
**separate [3]** 28/19 28/20 51/22
**separately [1]** 77/1
**series [23]** 17/11 17/16 18/14 18/21 19/6 19/11 19/13 19/19 20/13 21/24 22/4 22/4 45/3 45/19 45/21 46/24 48/21 48/21 48/22 48/25 49/12 50/5 64/11 48/21
**Series I [3]** 46/24 48/21 48/21
**Series J [2]** 48/25 49/12
**Series J-1 [1]** 19/13

**Services [3]** 71/7
**set [10]** 15/19 18/9 30/14 39/21 45/9 59/14 59/21 61/5 64/17 64/20
**setting [1]** 2/21
**settlement [1]** 13/17
**shall [2]** 32/16 32/17 39/12 70/18
**SHANKS [13]** 1/17 2/12 3/19 17/10 18/16 21/8 21/11 22/15 26/9 71/24 72/5 72/14 76/7
**Shanks' [1]** 32/7
**share [3]** 27/23 35/14 45/13
**shareholder [48]** 9/2 9/24 10/6 10/25 12/8 14/11 14/14 14/19 24/10 25/18 29/7 29/9 29/14 29/20 30/7 30/10 30/10 30/12 30/13 30/13 31/3 44/16 44/17 44/18 44/20 44/21 44/23 48/19 48/19 50/16 52/20 53/3 54/6 55/12 56/22 56/23 57/14 57/22 61/4 62/1 68/19 68/20 68/25 69/10 69/21 70/2 70/8 70/10
**shareholders [37]** 4/17 4/18 7/1 9/7 9/23 11/7 11/7 12/22 12/23 14/12 16/25 17/8 22/20 22/22 22/23 25/8 26/23 29/15 31/4 31/7 31/11 38/3 44/22 44/25 45/1 46/25 50/13 50/14 50/17 50/17 51/25 56/13 56/23 56/25 57/15 57/19 69/2
**shareholders' [3]** 5/13 12/14 68/16
**shares [25]** 3/10 4/11 19/6 24/8 28/3 30/17 33/8 33/13 35/1 35/3 35/16 35/22 35/24 37/3 37/10 38/1 38/2 38/4 43/5 44/4 48/9 55/20 55/23 56/6 62/3
**she [2]** 8/23 21/8
**she's [1]** 26/9
**shifting [1]** 16/15
**short [2]** 46/11 76/6
**shortening [1]** 21/25
**should [22]** 5/16 6/6 6/16 9/1 11/17 13/8 13/18 20/4 28/25 35/16 50/10 54/14 55/21 55/23 56/6 56/8 63/9 66/1 66/4 66/11 66/20 67/13
**shouldn't [1]** 38/21
**show [4]** 20/2 43/3 44/13 60/6
**showing [2]** 59/25 62/9
**shown [4]** 61/15 62/8 63/13 66/19
**shows [1]** 69/12

**sidelines [1]** 26/24
**Sides [1]** 68/8
**signatories [2]** 9/22 10/1
**signed [5]** 14/13 15/24 18/19 18/21 56/24
**significant [2]** 4/13 60/1
**signing [1]** 57/6
**signs [1]** 10/2
**Silva [7]** 2/18 10/1 10/4 11/3 25/11 25/17 47/5
**similar [1]** 53/17
**similarly [2]** 7/20 63/18
**simple [9]** 3/21 22/6 24/24 29/15 37/8 44/12 44/17 46/12 46/15
**simply [2]** 16/5 42/13
**simultaneously [3]** 4/7 5/22 6/3
**since [12]** 3/17 13/10 16/6 52/7 66/15 67/1 67/12 68/21 70/19 75/10 76/12 76/13
**Singal [5]** 33/11 36/18 36/25 37/5 44/5 50/20
**single [5]** 35/14 35/14 45/1 45/13 60/7
**sister [1]** 7/7
**sit [1]** 27/2
**sitting [1]** 26/23
**sky [1]** 20/4
**slash [1]** 59/1
**smooth [1]** 71/21
**so [185]**
**some [27]** 2/25 3/10 11/11 11/20 13/17 13/17 19/24 26/20 29/13 35/6 35/7 38/3 48/23 50/19 52/16 54/1 55/24 63/8 69/15 70/2 70/6 70/11 71/13 71/22 71/23 75/13 75/21
**somebody [4]** 18/2 35/18 38/6 44/13
**somehow [6]** 34/2 61/19 61/21 69/15 70/1 71/9
**someone [6]** 17/19 17/21 18/7 24/16 29/25 37/1
**something [13]** 6/5 12/12 21/9 21/12 21/17 23/1 28/14 40/22 43/14 60/14 64/5 73/6 77/23
**Sometimes [1]** 21/16
**somewhat [2]** 53/17 54/11
**soon [1]** 72/21
**sorry [10]** 17/20 18/10 29/12 29/12 32/23 37/10 39/24 40/12 45/6 55/16
**sort [8]** 11/11 11/20 35/6 35/8 50/11 51/23 73/24 75/21
**sounds [1]** 30/25
**speaking [1]** 21/21
**special [2]** 2/21 29/13

**S**

specific [4]   12/9 44/20
52/15 58/1
specifically [3]   16/24
21/23 56/3
speculation [4]   32/7
32/8 47/24 48/5
speculative [1]   14/7
speed [1]   20/4
spirit [1]   4/4
square [3]   29/8 29/19
34/25
squirrely [1]   72/25
stake [1]   62/3
stamp [2]   36/20 36/24
stand [2]   14/9 44/11
standard [2]   59/6
61/14
standards [8]   3/12
49/23 56/3 60/13 63/9
63/11 65/25 66/10
standing [4]   5/21 6/4
6/5 6/7 6/9 6/14 8/2 8/4
11/15 15/1 29/22 29/23
55/10 55/11 59/2 59/14
59/17 59/20 62/1 62/17
71/17
standpoint [1]   19/25
start [3]   16/22 46/19
46/21
started [2]   47/3 49/18
state [4]   50/2 55/22
59/16 65/13
stated [7]   49/22 61/25
64/24 69/5 69/17 73/13
75/13
statement [9]   22/16
24/5 29/18 30/8 36/14
36/15 47/16 69/11
77/18
statements [3]   49/21
56/15 71/5
States [1]   59/19
stating [3]   42/3 52/13
55/19
status [44]   3/22 4/23
5/7 5/11 5/17 6/12 6/16
9/19 11/14 11/17 11/23
11/25 12/4 12/7 12/11
12/13 12/15 12/16
12/24 13/14 13/22 16/6
16/10 48/20 52/4 52/7
52/7 52/10 52/14 52/17
52/19 53/3 53/8 53/10
55/21 57/17 64/10
64/13 64/14 65/1 65/16
65/20 68/10 68/23
statute [2]   7/12 65/10
statutes [3]   7/7 8/14
58/22
statutorily [1]   17/8
statutory [5]   7/19
47/21 47/22 65/13
65/14
stay [2]   67/5 75/24
step [3]   4/10 35/2
43/14

Stew [1]   52/21
still [17]   9/7 19/24 22/9
36/14 37/8 67/7 75/15
stipulate [2]   73/16
73/19
stipulation [1]   73/14
stock [86]
stockholder [1]   64/3
stockholders [1]   66/21
stocks [1]   55/12
stop [10]   3/24 9/9
12/13 13/1 13/20 22/20
29/24 30/9 49/16 54/11
straight [2]   35/10
59/10
straightforward [1]
4/25
street [1]   42/23
Strohecker [1]   47/11
strong [1]   25/13
structure [1]   61/13
subject [1]   63/15
submitted [1]   39/14
70/13
subparagraph [1]
70/13
Subpart [4]   7/12 7/17
7/21 57/21
Subpart 2 [1]   57/21
Subpart 3 is [1]   7/17
Subpart 3 of [1]   7/12
Subpart is [1]   7/21
subsections [1]   59/11
subsequent [1]   54/1
substantial [2]   60/17
62/4
substantive [4]   39/6
41/18 41/25 42/16
subsumed [4]   57/21
57/23 57/25 69/9
success [14]   14/10
15/20 19/20 20/2 20/10
20/11 21/3 34/8 37/20
37/24 44/19 74/4 74/21
75/16
successors [2]   67/22
69/14
such [4]   35/18 53/11
56/14 69/3
sudden [1]   13/11
sue [2]   29/23 44/19
suffer [1]   63/12
sufficient [4]   25/25
31/7 47/16 67/8
sufficiently [1]   62/12
suit [2]   6/7 29/25
sum [1]   37/16
summary [18]   6/13
11/15 14/21 15/14
16/22 18/15 19/23 22/8
23/20 43/13 48/25
49/13 49/19 49/19
49/23 58/16 75/3 75/10
super [1]   62/23
superpriority [1]   29/14
supplement [2]   42/12
53/12
supplemental [1]   15/8
supplied [1]   57/10
support [5]   6/22 37/6

39/20 42/9 42/21
supported [3]   11/20
22/10 43/8
Supreme [1]   49/5
sure [18]   3/11 17/22
17/23 18/7 18/14 21/11
23/19 23/22 39/11 58/7
68/24 71/12 71/18 74/1
74/7 74/7 75/21 76/9
Suwyn [1]   36/10
system [1]   22/25
Szilagyi [1]   60/2
Szkaradeks [2]   33/11
45/25

**T**

t's [1]   60/18
T-e-s-t-a [1]   60/3
take [24]   3/9 6/5 6/24
10/25 14/19 22/18 35/5
41/6 41/11 45/10 46/23
51/22 54/17 56/8 57/11
58/21 58/22 63/23 66/1
66/20 68/5 68/15 75/23
76/3
taken [10]   6/6 8/6 14/8
34/13 53/19 53/19
53/21 67/17 68/25
69/21
takes [1]   36/4
taking [15]   3/23 29/6
45/13 56/12 57/22
58/21 64/18 67/9 67/10
67/22 68/4 68/15 69/1
70/13 74/19
talk [2]   42/6 48/25
talked [1]   22/2
talking [1]   30/4
talks [2]   19/3 66/5
Tandem [1]   21/8
technical [1]   28/19
teed [1]   77/11
telephone [1]   21/8
tell [11]   2/24 3/2 5/6
6/21 31/5 31/11 31/12
32/4 36/21 47/25 48/3
telling [1]   9/7
tells [1]   11/10
term [1]   56/1
terms [3]   43/18 67/23
70/25
Testa [1]   60/3
testifying [1]   40/8
text [2]   36/17 36/22
tha [1]   60/20
than [18]   4/17 12/22
16/5 18/1 24/17 26/23
27/9 43/20 43/24 57/9
66/20 69/5 71/2 74/9
75/5 75/5 77/2 78/8
thank [18]   2/14 3/19
9/14 16/13 18/11 21/22
46/15 46/16 46/18
49/25 58/9 73/11 73/20
76/20 76/22 78/17 79/1
79/2
Thanks [1]   2/19
that [545]
that's [92]

Thatcher [2]   66/4 66/8
their [38]   7/24 16/3
16/19 16/20 17/8 19/20
24/25 28/8 28/12 28/21
28/25 30/12 30/18 31/3
31/4 31/25 32/5 33/13
34/2 34/19 35/5 35/21
36/5 36/20 37/9 37/20
37/21 38/24 41/9 42/25
42/25 42/25 48/11
50/13 50/15 50/15
61/21 62/2
them [27]   9/19 13/13
14/8 15/4 16/9 17/4
23/6 24/3 24/9 24/9
24/11 27/10 28/15 30/9
31/14 33/13 36/4 43/2
43/7 45/14 48/14 50/15
55/3 57/11 57/14 62/3
75/6
themselves [1]   28/5
then [39]   3/15 4/3 5/22
6/3 12/2 13/1 19/14
21/21 22/8 26/19 26/20
27/2 31/15 31/21 37/1
37/3 39/7 40/19 43/18
44/15 46/8 52/9 54/17
54/18 56/21 57/15 62/6
62/25 64/7 65/25 66/10
68/15 71/7 71/10 71/15
72/15 74/9 76/11 77/13
theory [1]   6/24
there [83]
there's [39]   2/24 5/19
7/23 11/16 17/4 19/12
20/5 27/3 30/14 30/15
32/14 33/9 33/22 37/18
38/20 38/21 39/23
45/19 49/6 49/9 50/8
50/8 50/9 52/9 54/18
62/12 62/30 64/23
66/15 66/19 68/12
68/13 68/24 71/4 71/15
72/3 72/3 74/13 77/4
therefore [14]   36/15
43/9 51/13 61/18 62/5
62/13 63/5 65/21 66/24
68/23 68/24 69/19 70/9
74/19
therein [1]   59/11
thereof [2]   59/15 70/23
THERESE [3]   1/17
2/12 3/19
thereto [1]   67/11
these [37]   5/16 9/7 9/8
10/7 10/11 10/22 11/2
12/11 12/16 12/18
12/22 13/4 13/15 14/5
14/6 14/7 15/22 15/23
27/9 31/10 33/20 34/3
34/10 34/12 34/14
35/16 45/13 47/21
50/12 51/12 52/16 53/5
56/24 57/5 57/12 57/19
62/9
they [141]
they're [24]   10/24 15/4
17/24 22/18 23/6 25/9
28/4 31/1 31/3 31/11

34/9 34/15 34/15 34/23
44/11 37/23 37/24 44/16
44/17 51/23 56/23
57/13 62/2 65/5
they've [2]   13/11 24/22
thief [2]   38/3 38/6
thing [8]   24/9 27/12
31/6 34/1 58/7 63/16
71/10 77/17
things [15]   24/19 25/1
26/20 34/10 34/12
37/17 52/9 56/1 56/16
57/14 58/17 58/19
65/16 66/14 77/5
think [34]   4/9 4/25 5/5
5/5 5/16 9/1 12/10
14/23 15/5 15/12 15/13
15/17 15/20 18/8 21/23
26/16 27/3 36/18 36/19
37/19 39/7 42/15 50/3
54/25 55/1 55/2 55/11
56/5 56/6 57/25 72/19
72/25 74/12 78/9
thinks [3]   13/18 18/2
65/2
third [19]   5/2 5/9 5/10
13/4 13/9 16/1 26/20
29/5 47/13 51/8 51/10
51/21 55/24 56/11
56/12 69/1 69/15 70/16
75/5
third-party [1]   69/15
this [193]
those [35]   5/18 7/15
8/19 9/20 10/6 15/5
18/18 22/22 22/23 23/3
23/6 32/15 35/12 37/7
40/20 43/4 45/8 48/12
51/3 53/13 53/23 54/8
55/24 56/14 57/24
57/25 58/3 59/2 61/22
63/21 64/11 65/23
67/16 69/3 69/17
though [4]   18/23 35/17
35/17 57/21
thought [1]   58/5
threat [1]   10/23
three [10]   12/20 12/20
32/17 32/18 32/19 33/1
51/7 57/23 69/19 70/17
threshold [1]   43/12
through [18]   14/1
16/19 25/1 25/15 25/16
33/19 45/4 46/8 47/4
47/5 47/5 47/6 69/17
71/2 72/4 74/3 74/17
74/17
thrust [2]   5/20 7/25
thus [1]   61/2
tied [1]   37/22
Tifford [1]   61/24
time [30]   3/4 8/24 12/9
21/25 36/20 36/24
37/13 38/7 38/20 40/22
41/10 41/22 42/10 44/1
52/1 52/20 53/11 53/18
56/14 69/3 71/23 71/24
72/3 72/22 75/23 76/20
77/19 78/7 78/13 78/18

**T**

times [3] 10/2 64/15 68/20
tired [1] 54/7
title [4] 8/14 17/12 44/7 51/3
today [15] 2/20 15/11 15/16 18/23 22/7 38/14 45/17 46/13 49/20 57/3 58/16 58/18 75/23 76/3 77/6
today's [2] 53/13 74/24
together [2] 31/14 73/1
told [2] 10/20 40/6
tomorrow [4] 67/2 70/20 71/1 72/22
too [6] 12/4 12/24 23/14 37/10 73/19 76/7
took [2] 8/14 8/16
topples [1] 17/12
total [2] 66/24 67/6
totality [1] 66/23
totally [2] 27/13 33/5
towards [1] 19/7
tradition [1] 25/13
TRAN [1] 1/1
transaction [5] 28/25 44/8 48/8 48/10 50/23
transactions [1] 43/24
transcribed [2] 1/23 79/8
Transcriber [1] 79/12
transcript [6] 1/8 1/13 77/1 77/18 77/21 78/1
transfer [2] 33/12 42/19
transferability [1] 33/7
transfers [1] 7/14
treat [2] 61/4 75/1
treated [1] 17/11
treatment [1] 20/12
trial [5] 40/23 41/1 64/17 64/18 64/22
tried [1] 10/25 10/25
trigger [1] 24/9
triggered [1] 30/24
TRO [14] 3/4 4/2 6/25 11/5 27/25 53/18 63/17 63/17 63/18 66/16 67/1 67/7 70/25 71/9
true [2] 43/11 57/4
truly [1] 79/7
trust [2] 78/10
try [4] 21/3 61/20 65/16 77/20
trying [18] 9/18 13/20 15/4 23/5 28/4 33/16 34/22 34/23 42/13 53/4 53/5 54/20 55/25 57/12 61/21 64/12 65/16 77/21
TTP [1] 51/20
TTP's [1] 8/24
TTP8 [53] 5/24 5/25 7/13 7/14 7/16 8/21 11/12 11/20 11/22 12/2 14/11 17/2 27/17 27/24 28/4 28/7 28/8 28/11

**U**

UCC [2] 8/16 8/17
Uh [5] 2/7 23/25 49/15 77/9 77/16
Uh-huh [4] 2/7 23/25 77/9 77/16
Uh-oh [1] 49/15
ultimately [2] 62/11 64/16
unanimous [1] 10/19
unclear [2] 13/4 54/1
under [32] 3/24 5/14 6/20 7/6 7/7 7/17 8/5 8/13 9/19 10/19 12/16 12/18 12/19 27/25 39/1 47/9 50/4 51/12 52/23 54/8 55/12 56/3 61/17 62/14 67/23 70/25 71/6 73/13 74/20 75/4 78/7 78/13
underlying [6] 11/12 28/24 33/20 43/25 60/13 60/23
undermine [1] 4/6
understand [2] 57/7 57/7
undisputed [4] 35/13 36/3 43/7 48/5
undo [1] 33/14
unilateral [1] 63/6
unilaterally [6] 5/13 6/20 7/4 7/22 28/7 55/12
unintended [1] 71/13
unique [1] 64/4 64/6 66/7
uniquely [1] 16/24
United [1] 59/19
universal [1] 63/6
unless [2] 28/2 29/25
unnecessary [1] 27/13
unproven [3] 7/1 14/19 44/3
unquestionably [2] 5/6 8/3
unquote [1] 8/11
unspecified [1] 33/4

until [15] 5/7 6/12 10/8 12/5 13/16 19/22 19/24 23/13 27/5 27/14 28/2 53/2 53/11 56/13 69/3
unusual [1] 31/17
unwind [3] 9/8 9/15 53/5
up [22] 2/25 21/3 21/6 35/11 37/16 38/20 39/22 40/12 40/22 41/10 42/10 44/11 45/6 46/5 53/2 71/17 75/23 76/1 76/7 76/9 77/6 77/11
Upchurch [1] 60/10
upfront [1] 13/19
upon [19] 3/23 6/11 7/1 7/12 9/16 11/25 12/5 14/8 14/19 27/19 48/11 54/4 54/13 55/2 55/4 56/9 56/12 69/1 70/22
us [14] 4/1 4/5 15/21 20/1 27/2 43/2 43/2 48/12 48/13 49/8 51/21 53/12 56/21 57/10
use [2] 45/20 56/1
used [2] 39/20 45/22
utilize [1] 41/12

**V**

valid [40] 5/18 9/25 10/5 12/6 15/25 16/24 19/14 24/17 27/6 29/20 30/6 30/18 31/3 32/1 32/3 34/15 35/1 37/23 37/23 37/24 38/1 38/3 38/4 38/16 44/12 44/16 44/17 44/18 44/23 44/25 46/14 46/14 48/18 48/19 55/2 56/8 57/2 57/18 60/24 70/22
validity [10] 4/19 10/7 10/8 10/10 15/2 20/6 26/11 53/12 56/14 63/20
validly [6] 24/8 25/7 35/3 35/14 50/5 57/19
value [1] 8/22
variety [1] 62/9
various [3] 3/10 63/8 66/21 68/20 68/21
VEGAS [1] 2/1
verbiage [1] 3/8
version [1] 70/15
versus [17] 2/9 7/18 47/11 48/24 49/22 49/3 54/1 59/16 59/22 60/2 60/10 60/18 61/24 62/14 64/4 66/8 71/7
very [13] 14/1 26/20 44/12 46/15 46/16 50/16 51/16 55/6 55/7 55/6 70/12 78/9 78/18
vested [1] 6/8
vexatious [1] 30/1
Via [1] 1/17
vibrating [1] 21/13

video [4] 47/23 53/15 47/6 79/8
view [3] 67/1 69/8 73/12
viewed [6] 53/22 54/22 68/7 71/6 73/4 73/8
viewing [1] 67/5
viewpoint [1] 3/5
viewpoints [1] 3/7
violated [4] 34/11 34/12 51/14 57/2
violates [1] 4/3
violation [2] 4/18 10/9
virtually [1] 7/19
vision [1] 23/12
voice [1] 27/14
void [5] 5/19 10/16 10/23 11/8 14/5
vote [5] 9/11 19/15 45/23 46/1 57/14
voted [2] 50/13 50/14
votes [7] 19/6 45/15 45/20 45/21 56/12 57/12 69/2
voting [14] 9/23 14/22 15/24 17/17 18/18 18/18 18/22 19/7 19/13 32/13 45/8 45/8 50/5 50/9

**W**

waited [1] 19/22
waiver [1] 11/20
walk [1] 71/2
walking [1] 29/24
want [40] 3/14 3/21 5/17 9/9 11/13 13/14 13/21 13/22 16/9 17/23 18/7 21/5 22/23 23/7 25/12 26/13 27/7 27/10 32/4 33/14 37/9 37/9 46/7 50/2 50/3 52/1 68/4 68/5 70/6 71/8 71/11 71/12 71/21 71/24 72/17 72/20 77/5 77/12 77/18 77/19
wanted [8] 12/22 12/23 34/11 64/21 71/9 75/20 75/25 76/7
wants [7] 11/19 12/11 22/7 23/13 28/13 43/13 50/18
warrants [1] 66/6
was [101]
wasn't [11] 8/24 25/10 25/10 25/11 36/15 47/17 51/21 53/21 54/13 58/1 68/11
watching [1] 26/24
way [16] 12/8 22/25 23/9 26/16 34/6 36/6 36/25 37/4 37/10 38/21 41/14 42/4 42/23 63/21 64/18 69/11
ways [6] 6/2 11/24 52/2 59/1
we [162]
we'd [1] 35/20
we'll [7] 12/22 21/21

we're [28] 2/6 2/6 9/18 11/24 13/19 16/8 17/19 20/13 22/8 24/10 24/11 24/12 27/4 27/6 30/4 30/8 31/6 41/1 48/20 51/21 52/17 53/22 54/3 55/9 57/12 64/9 71/22 71/23
we've [8] 6/22 7/5 7/11 14/24 47/22 48/15 65/10 71/4
WEDNESDAY [1] 1/12
week [1] 78/17
weird [1] 57/6
welcome [1] 18/1
well [36] 5/16 5/25 12/22 12/23 13/15 14/17 17/5 22/17 22/21 24/14 28/7 29/15 30/20 32/1 33/8 33/19 39/23 40/6 40/13 43/20 45/10 47/6 50/12 52/15 55/6 56/19 60/9 63/9 65/9 65/10 68/14 72/1 72/19 72/23 74/23 75/11
went [5] 13/12 31/2 32/1 31/13 74/3
were [23] 10/17 14/12 18/12 19/23 31/8 33/13 41/23 49/22 51/2 51/25 53/4 53/7 53/19 54/9 55/20 56/6 56/7 56/9 71/6 73/4 73/13 76/11 77/6
weren't [6] 42/11 50/7 53/5 53/5 53/20 57/6
what [117]
what's [4] 31/23 34/5 34/18 53/13
whatever [7] 3/8 12/5 18/3 28/13 41/12 76/5 78/3
when [20] 9/19 11/21 14/13 17/6 23/15 28/23 40/5 46/4 52/16 52/17 54/22 55/17 56/1 57/11 61/13 62/2 63/3 64/17 74/3 74/17
Whenever [1] 78/4
where [21] 7/20 20/1 25/19 39/2 40/16 41/9 41/20 42/19 42/19 42/19 42/20 46/19 49/2 51/6 51/21 54/10 61/13 66/5 66/14 70/24 72/20
whether [37] 6/9 6/19 9/3 12/6 19/10 20/3 20/4 24/15 26/14 27/5 27/8 27/9 30/3 33/24 36/25 37/23 40/10 43/9 43/13 43/13 43/14 43/18 57/19 58/25 59/1 59/10 60/23 61/8 62/17 62/25 63/7 63/9 67/2 68/4 68/9 70/4 75/14
which [64] 4/12 4/14 4/15 6/24 8/2 8/2 10/18

TTP's [3] 29/3 44/5 51/8
turn [3] 22/15 34/25 37/12
turning [2] 13/8 38/18
turns [1] 5/22
two [10] 22/24 24/10 30/20 34/19 37/7 42/23 55/24 58/25 59/2 77/5
two years [1] 22/24
two-way [1] 42/23
type [2] 64/12 76/16

**W**

**which... [57]** 11/6
13/16 13/23 17/9 17/16
18/15 18/16 19/2 22/2
23/8 24/10 24/11 26/22
27/22 29/6 30/10 31/2
31/13 31/20 32/17 33/1
33/4 33/20 34/20 34/24
35/1 36/13 37/4 37/17
38/16 38/18 38/25
40/14 41/18 42/17
43/25 44/7 44/15 51/1
54/13 59/24 60/2 60/16
60/19 60/21 61/7 63/15
63/17 64/21 68/7 68/22
70/15 70/18 75/22
75/22 77/14 77/19
**while [6]** 4/7 19/9
21/21 61/11 70/11 78/8
**who [15]** 3/7 5/3 9/23
15/24 17/19 26/21
26/23 27/17 29/16
34/21 35/4 37/1 45/13
50/13 50/14
**whole [4]** 13/12 14/17
27/12 75/9
**wholly [2]** 50/22 50/22
**whom [2]** 5/4 5/15
**whose [6]** 4/18 4/19
14/11 26/12 39/13
50/16
**why [30]** 6/16 11/16
11/19 13/4 13/8 13/17
18/25 22/9 23/17 28/11
31/22 34/16 38/7 41/4
41/8 41/13 41/24 42/2
42/21 48/20 53/16
53/24 54/12 55/3 55/25
57/5 57/5 70/5 76/10
78/6
**will [39]** 2/24 2/25 3/2
3/9 5/12 6/15 6/18 13/3
14/23 15/9 15/9 15/12
15/14 15/17 16/18
20/18 21/24 29/6 33/7
37/1 37/12 41/17 42/5
42/6 42/16 44/14 48/1
48/3 60/17 63/4 63/12
63/23 66/11 71/16
72/21 75/22 76/4 76/6
78/10
**Williams [1]** 79/12
**win [1]** 31/15
**wish [3]** 12/8 77/8
78/16
**within [2]** 57/23 59/6
**without [8]** 8/18 10/6
13/13 35/19 36/24
69/23 70/2 76/11
**won't [2]** 44/14 75/23
**word [1]** 46/17
**work [3]** 14/16 70/6
73/1
**works [4]** 22/25 26/15
37/11 38/22
**worries [3]** 3/16 18/6
32/24
**would [61]** 3/8 4/14

4/18 4/20 7/13 10/5
10/16 11/8 11/11 13/4
14/16 15/16 16/5 17/7
19/24 20/1 20/15 20/19
21/20 27/22 28/20
33/12 39/22 40/19
42/21 44/23 47/17
47/19 50/6 50/19 50/24
52/18 52/21 52/23
52/25 55/2 57/1 57/2
57/5 57/5 58/2 60/21
63/25 64/3 66/23 66/24
67/2 67/7 68/6 68/24
69/8 70/1 70/9 70/10
70/12 71/14 72/9 72/20
73/1 74/19 76/25
**wouldn't [1]** 61/19
**wrap [1]** 46/5
**write [2]** 37/2 75/22
**writing [3]** 71/6 73/5
73/14
**written [10]** 10/19
18/19 18/20 22/5 45/9
56/21 72/20 73/5 73/8
78/1
**wrong [3]** 23/12 32/8
33/19

**X**

**XXXI [1]** 1/6

**Y**

**yeah [10]** 9/15 18/4
36/10 36/10 36/11 54/3
75/6 75/7 77/25 78/5
**year [1]** 22/24
**years [3]** 12/21 22/24
53/9
**Yep [1]** 76/14
**yes [18]** 13/24 16/13
18/24 26/3 26/11 28/19
28/24 38/19 38/20
46/18 48/9 51/4 58/9
60/25 63/12 72/9 72/12
73/16
**yet [4]** 9/18 60/25
63/15 64/20
**you [209]**
**you'd [2]** 52/11 68/6
**You'll [1]** 27/21
**you're [18]** 2/5 3/11
20/23 37/16 52/13
52/13 54/2 54/16 54/20
55/20 64/17 71/17 72/6
73/3 76/13 77/10 77/20
77/21
**you've [2]** 21/12 62/7
**your [65]** 2/11 2/12
2/16 3/12 3/17 3/19
4/22 6/21 9/6 18/5
18/11 18/12 20/22
20/24 21/12 22/7 23/13
24/6 24/11 26/1 26/4
26/20 28/10 28/13
28/13 39/2 40/1 43/2
46/3 46/18 49/19 52/10
52/12 53/24 54/11
54/14 54/19 54/19
54/21 55/1 56/10 56/11

56/20 58/9 64/21 64/22
71/19 71/24 72/7 72/8
72/9 72/14 73/7 73/7
73/15 73/19 75/25
76/18 76/20 77/18 78/9
78/17 78/17 78/18 79/2
**yours [1]** 76/23
**yourself [1]** 21/21

**Z**

**zero [1]** 20/11