Electronically Filed
3/29/2023 6:48 PM
Steven D. Grierson
CLERK OF THE COURT

LEX DOMUS LAW
Daniel S. Cereghino, Esq., SBN 11534
Brandi M. Segura, Esq., SBN 11710
1712 Tesara Vista Place
Las Vegas, Nevada 89128
Telephone: (702) 533-4661
Facsimile: (702) 472-8605
dan@lexdomuslaw.com
brandi@lexdomuslaw.com
*Attorneys for Defendants*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| INNOVATIV MEDIA GROUP, INC., a Wyoming corporation;<br><br>           Plaintiff,<br><br>v.<br><br>FTE NETWORKS, INC., a Nevada corporation; LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP; RICHARD DE SILVA; DOES I-X; ROE Entities, I-X,<br><br>           Defendants. | Case No.  A-22-849188-B<br><br>Dept. No.: XXXI<br><br>**DEFENDANTS' MOTIONS:**<br><br>(1) **FOR SUMMARY JUDGMENT ON ALL CLAIMS BASED ON INNOVATIV'S LACK OF STANDING AND NRS 78.211;**<br><br>    **Or in the alternative,**<br><br>(2) **FOR PARTIAL SUMMARY JUDGMENT AS TO INNOVATIV'S DECLARATORY RELIEF CLAIM**<br><br>**[HEARING REQUESTED]** |

Defendants FTE NETWORKS, INC. ("FTE"), LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP ("Lateral Credit"), and RICHARD DE SILVA ("De Silva") (and collectively, "Defendants"), by and through its attorneys of record, Daniel S. Cereghino, Esq. and Brandi M. Segura, Esq. of Lex Domus Law, hereby submit their Motions: (1) for Summary Judgment as to Plaintiff INNOVATIV MEDIA GROUP, INC.'s ("Plaintiff") lack of standing to assert **any** of its claims in this case; or, in the alternative (2) for Partial Summary Judgment as to

Innovativ's declaratory relief claim as to the validity of its February 3, 2022 attempted bylaws amendment.

This Motion is made based on the following Memorandum of Points and Authorities, the pleadings and papers on file in this action and any oral argument of counsel at the related hearing.

Dated this 29th day of March, 2023.

**LEX DOMUS LAW**

By:*/s/ Daniel Cereghino*
   Daniel Cereghino, Esq., SBN 11534
   Brandi M. Segura, Esq., SBN 11710
   1712 Tesara Vista Pl.
   Las Vegas, NV 89128
   *Attorneys for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As has now been confirmed, all of Innovativ's claims in all of its various actions involving FTE[1] are predicated on falsities.  Previously, this particular case was focused on the falsity of ***the Szkaradeks'*** shareholder rights.[2]  But there is a separate, more fundamental falsity now at issue: Innovativ has no standing to assert **any** shareholder claims at all.[3]

Innovativ has no such standing because TTP8, its co-plaintiff in the federal Derivative Case and the exclusive source of Innovativ's FTE shares, only obtained its FTE shares by virtue of an

---

[1] Besides this case in this Court, Innovativ has also brought two (2) other actions: (1) Case No. 2:22-cv-01184-JCM-EJY, Innovativ Media Group, Inc., et al. v. Beys, et al. ("Derivative Case," in which TTP8 is a direct claimant plaintiff, as opposed to this case before this Court, where TTP8 has chosen to remain a **non-party** by avoiding bringing any of its own claims, but instead propping up Innovativ as its litigation lackey); and (2) Case No. 2:22-cv-01362-CDS-VCF, Innovativ Media Group, Inc. v. FTE Networks, Inc., et al. ("Proxy Case," which has already been dismissed in its entirety once, see ECF 48).

[2] Contrary to Innovativ's mischaracterization of the recent Delaware order, an interesting tact for party which so repeatedly accuses FTE of misstating the substance of orders, nothing has been decided that verifies or validates the Szkaradeks' rights to even a single share.  Rather, the Delaware court simply said that the Szkaradeks' actual voting rights are still to be finally determined.

[3] Innovativ's election demand claim has already been dismissed by this very Court Innovativ's failure to meet the related statutory requirements.  See June 30 Order, already on file, at ¶ 31.

1    undisputed fraud on FTE.  Thus, because TTP8 had and has no valid right to any shares, Innovativ,

2    **never** had and still has no valid right to any FTE shares.

3         The invalidity of TTP8's claimed rights is not genuinely in dispute.  Despite multiple prior

4    opportunities, Innovativ has yet to provide any admissible evidence that competently disputes the

5    facts and evidence adduced by FTE.  See e.g., generally, Innovativ's Reply to its MSJ on Special

6    Damages ("Special Damages MSJ Reply"), already on file; Innovativ's Emergency Motion for *Ex*

7    *Parte* Temporary Restraining Order ("Emergency Motion"), already on file; Innovativ's Reply to

8    Emergency Motion ("Emergency Motion Reply"), already on file.  And the issue is not that

9    Innovativ does not have access to TTP8-specific information because: (1) TTP8 is Innovativ's co-

10   plaintiff represented by the same counsel in the Derivative Case and, thus, has direct access to

11   whatever documents it needs; (2) Innovativ has undertaken (albeit improperly) to argue for TTP8

12   in this case (at least as to the pending Emergency Motion); and (3) Innovativ actually did provide

13   certain (legally insufficient) TTP8-specific documents. See e.g., Innovativ's Emergency Motion, at

14   Appendix of Exhibits, at Exhs. 14-16, 20, 21 (among others).[4]

15        But here is what Innovativ has never adduced, despite multiple opportunities to do so

16   (including pursuant to its affirmative NRCP 16.1 obligations):

17

---

18   [4] Just as TTP8 fraudulently induced FTE to a share issuance, TTP8 induced TBK and Suwyn to

19   prematurely issue the correspondence adduced by Innovativ.  See id. at Exhs. 15, 20.  And that
     prematurity is plainly set forth therein.  See id. at Exh. 20 ("The … [c]onsideration … shall be

20   issued from TTP8, LLC to TBK … **on or before January 31, 2020**," (emphasis added) which is
     obviously an unambiguous statement that, as of December 13, 2019, TTP8 **had not yet paid** such

21   consideration), and at Exh. 15 ("For consideration **outlined** in the agreement …," which is an
     equally unambiguous statement that consideration had not yet been received as of the letter's date

22   because that agreement also set January 31, 2020 as the payment date).  But that is exactly how
     frauds are perpetrated, and specifically by Mr. Singal.  His SEC indictments specifically pertained

23   to his attempts to sell property to which he claimed but did not have title.  See e.g., See

24   https://www.sec.gov/litigation/litreleases/2019/lr24691.htm;     https://thediwire.com/sec-charges-
     former-first-capital-reit-ceo-with-defrauding-investors-and-

25   bdc/#:~:text=December%2017%2C%202019%20The%20Securities%20and%20Exchange%20C
     ommission,Trust%20Inc.%2C%20a%20non-traded%20real%20estate%20investment%20trust.;

26   https://www.sec.gov/litigation/litreleases/2021/lr25145.htm (July 21, 2021: "SEC Obtains Final

27   Judgment for more than $7 Million and bars former CEO and Board Chairman [Suneet Singal]
     from   the   securities   industry.");   https://www.justice.gov/usao-edca/pr/el-dorado-hills-man-

28   indicted-fraud-against-merchant-cash-advance-companies (April 18, 2022: "El Dorado Hills man
     [Suneet Singal] indicted for fraud against merchant cash advance companies.").

(1) Any proof of payment by TTP8 to either underlying debtholder.  But see Innovativ's Emergency Motion, at Appendix of Exhibits, at Exhs. 14, 16, at § 6(b)(5) (making TTP8's payment another express closing condition); compare FTE-TTP8 Debt Cancellation-Share Agreements, true and correct copies of which are attached hereto as **Exhibit "A,"** in particular at Note Exchange Agreement, at 1ˢᵗ Recital (undisputedly misrepresenting that TTP8 "**by purchase**" had assumed the underlying debt as of December 13, 2019).

(2) Any other proof of closing as to TTP8's purely alleged assumption of the underlying debt.

(3) Declarations from **any** potentially percipient witnesses, including, but not limited to:

    a.  Mr. Singal (TTP8's principal);[5]

    b.  Mr. Coleman (Innovativ's principal);

    c.  Mr. Goodwin;

    d.  Mr. Ghishan;

    e.  Mr. Cunningham; or

    f.  Either of the underlying debtholders.

There is no genuine dispute that TTP8 never assumed the debt because Innovativ has given this Court **nothing** to contest Defendants' ample evidence on that issue.[6]  Thus, TTP8 undisputedly **never** had the legal rights it misrepresented to FTE as an inducement for FTE to issue TTP8 shares.

---

[5] Innovativ has also never adduced declarations from either of Messrs. Mir or Aamer (other TTP8 representatives identified by it and Innovativ as percipient witnesses to TTP8's share acquisition, see Derivative Am. Comp. [ECF 34], at ¶ 63).

[6] This Court must further note that, in direct response to Defendants' Opposition to its Emergency Motion, wherein Defendants noted the **non-party** status of TTP8, TTP8 yet again voluntarily elected to avoid this Court.  See Innovativ's Motion for Leave to File Supplemental Complaint, already on file, filed March 29, 2023.  First, despite having voted for the very February 3, 2022 (invalid) bylaws amendment placed in controversy in this case from the very beginning, **a full year ago**, TTP8 chose not to pursue a single claim in this case.  See Complaint, already on file.  Nor did TTP8 participate in the later Amended Complaint.  See id., already on file.  Nor did TTP8 ever elect to move to intervene in this case.  Now, it has for the **fourth** time, voluntarily elected to avoid this Court.  Neither Innovativ nor Ms. Shanks have any valid standing to assert **TTP8's** claims by proxy.

Because TTP8 never validly was an FTE shareholder, Innovativ could not validly become an FTE shareholder.  Neither Innovativ nor TTP8 has standing to assert any claims reserved to **valid** shareholders and, thus, this Court should – must – enter summary judgment in Defendants' favor. See e.g., June 30 Order, already on file, at ¶ 38 ("Under NRS § 78.105, a party may inspect a corporation's … stock ledger **if** … that party is a **valid stockholder** of the corporation[.]").[7]

Separately, though, this Court already expressly ruled, only a few weeks ago, that preferred shares do not have voting rights *as a matter of law* absent **two (2)** distinct requirements: (1) an appropriate Certificate of Designation; **and**, more importantly, (2) a formal, **written** board resolution.  See March 8, 2023 Order, already on file, at ¶¶ 7-18.  Thus, consistency and equal application of the law requires the *I Series* Preferred Shares be similarly declared as having no voting rights, which in turn, means that the Innovativ Axis' February 3, 2022, bylaws amendment is legally invalid and ineffective for only having minority support.[8]

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON INNOVATIV'S LACK OF STANDING

### a.  Statement of Undisputed Facts

The following facts are undisputed because: (1) Innovativ either formally admitted as much in its pleadings (either before this Court or another Nevada-based court); (2) adduced and relied on documents demonstrating as much; (3) FTE has adduced other admissible, undisputable evidence

---

[7] As a related action following as a consequence of summary judgment, this Court should / must simultaneously relieve FTE from: (1) any restriction(s) imposed in the November 7, 2022 Order Granting Preliminary Injunction, in particular any restrictions as to board composition; and (2) any order affording Innovativ any access at all to FTE's shareholder information (which order should necessarily also require Innovativ to return and/or destroy all FTE shareholder information, including any information it has shared with anyone else, whether a valid shareholder or not, and to certify such actions to the Court).

[8] This is **not** an issue "contingent" on any determination by the Delaware court as it is a pure question of Nevada law, and is simply the logically and legally consistent byproduct of a decision already made by this Court.  (This Court will note that FTE has **not** asked this Court to **invalidate** or **void** those I Series Preferred shares, which is a matter exclusively for Delaware as this Court already decided, but merely to decide the I Series' **voting** rights under Nevada law and consistent with prior rulings in this case)  The only other alternative is that, as Defendants argued previously at the J Series hearing, the **entire Declaratory Relief claim** must be dismissed because of its contingency on the Szkaradeks' claimed but actively disputed voting rights.

supporting them; and (4) Innovativ has failed to adduce competent disputing evidence, such as declarations from percipient witnesses.

- There is no dispute that TTP8 obtained all of its claimed shares from a single, December 2019 debt cancellation transaction with FTE.[9]

- There is also no dispute that, on October 22, 2019, FTE held a special board meeting at which TTP8 (through Suneet Singal) first proposed to FTE that debt cancellation transaction in which FTE would issue shares to TTP8 in exchange for TTP8 cancelling debt as yet still held by certain third parties (TBK 327 Partners (Mr. Ferguson) and Suwyn Investments (Mr. Suwyn)).[10]

- There is also no dispute, though, that on October 22, 2019, the FTE board **only _conditionally_** approved that proposal, subject to further proof that TTP8 actually acquired legal title to the subject debt.[11]

---

[9] That Innovativ and TTP8 have avoided identifying the specific date of TTP8's share acquisition speaks volumes as to their disingenuousness.  See e.g., Derivative Am. Comp. [ECF 34], at ¶ 85 ("TTP8 became a shareholder … in _**October or November**_ 2019" (emphasis added)); but compare, id. at ¶¶ 2 ("TTP8 purchased stock in FTE in _**December 2019**_" (emphasis added)), 95 ("De Silva sent this _[December 2019 (see ¶ 92)]_ cap table to TTP8 to induce TTP8 to invest in FTE, and informed TTP8 that, _**if TTP8 agreed to assume a portion of FTE's debt**_, _**TTP8 would in return**_ be given stock in comparable value in FTE." (Emphasis added.)), 104 ("Relying upon [Defendants'] representations in the _[December 2019]_ capitalization table, TTP8 agreed to purchase FTE shares in exchange for TTP8's assumption of $3,900,000 of FTE's debt"), and 350 ("TTP8 did assume approximately $3,900,000 of FTE's debt in exchange for … 4,183,684 of FTE's shares _**in December 2019**_."  (Emphasis added.)).

The undisputed truth as shown by the actual, admissible evidence, is that TTP8 was issued FTE shares for the very first time on November 15, 2019.  See November 15, 2019, Goodwin-approved Share Issuance Authorization, true and correct copies of which are attached hereto as **Exhibit "B."**  But the undisputed truth, based on the actual evidence, is also that such issuance was improper by way of Mr. Goodwin's clandestine and unauthorized act.  Still further, though, the undisputed truth, based on the actual evidence, is that this November 15, 2019, issuance was, _**with TTP8's participation**_, rescinded.  See Exh. A, FTE-TTP8 Debt Cancellation-Share Agreements, at Rescission Agreement, at § 1; see also Derivative Am. Comp. [ECF 34], at ¶ 107 ("FTE immediately revised its agreement with TTP8 in December 2019").  Then, shares were only reissued to TTP8 **on December 13, 2019**.  See Exh. A, FTE-TTP8 Debt Cancellation-Share Agreements, at Note Exchange Agreement.

[10] See October 22, 2019 Meeting Minutes, a true and correct copy of which is attached hereto as **Exhibit "C."**

[11] See generally, id.

- 6 -

- There is further no dispute that, in furtherance of TTP8's scheme, Mr. Goodwin, FTE's then interim CEO and Singal nominee, on November 15, 2019, unilaterally approved the issuance of FTE shares to TTP8, ***doing so without advising or obtaining approval from the FTE board***.[12]

- There is also no dispute that the FTE board (or at least the non-conspiring directors, Messrs. Beys and De Silva) learned for the very first time of Mr. Goodwin's unauthorized and premature November 15 share issuance to TTP8 on December 9, 2019.[13]

- At that time, and based specifically on both Mr. Goodwin's protestations of a good faith mistake and TTP8's (and Mr. Singal's) continuing misrepresentations to legal title to the subject debt, FTE believed that the only defect as to the FTE-TTP8 debt cancellation transaction was the amount of FTE shares to be issued.[14]

- There is no dispute that, on December 13, 2019, FTE sought to cure what appeared to be the only transaction defect by entering into the Rescission Agreement as to the prior, violative 20% issuance and superseding Note Exchange Agreement.[15]

- There is also no dispute that TTP8 did not satisfy the expressly stated closing condition of timely payment to the underlying debtholders.[16]

---

[12] See Exh. B, November 15, 2019 Goodwin-approved Share Issuance Authorization; see also Beys Declaration, a true and correct copy of which is attached hereto as **Exhibit "D,"** at ¶¶ 11-13.

[13] See Exh. D, Beys Declaration, at ¶ 13.

[14] There is no dispute that this November 15, 2019 unauthorized and improper issuance by TTP8's planted mole **Mr. Goodwin** – not any act by either Beys or De Silva or the FTE board as a whole – violated SEC and NYSE rules and restrictions by issuing an excessive number of shares.  See id. at ¶¶ 14-17; see also Exh. A, FTE-TTP8 Debt Cancellation-Share Agreements, at Rescission Agreement, at pp.1-2 (fourth, fifth, and eighth Recitals), and § 2(c), and Note Exchange Agreement, at § 4.3; Derivative Am. Comp. [ECF 34], at ¶¶ 10, 105-07.

[15] See Exh. A, FTE-TTP8 Debt Cancellation-Share Agreements.

[16] See Innovativ's Emergency Motion, at Appendix of Exhibits, at Exhs. 14, 16, at § 6(b)(5); see also Ferguson (TBK) and Suwyn Declarations, true and correct copies of which are attached hereto as **Exhibit "E."**  (The Court should be aware that, upon learning of Mr. Ferguson's truthful declaration, Mr. Coleman, Innovativ's principal, telephoned Mr. Ferguson and, after Mr. Ferguson declined Mr. Coleman's request to withhold his truthful information (which Mr. Coleman did not challenge as inaccurate), financially threatened Mr. Ferguson.)

- There is no dispute, then, that those purported debt assumption transactions **never closed** and, as a result, were always unenforceable and ineffective.[17]

- The bottom line is that there is no dispute that TTP8 was **never** "the holder" of the debt instruments as it represented to FTE, *a fact it fully knew at that time*.

- Therefore, there is no genuine dispute that TTP8 perpetrated a fraud upon FTE in obtaining the very shares on which Innovativ's standing is based.  See n.4 supra.

- Thus, there is also no dispute that, despite its actual knowledge that it never acquired the underlying debt and thus had no legally valid basis for its ownership of a single FTE share, TTP8 transferred a portion of these invalidly obtained shares to Innovativ in May 2020.[18]

- There is no dispute that TTP8's claimed shares are the sole and exclusive source of Innovativ's claimed shares.[19]

- Despite its allegations, and despite multiple prior opportunities and obligations (such as NRCP 16.1), Innovativ has never offered **any** evidence that it: (1) provided any consideration to TTP8 in exchange for any of its claimed shares; or (2) had no knowledge of TTP8's failure to close and, thus, lack of any legal rights to the underlying debt.[20]

/ / /

/ / /

/ / /

/ / /

---

[17] See id.

[18] See Amended Complaint, at ¶ 10; Derivative Case Am. Comp. [ECF 34], at ¶¶ 2, 43.

[19] See Amended Complaint, already on file in this case, at ¶ 10; Derivative Case Am. Comp. [ECF 34], at ¶¶ 2, 43.

[20] See e.g., generally, Innovativ's Special Damages MSJ Reply; Innovativ's Emergency Motion; Innovativ's Emergency Motion Reply.  Innovativ has never adduced either: (1) any proof of payment by it to TTP8; (2) any declaration from Singal; or (3) any declaration from Coleman.  See id.  The fact of TTP8's (1) misrepresentation to FTE of having already assumed the underlying debt "by purchase," and (2) failure to **ever** pay consideration for the underlying debt is, thus, **repeatedly** undisputed.  And even worse, despite Defendants' repeatedly raising these issues as to TTP8, TTP8 has again chosen not to come to this Court to dispute these facts by opting out of Innovativ's Motion for Leave to File Supplemental Complaint.

- On March 12, 2023, the FTE board, comprising strictly Messrs. Beys, De Silva, and Cunningham (consistent with this Court's November 7, 2022 Order), considered the cancellation of **TTP8's** improperly obtained shares.[21]

- At that meeting, Mr. Beys informed Mr. Cunningham of TTP8's fraud and/or lack of consideration / breach of contract in obtaining its shares, a small portion of which were subsequently transferred to Innovativ.[22]

- Mr. Cunningham did not vote in disapproval of the share cancellation but merely abstained.[23]

- FTE is currently in active negotiations with the true debtholders to resolve their legally valid claims to the still outstanding debt.[24]

    **b. LEGAL ANALYSIS**

        ***i. Applicable Standard***

In evaluating the instant Motion, this Court must determine whether: (1) there is a purely legal basis for disposing of Innovativ's claims; and/or (2) the facts as supported by the admissible evidence actually in the record before the Court lead to only one reasonable conclusion. See e.g., NRCP 56; see also Wood v. Safeway, Inc., 121 Nev. 724, 730-31, 121 P.3d 1026, 1030-31 (2005).

Standing is just such a purely legal question that is should be resolved on summary judgment. See e.g., Mayfield v. U.S., 599 F.3d 964, 969-70, 2010 U.S. App. LEXIS 6015, *14-16 (9th Cir.2010); Royal Business Group, Inc. v. Realist, Inc., 751 F.Supp. 311, 313, 1990 U.S.Dist.LEXIS 16344, *6 (D.Mass.) ("Royal is not even a shareholder of Realist, and plainly lacks standing to assert a claim based on shareholders' voting rights."). Moreover, standing is always the plaintiff's burden, and not merely to allege, but to **prove**. See Paul v. China

---

[21] See Exh. D, Beys Declaration, at ¶¶ 24-27.

[22] See id.

[23] See id. And there is no dispute that Mr. Stillings did **not** participate in that, **or any other FTE decision**. Thus, any accusations by Innovativ regarding violations of court orders restricting board composition are purely false and frivolous and, thus, sanctionable in their own right.

[24] See id. at ¶ 29.

MediaExpress Holdings, Inc., 2012 WL 28818 (Del.Ch.) (the plaintiff bears the burden of proving standing to assert shareholder rights).  Here, just as in the Royal case, because Innovativ legally and equitably[25] is not and never was a "valid" FTE shareholder, it "plainly lacks standing to assert [claims] based on shareholders' voting rights."  See id., 751 F.Supp. at 313.

### ii.   The Court has not yet actually decided Innovativ's claimed standing.

Contrary to Innovativ's Special Damages MSJ Reply, the standing issue is not simply and formalistically determined by whether Innovativ's name appears on FTE's books as a "stockholder of record."  See id. at § II.B.  Rather, the issue is that there are two types of a "stockholder of record": (1) valid ones; and (2) invalid ones.  And this Court already recognized that the **validity** of Innovativ's shareholder status is a critical issue: "Under NRS § 78.105, a party may inspect a corporation's … stock ledger **if** … that party is a **valid stockholder** of the corporation[.]"  See June 30 Order, at ¶ 38 (emphasis added).  Moreover, this Court stated that the validity of any plaintiffs' status as an FTE shareholder remained in dispute: "FTE has not proven or established its allegations with regards to fraud *at this juncture*."  See id. at ¶ 41 (emphasis added), and ¶ 42.[26]

---

[25] Innovativ has made much ado about the propriety of FTE's action to cancel the fraudulently acquired shares. However, Innovativ has no legal standing to assert **TTP8's** claims in that regard. Nor, though, does the case cited by Innovativ in attacking that cancellation support it because it actually provides that unilateral self-help is available where the underlying contract permits it. In this instance, Sec. 5.3 of the Note Exchange Agreement does just that by restricting the issuance as predicated on the truth of certain representations and certain performances (specifically TTP8's cancellation of the underlying debt which it, obviously, never did).

[26] Any attempt by Innovativ to limit this Court's **conditional** standing finding only to *the Szkaradeks* is meritless and should be rejected.  FTE has always asserted the invalidity of Innovativ's shares, and specifically because of the connection back to Singal and/or his affiliates, including TTP8.  That FTE has now confirmed a *separate* Singal-based invalidity of Innovativ's shares and, thus, lack of standing, is not problematic.

Moreover, even if this Court did make a definitive standing finding in the past, this Court is obligated to evaluate that prior decision in light of the truth and the correct law.  See e.g., NRCP 54(b) ("[A]ny order … that adjudicates fewer than all the claims or the rights … of fewer than all the parties does not end the action as to **any** of the claims or parties and **may be revised at any time** before the entry of a judgment adjudicating all the claims and … parties' rights[.]"); see also Wood v. Nautilus Ins. Grp., 2018 WL 4335621, *5 (D.Nev.) (quoting City of L.A., Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001) ("A district court 'possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient'."  (Emphasis in original.)).

1    Thus, the legally required first step for this Court on this Motion – and, actually, **every**

2    motion brought before it – is to require Innovativ, as the plaintiff with the exclusive burden, to

3    **prove** its standing as a valid FTE shareholder with admissible evidence.  See Paul, 2012 WL 28818

4    (Del.Ch.) (the plaintiff bears the burden of **proving** standing to assert shareholder rights).  (What

5    is interesting is Innovativ's stubborn objection to providing what it claims is available evidence in

6    favor of simply pointing to unexecuted agreements and premature communications.  In other words,

7    it is obvious that there is no factual support for Innovativ's or TTP8's claimed share ownership.

8    See NRCP 11; NRS 18.010(2)(b); NRS 7.085.)

9                    ***iii.   TTP8's fraud bars any related claims based on shareholder rights.***

10    Again, instead of ignoring truth and justice, this Court's proper function is to pursue it.  In

11    this instance, that means this Court should not turn a blind eye to the undisputed reality that TTP8

12    perpetrated a fraud on FTE[27] and, thus, never validly owned a single FTE share.  And as a further

13    legal consequence, the fruits of TTP8's fraud, specifically Innovativ's later acquisition of FTE

14    shares ***from TTP8***, are also invalid.  See e.g., Stonecifer v. Yellow Jacket Mining Co., 3 Nev. 38,

15    45 (1867); Aptix Corp. v. Quickturn Design Sys., 269 F.3d 1369, 1375 (Fed.Cir. 2001) (citing

16    Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244-45, 78 L.Ed. 293, 54 S.Ct. 146

17    (1933) (citing Pomeroy, Equity Jurisprudence (4th ed.) § 397)).  Thus, Innovativ has no right to

18    take any action exclusively reserved for valid shareholders.

19    As a **non-**shareholder, then, Innovativ had no right to organize any vote on any FTE issue,

20    including, but not limited to, any purported bylaws amendment or to demand either an inspection

21    of the shareholder ledger under NRS 78.105 or an election under NRS 78.345 (and neither did or

22    does TTP8).  (And this lack of standing actually moots any exercise in calculating whether these

23    **non**-shareholders organized a proper "majority" with others, since no other purported shareholder

24    has raised that issue in this case.)

25    / / /

26    / / /

27    _____

28    [27] As well as on Messrs. Ferguson and Suwyn in obtaining the documents adduced by Innovativ in
     its Emergency Motion Reply at Exhs. 14, 15, 20.

### iv.  *Innovativ cannot resort to the "bona fide purchaser" defense without competent, admissible evidence.*

Nor can Innovativ avail itself of the "bona fide purchaser" protection based purely on the argument of counsel.  See e.g., Innovativ's Emergency Motion Reply, at p.4, § III (failing to offer **any** *relevant* evidence, but merely containing unsupported argument by counsel and a related TTP8-Innovativ agreement).  But obviously, this agreement alone does nothing with respect to the bona fide purchaser argument.  A mere agreement does not demonstrate either actual consideration or lack of knowledge of the underlying fraud.  Innovativ has **still** not ever adduced either: (1) any proof of payment by it to TTP8; or (2) any declaration from either Mr. Coleman (Innovativ) or Mr. Singal (TTP8).

### v.  *FTE has the right under NRS 78.211 to cancel the fraudulently obtained TTP8 shares.*

As a separate and distinct grounds for disposing of this case, NRS 78.211 provides a company's board of directors a mechanism to protect their fiduciary, the company, by cancelling shares for which it never received any consideration or benefit (or which were fraudulently obtained).  Specifically, NRS 78.211(3) provides in pertinent part: "If … the benefits are not received or the promissory note is not paid, the shares escrowed or restricted and the distributions credited may be cancelled in whole or in part."  In this case, there is no dispute that FTE never received any benefits (because the underlying promissory notes were not actually assumed and cancelled by TTP8) in exchange for the shares TTP8 received.  (Again, TTP8 only received these shares through the unauthorized, premature, and clandestine acts by its mole, Mr. Goodwin.)

In other papers, Innovativ attempted to discount NRS 78.211, *not* with any Nevada law, which it admits does not exist, but only with two persuasive authorities.  See Innovativ's Emergency Motion Reply, at 2:21-3:22.  In the NexMed, Inc v. Clealon Mann case, 124 P.3d 252 (Utah 2005), the Utah court was actually analyzing an entirely separate subsection.  See id. at 257 ("subsection 4 deals with a **different situation than the one before us**" (emphasis added)).[28]  Still

---

[28] The subsection "2" referred to in the NexMed case has since been deleted from the statute.  And the subsection "4" referenced therein is actually now NRS 78.211(3), the subsection relied on by FTE.

further, the NexMed case provided that "§ 78.211(4) *[now subsection (3)]* **provid[es] a remedy**[.]" This case only supports FTE.

As for the Jacob v. Bernatek case, 764 So. 2d 874, 877 (Fla. 2000), it is inapposite for its construction of a different version of the statute, specifically the one rejected here in Nevada by way of the subsequent amendments thereto.  See e.g., Exh. F, NRS 78.211 legislative history.

Separately, though, that court actually did provide that unilateral cancellation by the board is appropriate if either the articles of incorporation or the subject share contract provide that right. See Innovativ's Emergency Motion Reply, at 3:18-20.  In this instance, the Note Exchange Agreement provided a restriction for the issuance of shares, namely, TTP8's delivery of the subject promissory notes.  See Exh. B, FTE-TTP8 Debt Cancellation-Share Agreements, Note Exchange Agreement, at §§ 1.2, 2.2.[29]  The problem, again, is that **Mr. Goodwin**, as TTP8's mole, had already prematurely issued the shares to TTP8 and, thereafter, was able to hide the non-satisfaction of the restriction from the board.  That wrongdoers were particularly sophisticated in effectuating their misconduct should not be rewarded, and certainly should not handcuff the victim.  Moreover, that Jacob case also involved genuine, material questions of fact, specifically as to whether or not the corporation had received consideration in exchange for the subject shares.  See id.  Such questions, however, **do not** exist in this case.  There is no dispute that TTP8 did not give **anything** to FTE. (Nothing, that is, except a litany of problems caused by its various frauds and other misconduct.)

Stated more practically, this Court cannot under any circumstances allow **both** (1) the debt to remain outstanding, which it undisputedly does as set forth above, **and** (2) allow TTP8 and Innovativ to enjoy the benefits of shares issued only in exchange for cancellation of that very debt. This is the exact kind of scenario which NRS 78.211 was created to correct.

/ / /

/ / /

---

[29] In its Emergency Motion Reply, at n.1, Innovativ makes a pure form over substance argument, specifically that because the cancelled shares were not escrowed, NRS 78.211 does not apply.  This argument, however, overlooks the **undisputed facts** of not only the contractual restriction set forth above, but also Mr. Goodwin's clandestine and premature issuance which deprived the FTE board of the ability to escrow them.  The shares' cat was already out of the bag at that juncture.

**c.  CONCLUSION AS TO SUMMARY JUDGMENT FOR LACK OF STANDING / NRS 78.211**

Unravelling fraud is a difficult and laborious task.  But more applicable to this case, it often leads to incorrect preliminary conclusions until that fraud is confirmed.  See e.g., June 30 Order, at ¶ 41.  That is exactly what has happened in this case.  This Court made certain rulings ***assuming*** Innovativ's status as a **valid** FTE shareholder based simply on the superficial appearance on FTE's shareholder ledger.  See e.g., id. at ¶ 38.  But now this Court is confronted with the **undisputed** truths that: (1) TTP8 perpetrated a fraud on FTE in acquiring its shares; and (2) Innovativ only claims shares that are the fruit of TTP8's fraud.  Defendants respectfully submit that this Court cannot allow Innovativ (and its co-conspirators TTP8 and the Szkaradeks) to benefit from their fraudulent and improper activities.

This Court should grant Defendants' instant Motion for Summary Judgment (and simultaneously also revise any and all of its prior orders, including but not limited to: (1) its June 30 Order affording Innovativ any access at all to FTE's shareholder information; and (2) its September 22 and November 7, 2022 orders preliminarily enjoining FTE from appointing Mr. Stillings to its board or removing Mr. Cunningham therefrom.)

### III.  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO INNOVATIV'S DECLARATORY RELIEF CLAIM

**a.  STATEMENT OF UNDISPUTED FACTS**

The following facts are both undisputed and demand summary judgment defeating and disposing of Innovativ's declaratory relief claim as to the validity of its February 3, 2022 attempted bylaws amendment.

- There is no dispute that, in December 2019, FTE created and issued an I Series of preferred shares.[30]

- There is no dispute that, as originally issued, those I Series shares were **non**-voting.[31]

/ / /

---

[30] See March 8, 2023 Order, at ¶ 10 ("Specifically, **this Court** finds that FTE initially issued I Series Preferred Stock to the Szkaradeks in December 2019."  (Emphasis added)).

[31] See id. ("This stock was **non-voting**."  (Emphasis added.)).

- 14 -

- There is also no dispute that there has **never** been a "resolution of the [FTE] board of directors … in a formal writing" converting the I Series to voting.[32]

These facts, besides being extremely simple, are undisputed.  Moreover, the legal consequences of exactly this set of undisputed facts has already been adjudicated by this very Court: the related preferred shares have **no** voting rights.

### b. LEGAL ANALYSIS

#### i. *Applicable Standard*

As noted above, in evaluating this aspect of the instant Motion, this Court must determine whether: (1) there is a purely legal basis for adjudicating the special damages claim; and/or (2) the undisputed facts as supported by the admissible evidence actually before this Court lead to only one reasonable conclusion.  See e.g., NRCP 56; see also Wood, 121 Nev. at 730-31, 121 P.3d at 1030-31.

This Court has already determined that, **as a matter of law**, "preferred stock does not automatically have voting rights upon its issuance" but instead can only get voting rights "by a 'resolution' of the board of directors."  See March 8, 2023 Order, at ¶ 8; see also Innovativ's J Series MPSJ, at 6:14-16 ("[t]he voting powers . . . of each series of stock must be described *in resolution of the board of directors **and** certificate of designation filed pursuant to NRS 78.1955*" (emphasis *by Innovativ* in original)).

**This Court** then determined that a "resolution" must be "in a formal writing in order to be valid[.]"  See March 8, 2023 Order, at ¶ 17.

Thus, because it is undisputed that there is no "formal writing" of the FTE board ascribing voting rights to the I Series Preferred shares, just as there was no "formal writing" of the FTE board

---

[32] See Exh. D, Beys Declaration, at ¶ 30; March 8, 2023 Order, at ¶ 17 ("courts have consistently held that a resolution of the board of directors must be in a formal writing in order to be valid"); see also, generally, Innovativ's J Series MPSJ, already on file, including at 4:8-11 (failing to adduce **any** "resolution … in a formal writing" on the *I Series* but instead only adducing a Certificate, which Innovativ itself argued is legally insufficient), 6:14-16 ("Specifically, NRS 78.195(1) requires that '[t]he voting powers . . . of each series of stock must be described *in resolution of the board of directors **and** certificate of designation filed pursuant to NRS 78.1955*'[.]" (emphasis in original)).

as to the J Series' voting rights, consistency and equal treatment under the law requires the I Series be rendered non-voting too. <u>See id.</u> at ¶¶ 7-17.

But that necessary legal conclusion in turn requires summary judgment in favor of Defendants on Innovativ's declaratory relief claim because removing the I Series from the eligible voting shares leads to only one conclusion: the February 3, 2022 attempted bylaws amendment was not supported – and more, **<u>can never be supported</u>** – by an actual "majority."

The Innovativ Axis's votes in favor of the February 3, 2022 attempted bylaws amendment are based on three (3) distinct share sets: (1) the Szkaradeks' common stock; (2) the I Series Preferred shares; and (3) all other common stock voters (including Innovativ and TTP8). Though Defendants still do dispute the entitlement of not only the Szkaradeks to vote any of their ***claimed*** common stock shares, but also Innovativ and TTP8 to vote any of their ***claimed*** common stock shares, such dispute is entirely unnecessary to determine the invalidity of the February 3, 2022 attempted bylaws amendment.[33]  In fact, this Court could still give effect to all of their respective ***common stock*** share votes notwithstanding all the legal reasons against doing so and the result would still be inescapable: there was no "majority" for the February 3, 2022 bylaws amendment attempt and thus, summary judgment in Defendants' favor is appropriate.

- The Szkaradeks claim **<u>22,063,376</u>** common stock votes.[34]  <u>See</u> Defendants' Opposition to Innovativ's MPSJ as to J Series and Countermotion for Summary Judgment, already on file, at 10:9-10, and <u>Exh. A</u> thereto (Voting Calculations).

- All other, ***non-***Szkaradek members of the Innovativ Axis, led primarily by TTP8 and Innovativ, claim approximately **<u>5.2 Million</u>** TTP8 and Innovativ (and others) common stock votes.  <u>See id.</u> at <u>Exh. A</u>, Voting Calculations (27,271,079 total common stock votes less Szkaradeks' 22,063,376 equals 5,207,203).

---

[33] Nor does summary judgment require any adjudication as to ***the Szkaradeks'*** rights to **<u>own</u>** I Series preferred shares.  Rather, all this Court has to decide is, assuming *arguendo* that the Szkaradeks do validly own the I Series, those I Series shares have no voting rights, not because of any act or omission by them, but because of their non-compliance with Nevada law.  <u>See</u> n.8 *supra*.

[34] As a reminder, this Court has in place an order that the Szkaradeks cannot actually enforce any of their voting rights until a Delaware court finally resolves that issue.  <u>See</u> June 30 Order, already on file.  There is no such order from Delaware yet.

- Thus, when removing the ***12.8 Million*** I Series votes, the votes approving the February 3, 2022 bylaws amendment are only **27.3 Million**.[35]

- Thus, to have a "majority," the total number of eligible votes must be **less than 54.6 Million**.

- The common stock alone, though, ***as put forth by Innovativ itself***, is approximately **55,174,000**.  See Innovativ's Emergency Motion, at pp.4-5 (charts).

- And that 55 Million figure, which ***by itself*** renders the Innovativ Axis a mere minority, does not include any of the A Series, which Innovativ has not challenged as having **zero** voting rights, but only less than the number claimed by Defendants. See e.g., id.

- Assigning the A Series the number of votes ***Innovativ*** itself is arguing, the total pool of eligible votes is increased by another 2.5 Million votes, **none** of which voted for the February 3, 2022 bylaws amendment.

- Thus, the undisputed **minimum** denominator for the simple calculation of whether there was "majority" support for the February 3, 2022 bylaws amendment is approximately **57.6 Million**.

- There is no dispute that (27.3 Million votes) / (57.6 Million eligible votes) = only **47.4%** (which is undisputedly not a "majority").

It's that simple.  Again, even giving Innovativ and its co-conspirators their common stock votes (which they do not deserve, especially not TTP8), the end result is **always** the same: no majority.

    **c.  CONCLUSION AS TO PARTIAL SUMMARY JUDGMENT ON I SERIES AS NON-VOTING**

The facts and the law are simple.  According to this Court itself, a "resolution of the board … in a formal writing" is absolutely required in order for preferred shares to have voting rights. There is no dispute that there is no such "resolution of the board … in a formal writing" giving the I Series voting rights.  Thus, the existence of a Certificate of Designation, by itself, is legally

---

[35] And this, of course, ignores the FC-RET's legal right to 11 Million of these 27.5 Million common stock votes.  Notably, if this Court grants Innovativ leave to amend, then FC-RET will be here to affirmatively pursue its rights to those 11 Million shares before this very Court.

insufficient to give the I Series voting rights.  As such, equal application of the law means that the I Series also have no voting rights.  The exclusion of the I Series' votes, **by itself**, renders the February 3, 2022 bylaws amendment attempt invalid.  The calculation is exceedingly simple and should no longer be avoided.  Summary judgment should be issued "forthwith" (or specific reasons for denying the motion should be set forth on the record per NRCP 56).

Dated this 29th day of March, 2023.

**LEX DOMUS LAW**

By:*/s/ Daniel Cereghino*
    Daniel Cereghino, Esq., SBN 11534
    Brandi M. Segura, Esq., SBN 11710
    1712 Tesara Vista Pl.
    Las Vegas, NV 89128
    *Attorneys for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 29, 2023 I electronically filed the foregoing **DEFENDANTS'**
**MOTIONS (1) FOR SUMMARY JUDGMENT AS TO PLAINTIFF INNOVATIV's LACK**
**OF STANDING, OR IN THE ALTERNATIVE (2) FOR PARTIAL SUMMARY**
**JUDGMENT AS TO I SERIES AS NON-VOTING** and service was made on all counsel of
record and/or parties via the Court's electronic filing system.

 /s/ *Brandi M. Segura*
An employee of Lex Domus Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## RESCISSION AGREEMENT

This Rescission Agreement (this "**Agreement**") is made and entered into on December 13, 2019, by and among FTE Networks, Inc., a Nevada corporation (the "**Company**"), and TTP8, LLC, a Delaware limited liability company ("**TTP8**").

### RECITALS

WHEREAS, TTP8 was the holder, by purchase and assignment, of (i) a promissory note dated December 8, 2016 issued by the Company to Suwyn Investments LLC, with principal and accrued interest outstanding equal to approximately $3.3 million as of the date hereof (as amended to date, the "**Suwyn Note**") and (ii) three promissory notes issued by the Company, or issued by a subsidiary of the Company and guaranteed by the Company, payable (either as the original payee or by assignment) to 327 Partners, LLC, issued on January 23, 2014, May 16, 2014 and July 11, 2017, respectively, with aggregate principal and accrued interest outstanding equal to approximately $0.6 million as of the date hereof (as amended to date, the "**327 Notes**," and together with the Suwyn Note, the "**Promissory Notes**");

WHEREAS, the board of directors of the Company (the "**Board**") approved the exchange (the "**Note Exchange**") of the Promissory Notes by TTP8 for shares of the Company's common stock, par value $0.001 per share ("**Common Stock**") at an exchange price per share to be not less than the greater of (a) $0.43 per share, the price on which the exchange transaction was negotiated between the principals of the parties, and (b) not less than the minimum amount that would prevent triggering the antidilution provisions of (i) the Company's outstanding Series A Preferred Stock and Series A-1 Preferred Stock and (ii) the warrant to purchase Common Stock held by Lateral U.S. Credit Opportunities Fund, L.P., such amount to be determined by the Company's Interim Chief Executive Officer in consultation with the Company's Interim Chief Financial Officer, provided that in no event would the number of shares of Common Stock issuable upon such exchange be equal to or greater than 20% of the number of shares outstanding on the date of the exchange (or such earlier date on which a binding agreement for such exchange were entered into), in order not to require shareholder approval under Section 713(a)(ii) of the NYSE American LLC Company Guide (the "**20% Rule**"); and provided further, that all required notifications to and filings with the NYSE American LLC (the "**Stock Exchange**") and the Securities and Exchange Commission would be timely made in connection with the Note Exchange;

WHEREAS, on November 15, 2019, with respect to the Note Exchange, the Company delivered instructions to its transfer agent to issue to TTP8 an aggregate of 5,468,379 shares of Common Stock (the "**Issued Shares**");

WHEREAS, subsequent to the issuance of the Issued Shares, the Company became aware that a miscalculation had been made with respect to the number of Issued Shares and that the Company had inadvertently violated Section 713(a)(ii) of the NYSE American LLC Company Guide (the "**20% Rule**") by issuing, without stockholder approval, common stock equal to 20% or more of then-outstanding stock for less than the greater of book or market value of the stock;

WHEREAS, the Company violated Section 301 of the NYSE American LLC Company Guide by virtue of having issued the Issued Shares without approval of a supplemental listing application for the Issued Shares by the Stock Exchange;

WHEREAS, in the Company's view because the issuance of the Note Exchange did not comply with the conditions imposed by the Board in connection with its approval thereof, the Company considers the Note Exchange to be void or voidable as a matter of law;

FTE001864

WHEREAS, TTP8 does not consider the Note Exchange to be void or voidable as a matter of law;

WHEREAS, on December 11, 2019, the Company notified the NYSE American of the inadvertent violation of the 20% Rule and agreed with the NYSE American that it would take appropriate steps to rescind the transaction with the cooperation and agreement of TTP8;

WHEREAS, concurrently with the execution of this Agreement, the Company and TTP8 are entering into a modified exchange agreement ("**Modified Exchange Agreement**") with respect to the Promissory Notes pursuant to which TTP8 will be issued 19.9% of the Company's currently outstanding shares of Common Stock; and

WHEREAS, the parties hereto now desire to rescind the Note Exchange, effective as of November 15, 2019, and place the parties hereto in the same position had the Note Exchange not been effected.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein set forth, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.    Rescission of Note Exchange.

(a)    The parties hereto hereby rescind and cancel the Note Exchange, effective as of November 15, 2019, and declare the Note Exchange and all legal effects arising therefrom to be null and void *ab initio*. Each of the parties hereto further agrees to take all such actions to place each such party in its respective position as if the parties had entered into the Note Exchange and the issuance of the Issued Shares had never occurred, including, without limitation, promptly executing, delivering and/or filing any and all instruments, documents, notices or other agreements that reflect or evidence the rescission hereunder.

(b)    Without limitation of the foregoing, the Company and TTP8 agree that the Issued Shares are hereby cancelled for no consideration (other than the rescission of the Note Exchange) and appropriate instructions shall be delivered to the Company's transfer agent with respect to such cancellation. The Company hereby agrees that the Promissory Notes remain in full force and effect as if the Note Exchange had never occurred, and interest continues to accrue unabated without regard to the Note Exchange.

(c)    The foregoing rescission shall be effective so as to allow the federal income tax doctrine of rescission to be applied thereto, and, each party hereto acknowledges and agrees that after giving effect to this Agreement, it has been returned to its situation existing immediately prior to the consummation of the Note Exchange.

2.    Representations and Warranties of TTP8. In connection with the transactions contemplated hereby, TTP8 represents and warrants, as of the date hereof, to the Company that:

(a)    TTP8 is duly formed, validly existing and in good standing as a limited liability company under the laws of Delaware and has all necessary power and authority to enter into, and perform its obligations under, this Agreement and the transactions contemplated herein. This Agreement constitutes the legal, valid and binding obligation of TTP8, enforceable in accordance with its terms, and the execution, delivery and performance of this Agreement by TTP8 does not and will not conflict with,

-2-

FTE001865

violate or cause a breach of any agreement or instrument to which TTP8 is a party or subject or any judgment, order or decree to which TTP8 is subject.

(b)     TTP8 acknowledges that after giving effect to this Agreement, TTP8 has no enforceable rights or obligations with respect to the Note Exchange or the Issued Shares except as set forth in the Modified Exchange Agreement.

(c)     TTP8 has good and marketable title to the Issued Shares and has not voted, sold, transferred, conveyed, pledged, encumbered or otherwise disposed of any of the Issued Shares or any interest therein, and no third party has any claim of any nature with respect to the Issued Shares.

The representations, warranties and covenants contained in this Agreement shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

3.     Tax Treatment.  The parties hereto acknowledge and agree that (a) none of them has taken, or shall take, any material position for federal income tax purposes that is inconsistent with this Agreement and the rescission of the Note Exchange, and (b) each such party shall file his or its federal income tax returns for the year ending in 2019 in a manner consistent with this Agreement and the rescission of the Note Exchange, in each case in accordance with the terms of this Agreement.

4.     Successors and Assigns.  This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and permitted assigns, but is not assignable by any party without the other party's prior written consent.

5.     Further Assurances.  The parties shall execute such further documents, conveyances, assurances and instruments and take such further actions as may reasonably be necessary, proper or advisable to carry out the intent or purposes of this Agreement.  Each party hereto shall cooperate affirmatively with the other parties, to the extent reasonably requested by such other parties, to enforce rights and obligations herein and therein provided.

6.     Notices.  Any notice or other communication provided for herein or given hereunder to a party hereto must be in writing, and: (a) sent by electronic mail; (b) delivered in person; (c) mailed by first class registered or certified mail, postage prepaid; or (d) sent by Federal Express or other overnight courier of national reputation, in each case addressed as follows:

If to the Company:

FTE Networks, Inc.
237 West 35th Street, Suite 806
New York, NY 10001
Attention: Michael Beys
Email: mbeys@blmllp.com

If to TTP8:

TTP8
2355 Gold Meadow Way
Suite 160
Gold River CA 95670
Attention: Suneet Singal

#56285974 v2

FTE001866

Email: s@firstcapitalre.com

or to such other address with respect to a party as such party notifies the other in writing as above provided. Each such notice or communication will be effective: (i) if given by electronic mail, then when confirmation of successful transmission is received; or (ii) if given by any other means specified in the first sentence of this Section 6, then upon delivery or refusal of delivery at the address specified in this Section 6.

7.      Headings. The headings contained in this Agreement are for convenience of reference only and do not form a part of this Agreement.

8.      Amendment and Waiver. This Agreement may be amended or modified only by an instrument in writing duly executed by the Company and TTP8. The waiver of any term of this Agreement is effective only by a written instrument executed by the party against whom the waiver is sought to be enforced. No waiver of any provision hereunder or any breach or default thereof shall extend to or affect in any way any other provision or prior or subsequent breach or default.

9.      Governing Law. This Agreement, including all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby (including all claims, whether sounding in contract, tort or otherwise), are to be governed by, and construed and enforced in accordance with, the laws of the State of New York, without regard to its rules of conflict of laws.

10.     Severability. Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, the provision will be interpreted to be only so broad as is enforceable.

11.     Construction. If an ambiguity or question of intent or interpretation arises, then this Agreement will be construed as drafted jointly by the parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. The words "include", "including" and "or" mean without limitation by reason of enumeration. Any reference to the singular in this Agreement will also include the plural and vice versa.

12.     Complete Agreement. The terms of this Agreement are intended by the parties to be the final expression of their agreement with respect to the subject matter hereof and supersede all prior understandings and agreements, whether written or oral, including without limitation any prior employment agreement or offer letter between the Company and TTP8.

13.     Counterparts; Electronic Transmission. This Agreement may be executed in separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Delivery of an executed signature page to this Agreement by facsimile or other electronic transmission (including in Adobe PDF format) will be effective as delivery of a manually executed counterpart to this Agreement.

*[signature page follows]*

-4-

FTE001867

The parties hereto have caused this Rescission Agreement to be executed as of the date first written above.

FTE NETWORKS, INC.

By: _____

    Michael Beys
    Interim Chief Executive Officer


TTP8

By: _____
Name:   Suneet Singal
Title:   Chief Executive Officer

FTE001868

**EXHIBIT B**

# FTE Networks, Inc.
## COMMON STOCK

RESOLVED: THE BOARD OF DIRECTORS OF THE ABOVE CAPTIONED COMPANY HAS TAKEN ALL ACTION REQUIRED BY LAW TO AUTHORIZE AND INSTRUCT NEVADA AGENCY AND TRANSFER COMPANY, THE STOCK TRANSFER AGENT FOR THE ABOVE CLASS OF STOCK FOR THE ABOVE COMPANY, TO ISSUE THE SHARES DESCRIBED BELOW AND INCREASE THE OUTSTANDING SHARES ON THE BOOKS OF THE COMPANY, IN THIS REGARD, UNLESS OTHERWISE NOTED AS AN ADDITIONAL ISSUE BELOW, THE COMPANY HAS RECEIVED ALL CONSIDERATION NECESSARY TO SUPPORT THE ISSUANCE OF THE SHARES DESCRIBED BELOW AND WHEN ISSUED SUCH SHARES SHALL BE FULLY PAID, NON-ASSESSABLE, DULY AUTHORIZED AND VALIDLY ISSUED.

### ISSUANCE INSTRUCTIONS

TTP8          4,421,852          11/15/19   Restricted

### COST BASIS PER SHARE FOR THIS ISSUANCE: $ 0.74403

See Attached List for Additional Issues

*The company understands and agrees that instructions directing the original issuance of shares as free trading must be accompanied by an opinion of counsel opining on the availability of claim exemption and legality and validity of the issuance. Otherwise all certificates representing shares issued shall bear restrictive legends.

THESE INSTRUCTIONS SHALL INCREASE THE NUMBER OF SHARES OUTSTANDING BY 4,421,852 SHARES.

I, THE UNDERSIGNED, AM A QUALIFIED AND DULY ELECTED OFFICER OF THE ABOVE NAMED COMPANY, AND I DO HEREBY CERTIFY THAT: (1) THE ABOVE NAMED COMPANY (HEREICALLY) INDEMNIFIES, HOLDS HARMLESS AND SHALL DEFEND NEVADA AGENCY AND TRANSFER COMPANY AND ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS AGAINST ANY AND ALL CLAIMS FOR ACTIONS TAKEN BY THE ABOVE COMPANY REGARDING THE ABOVE RESOLUTION; (2) THIS IS A TRUE AND CORRECT COPY OF A RESOLUTION ADOPTED BY THE COMPANY'S BOARD OF DIRECTORS ON THE BELOW DATE, AND THAT THE SAID RESOLUTION HAS NOT BEEN IN ANY WAY RESCINDED, ANNULLED, OR REVOKED BUT THE SAME IS STILL, IN FULL FORCE AND EFFECT; (3) THE SHARES SUBJECT TO THIS RESOLUTION HAVE BEEN ALLOTTED AND THAT THE CORPORATION HAS RECEIVED THE FULL CONSIDERATION FOR SUCH SHARES AND THAT SUCH SHARES ARE THEREFORE FULLY PAID AND NON-ASSESSABLE; AND (4) THE ABOVE NAMED COMPANY RELIEVES NEVADA AGENCY AND TRANSFER COMPANY FROM ANY AND ALL LIABILITIES IN CONNECTION WITH THIS TRANSACTION.

x  _____
OFFICER'S SIGNATURE

Stephen M. Goodwin
OFFICER'S NAME PRINTED

CEO
TITLE OF OFFICER

11/15/19
DATE

FTE001862

# FTE NETWORKS, INC.
## COMMON STOCK

RESOLVED, THE BOARD OF DIRECTORS OF THE ABOVE CAPTIONED COMPANY HAS TAKEN ALL ACTION REQUIRED BY LAW TO AUTHORIZE AND INSTRUCT NEVADA AGENCY AND TRANSFER COMPANY, THE STOCK TRANSFER AGENT FOR THE ABOVE CLASS OF STOCK FOR THE ABOVE COMPANY, TO ISSUE THE SHARES DESCRIBED BELOW AND INCREASE THE OUTSTANDING SHARES ON THE BOOKS OF THE COMPANY. IN THIS REGARD, UNLESS OTHERWISE NOTED AS AN ADDITIONAL ISSUE BELOW, THE COMPANY HAS RECEIVED ALL CONSIDERATION NECESSARY TO SUPPORT THE ISSUANCE OF THE SHARES DESCRIBED BELOW AND WHEN ISSUED SUCH SHARES SHALL BE FULLY PAID, NON-ASSESSABLE, DULY AUTHORIZED AND VALIDLY ISSUED.

## ISSUANCE INSTRUCTIONS

| TTPS | 1,046,527 | 11/5/19 | Restricted |

## COST BASIS PER SHARE FOR THIS ISSUANCE $ 0.62000

See Attached List for Additional Issues

*The company understands and agrees that instructions directing the original issuance of shares as free trading must be accompanied by an opinion of counsel opining on the availability of claim exemption and legality and validity of the issuance. Otherwise all certificates representing shares issued shall bear restrictive legends.

THESE INSTRUCTIONS SHALL INCREASE THE NUMBER OF SHARES OUTSTANDING BY 1,046,527 SHARES.

I, THE UNDERSIGNED, AM A QUALIFIED AND DULY ELECTED OFFICER OF THE ABOVE NAMED COMPANY, AND I DO HEREBY CERTIFY THAT: (1) THE ABOVE NAMED COMPANY IRREVOCABLY INDEMNIFIES, HOLDS HARMLESS AND SHALL DEFEND NEVADA AGENCY AND TRANSFER COMPANY AND ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS AGAINST ANY AND ALL CLAIMS FOR ACTIONS TAKEN BY THE ABOVE COMPANY REGARDING THE ABOVE RESOLUTION; (2) THIS IS A TRUE AND CORRECT COPY OF A RESOLUTION ADOPTED BY THE COMPANY'S BOARD OF DIRECTORS ON THE BELOW DATE, AND THAT THE SAID RESOLUTION HAS NOT BEEN IN ANY WAY RESCINDED, ANNULLED, OR REVOKED BUT THE SAME IS STILL IN FULL FORCE AND EFFECT; (3) THE SHARES SUBJECT TO THIS RESOLUTION HAVE BEEN ALLOTTED AND THAT THE CORPORATION HAS RECEIVED THE FULL CONSIDERATION FOR SUCH SHARES AND THAT SUCH SHARES ARE THEREFORE FULLY PAID AND NON-ASSESSABLE; AND (4) THE ABOVE NAMED COMPANY BELIEVES NEVADA AGENCY AND TRANSFER COMPANY FROM ANY AND ALL LIABILITIES IN CONNECTION WITH THIS TRANSACTION.

x _____
OFFICER'S SIGNATURE

Stephen M. Goodwin
OFFICER'S NAME PRINTED

CEO
TITLE OF OFFICER

11/5/19
DATE

FTE001863

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT C

24
25
26
27
28

**MINUTES OF A SPECIAL MEETING OF**
**THE BOARD OF DIRECTORS**
**OF FTE NETWORKS, INC.**

A special meeting of the Board of Directors (the "Board") of FTE Networks, Inc., a Nevada corporation (the "Company") was held on Tuesday, October 22, 2019, at 10:30 AM EDT, pursuant to waiver of notice, at the Company's offices at 237 West 35th Street, Suite 901, New York, NY 10001. The following persons, constituting all of the members of the Board and therefore, a quorum, were present:

> Michael P. Beys
> Joseph F. Cunningham, Jr.
> Richard de Silva
> Peter Ghishan

The following persons were present by invitation:

> Zar Aamer, TTP8
> Anthony Cassano, Lateral Investment Management
> Robert Friedel, Esq., Pepper Hamilton LLP (joined at 12:05 p.m. EDT)
> Steven M. Goodwin
> Danish Mir, TTP8
> Fred Sacramone, Benchmark Builders, Inc. (Observer)
> Ernest Scheidemann, Benchmark Builders, Inc. (Acting CFO)
> Suneet Singal, TTP8

Mr. Beys acted as Chairman of the meeting and called the meeting to order. Mr. Beys took roll and announced that a quorum was present. Mr. Ghishan acted as secretary of the meeting.





### Exchange of Promissory Notes

The Board considered the loans made by TBK 327 Partners (in part, as assignee from SRM Entertainment Group, LLC) (the "Lender") which are evidenced by those certain Promissory Notes issued by the Company dated January 23, 2014, May 16, 2014 and July 11, 2017 (the "Promissory Notes"). The Board discussed a proposal from Chris Ferguson, a former director of the company and current authorized representative of the Lender, to exchange the Promissory Notes for shares of the Company's Common Stock at an exchange rate of $0.43 per share. It was noted for the Board that there currently exists a disagreement between the Company and the Lender as to the total amount of indebtedness outstanding under the Promissory Notes.

Upon consideration of the Company's liquidity and current and projected capital needs, and upon motion duly made and seconded, the following resolutions were unanimously adopted:

WHEREAS, the Company has borrowed certain funds from the Lender as evidenced by the Promissory Notes, such borrowed amounts remain outstanding as of the date hereof and the Company is in default under the Promissory Notes;

WHEREAS, there exists a disagreement between the Company and the Lender as to the amount of indebtedness currently outstanding under the Promissory Notes;

WHEREAS, it is proposed that the Company agree to issue shares of Common Stock in exchange for cancellation of the indebtedness outstanding under the Promissory Notes at a rate of one share of Common Stock for each $0.43 of indebtedness cancelled and extinguished under the Promissory Notes (the "Note Exchange"); and

WHEREAS, in order to improve the Company's balance sheet, avoid further interest expense and obtain a waiver of the Company's default under the Promissory Notes, the Board deems it advisable and in the best interests of the Company and its stockholders to execute the Note Exchange as proposed by the Lender;

NOW, THEREFORE, BE IT RESOLVED, that the Board hereby authorizes and directs the Company's Interim Chief Executive Officer and Acting Chief Financial Officer, or either of

FTE001858

them, to determine the amounts outstanding under each of the Promissory Notes, with the authority to exercise discretion with respect to any ambiguities in the Promissory Notes and to negotiate the amount outstanding with the Lender to come to a reasonable agreement with respect to such amount (the "Final Note Amount"); and be it further

**RESOLVED**, that the Board hereby approves the Note Exchange such that, subject to the certification of the Company's Interim Chief Executive Officer or Acting Chief Financial Officer of the Final Note Amount, the Company will issue one fully paid and nonassessable share of Common Stock to the Lender for each $0.43 of indebtedness that is cancelled and extinguished under the Promissory Notes; and be it further

**RESOLVED**, that the Company be, and it hereby is, authorized to enter into and perform its obligations under such agreements, instruments and documents deemed necessary or advisable by the officers of the Company in connection with the Note Exchange (the "Transaction Documents"); and that the officers of the Company be, and they hereby are, and each of them acting singly hereby is, authorized, for and on behalf of the Company and in its name, to execute and deliver the Transaction Documents, with such changes therein as such officer, at his discretion, shall determine to be necessary, appropriate or advisable; and that the execution of any such Transaction Document by any such officer shall be conclusive evidence of such officer's approval of any such change to such Transaction Document and of the due authorization of the execution and delivery of such Transaction Document by this resolution; and be it further

**RESOLVED**, that, upon the satisfaction of the conditions set forth in the Transaction Documents with respect to the closing of the Note Exchange, the appropriate officers of the Company be, and they hereby are, authorized, for and on behalf of the Company and in its name, to execute and deliver to the Lender under the seal of the Company, stock certificates for that number of shares of Common Stock in the Lender's name issuable upon consummation of the Note Exchange; and that, following such sale and issuance, such shares of Common Stock shall constitute duly authorized, validly issued and outstanding, fully paid and nonassessable shares of Common Stock of the Company; and be it further

**RESOLVED**, that it is desirable that the issuance and sale of the shares of Common Stock be qualified or registered or exempted from qualification or registration in various states and under federal securities laws; that the officers of the Company be, and they hereby are, and each of them acting singly hereby is, authorized to determine the states in which appropriate action shall be taken to qualify or register or exempt from qualification or registration all or such number of the securities of the Company as such officers or officer may deem advisable; that such officers or officer hereby are authorized to perform, on behalf of the Company and in its name, any and all such acts as any such officers or officer may deem necessary or advisable in order to comply with the applicable federal laws and applicable laws of any such states and, in connection therewith, to execute and file all requisite papers and documents, including, but not limited to, applications, reports, surety bonds, irrevocable consents and appointments of attorneys for service of process; and that the execution by any such officers or officer of any such paper or document or the doing by any of them of any act in connection with the foregoing matters shall conclusively

establish their authority therefor from the Company and the approval and ratification by the Company of the papers and documents so executed and the action so taken; and be it further

**RESOLVED**, that the appropriate officers of the Company shall prepare and file with the SEC a Current Report on Form 8-K (or other applicable form) disclosing the sale and issuance of unregistered shares of Common Stock as required pursuant to the rules of the SEC and the NYSE American securities exchange; and be it further

**FURTHER RESOLVED**, that each of the officers of the Company, or any one of them, be authorized to take any and all actions and execute any and all documents in such form as shall be consistent with these resolutions and which shall be, in the discretion of such officers, necessary and appropriate to carry out the intent of such resolutions.



There being no further business before the Board, upon a motion duly made and seconded, the Board adjourned the meeting at 12:25 p.m. EDT.

Date: October 22, 2019

Respectfully submitted,

Peter Ghishan,
Secretary of the meeting

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT D

25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

INNOVATIV MEDIA GROUP, INC., a
Wyoming corporation;

       Plaintiff,

v.

FTE NETWORKS, INC., a Nevada
corporation; LATERAL U.S. CREDIT
OPPORTUNITIES FUND, LP; RICHARD
DE SILVA; DOES I-X; ROE Entities, I-X,

       Defendants.

**DECLARATION OF MICHAEL BEYS, ESQ. IN SUPPORT OF DEFENDANTS' MOTIONS:**

**(1) FOR SUMMARY JUDGMENT AS TO INNOVATIV'S LACK OF STANDING / NRS 78.211;**

**Or, in the alternative**

**(2) FOR PARTIAL SUMMARY JUDGMENT**

I, MICHAEL BEYS, ESQ., declare as follows:

1.    I am over the age of 18 years old and, unless stated to be on information and belief, have personal knowledge of the facts as set forth herein and could and would competently testify thereto if called upon to do so.

2.    I am the interim Chief Executive Officer of FTE Networks, Inc. ("FTE").

3.    I was first appointed interim CEO in mid-December 2019 following the SEC violations caused at FTE by then-interim CEO Mr. Goodwin's unilateral, unauthorized, and erroneous issuance of more than 20% of FTE common stock to TTP8, LLC (which issuance was in purported consideration for TTP8's agreement to cancel certain debt originally owed by FTE to third parties but purportedly acquired by TTP8).

4.    Prior to that appointment as interim CEO, on approximately October 18, 2019, I was appointed as an FTE director.

5.    Before that, my law firm had been engaged as FTE's litigation counsel for a few months, since August 2019, but such engagement ended in December 2019 with my appointment as CEO.

6.    Also on October 18, 2019, the same date as my appointment as an FTE director, Messrs. Ghishan and Cunningham were appointed as FTE directors.

7.      Both were nominated by Suneet Singal.

8.      On or about October 22, 2019, Mr. Steve Goodwin, who was sponsored by Suneet Singal, was appointed interim CEO for FTE.

9.      On or about that same date, and less than a week after my own first involvement with FTE, I participated in a special board meeting whereat TTP8's principal, Mr. Singal first proposed a debt cancellation transaction in which FTE would issue shares to TTP8 in exchange for its acquiring and cancelling certain debt held by third parties (TBK 327 Partners and Suwyn Investments). See Defendants' Motion, at Exh. C, October 22, 2019, Meeting Minutes.

10.     I and the rest of the FTE board only **conditionally** approved the proposed transaction, obviously subject to TTP8's actual and legally valid acquisition of the subject debt from the underlying debtholders. See id.

11.     On November 15, 2019, Mr. Goodwin, as FTE's interim CEO and Singal's nominee, unilaterally issued shares to TTP8 without advising or obtaining approval from the FTE board or FTE's shareholders via majority consent. See id., at Exh. B, November 15, 2019, Share Issuance Authorization.

12.     Besides being unauthorized as premature in the absence of TTP8's valid legal title to the related underlying debt, this November 15 issuance unilaterally made by **Mr. Goodwin** violated NYSE and SEC rules and restrictions with respect to the number of shares issued.

13.     I and other FTE directors (or at least those not complicit in TTP8's and Mr. Singal's fraudulent activities) only learned of the improper and erroneous share issuance to TTP8 on December 9, 2019.

14.     Immediately after learning of Mr. Goodwin's unauthorized and violative share issuance to TTP8 and, the next day, on December 10, 2019, I directed FTE to self-report to the relevant authorities.

15.     On or about December 12, 2019, Mr. Goodwin was demoted and I replaced him as interim CEO.

16.     Still operating in reliance on Mr. Goodwin's material omissions and protestations of simply a good faith mistake, as well as TTP8's (and Mr. Singal's) express representations as to

2

TTP8's good and legal marketable title to the subject debt, I believed the only required and proper corrective action as to the FTE-TTP8 transaction was a revision of the amount of FTE shares to be issued to TTP8.

17.   As such, on December 13, 2019, I approved on behalf of FTE the Rescission and Note Exchange Agreements altering the amount of FTE common stock shares to be issued to TTP8 in consideration for TTP8's cancellation of the subject debt.  See id., at Exh. A, FTE-TTP8 Debt Cancellation-Share Agreements (Rescission and Note Exchange Agreements).

18.   In those December 13, 2019, agreements, TTP8 again expressly represented its good and legal marketable title to the subject debt.  See e.g., id., at Note Exchange Agreement, at § 4.3.

19.   I would not have approved this transaction had I known that TTP8 and Mr. Singal were fraudulently misrepresenting their right, title, and interest in the subject debt and had not satisfied the conditions expressly imposed by the FTE board on October 22, 2019.

20.   On or about December 16, 2019, the SEC formally announced charges against Mr. Singal for securities fraud.

21.   I have never personally been the subject of an SEC investigation or any other criminal investigation of any sort.  To the contrary, I formerly was a federal prosecutor, having served as an Assistant U.S. Attorney for the Eastern District of New York.

22.   I also would not have approved this transaction with TTP8 had I known that Mr. Singal was subject to fraud-based SEC charges.

23.   I have since confirmed, via conversations with the true, legal debtholders (TBK 327 Partners and Suwyn Investments), that TTP8 **never** closed on either debt acquisition, and never provided any consideration at all (whether complete or partial) related thereto and, thus, that they consider themselves to still be the true, legal holders of the subject debt.  See e.g., id., at Exh. E, Ferguson (TBK) and Suwyn Declarations.

24.   On March 12, 2023, the FTE board, comprising myself, Mr. De Silva, and Mr. Cunningham, met to discuss and vote on the cancellation of certain shares previously issued.

/ / /

/ / /

3

25.     At that meeting, I set forth the specific facts demonstrating that TTP8 never had valid legal title to any of the underlying debt and, thus, had made material false misrepresentations to FTE as an inducement to obtain FTE shares.

26.     Mr. Stillings did not participate in the related discussion or vote.

27.     Mr. Cunningham did not vote in rejection of the proposal to cancel the subject shares, but only and voluntarily elected to abstain from the vote.

28.     Also on March 14, 2023, the FTE board received and accepted a majority shareholder consent by another group of truly valid shareholders, which consent expressly sought to override and supersede the February 3, 2022 bylaws amendment organized by the minority group including such invalid shareholders as TTP8, Innovativ, and the Szkaradeks (among others).

29.     FTE is currently in negotiations with the true, legally valid holders of the underlying debt in relation to their still-existing rights.

30.     While FTE filed with the Nevada Secretary of State appropriate Certificates of Designation as to **both** the two J Series Preferred share sets and the I Series Preferred shares, at no time did the FTE board ever make a board "resolution" in a "formal writing" approving voting rights as to either preferred share class.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct to the best of my knowledge.

Executed on March 29, 2023 in New York, New York County, New York.


_/s/ Michael Beys_____

Michael Beys

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# **EXHIBIT E**

24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

INNOVATIV MEDIA GROUP, INC., a Wyoming corporation;

        Plaintiff,

v.

FTE NETWORKS, INC., a Nevada corporation; LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP; RICHARD DE SILVA; DOES I-X; ROE Entities, I-X,

        Defendants.

**DECLARATION OF CHRIS FERGUSON**

I, CHRIS FERGUSON, declare as follows:

1.     I am over the age of 18 years old and, unless stated to be on information and belief, have personal knowledge of the facts as set forth herein and could and would competently testify thereto if called upon to do so.

2.     I am the Manager of TBK 327 Partners, LLC ("TBK").

3.     It has come to my attention that, in 2019:

    a.   TTP8, LLC ("TTP8") represented to FTE that it had acquired legal right, title, and interest in certain promissory notes previously issued by FTE to TBK and still held by TBK at that time; and

    b.   based on that representation of legal right, title, and interest in such notes, obtained from FTE certain FTE common stock shares as part of a debt cancellation transaction.

4.     That representation by TTP8 was and still is false.

5.     Moreover, I was unaware of any discussions between TTP8 and/or Mr. Suneet Singal and FTE in any way related to these promissory notes which were properly and exclusively TBK's at that time and still are to date.

/ / /

FTE001881

6.      While TTP8, through Mr. Singal, attempted to acquire this FTE debt from TBK by way of a "Pledge and Purchase Agreement" in or around October 16, 2019, that transaction never closed and no consideration at all was ever exchanged in performance thereof.

7.      At all times, from the date these promissory notes were first issued to TBK to the present, TBK has considered itself and is, in fact, the legal owner and holder thereof.

8.      I have not had any further communications with either TTP8 or Mr. Singal since the above-referenced 2019 transaction failed to close.

9.      Also, while I was aware of the February 2022 attempt by FTE's claimed shareholders, including TTP8 and Innovativ Media Group ("Innovativ"), to amend FTE's bylaws, I never indicated to TTP8 or Innovativ that TBK supported such bylaws amendment attempt.

10.      Specifically, Mr. Tom Coleman, who represented to me that he was the principal of Innovativ, , contacted me and indicated that he believed FTE had value..

11.      I requested related and supporting information from him.

12.      He responded and provided me with a copy of the proposed bylaws amendment, but I did not sign it as he requested, either on behalf of myself or TBK.

13.      I did not have any other conversations with Mr. Coleman and/or Innovativ in any way related to FTE after I declined to sign the proposed bylaws amendment.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct to the best of my knowledge.

Executed on March 7 2023 in Bethlehem, Pennsylvania, Northampton County.

_____

Chris Ferguson

2

FTE001882

1

2

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

3

4

INNOVATIV MEDIA GROUP, INC., a
Wyoming corporation;

**DECLARATION OF MARK SUWYN**

5

Plaintiff,

6

v.

7

8

9

FTE NETWORKS, INC., a Nevada
corporation; LATERAL U.S. CREDIT
OPPORTUNITIES FUND, LP; RICHARD
DE SILVA; DOES I-X; ROE Entities, I-X,

10

Defendants.

11

12        I, MARK SUWYN, declare as follows:

13        1.        I am over the age of 18 years old and, unless stated to be on information and belief,

14   have personal knowledge of the facts as set forth herein and could and would competently testify

15   thereto if called upon to do so.

16        2.        I am the Manager of Suwyn Investments LLC.

17        3.        It has come to my attention that, in 2019:

18        a.   TTP8, LLC ("TTP8") represented to FTE that it had acquired legal right, title, and

19             interest in certain promissory notes previously issued by FTE to Suwyn Investments

20             and still held by Suwyn Investments at that time; and

21        b.   based on that representation of legal right, title, and interest in such notes, obtained

22             from FTE certain FTE common stock shares as part of a debt cancellation

23             transaction.

24        4.        That representation by TTP8 was (and still is) false.

25        5.        Moreover, I was unaware of any discussions between TTP8 (and/or Mr. Suneet

26   Singal) and FTE in any way related to these promissory notes which were properly and exclusively

27   Suwyn Investments' at that time (and still are to date).

28   ///

FTE001883

6.      While TTP8, through Mr. Singal, attempted to acquire this FTE debt from Suwyn Investments by way of a "Pledge and Purchase Agreement," that transaction never closed and no consideration at all was ever exchanged in performance thereof.

7.      At all times, including to date, Suwyn Investments has considered itself and is, in fact, the legal owner and holder of the Promissory Notes issued by FTE.

8.      I have not had any further communications with either TTP8 or Mr. Singal since the above-referenced attempted transaction failed to close.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct to the best of my knowledge.

Executed on _17th day of March, 2023 in _Bonita Springs, Florida, _Lee County, .

Mark Suwyn
Mark Suwyn

2

FTE001884