Electronically Filed
3/29/2023 2:35 PM
Steven D. Grierson
CLERK OF THE COURT

**MLEV**
Therese M. Shanks, Esq. (SBN 12890)
MaryJo E. Smart, Esq. (SBN 16139)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, Nevada 89511
Tel: 775-788-2200
tshanks@fennemorelaw.com
msmart@fennemorelaw.com
*Attorneys for Plaintiff*

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| INNOVATIV MEDIA GROUP, INC., a Wyoming corporation,<br><br>             Plaintiffs,<br><br>    vs.<br><br>FTE NETWORKS, INC., a Nevada corporation; LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP; RICHARD DE SILVA; DOES I-X; ROE Entities, I-X,<br><br>             Defendants. | CASE NO.:   A-22-849188-B<br><br>DEPT. NO.:   XXXI<br><br><br>**HEARING REQUESTED** |

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

Plaintiff INNOVATIV MEDIA GROUP, INC. ("Innovativ"), by and through its counsel,

moves this Court for leave to file a Supplemental Complaint in this matter.  This motion is made

pursuant to NRCP 15(d) and is based upon the attached memorandum of points and authorities,

exhibits, and the pleadings and papers on file herein.

Dated:  March 29, 2023              FENNEMORE CRAIG, P.C.

                                      */s/ Therese M. Shanks*
                               Therese M. Shanks, Esq. (SBN 12890)
                               MaryJo E. Smart, Esq. (SBN 16139)
                               7800 Rancharrah Parkway
                               Reno, Nevada 89511

                               *Attorneys for Plaintiff*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

Since the filing of Innovativ's amended complaint in December 2022, FTE has engaged in further harmful conduct warranting the filing of an additional supplemental complaint, asserting claims additional to those pending in Innovativ's Amended Complaint.   The proposed Supplemental Complaint is attached as **Exhibit 1.**  Specifically, Innovativ seeks leave to file a supplemental complaint: (1) challenging FTE's unlawful cancellation of Innovativ's stock; (2) challenging the validity of a purported shareholder consent purporting to amend and restate FTE's bylaws; and (3) challenging the validity of stock issuances without director consent.

**II.     RELEVANT FACTUAL BACKGROUND**

**A.  FTE'S UNLAWFUL CANCELLATION OF INNOVATIV'S STOCK.**

As set forth in the proposed Supplemental Complaint, FTE purported to unilaterally cancel third-party TTP8, LLC, and therefore, Innovativ's stock on March 12, 2023.  Exh. 1.  However, Nevada law does not permit a board of directors to unilaterally cancel stock upon unproven allegations of fraud.

**A.  BACKGROUND OF THE TTP8 TRANSACTION**

**a.   The Ferguson and Suwyn Notes**

On October 22, 2019, Christopher Ferguson ("Ferguson"), a former director of FTE and a principal of TBK Investments, LLC ("TBK") approached FTE regarding a resolution to outstanding debt that FTE then owed to TBK under certain promissory notes held by TBK (the "Ferguson Notes").  Exh. 1.  In 2014, FTE had given two unsecured promissory notes to TBK in the principal amounts of $177,302 and $80,000, respectively.  These notes are governed by Pennsylvania law.  Payment was due in October 2016, and May 2015, respectively.  Exh. 1.  On October 1, 2019, TBK was also assigned the rights to a promissory note FTE had given to SRM Entertainment Group for the principal amount of $167,000.  Payment was past due as of the date of assignment.  This note is governed by Florida law.  Exh. 1.  By October 2019, FTE was in default under the Ferguson Notes.  Exh. 1.

On or about October 22, 2019, Ferguson proposed to the board of FTE that TBK surrender the promissory notes to FTE in exchange for the issuance of stock, permitting FTE to cancel this debt on its books.  Exh. 1.  The newly-minted board of FTE, Cunningham, Peter Ghishan, Beys and De Silva, approved of this transaction.  Exh. 1.

De Silva approached Suneet Singal, the former manager of TTP8, and suggested to Singal that TTP8 acquire the Ferguson Notes, and then tender the Ferguson Notes to FTE in exchange for an issuance of FTE stock to TTP8.  Exh. 1.  This would permit FTE to cancel the debt it owed on the Ferguson Notes on its books.  Exh. 1.

De Silva also suggested to Singal that TTP8 acquire a larger note between FTE and Mark Suwyn ("the Suwyn Note").  Exh. 1.  FTE had granted an unsecured promissory note to Suwyn in 2016 for $2,000,000.  As of October 2019, FTE was also in default under that note.  Exh. 1.

**b.  TTP8 Acquired Legal and Marketable Title to the Ferguson and Suwyn Notes.**

On November 3, 2019, TTP8 and Suwyn entered into a Pledge and Purchase Agreement in which Suwyn agreed to transfer the Suwyn Note to TTP8 for a cash payment of $4,339,365, payable by June 30, 2020.  Exh. 1.  On November 3, 2019, Suwyn signed a letter stating that ""[f]or considerations outlined in the agreement . . . Suwyn hereby transfers the Promissory Note between it and FTE Networks dated December 8, 2016 to TTP8 effective this date."  Exh. 1.  On November 13, 2019, TTP8 and Suwyn updated their agreement to provide for payment in the form of 1,000,000 Rule 144 restricted common shares of FTE stock by January 31, 2020, rather than a payment in cash.  If a Rule 144 exemption was not available, however, performance under the note would be indefinitely extended until such time as a Rule 144 exemption became an option.  Exh. 1.

On November 8, 2019, TTP8 and TBK entered into a Pledge and Purchase Agreement in which TBK assigned its note to TTP8 in exchange for $500,000 cash payment, due in January 2020.  Exh. 1.

/////

/////

### c. FTE Issues Stock to TTP8 in November 2019, but Inadvertently Violates the New York Stock Exchange's "20 Percent Rule."

In November 2019, TTP8 and FTE entered into an agreement in which TTP8 agreed to tender the Ferguson Notes and the Suwyn Note to FTE for cancellation, in exchange for the issuance of FTE stock. Exh. 1. On November 15, 2019, in exchange for TTP8's assumptions of these promissory notes and tender to FTE for cancellation, FTE issued TTP8 5,468,379 shares of common stock. Exh. 1.

On December 10, 2019, FTE realized it had miscalculated the amount of stock it could issue to TTP8, and that FTE's issuance resulted in FTE issuing more than 20% of its issued and outstanding stock without consent of the shareholders, in violation of a rule of the New York Stock Exchange ("NYSE"). Exh. 1.

TTP8 agreed, at FTE's request, to rescind the transaction and be re-issued FTE stock in an amount that would not run afoul of the NYSE rules. Exh. 1. On December 12, 2019, Attorney Friedel emailed TTP8 and asked for a copy of TTP8's agreements with TBK and Suwyn. Attorney Friedel specifically wanted "documents evidencing that TTP8 actually owns the promissory notes that are being exchanged" because "FTE naturally needs to see such evidence in order to agree to an exchange of notes for shares." Exh. 1.

On or about that same date, Attorney Friedel also drafted a Rescission Agreement and a Note Exchange Agreement for FTE. Exh. 1. On December 13, 2019, FTE and TTP8 entered into the Rescission Agreement and the Note Exchange Agreement. Exh. 1. The Rescission Agreement formally rescinded the prior transfer of stock to TTP8. Under the Note Exchange Agreement, TTP8 represented that it had "good and marketable title to the Promissory Notes" between FTE and Suwyn, and FTE and TBK. Exh. 1. The Note Exchange Agreement did not define "good and marketable title." Exh. 1.

Ferguson texted confirmation to TTP8 that TTP8 possessed legal and marketable title to the Ferguson Notes. Exh. 1. In addition, on December 13, 2019, TBK also confirmed in writing that "the conditions to closing . . . have been satisfied and the legal owner of the promissory notes is TTP8, LLC." Exh. 1.

4

On December 17, 2019, Attorney Friedel informed Beys, De Silva, Cunningham and Ghishan that Sections 7 and 8 of the TBK and Suwyn agreements with TTP8 would potentially allow TBK and/or Suwyn to rescind their deal with TTP8 if TTP8 did not follow through with its obligations to TBK or Suwyn.  Exh. 1.  On December 18, 2019, Attorney Friedel emailed TTP8 and informed it that "FTE is eager to proceed to close on the Note Exchange Agreement."  He further noted FTE's concern about the fact that either TBK or Suwyn could potentially rescind their agreements with TTP8.  Exh. 1.

TTP8 sent FTE the December 13, 2019 letter from TBK, confirming that TTP8 had legal title to the Ferguson Notes.  Exh. 1.  Attorney Friedel, on behalf of FTE, responded and stated "Now that you have sent me the letter from TBK 327 Partners to TTP8 dated 12.13.19 . . . I will recommend that FTE accept that as reflecting that TTP8 is the 'legal owner' of the promissory notes . . . . I think we can take the position that if TTP8 defaults in its payment obligation to TBK 327, TTP8 will have committed a contractual breach but FTE will not be implicated."  Exh. 1.

Attorney Friedel then expressed concern over the Suwyn Note, and in response, TTP8 sent Attorney Friedel and FTE the November 3, 2019 letter from Suwyn, confirming that TTP8 was the legal owner of the Suwyn notes.  Exh. 1.

### d.  The TTP8 Transaction Closes in March 2020.

On February 20, 2020 TTP8's original shares were cancelled, pursuant to TTP8's Rescission Agreement with FTE and voluntary surrender of its stock certificates back to FTE, and returned to FTE's treasury stock.  Exh. 1.  On March 17, 2020, Beys signed a Share Issuance & Transfer Agent Instruction Resolution, expressly approving of the issuance of 4,193,684 shares of FTE stock to TTP8.  Exh. 1.

### B.  INNOVATIV OBTAINS ITS STOCK IN FTE FROM TTP8, AS A BONA FIDE PURCHASER FOR VALUE, IN MAY 2020.

Upon the issuance of FTE stock to TTP8, TTP8 requested that NATCO transfer certain shares of that stock to certain individuals and/or entities.  Maria Fernandez, FTE's in-house counsel, however, informed NATCO that FTE would require a Rule 144 opinion before FTE

would approve of the transfer of this stock.  Exh. 1.  One of these entities was Innovativ, who had agreed to purchase 500,000 shares of stock from TTP8 for $50,000.  Exh. 1.

Pursuant to FTE's request, Innovativ provided a comprehensive Rule 144 opinion, authored by its counsel Ron Logan, Esq., in which Mr. Logan examined, in depth, the validity of the TTP8 transaction, the underlying Suwyn and Ferguson notes, and the validity of FTE's issuance of stock to TTP8.  Exh. 1.  FTE never voiced any objection to Mr. Logan's analysis of the TTP8 transaction, or his determination that TTP8 validly owned FTE stock.  Exh. 1.  On May 18, 2020, Fernandez informed Innovativ that she was agreeable to the transfer of stock from TTP8 to Innovativ but would require an indemnity agreement between Innovativ and FTE "as the last open item to approving the transfer."  Exh. 1.  Innovativ was not aware of any pending claims against TTP8 related to that transaction from FTE, TBK, Ferguson or Suwyn in May 2020.  Exh. 1.

On May 19, 2020, Maria Fernandez emailed Beys and stated that she "would recommend approving the contemplated transfer" of TTP8's stock to Innovativ.  Exh. 1.  Beys responded "Approved."  Exh. 1.  NATCO transferred 500,000 shares to Innovativ from TTP8 on May 19, 2020.  Exh. 1.  As of May 19, 2020, neither Suwyn nor Ferguson had brought an action to enforce their agreements with TTP8.  Exh. 1.  As of May 19, 2020, TTP8's performance under the Suwyn was, on information and belief, not yet due.  Exh. 1.  As of May 19, 2020, FTE had not informed any person or expressed any concern about the TTP8 transaction.  Exh. 1.

When FTE filed is annual statement on a form 10-K for the year 2019, FTE had removed the debt owed by FTE on the Ferguson and Suwyn notes, indicating that FTE has, in fact, cancelled that debt on its books.  Exh. 1.

### C. FTE, BEYS AND DE SILVA PURPORT TO UNILATERALLY CANCEL TTP8'S, AND THEREFORE, INNOVATIV'S STOCK IN MARCH 2023.

One year after this litigation has been pending, FTE took the position for the first time that Innovativ is not a "valid" shareholder of FTE because of alleged fraud related to the TTP8 transaction.  Exh. 1.  No court in any jurisdiction has ever entered an order finding fraud or rescinding that transaction.  Exh. 1.

Innovativ filed a petition for a writ of mandamus in May 2022, seeking to inspect FTE's shareholder list, which this Court granted after a hearing on June 30, 2022.  Exh. 1.  At no time during the briefing process or that hearing, did FTE argue that Innovativ was not a "valid" shareholder due to purported fraud on behalf of TTP8.  Exh. 1.  This Court's order on the petition for a writ mandamus was not conditional, but a final order adjudicating this issue pursuant to NRS Chapter 34.  Exh. 1.

FTE never moved for reconsideration of this Court's entered June 30, 2022.  Exh. 1.  FTE never filed any form of appellate relief related to this Court's interlocutory, but binding, order entered on June 30, 2022.  Exh. 1.  It was not until March 2023, after a series of significant litigation losses, that FTE decided it would unilaterally cancel TTP8's stock, and therefore Innovativ's, as follows:

a. FTE was enjoined by this Court in August 2022 from holding a shareholders' meeting which FTE noticed to purportedly replace Cunningham as a director and amend and restate FTE's bylaws to unwind the Bylaws Amendment whose validity was, and still is, pending before this Court in Innovativ's Amended Complaint.

b. In addition to being enjoined by this Court, FTE was contacted by the SEC in August 2022 regarding its Definitive Proxy it had filed with the SEC related to the shareholder meeting.  The SEC advised FTE that it had an obligation to provide accurate and fair disclosures.

c. FTE was also reprimanded by the Delaware Court for its statements in its Definitive Proxy.

d. And, FTE was ordered to a same-day Preliminary Injunction hearing by the federal court in an emergency securities litigation action filed by Innovativ, due to that court's "significant concern" over what FTE was trying to do with the shareholder meeting.  Only after all of this, did FTE agree to cancel that meeting.

e. In September 2022, FTE was then enjoined by this Court from appointing Jeremy Stillings ("Stillings") to its board of directors.  In October 2022, after a full-day

evidentiary hearing, this Court entered a preliminary injunction enjoining Stillings from acting as a director of FTE until such time as the Bylaws Amendment validity was established.  As part of that order, this Court found that Innovativ had a likelihood of success on the merits of its claim related to the Bylaws Amendment;

f.  In February, Beys and De Silva were notified by the federal court in which a shareholder derivative action is pending against Beys and De Silva, personally, that FTE's motion to stay discovery was partially denied as it did not seem likely that Beys and DE Silva will prevail on their motion to dismiss the derivative claims asserted against them by FTE shareholders.  The shareholders who have brought those claims are TTP8 and Innovativ;

g.  On February 2, 2022, this Court announced its ruling from the bench after an evidentiary hearing that it was granting Innovativ's motion for partial summary judgment finding that the Series J Preferred Stock, owned by defendant LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP ("Lateral"), which is beneficially owned by De Silva, was never granted voting rights by FTE's board of directors. On March 8, 2022, this Court entered its written order confirming its ruling from the bench;

h.  That same date, March 8, 2022, the Delaware court entered an order confirming that Alex and Antoni Szkaradek (the "Szkaradeks") can vote all stock of which they are record owners, which includes over 22 million shares of FTE common stock, and 200 shares of Series I Preferred Stock.  In reaching this holding, the Delaware court rejected FTE's argument that mere allegations of fraud are sufficient to strip a shareholder of their voting rights under Nevada law.

Exh. 1.  It was only after this series of losses that FTE decided that it would simply cancel the stock it issued to TTP8, and, therefore, Innovativ.  Exh. 1.

/////

8

B. **THE WRITTEN SHAREHOLDER CONSENT TO AMEND AND RESTATE FTE'S BYLAWS IS INVALID.**

The written shareholder consent executed on or about March 15, 2023 that purports to amend and restate FTE's bylaws is invalid because it was not executed by a majority of FTE shareholders. Exh. 1. First, Lateral, the owner of the Series J Preferred Stock, is a signatory to this shareholder consent. Lateral's signatures are dated on or about February 22, 2023, which is *after* Lateral, De Silva, Beys and FTE were aware that this Court had found that the Series J stock had no voting rights, but *before* this Court entered a written order confirming that finding. Exh. 1. Even without a written order, however, Lateral could not vote its Series J Stock because this Court found that the Series J Stock *never* had voting rights. Exh. 1. On information and belief, Lateral's and De Silva's signing of this document, whether actually on February 22, 2023 or at a later date and back dating it, was done to avoid the effect of this Court's ruling, in contempt of this Court's findings, and is not a valid exercise of shareholder voting power. Exh. 1.

The written shareholder consent is also signed by the FC-RET. Exh. 1. In Delaware, FTE admitted in its pleadings that the FC-RET is not a shareholder of record but is, instead, a potential transferee of the Szkaradeks' stock. Exh. 1. The Delaware court confirmed, on March 8, 2022, that the Szkaradeks, and not the FC-RET, have the right to vote this stock which has not been transferred. Exh. 1. On information and belief, the Szkaradeks never transferred stock to the FC-RET. Exh. 1. To the extent the FC-RET's signature is a purported attempt to vote stock which it has not been transferred, it is not a valid exercise of shareholder voting power. Exh. 1.

Apava, Inc. also signed this shareholder consent. Exh. 1. On information and belief, Apava is either owned or managed by Frank Forelle, an officer and/or director of the FC-RET. Exh. 1. Apava does not appear as a shareholder of record on any of the shareholder lists provided to Innovativ. Exh. 1. Counsel for Forelle confirmed that Apava received its shares "directly" from FTE. Exh. 1. Under Nevada law and FTE's bylaws in effect at the time of this written consent, unissued stock of a corporation can only be issued upon approval of the board of directors. Exh. 1. Under Nevada law and FTE's bylaws in effect at the time of this written consent, director approval for the issuance of stock can occur in one of two ways, i.e., either in vote taken by the

board of directors at a meeting of the board of directors, or pursuant to written consent of the directors if no meeting is held. Exh. 1. If a meeting of the board of directors is not held, then Nevada law, and FTE's bylaws in effect at the time of this written consent require unanimous written approval of all directors of the board of directors for the issuance of any stock. Exh. 1. FTE, Beys and De Silva never noticed a meeting of the board of directors to issue stock to Apava. Exh. 1. Cunningham was not aware that stock was issued to Apava. Exh. 1. Cunningham never provided written consent approving of the issuance of any stock to Apava. Exh. 1. Apava is not a valid shareholder of FTE because it was issued stock in violation of Nevada law and FTE's bylaws then in effect. Exh. 1.

Similarly, the FC-RET does not appear as a shareholder of record on any shareholder list provided to Innovativ. Exh. 1. FTE, Beys and De Silva never noticed a meeting of the board of directors to issue stock to Apava. Exh. 1. If FC-RET was transferred stock from FTE, Cunningham was not aware that stock was issued to the FC-RET. Exh. 1. Cunningham never provided written consent approving of the issuance of any stock to the FC-RET. Exh. 1. The FC-RET is not a valid shareholder of FTE because it was issued stock in violation of Nevada law and FTE's bylaws then in effect. Exh. 1.

The Leider Trust also signed this purported written consent. Exh. 1. The trustee of the Leider Trust, Richard Leider, is another officer and/or director of the FC-RET. Exh. 1. The Leider Trust does not appear as a shareholder of record on any shareholder list provided to Innovativ. Exh. 1. Counsel for the Leider Trust confirmed that the Leider Trust received its shares of stock "directly" from FTE. Exh. 1. FTE, Beys and De Silva never noticed a meeting of the board of directors to issue stock to the Leider Trust. Exh. 1. Cunningham was not aware that stock was issued to the Leider Trust. Exh. 1. Cunningham never provided written consent approving of the issuance of any stock to the Leider Trust.   Exh. 1. The Leider Trust is not a valid shareholder of FTE because it was issued stock in violation of Nevada law and FTE's bylaws then in effect. Exh. 1.

On information and belief, FTE may have issued additional stock to the Lateral Entities. Exh. 1. Under the Bylaws Amendment, however, FTE would be prohibited from transferring this

stock, similarly rendering it void.  Exh. 1.  Similarly, because the Bylaws Amendment prohibits FTE's directors from issuing stock to any entity or person acting in concert with FTE's directors, the issuance of stock to the FC-RET, Apava and the Leider Trust is similarly void.  FC-RET has admitted that FC-RET, Forelle (Apava), Leider (Leider Trust), Beys and De Silva have entered into a common interest agreement regarding FTE stock.  Exh. 1.

In addition to not having been approved by a true majority of FTE shareholders, the purportedly restated bylaws violate Nevada law and attempt to unwind the Bylaws Amendment pending before this Court, whose validity has not yet been determined.  Exh. 1.  Specifically, the purportedly restated bylaws remove the restrictions placed upon FTE and its directors by FTE shareholders in the Bylaws Amendment, including, but not limited, removing language prohibited interested director stock transfers and expanding the board of directors from three directors to seven directors.  Exh. 1.  In addition, the purportedly restated bylaws would permit Beys and De Silva, or any director, to remove any other director (i.e. Cunningham) "for cause."  Exh. 1.  Under NRS 78.335, however, only a shareholder can ever remove a director.  This is because the election and removal of directors is a sacrosanct right of the shareholder franchise.  Exh. 1.  NRS Chapter 78 does not permit a corporation to amend its bylaws to permit any person other than a shareholder removing a director for cause.  Exh. 1.  This Court still has not ruled on the validity of the Bylaws Amendment, which is pending before this Court.  Exh. 1.  This latest purported amendment and restatement of the bylaws directly interferes with Innovativ's shareholder rights currently being litigated before this Court, including, but not limited to, its right to participate in corporate governance.  Exh. 1.

## III.     LEGAL STANDARD

On motion, this Court may permit Innovativ to file a "supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  NRCP 15(d).  The purpose of this rule is "to promote as complete an adjudication of the dispute between the parties as possible."  *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.,* 668 F.2d 1014, 1057 (9th Cir. 1981) (interpreting FRCP 15(d), NRCP

1  15(d)'s federal counterpart).[1]  Thus, leave should be freely given if it would comport with judicial

2  economy.  *Id.*  Here, supplementation will comport with judicial economy because these claims

3  are all inter-related and intertwined.

4  **A.  NRS 78.211 does not Permit a Corporation to Unilaterally Cancel Stock.**

5  NRS 78.211(1) states as follows:

6  The board of directors may authorize shares to be issues for consideration
   consisting of any tangible or intangible property or benefit of the corporation,
7  including but not limited to, promissory notes, service performed, contracts for
   services to be performed or other securities of the corporation . . . The judgment of
8  the board of directors as to the consideration received for the shares issued is
   conclusive in the absence of actual fraud in the transaction.
9

10  This is the statute upon which FTE purports to rely, but nothing in NRS 78.211 permits a

11  board of directors to unilaterally cancel stock.[2]  When interpreting statutes, this Court is precluded

12  from "expanding upon or modifying the statutory language because such acts are the Legislature's

13  function."  *Williams v. United Parcel Servs.,* 129 Nev. 386, 391-92, 302 P.3d 1144, 1147 (Nev.

14  2013).  Nothing in NRS 78.211 permits a board to resort to "self-help" and unilaterally cancel

15  stock.  Nor could it, because stock is, again, a personal property right belonging to the shareholder

16  and not the corporation upon its issuance.  NRS 78.240.

17  FTE's interpretation of NRS 78.211 has already been rejected by courts and the courts

18  which have addressed this ***exact*** scenario have unequivocally held that a board of directors cannot,

19  under NRS 78.211, unilaterally cancel stock absent a court order.  *See NexMed, Inc v. Clealon*

20  *Mann,* 124 P.3d 252 (Utah 2005) (interpreting NRS 78.211).  While Nevada has not yet interpreted

21  NRS 78.211 for this issue, the Utah Court of Appeals, applying Nevada law, has.  In *NexMed,* the

22  board of directors voted to cancel 125,000 shares of stock for what it contended was insufficient

23  consideration pursuant to NRS 78.211(1).  124 P.3d at 255.  The Utah Court of Appeals affirmed

24

25  [1] *Barbara Ann Hollier Trust v. Shack,* 131 Nev. 582, 589, 356 P.3d 1085, 1089 (Nev. 2015)
   (holding that Nevada follows "federal law interpreting the Federal Rules of Civil Procedure
26  because the Nevada Rules of Civil Procedure are based in large part upon their federal
   counterparts." (Internal quotations omitted)).
27
   [2] NRS 78.211(3) permits the board to put shares into escrow until the consideration is
28  provided, but the shares at issue were never put into escrow here as will be shown in this reply.

the trial court's holding that NRS 78.211(1) does not permit a board of directors to resort to a "self-help remedy" because it does not provide "a specific remedy" for a board of directors.  *Id.*  Specifically, the court noted that "while [NRS 78.211(2)] imposes a duty upon officers and directors to make a determination of consideration in the issuance of shares, [NRS 78.211] does not authorize that same corporation to cancel shares it has issued, based on its own dereliction of duty in failing to determine adequate consideration at the time of issuance." *Id.* at n.8.

Florida, which has a virtually identical statute to Nevada, has similarly rejected FTE's argument. *Jacob v. Bernatek,* 764 So.2d 874 (Fla. Dist. Ct. App. 2000).  In *Jacob,* the board of directors purported to unilaterally cancel stock after it determined that the consideration for which it was issued was not paid.  *Id.* at 876-877.  Citing Florida's statute that is virtually identical to Nevada's, Fla. Stat. Ann. § 607.0621, the court rejected that a board of directors can unilaterally cancel stock.  Instead, the court held that this statute "requires the board to determine that the consideration received *or to be received* is adequate before issuance of the shares, this section does not include remedies when the consideration is determined not to be adequate after the shares are already issued."  The court further found that it "can find no authority for a unilateral cancellation of certificates already issued, as a kind of self-help remedy, where such relief is not specifically authorized by the articles or incorporation or the contract for the purchase of stock."  *Id.* at 877.  "There is no statutory authorization which would give the board of directors this power over issued shares . . ." *Id.*

Similarly, here, nothing in NRS 78.211 permits a board of directors to unilaterally cancel stock.  Nothing in TTP8's agreement with FTE permits FTE to unilaterally cancel the stock.  Nothing in FTE's articles permits FTE to unilaterally cancel the stock.

FTE's interpretation of NRS 78.211 runs directly afoul of NRS 78.225 and NRS 78.746, which provides that "[a] purchaser of shares of stock from the corporation **is not liable to the corporation or its creditors with respect to the shares,** except to pay the consideration for which the shares were issued . . ."  When a purported creditor of a stockholder, such as Ferguson and Suwyn, wants to sue for failure of consideration, NRS 78.746(1) provides the remedy, which requires a petition for a charging order.  This is "the exclusive remedy" for such a purported

creditor.  NRS 78.746(2)(a).  Accordingly, FTE is blatantly wrong when it argues that a board of directors can unilaterally cancel stock.

Furthermore, Innovativ is a bona fide purchaser of stock whose rights are protected under NRS 104.8303.  As such, FTE certainly cannot cancel ***Innovativ's*** stock.

Furthermore, the Note Exchange Agreement between FTE and TTP8 merely required "legal and marketable title."  The terms in contracts are given their "plain meaning."  *Ringle v. Burton,* 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004).  The Note Exchange Agreement does not define "legal and marketable title."  However, according to Black's Law Dictionary, TTP8 had both legal and marketable title.  Legal title is "[a] title that evidence apparent ownership but does not necessarily signify full and complete title or a beneficial interest."  *See Legal Title,* Black's Law Dictionary  (`19th ed 2019).  And, marketable title is "[a] title that a reasonable buyer would accept because it appears to lack any defect and to cover the entire property that the seller has purported to sell."  *Marketable Title,* Black's Law Dictionary  (`19th ed 2019).  There is no question that TTP8 had legal and marketable title when it closed on the transaction.

### B.  The Written Shareholder Consent Is Not Executed by a Majority of Shareholders with Voting Power

As this Court is by now well aware, to be valid, a written shareholder consent must be executed by a majority of shareholders entitled to vote.  NRS 78.320.  Here, the shareholder consent does not appear to be valid because it is signed by: (1) the holders of the Series J Stock, whom this Court determined were never granted voting rights; (2) the FC-RET, who is either purporting to vote stock currently owned by the Szkaradeks (and which the Delaware Court just found that only the Szkaradeks can vote), or who was issued stock in violation of Nevada law and FTE's bylaws because it was done without director consent; and (3) Apava, Inc. and the Leider Trust, who also appear to have been issued stock in violation of Nevada law and FTE's bylaws because it was done without director consent.  Accordingly, a justiciable controversy exists as to whether this written consent, which purports to amend and restate FTE's bylaws, is valid.

### V.     CONCLUSION

Innovativ respectfully requests that this Court grant Innovativ's motion for leave to file a

supplemental complaint.

## **AFFIRMATION**

       The undersigned affirms that this document does not contain the social security number of any person.

Dated:  March 29, 2023          FENNEMORE CRAIG, P.C.

                */s/ Therese M. Shanks*
               Therese M. Shanks (SBN 12890)
               MaryJo E. Smart, Esq. (SBN 16139)
               7800 Rancharrah Pkwy
               Reno, Nevada 89511

               *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that I am an employee of FENNEMORE CRAIG, P.C., and that on this date, pursuant to NRCP 5 (b), I am serving a true copy of the foregoing **MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT** on the parties set forth below by:

|  | |
|---|---|
|  | Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices |
|  | Certified Mail, Return Receipt Requested |
|  | Via Electronic Mail |
|  | Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered |
| XX | By Notice of Electronic Filing via the electronic filing system as maintained by the Court Clerk's Office |

Daniel S. Cereghino, Esq. (SBN 11534)
Brandi M. Planet, Esq. (SBN 11710)
LEX DOMUS LAW
1712 Tesara Vista Place
Las Vegas, Nevada 89128


DATED: Wed, Mar 29, 2023.

/s/ *Diana L. Wheelen*
An Employee of Fennemore Craig, P.C.

# EXHIBIT 1

# EXHIBIT 1

**SUPPL**
Therese M. Shanks, Esq. (SBN 12890)
MaryJo Smart, Esq. (SBN 16139)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, Nevada 89511
Tel: 775-788-2228  Fax: 775-788-2229
tshanks@fennemorelaw.com
msmart@fennemorelaw.com

*Attorneys for Plaintiff*

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| INNOVATIV MEDIA GROUP, INC., a Wyoming corporation, | CASE NO.:   A-22-849188-B |
| Plaintiff, | DEPT. NO.:   XXXI |
| vs. | |
| FTE NETWORKS, INC., a Nevada corporation; LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP; RICHARD DE SILVA; FIRST CAPITAL REAL ESTATE TRUST, INC.; APAVA, INC.; RICHARD LEIDER, TRUSTEE OF THE RICHARD & JANE LEIDER REVOCABLE TRUST; DOES I-X; ROE Entities, I-X, | |
| Defendants. | |

**SUPPLEMENTAL COMPLAINT**

Plaintiff INNOVATIV MEDIA GROUP, INC. ("Innovativ"), by and through its counsel of Fennemore Craig, P.C., complains and alleges as follows:

**PARTIES AND JURISDICTION**

1.      As set forth in Innovativ's Amended Complaint, Innovativ is a Wyoming corporation which acquired 500,000 shares of common stock of defendant FTE Networks, Inc. ("FTE") in May 2020.   This Supplemental Complaint relates to FTE's recent purported unilateral cancellation of that stock, and the events that have ensued since the filing of Innovativ's Amended

1   Complaint.

2   2.   FTE is a Nevada corporation, registered to do business at all times in the State of

3   Nevada and the County of Clark.

4   3.   On information and belief, defendant Lateral U.S. Credit Opportunities Fund, LP

5   ("Lateral") is a Delaware limited partnership.

6   4.   On information and belief, defendant Richard De Silva is a resident of California,

7   and a director of FTE.

8   5.   On information and belief, First Capital Real Estate Trust, Inc. ("FC-RET") is a

9   Maryland corporation.

10   6.   On information and belief, APAVA, INC.  is a Wyoming Corporation, owned

11   and/or managed by Frank Forelle, an officer and/or director of the FC-RET.

12   7.   On information and belief, Richard Leider, Trustee of the Richard & Jane Leider

13   Revocable Trust is a resident of California.  In his individual capacity, Mr. Leider is a director of

14   the FC-RET.

15   8.   Despite being aware of this pending litigation, and on notice of the claims and

16   issues, FC-RET, Apava and Leider interjected themselves into this dispute and subjected

17   themselves to the laws of the State of Nevada by participating in an illegal distribution of stock,

18   invalid written consent of the shareholders, and invalid purported amendment to FTE's bylaws, as

19   set forth below, all aimed at Innovativ and its actions taken pursuant to this litigation.

20   9.   On information and belief, the value of Innovativ's stock in FTE exceeds $15,000.

21
22   **GENERAL ALLEGATIONS**

23   1.   FTE is a Nevada corporation.

24   2.   On information and belief, Lateral is a shareholder of FTE, and more specifically,

25   of its Series J Preferred Stock.

26   3.   On information and belief, De Silva, who is a director of FTE, is the beneficial

27   owner of Lateral's stock.

28   4.   As explained in more detail below, Innovativ has been denied access to the

2

Stockholder list by FTE.

5.      Innovativ acquired its shares of stock in 2020, well over six months ago.

6.      On February 8, 2022, Innovativ sent a letter to FTE in which it requested to inspect the list of the stockholders, among other things.

7.      Accompanying the February 8, 2022, letter was an affidavit certifying, among other things, that its reasons for requesting this information was for a proper purpose.

8.      FTE has not provided Innovativ with the stockholders list, or otherwise allowed it to inspect the stockholders list nor has it provided an explanation for why it believes it is not required to provide such list.

9.      Under NRS 78.105, Innovativ is entitled to inspect the stockholder list.

10.     Section 2.12(a) of FTE's bylaws allows stockholders to amend the bylaws by a majority vote.

11.     Under NRS 78.320, stockholders may also amend the bylaws of FTE by a majority vote.

12.     On February 3, 2022, stockholders holding a majority of FTE's voting power at that time, amended Section 3.1 of the Bylaws to read as follows:

> **3.1 General Powers**:   Subject to these bylaws, the Corporation's articles of incorporation and applicable law, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the Corporation managed under the direction of, its Board; *provided, however,* that:
>
> a.      No shares of the capital stock of the Corporation may be issued to any officer, director or stockholder (each, an "Insider") of the Corporation or any affiliate of an Insider without the approval of the stockholders holding a majority of the voting power of the issued and outstanding shares of the Corporation's capital stock (such stockholders, the "Controlling Stockholders").   As used in these Bylaws, "affiliate" means a person, trust or entity who controls, is controlled by or is under common control with a specified person, trust or entity, along with the immediate family members of any such specified person along with any person or entity acting in concert with such specified person.   "Control" in the preceding sentence means the power to direct the policies and affairs of an entity or trust;
>
> b.      Without the consent of the Controlling Stockholders, the Board may not:
>
> i.      Adopt any shareholder rights, poison pill, staggered board or other plan that has an anti-takeover purpose or effect; and
>
> ii.     Issue any shares of stock with voting rights greater than the voting rights of shares of the Corporations' common stock.

3

13.     On February 3, 2022, stockholders holding a majority of FTE's voting power amended Section 3.2 of the Bylaws to state:

> **3.2 Number and Qualification of Directors.**  The Board shall consist of three members.  Directors do not need to be residents of Nevada or shareholders of the Corporation.

14.     On February 3, 2022, stockholders holding a majority of FTE's voting power amended FTE's bylaws to delete Section 5.

15.     On February 3, 2022, stockholders holding a majority of FTE's voting power amended section 6.5 of FTE's bylaws to read:

> **6.5  Restrictions on Transfers or Registration of Shares.**  Without the consent of the Controlling Stockholders, the Board may only impose restrictions on the transfer or registration of transfer of shares (including any security convertible into, or carrying a right to subscribe for or acquire shares)in the following circumstances . . . .

16.     On February 3, 2022, stockholders holding a majority of FTE's voting power amended the Bylaws to delete Section 6(c) of the original bylaws.

17.     On February 3, 2022, stockholders holding a majority of FTE's voting power amended section 9.1 of the Bylaws to read:

> **9.1  Amendments**:  Without the consent of the Controlling Stockholders, the Corporation's Board may not amend, repeal, modify or supplement the Corporation's Bylaws at any time.

18.     The stockholders voted that these amendments be effective immediately.

19.     A true and correct copy of the amendment, signed by these stockholders is attached hereto as **Exhibit 1.**

20.     These Amendments occurred because of the shareholders' concern that FTE's interested directors, Michael Beys ("Beys") and Richard De Silva ("De Silva"), would continue their pattern of looting the assets of FTE in favor of their own self-interest and to the direct detriment of FTE's shareholders.

21.     FTE refuses to recognize the amendment as valid and binding on its Board.

22.     On information and belief, the amendment is valid and binding on the Board because it was executed by a majority of shareholders entitled to vote by written consent.

**GENERAL ALLEGATIONS IN SUPPORT OF THE SUPPLEMENTAL COMPLAINT**

23.     Since the filing of its original complaint in March 2022, and subsequent amended complaint in December 2022, FTE has engaged in additional and further conduct aimed at and intended to directly interfere with Innovativ's shareholder rights.

24.     Specifically, on March 12, 2023, FTE purported to hold a meeting of the board of the directors at which certain directors of FTE, Michael Beys ("Beys") and defendant Richard De Silva ("De Silva") purported to unilaterally cancel stock owned by Innovativ and other shareholders over the dissent of FTE's sole independent director, Joseph Cunningham ("Cunningham").

25.     This meeting was held one day after a majority of FTE's shareholders executed a second written shareholder consent (the "Second Bylaws Amendment") which prohibited FTE from engaging in any liquidation event without shareholder approval.

26.     FTE's articles already prohibit FTE from disposing of all or virtually all of FTE's assets without shareholder approval.

27.     On March 13, 2023, after FTE purported to cancel Innovativ's stock, FTE then claimed that a majority of its shareholders executed an written shareholder consent amended and restating FTE's Bylaws on or about March 13 or March 15, 2023, to completely undo the Bylaws Amendment currently pending before this Court.

28.     This Supplemental Complaint relates to the validity of the cancellation of stock and that validity of that written consent and is filed to supplement Innovativ's currently pending claims in its Amended Complaint.

**I.     NEVADA LAW DOES NOT PERMIT DIRECTORS TO UNILATERALLY CANCEL STOCK**

29.     Defendants FTE, De Silva and Beys purportedly cancelled approximately 4.5 million shares of FTE stock issued to TTP8, LLC ("TTP8") by FTE in March 2020 because FTE has alleged, but not proven, that the TTP8's acquisition of these shares was by purported fraud.

**A.  BACKGROUND OF THE TTP8 TRANSACTION**

**a.  The Ferguson and Suwyn Notes**

30.     On October 22, 2019, Christopher Ferguson ("Ferguson"), a former director of FTE and a principal of TBK Investments, LLC ("TBK") approached FTE regarding a resolution to outstanding debt that FTE then owed to TBK under certain promissory notes held by TBK (the "Ferguson Notes").

31.     In 2014, FTE had given two unsecured promissory notes to TBK in the principal amounts of $177,302 and $80,000, respectively.  These notes are governed by Pennsylvania law. Payment was due in October 2016, and May 2015, respectively.

32.     On October 1, 2019, TBK was also assigned the rights to a promissory note FTE had given to SRM Entertainment Group for the principal amount of $167,000.  Payment was past due as of the date of assignment.  This note is governed by Florida law.

33.     By October 2019, FTE was in default under the Ferguson Notes.

34.     On or about October 22, 2019, Ferguson proposed to the board of FTE that TBK surrender the promissory notes to FTE in exchange for the issuance of stock, permitting FTE to cancel this debt on its books.

35.     The newly-minted board of FTE, Cunningham, Peter Ghishan, Beys and De Silva, approved of this transaction.

36.     However, on information and belief, FTE's counsel at that time, Bob Friedel of Troutman Pepper, informed FTE that it could not enter into a deal directly with TBK without potentially running into issues with securities regulations, given FTE's deficient filings with the Securities and Exchange Commission ("SEC") and SEC litigation related to FTE's prior board.

37.     De Silva approached Suneet Singal, the former manager of TTP8, and suggested to Singal that TTP8 acquire the Ferguson Notes, and then tender the Ferguson Notes to FTE in exchange for an issuance of FTE stock to TTP8.

38.     This would permit FTE to cancel the debt  it owed on the Ferguson Notes on its books.

39.     De Silva also suggested to Singal that TTP8 acquire a larger note between FTE and Mark Suwyn ("the Suwyn Note").

40.     FTE had granted an unsecured promissory note to Suwyn in 2016 for $2,000,000.

As of October 2019, FTE was also in default under that note.

41.     On October 28, 2019, De Silva emailed Bob Friedel, copying TTP8, and informed Attorney Friedel that TTP8 was going to acquire the Ferguson Notes and the Suwyn Note under the "structure [Friedel] suggested with a simple purchase for a promissory note that has a make-whole provision based on the increase in FTE's stock price.  The note can be paid in cash or liquid securities."

> **b.  TTP8 Acquired Legal and Marketable Title to the Ferguson and Suwyn Notes.**

42.     On November 3, 2019, TTP8 and Suwyn entered into a Pledge and Purchase Agreement in which Suwyn agreed to transfer the Suwyn Note to TTP8 for a cash payment of $4,339,365, payable by June 30, 2020.

43.     On November 3, 2019, Suwyn signed a letter stating that ""[f]or considerations outlined in the agreement . . . Suwyn hereby transfers the Promissory Note between it and FTE Networks dated December 8, 2016 to TTP8 effective this date."

44.     On November 13, 2019, TTP8 and Suwyn updated their agreement to provide for payment in the form of 1,000,000 Rule 144 restricted common shares of FTE stock by January 31, 2020, rather than a payment in cash.  If a Rule 144 exemption was not available, however, performance under the note would be indefinitely extended until such time as a Rule 144 exemption became an option.

45.     On November 8, 2019, TTP8 and TBK entered into a Pledge and Purchase Agreement in which TBK assigned its note to TTP8 in exchange for $500,000 cash payment, due in January 2020.

> **c.  FTE Issues Stock to TTP8 in November 2019, but Inadvertently Violates the New York Stock Exchange's "20 Percent Rule."**

46.     In November 2019, TTP8 and FTE entered into an agreement in which TTP8 agreed to tender the Ferguson Notes and the Suwyn Note to FTE for cancellation, in exchange for the issuance of FTE stock.

47.     On November 15, 2019, in exchange for TTP8's assumptions of these promissory notes and tender to FTE for cancellation, FTE issued TTP8 5,468,379 shares of common stock.

7

48.     On December 10, 2019, Attorney Friedel realized that FTE had miscalculated the amount of stock it could issue to TTP8, and that FTE's issuance resulted in FTE issuing more than 20% of its issued and outstanding stock without consent of the shareholders, in violation of a rule of the New York Stock Exchange ("NYSE").

49.     By this date, FTE had already been warned multiple times by the NYSE that it was in violation of NYSE rules due to its prior lack of independent directors, auditing and compliance committees, and other miscellaneous rule violations that had occurred throughout 2019.

50.     FTE's violation of the "20 Percent Rule" would ultimately result in the NYSE de-listing FTE's stock on December 17, 2019.   To date, FTE's stock has not been relisted on any stock exchange.

### d. FTE and TTP8 Agree to Rescind The Transaction and Enter Into a New Agreement.

51.     TTP8 agreed, at Attorney Friedel's and FTE's request, to rescind the transaction and be re-issued FTE stock in an amount that would not run afoul of the NYSE rules.

52.     On December 12, 2019, Attorney Friedel emailed TTP8 and asked for a copy of TTP8's agreements with TBK and Suwyn.  Attorney Friedel specifically wanted "documents evidencing that TTP8 actually owns the promissory notes that are being exchanged" because "FTE naturally needs to see such evidence in order to agree to an exchange of notes for shares."

53.     On or about that same date, Attorney Friedel also drafted a Rescission Agreement and a Note Exchange Agreement for FTE.

54.     De Silva emailed the Rescission Agreement and Note Exchange Agreement to TTP8 and asked TTP8 to "please execute." TTP8's attorney, however, interjected and informed TTP8 not to sign anything until he looked over the agreements.  De Silva then encouraged TTP8's and FTE's counsel to "connect immediately" to close this deal.

55.     On information and belief, by December 12, 2019, De Silva knew that Singal was facing a civil investigation and possibly complaint by the SEC for an unrelated transaction.

56.     On December 13, 2019, the SEC filed a civil complaint against Singal for the unrelated transaction.

57.     On that same date, FTE and TTP8 entered into the Rescission Agreement and the Note Exchange Agreement.

58.     The Rescission Agreement formally rescinded the prior transfer of stock to TTP8.

59.     Under the Note Exchange Agreement, TTP8 represented that it had "good and marketable title to the Promissory Notes" between FTE and Suwyn, and FTE and TBK.

60.     The Note Exchange Agreement did not define "good and marketable title."

61.     FTE's board of directors approved of this transaction, including De Silva, Beys, Cunningham and Ghishan.

62.     Beys signed both agreements on behalf of FTE.

63.     Ferguson texted confirmation to TTP8 that TTP8 possessed legal and marketable title to the TBK Notes.

64.     In addition, on December 13, 2019, TBK also confirmed in writing that "the conditions to closing . . . have been satisfied and the legal owner of the promissory notes is TTP8, LLC."

65.     Three days later, on December 16, 2019, per FTE's shareholder update on a form 8-k that it filed on December 23, 2019, Beys, Cunningham, Ghishan and the rest of FTE learned of Singal's SEC issues.

66.     As of December 16, 2019, however, the TTP8 transaction had not closed.

67.     One day after learning of Singal's SEC issues, on December 17, 2019, FTE filed a shareholder update announcing the new agreement with TTP8.  FTE noted that this deal had not yet closed because there were certain conditions which first needed to be met.

68.     On December 17, 2019, Attorney Friedel informed Beys, De Silva, Cunningham and Ghishan that Sections 7 and 8 of the TBK and Suwyn agreements with TTP8 would potentially allow TBK and/or Suwyn to rescind their deal with TTP8 if TTP8 did not follow through with its obligations to TBK or Suwyn.

69.     However, Attorney Friedel advised FTE that he did not believe Singal was trying to defraud or mislead FTE in any way.

70.     Attorney Friedel also advised FTE not to engage in any further deals within Singal

or his affiliates, ***including the FC-RET***, due to Singal's SEC issues, which Attorney Friedel had discussed with Singal's counsel and SEC staff.

71.     In December 2019, Singal was the managing officer of the FC-RET, which was, at that time, majority-owned (either directly or beneficially) by Singal, and his friends and/or family.

72.     On December 18, 2019, Attorney Friedel emailed TTP8 and informed it that "FTE is eager to proceed to close on the Note Exchange Agreement."   He further noted FTE's concern about the fact that either TBK or Suwyn could potentially rescind their agreements with TTP8.

73.     TTP8 sent FTE the December 13, 2019 letter from TBK, confirming that TTP8 had legal title to the Ferguson Notes.

74.     Attorney Friedel, on behalf of FTE, responded and stated "Now that you have sent me the letter from TBK 327 Partners to TTP8 dated 12.13.19 . . . I will recommend that FTE accept that as reflecting that TTP8 is the 'legal owner' of the promissory notes . . . . I think we can take the position that if TTP8 defaults in its payment obligation to TBK 327, TTP8 will have committed a contractual breach but FTE will not be implicated."

75.     Attorney Friedel then expressed concern over the Suwyn Note, and in response, TTP8 sent Attorney Friedel and FTE the November 3, 2019 letter from Suwyn, confirming that TTP8 was the legal owner of the Suwyn notes.

**e.  The TTP8 Transaction Closes in March 2020.**

76.     On February 12, 2020, FTE and TTP8 entered into an indemnity agreement related to the rescission of TTP8's stock.

77.     On February 13, 2020, Maria Fernandez ("Fernandez"), FTE's in house counsel, emailed Nevada Agency & Transfer Company ("NATCO"), FTE's former transfer agent, and provided it stock issuance instructions related to TTP8.

78.     On February 20, 2020 TTP8's original shares were cancelled, pursuant to TTP8's Rescission Agreement with FTE and voluntary surrender of its stock certificates back to FTE, and returned to FTE's treasury stock.

79.     On March 17, 2020, Beys signed a Share Issuance & Transfer Agent Instruction Resolution, expressly approving of the issuance of 4,193,684 shares of FTE stock to TTP8.

80.     Beys has stated under oath and penalty of perjury in multiple courts, including, but not limited to, this Court in a signed declaration, and courts located in New York, Delaware and Pennsylvania, that he would never have gone forward with any deals with TTP8 had he known of Singal's SEC issues at the time.

81.     Discovery has revealed, however, that Beys was personally aware of Singal's SEC issues for three months and still closed on the TTP8 deal, and continued to approve the transfer of stock to TTP8 and other parties Beys claims are "affiliates" of Singal through June 2020, six months after learning of Singal's unrelated SEC issues.

**B.  INNOVATIV OBTAINS ITS STOCK IN FTE FROM TTP8, AS A BONA FIDE PURCHASER FOR VALUE, IN MAY 2020.**

82.     Upon the issuance of FTE stock to TTP8, TTP8 requested that NATCO transfer certain shares of that stock to certain individuals and/or entities.   Fernandez, however, informed NATCO that FTE would require a Rule 144 opinion before FTE would approve of the transfer of this stock.

83.     One of these entities was Innovativ, who had agreed to purchase 500,000 shares of stock from TTP8 for $50,000.

84.     Pursuant to FTE's request, Innovativ provided a comprehensive Rule 144 opinion, authored by its counsel Ron Logan, Esq., in which Mr. Logan examined, in depth, the validity of the TTP8 transaction, the underlying Suwyn and Ferguson notes, and the validity of FTE's issuance of stock to TTP8.

85.     FTE never voiced any objection to Mr. Logan's analysis of the TTP8 transaction, or his determination that TTP8 validly owned FTE stock.

86.     Instead, FTE, through Fernandez, merely questioned a provision in the stock purchase agreement between Innovativ and TTP8 that would allow Innovativ to give the stock back to TTP8 if Rule 144's requirements could not be satisfied.

87.     Mr. Logan explained:  "[Innovativ] is concerned about the current status of FTE. FTE has been bumped off the New York Stock Exchange and it is not possible to clear the Rule 144 legend . . . If FTE does not file its delinquent reports and the . . . purchaser wants the option

11

to rescind the Stock Transfer Agreement.  The purchaser also wants to be assured that Rule 144 will not only be available but that it can tack onto the holding period of TTP8, LLC.  IF FTE is not current and filing its required public reports, the purchaser and the seller would like to rescind the Agreement because, in that event, neither party will have obtained the full benefit of the bargain that they sought."

88.     Fernandez then confirmed that both she, and FTE's "outside securities counsel" were reviewing Innovativ's Rule 144 opinion.

89.     Neither Fernandez nor FTE's outside securities counsel ever voiced any objection to Mr. Logan's analysis of the TTP8 transaction, or his determination that TTP8 validly owned FTE stock.

90.     On May 18, 2020, Fernandez informed Innovativ that she was agreeable to the transfer of stock from TTP8 to Innovativ but would require an indemnity agreement between Innovativ and FTE "as the last open item to approving the transfer."

91.     On May 19, 2020, Innovativ and FTE entered into the requested indemnity agreement.

92.     Beys signed this agreement on behalf of FTE.

93.     At no time, did Beys question the opinions set forth in Innovativ's Rule 144 opinion letter regarding the validity of the TTP8 transaction.

94.     At no time did any other person from FTE question the opinions set forth in Innovativ's Rule 144 opinion letter regarding the validity of the TTP8 transaction.

95.     Innovativ was not aware of any pending claims against TTP8 related to that transaction from FTE, TBK, Ferguson or Suwyn in May 2020.

96.     On May 19, 2020, Maria Fernandez emailed Beys and stated that she "would recommend approving the contemplated transfer" of TTP8's stock to Innovativ.

97.     Beys responded "Approved."

98.     NATCO transferred 500,000 shares to Innovativ from TTP8 on May 19, 2020.

99.     As of May 19, 2020, neither Suwyn nor Ferguson had brought an action to enforce their agreements with TTP8.

100.    As of May 19, 2020, TTP8's performance under the Suwyn was, on information and belief, not yet due.

101.    As of May 19, 2020, FTE had not informed any person or expressed any concern about the TTP8 transaction.

102.    In addition to requesting a transfer to Innovativ, TTP8 had requested transfers of its stock to certain other individuals.  Maria Fernandez informed NATCO that FTE would require Rule 144 opinion letters on these transfers.

103.    Between May 26, 2020 and May 29, 2020, Maria Fernandez and TTP8's counsel corresponded about the fact that Rule 144 opinions were not necessary given the factual circumstances of these transfers.

104.    On May 29, 2020, Maria Fernandez emailed Beys and stated that she recommended approving TTP8's requested transfers to "Messrs Mir and bin Aamer" and "Ms. Ladnier."

105.    On June 1, 2020, Maria Fernandz followed up with Beys on these transfers and noted "I'm signed off, per my email, subject to your approval" for the TTP8 transfers.

106.    Beys responded that same date "I approve."

107.    On June 1, 2020, these shares were transferred to these respective shareholders.

108.    As of June 1, 2020, Beys had known about Singal's SEC issues for six months. Nevertheless, he approved of the issuance of these shares.

109.    At no time in June 2020, did FTE voice any concern, objection, or question related to the validity of the TTP8 transaction.

110.    When FTE filed is annual statement on a form 10-K for the year 2019, FTE had removed the debt owed by FTE on the Ferguson and Suwyn notes, indicating that FTE has, in fact, cancelled that debt on its books.

**C. FTE, BEYS AND DE SILVA PURPORT TO UNILATERALLY CANCEL TTP8'S, AND THEREFORE, INNOVATIV'S STOCK IN MARCH 2023.**

111.    One year after this litigation has been pending, FTE took the position for the first time that Innovativ is not a "valid" shareholder of FTE because of alleged fraud related to the TTP8 transaction.

112.    No court in any jurisdiction has ever entered an order finding fraud or rescinding that transaction.

113.    Innovativ filed a petition for a writ of mandamus in May 2022, seeking to inspect FTE's shareholder list, which this Court granted after a hearing on June 30, 2022.

114.    At no time during the briefing process or that hearing, did FTE argue that Innovativ was not a "valid" shareholder due to purported fraud on behalf of TTP8.

115.    This Court's order on the petition for a writ mandamus was not conditional, but a final order adjudicating this issue pursuant to NRS Chapter 34.

116.    FTE never moved for reconsideration of this Court's entered June 30, 2022.

117.    FTE never filed any form of appellate relief related to this Court's interlocutory, but binding, order entered on June 30, 2022.

118.    It was not until March 2023, after a series of significant litigation losses, that FTE decided it would unilaterally cancel TTP8's stock, and therefore Innovativ's, as follows:

    a.  FTE was enjoined by this Court in August 2022 from holding a shareholders' meeting which FTE noticed to purportedly replace Cunningham as a director and amend and restate FTE's bylaws to unwind the Bylaws Amendment whose validity was, and still is, pending before this Court in Innovativ's Amended Complaint.

    b.  In addition to being enjoined by this Court, FTE was contacted by the SEC in August 2022 regarding its Definitive Proxy it had filed with the SEC related to the shareholder meeting.  The SEC advised FTE that it had an obligation to provide accurate and fair disclosures.

    c.  FTE was also reprimanded by the Delaware Court for its statements in its Definitive Proxy.

    d.  And, FTE was ordered to a same-day Preliminary Injunction hearing by the federal court in an emergency securities litigation action filed by Innovativ, due to that court's "significant concern" over what FTE was trying to do with the shareholder meeting.  Only after all of this, did FTE agree to cancel

1      that meeting.

2      e.  In September 2022, FTE was then enjoined by this Court from appointing

3      Jeremy Stillings ("Stillings") to its board of directors.  In October 2022,

4      after a full-day evidentiary hearing, this Court entered a preliminary

5      injunction enjoining Stillings from acting as a director of FTE until such

6      time as the Bylaws Amendment validity was established.  As part of that

7      order, this Court found that Innovativ had a likelihood of success on the

8      merits of its claim related to the Bylaws Amendment;

9      f.  In February, Beys and De Silva were notified by the federal court in which

10      a shareholder derivative action is pending against Beys and De Silva,

11      personally, that FTE's motion to stay discovery was partially denied as it

12      did not seem likely that Beys and DE Silva will prevail on their motion to

13      dismiss the derivative claims asserted against them by FTE shareholders.

14      The shareholders who have brought those claims are TTP8 and Innovativ;

15      g.  On February 2, 2022, this Court announced its ruling from the bench after

16      an evidentiary hearing that it was granting Innovativ's motion for partial

17      summary judgment finding that the Series J Preferred Stock, owned by

18      defendant LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP

19      ("Lateral"), which is beneficially owned by De Silva, was never granted

20      voting rights by FTE's board of directors.  On March 8, 2022, this Court

21      entered its written order confirming its ruling from the bench;

22      h.  That same date, March 8, 2022, the Delaware court entered an order

23      confirming that Alex and Antoni Szkaradek (the "Szkaradeks") can vote all

24      stock of which they are record owners, which includes over 22 million

25      shares of FTE common stock, and 200 shares of Series I Preferred Stock.

26      In reaching this holding, the Delaware court rejected FTE's argument that

27      mere allegations of fraud are sufficient to strip a shareholder of their voting

28      rights under Nevada law.

119.    It was only after this series of losses that FTE decided that it would simply cancel the stock it issued to TTP8, and, therefore, Innovativ.

120.    Nothing in Nevada law permits FTE to cancel or otherwise interfere with shareholder rights on mere unproven allegations of fraud.

121.    Nothing in NRS 78.211, pursuant to which FTE purportedly cancelled this stock, permits a board of directors to unilaterally cancel stock without court order or voluntary surrender of stock by the shareholder.

122.    Shares of stock are personal property under NRS 78.240.

123.    In addition, because Innovativ qualifies as a bona fide purchaser for value under NRS Chapter 104, FTE cannot cancel Innovativ's stock.

## II.    THE WRITTEN SHAREHOLDER CONSENT TO AMEND AND RESTATE FTE'S BYLAWS IS INVALID.

124.    The written shareholder consent executed on or about March 15, 2023 that purports to amend and restate FTE's bylaws is invalid because it was not executed by a majority of FTE shareholders.

125.    First, Lateral, the owner of the Series J Preferred Stock, is a signatory to this shareholder consent.  Lateral's signatures are dated on or about February 22, 2023, which is ***after*** Lateral, De Silva, Beys and FTE were aware that this Court had found that the Series J stock had no voting rights, but ***before*** this Court entered a written order confirming that finding.

126.    Even without a written order, however, Lateral could not vote its Series J Stock because this Court found that the Series J Stock ***never*** had voting rights.

127.    On information and belief, Lateral's and De Silva's signing of this document, whether actually on February 22, 2023 or at a later date and back dating it, was done to avoid the effect of this Court's ruling, in contempt of this Court's findings, and is not a valid exercise of shareholder voting power.

128.    The written shareholder consent is also signed by the FC-RET.

129.    In Delaware, FTE admitted in its pleadings that the FC-RET is not a shareholder of record but is, instead, a potential transferee of the Szkaradeks' stock.

16

130. The Delaware court confirmed, on March 8, 2022, that the Szkaradeks, and not the FC-RET, have the right to vote this stock which has not been transferred.

131. On information and belief, the Szkaradeks never transferred stock to the FC-RET.

132. To the extent the FC-RET's signature is a purported attempt to vote stock which it has not been transferred, it is not a valid exercise of shareholder voting power.

133. Apava, Inc. also signed this shareholder consent.

134. On information and belief, Apava is either owned or managed by Frank Forelle, an officer and/or director of the FC-RET.

135. Apava does not appear as a shareholder of record on any of the shareholder lists provided to Innovativ.

136. Counsel for Forelle confirmed that Apava received its shares "directly" from FTE.

137. Under Nevada law and FTE's bylaws in effect at the time of this written consent, unissued stock of a corporation can only be issued upon approval of the board of directors.

138. Under Nevada law and FTE's bylaws in effect at the time of this written consent, director approval for the issuance of stock can occur in one of two ways, i.e., either in vote taken by the board of directors at a meeting of the board of directors, or pursuant to written consent of the directors if no meeting is held.

139. If a meeting of the board of directors is not held, then Nevada law, and FTE's bylaws in effect at the time of this written consent require unanimous written approval of all directors of the board of directors for the issuance of any stock.

140. FTE, Beys and De Silva never noticed a meeting of the board of directors to issue stock to Apava.

141. Joseph Cunningham ("Cunningham"), FTE's sole independent director, was not aware that stock was issued to Apava.

142. Cunningham never provided written consent approving of the issuance of any stock to Apava.

143. Apava is not a valid shareholder of FTE because it was issued stock in violation of Nevada law and FTE's bylaws then in effect.

17

144.     Similarly, the FC-RET does not appear as a shareholder of record on any shareholder list provided to Innovativ.

145.     FTE, Beys and De Silva never noticed a meeting of the board of directors to issue stock to Apava.

146.     If FC-RET was transferred stock from FTE, Cunningham was not aware that stock was issued to the FC-RET.

147.     Cunningham never provided written consent approving of the issuance of any stock to the FC-RET.

148.     The FC-RET is not a valid shareholder of FTE because it was issued stock in violation of Nevada law and FTE's bylaws then in effect.

149.     The Leider Trust also signed this purported written consent.

150.     The trustee of the Leider Trust, Richard Leider, is another officer and/or director of the FC-RET.

151.     The Leider Trust does not appear as a shareholder of record on any shareholder list provided to Innovativ.

152.     Counsel for the Leider Trust confirmed that the Leider Trust received its shares of stock "directly" from FTE.

153.     FTE, Beys and De Silva never noticed a meeting of the board of directors to issue stock to the Leider Trust.

154.     Cunningham was not aware that stock was issued to the Leider Trust.

155.     Cunningham never provided written consent approving of the issuance of any stock to the Leider Trust.

156.     The Leider Trust is not a valid shareholder of FTE because it was issued stock in violation of Nevada law and FTE's bylaws then in effect.

157.     On information and belief, FTE may have issued additional stock to the Lateral Entities.

158.     Under the Bylaws Amendment, however, FTE would be prohibited from transferring this stock, similarly rendering it void.

159.    Similarly, because the Bylaws Amendment prohibits FTE's directors from issuing stock to any entity or person acting in concert with FTE's directors, the issuance of stock to the FC-RET, Apava and the Leider Trust is similarly void.  FC-RET has admitted that FC-RET, Forelle (Apava), Leider (Leider Trust), Beys and De Silva have entered into a common interest agreement regarding FTE stock.

160.    In addition to not having been approved by a true majority of FTE shareholders, the purportedly restated bylaws violate Nevada law and attempt to unwind the Bylaws Amendment pending before this Court, whose validity has not yet been determined.

161.    Specifically, the purportedly restated bylaws remove the restrictions placed upon FTE and its directors by FTE shareholders in the Bylaws Amendment, including, but not limited, removing language prohibited interested director stock transfers and expanding the board of directors from three directors to seven directors.

162.    In addition, the purportedly restated bylaws would permit Beys and De Silva, or any director, to remove any other director (i.e. Cunningham) "for cause."

163.    Under NRS 78.335, however, only a shareholder can ever remove a director.  This is because the election and removal of directors is a sacrosanct right of the shareholder franchise.

164.    NRS Chapter 78 does not permit a corporation to amend its bylaws to permit any person other than a shareholder removing a director for cause.

165.    This Court still has not ruled on the validity of the Bylaws Amendment, which is pending before this Court.

166.    This latest purported amendment and restatement of the bylaws directly interferes with Innovativ's shareholder rights currently being litigated before this Court, including, but not limited to, its right to participate in corporate governance.

III.    THE SECOND BYLAWS AMENDMENT IS VALID.

167.    The Second Bylaws Amendment, effective as of March 11, 2023, is valid and binding.

168.    Pursuant to this Court's order entered March 8, 2023, finding that the Series J

Preferred Stock has no voting rights, and pursuant to the Delaware court order entered March 8, 2023, finding that the Szkaradeks can vote their stock, this amendment is executed by the true voting power of FTE's majority shareholders.

169.    FTE's subsequent void actions in cancelling stock and/or FTE's prior issuance of void stock do not dilute the voting power of these shareholders.

## IV.   FACTS WARRANTING APPOINTMENT OF A CUSTODIAN, OR ALTERNATIVELY, A RECEIVER.

170.    Under NRS 78.347(1), any stockholder can apply to this Court to appoint a custodian, or alternatively,  a receiver if the corporation is insolvent whenever the corporation has abandoned its business.

171.    On December 6, 2022, FTE's management published a statement that it was unable to pay its bills.   Specifically, Maria Fernandez, Esq., acting as the general counsel of FTE, stated:

> This email confirms your respective discussions with Michael Beys, interim CEO of FTE Networks, Inc.
>
> As Mike explained, FTE is in dire financial straits and is unable to pay your legal bills. In fact, as you may know, several of FTE's subsidiaries/affiliate entities are considering a bankruptcy restructuring.

172.    The email was attached to a motion from FTE's then-counsel for leave to withdraw as counsel for FTE in litigation involving one of FTE's creditors.

173.    On February 28, 2023, Ms. Fernandez emailed the New York judge and stated that she was "writ[ing] to advise the Court that FTE does not have the financial resources to retain outside counsel at this time."

174.    On March 1, 2023, Ms. Fernandez wrote a letter to the judge and again stated:

> I have read the February 21, 2023 Decision and Order entered by this Court and am writing to advise that FTE does not have the financial resources to comply with the Court's directive to retain and designate new counsel of record . ..

175.    Meanwhile, the creditor in that litigation has moved against FTE for a default judgment in the amount of $1.8 million.

176.   In that litigation the creditor requested the court to enter a bench warrant for the arrest of Beys, due to his contempt of court by failing to obey by the terms of an injunction entered against FTE in that litigation.

177.   FTE's response was due March 27, 2023 to these filings.  FTE did not respond, and faces default.

178.   Due to management's illegal usurpation of assets from FTE, FTE's sole asset at this time is its wholly owned subsidiary U.S. Home Rentals, LLC ("USHR"), which in turn oversees a real estate portfolio that FTE acquired from the Szkaradeks (the "Vision Portfolio").

179.   In November 2015, DLP Lending Fund, LLC ("DLP"), a creditor of FTE and USHR, filed for the reappointment of a receiver over certain assets of USHR's following FTE's default on about $25 million of debt.

180.   That application revealed that on November 7, 2022, FTE terminated all of USHR's staff and USHR no longer has any employees able to process payments made by renters, transfer titles to renters who have purchased homes, or to ensure that taxes, utilities and other necessary expenses of property management were paid.

181.   In addition, the application states:

      a.  In October 2022, sixteen properties were lost to tax sale due to FTE's failure to pay property taxes on these properties.  *Id.* at ¶ 24.

      b.  Prior defaults appeared to still be ongoing, including, but not limited to, FTE's failure to pay loans, failure to pay real estate taxes, failure to pay condominium association fees, failure to remedy title defects, and failure to generally service these properties.  *Id.* at p. 21.

182.   In its response, FTE admitted that it terminated all of USHR's staff.

183.    Given the undisputed circumstances, the Pennsylvania court granted the petition and re-appointed a receiver.

184.    These circumstances expand on earlier evidence that FTE had ceased conducting business by: (1) failing to pay taxes on multiple properties despite multiple delinquent notices; (2) losing multiple properties due to tax lien foreclosures; (3) losing multiple properties due to failure to pay condominium association fees; (4) failure to respond or defend against foreclosure proceedings in multiple states; (5) failure to service USHR's accounts, and instead falsely direct tenants to third-party servicers who were not servicers for that account; and (6) allowing USHR's subsidiaries to file materially false tax returns.

185.    Similarly, another Pennsylvania court previously found that FTE has failed to conduct its business by: (1) losing homes to tax lien foreclosure sales, despite multiple advance notices of foreclosure; (2) FTE never objected to the foreclosures to protect its assets; (3) FTE has repeatedly failed to pay property taxes on other homes; (4) FTE has failed to pay homeowner association fees; (5) FTE has failed to pay utility bills; and (6) FTE has been unresponsive to tenants' concerns, inquiries and complaints.

186.    Not only has FTE abandoned its actual business, FTE has also abandoned its corporate business.

187.    FTE has not issued an annual report on a form 10-K to its shareholders for the years 2020, 2021, or 2022.  FTE has not provided audited financials to shareholders since the year 2019.

188.    In its proxy statement that FTE purported to issue to the shareholders in August 2022, FTE admitted that it has not hired an auditing firm to even attempt to obtain audited financials that would allow it to become compliant with its SEC filings.

189.    Likewise, FTE's stock remains de-listed from the New York Stock Exchange.

190.    FTE's management offers no business strategy at this point other than to litigate with its shareholders.  Nothing in the Proxy indicates that FTE's current management has taken any step towards having FTE become compliant with the SEC and/or get relisted on the NYSE.

191.    On information and belief, there are assets of FTE which are not covered by either the current lender in possession, or by the receivership recently granted in Pennsylvania and remain at significant risk of loss and/or waste.

192.    Nothing in the receivership permit the receiver to defend **FTE** against further additional creditor claims, or to prosecute additional claims against claims which FTE may have.

193.    Nothing in the receivership grants the receiver the right to bring FTE compliant with its deficient SEC and corporate filings.

194.    FTE has clearly abandoned its business, and a receivership is warranted.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Innovativ v. FTE - Violation of NRS 78.105)**

195.    Innovativ incorporates the preceding paragraphs as if fully set forth herein.

196.    Under NRS 78.105(2), any person who has been a stockholder of record of a Nevada corporation for at least six months prior to the demand, upon five days written demand, is entitled to inspect the list of shareholders.

197.    Under NRS 78.105(5), if a corporation refuses to allow such inspection, then the corporation is liable to the damages incurred by the stockholder in seeking this information.

198.    Innovativ has been a stockholder of record of FTE for over six months.

199.    Innovativ demanded to inspect the stockholder list on February 8, 2022.

200.    FTE refused to allow Innovativ to inspect the stockholder list.

201.    Innovativ is entitled to an order from this Court compelling FTE to disclose the stockholder list to Innovativ.

202.    Innovativ is entitled to recover its damages incurred, including its reasonable attorney fees and costs, in connection with inspecting the stockholder list.

203.    To date, Innovativ has incurred special damages in excess of $25,000, consisting of attorney fees related to and arising from its request to inspect the shareholder list and FTE's refusal, and costs related to and arising from its request to inspect the shareholder list and FTE's refusal.

204.    The attorney's fees and costs are Innovativ's special damages specifically arising

from FTE's improper refusal to allow Innovativ to inspect the shareholder list.  This number continues to grow, and does not yet reflect the most recent amount.

## SECOND CLAIM FOR RELIEF
**(Innovativ v. ALL DEFENDANTS - Declaratory Relief – Validity of Bylaws Amendment)**

205.   Innovativ incorporates the preceding paragraphs as if fully set forth herein.

206.   Pursuant to NRS 30.040(1), this Court may declare the validity of any legal instrument.

207.   The Bylaws, as amended, are a legal instrument.

208.   A justiciable dispute has arisen between Innovativ and defendants, because FTE is refusing to recognize the validity of the bylaws amendment.

209.   As a stockholder who voted to amend the Bylaws, Innovativ has a legally protectable interest in having the validity of the amendment determined by this Court.

210.   This issue is ripe for judicial determination.

211.   Accordingly, Innovativ requests that this Court enter an order declaring that the amendment is a valid amendment of FTE's bylaws by majority vote of the stockholders.

212.   Innovativ has been forced to retain counsel to exercise their rights, and are entitled to an award of their reasonable attorney fees and costs.

## THIRD SUPPLEMENTAL CLAIM FOR RELIEF

### (Innovativ v. Defendants – Validity of Second Bylaws Amendment)

213.   Innovativ incorporates the preceding paragraphs as if fully set forth herein.

214.   Pursuant to NRS 30.040(1), this Court may declare the validity of any legal instrument.

215.   The Second Bylaws Amendment is a legal instrument.

216.   A justiciable dispute has arisen between Innovativ and defendants, because FTE is refusing to recognize the validity of the Second Bylaws Amendment.

217.   As a stockholder who voted to amend the Second Bylaws Amendment, Innovativ has a legally protectable interest in having the validity of the amendment determined by this Court.

218.   This issue is ripe for judicial determination.

219.     Accordingly, Innovativ requests that this Court enter an order declaring that the amendment is a valid amendment of FTE's bylaws by majority vote of the stockholders.

220.     Innovativ has been forced to retain counsel to exercise their rights, and are entitled to an award of their reasonable attorney fees and costs.

### FOURTH CLAIM FOR RELIEF
**(Innovativ v. Defendants – Validity of the March 2023 Amended and Restated Bylaws)**

221.     Innovativ incorporates the preceding paragraphs as if fully set forth herein.

222.     Pursuant to NRS 30.040(1), this Court may declare the validity of any legal instrument.

223.     The amended and restate bylaws purportedly approved on or about March 15, 2023 are a legal instrument.

224.     A justiciable dispute has arisen between Innovativ and Defendants regarding the validity of these amended and restated bylaws.

225.     As a stockholder who voted to amend the bylaws in February 2022, Innovativ has a legally protectable interest in having the validity of the purported March 2023 amendment determined by this Court.

226.     This issue is ripe for judicial determination.

227.     These amended and restated bylaws are invalid because, on information and belief:

a.     The amendment purports to be approved by the holders of FTE's Series J Preferred Stock, which this Court found has no voting rights;

b.     The amendment purports to be approved the FC-RET, Leider and Forelle, whose stock issuances are invalid for lack of director consent and/or who are not valid shareholders of FTE;

c.     The amendment violates Nevada law.

228.     Accordingly, Innovativ requests that this Court enter an order declaring that the amendment is an invalid amendment of FTE's bylaws by majority vote of the stockholders.

229.     Innovativ has been forced to retain counsel to exercise their rights, and are entitled to an award of their reasonable attorney fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(INNOVATIV v. FTE, FC-RET, APAVA AND LEIDER TRUST – VALIDITY OF STOCK ISSUANCE)**

230.   Innovativ incorporates the preceding paragraphs as if fully set forth herein.

231.   Pursuant to NRS 30.040(1), this Court may declare the validity of any legal instrument.

232.   The stock purportedly issued to FC-RET, Forelle and Leider in February 2023 is a legal instrument.

233.   A justiciable dispute has arisen between Innovativ, FTE, FC-RET, Apava, and the Leider Trust regarding the validity of the issuance of this stock.

234.   This issue is ripe for judicial determination.

235.   Innovativ is entitled to declaratory relief that this stock is invalid because it was issued without director consent.

236.   Accordingly, Innovativ requests that this Court enter an order declaring that the issuance is invalid.

237.   Innovativ has been forced to retain counsel to exercise their rights, and are entitled to an award of their reasonable attorney fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(INNOVATIV v. FTE– VALIDITY OF STOCK CANCELLATION)**

238.   Innovativ incorporates the preceding paragraphs as if fully set forth herein.

239.   Pursuant to NRS 30.040(1), this Court may declare the validity of any legal instrument.

240.   Innovativ has legal rights under its stock ownership in FTE.

241.   A justiciable controversy has arisen between FTE and Innovativ, pursuant to FTE's, through Beys and De Silva, purported attempt to unilaterally cancel Innovativ's stock.

242.   This issue is ripe for judicial determination.

243.   Under Nevada law, FTE, Beys and De Silva cannot unilaterally cancel a shareholder's stock.

244.   Under Nevada law, Innovativ is a bona fide purchaser for value with protected

1     rights in its stock.

2        245.    Accordingly, Innovativ is entitled to a declaratory judgment that FTE's attempt to

3     cancel Innovativ and any other shareholder's stock is invalid.

4        246.    Innovativ has been forced to retain counsel to exercise their rights, and are entitled

5     to an award of their reasonable attorney fees and costs.

### SEVENTH CLAIM FOR RELIEF
#### (INJUNCTIVE RELIEF)

8        247.    Innovativ incorporates the preceding paragraphs as if fully set forth herein.

9        248.    As the history of this litigation affirmatively demonstrates, FTE, Beys and De Silva

10     will only continue to attempt to disenfranchise and/or otherwise directly interfere with the

11     shareholder rights of those FTE shareholders who may oppose Beys' and De Silva's continued

12     control of FTE.  But, under Nevada law, is the shareholders, and not embattled directors and

13     management, who are granted the choice to determine who should manage a Nevada corporation.

14        249.    As the history of this litigation affirmatively demonstrates, FTE, Beys and De Silva

15     have exhibited little respect for or concern with this Court's prior orders, by either

16     mischaracterizing the import of those orders to other courts, shareholders and the SEC, by

17     classifying final determinations as "conditional" and non-binding, or by simply devising ways to

18     get around this intended effect of this Court's repeated orders.

19        250.    Innovativ is likely to succeed on the merits of its claims.

20        251.    If FTE, Beys and DE Silva are allowed continued leeway to interfere with

21     Innovativ's and other shareholders' voting rights, the harm to Innovativ will not be compensable

22     by damages.

23        252.    The fact that Innovativ has been forced to file six motions for injunction relief in

24     the past six months indicates that the threatened harm is imminent, and is not remote or speculative.

25        253.    Accordingly, Innovativ requests that this Court enter an injunction and/or

26     temporary restraining order prohibiting the Board:

27             a.   From issuing, transferring or cancelling any FTE stock during the pendency

28                of this litigation to any person or entity absent this Court's approval and

consent;

    b.   Taking any action pursuant to the restated bylaws until such time as this Court determines the validity of the March 2023 shareholder written consent;

    c.   Engaging in any conduct which violates the Bylaws, as amended in February 2022, in each case, until such time as this Court resolves the dispute between the parties; and

    d.   Taking any action predicated upon votes of stock issued to FC-RET, Apava and the Leider Trust.

254.   Innovativ has been forced to retain counsel to enforce their rights, and are entitled to an award of their reasonable attorney fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**(Innovativ v. FTE:  Request for Appointment of Custodian, or Alternatively, a Receiver)**

255.   Innovativ incorporates the preceding paragraphs as if fully set forth herein.

256.   Under NRS 78.347(1), any stockholder can apply to this Court to appoint a custodian, or alternatively,  a receiver if the corporation is insolvent whenever the corporation has abandoned its business.

257.   Innovativ is a shareholder of FTE.

258.   FTE has admitted it is insolvent.

259.   FTE has abandoned its business by failing to administer FTE's assets, by failing to defend against creditor litigation, resulting in imminent multi-million dollar default judgments, permitting its management to violate multiple court orders and injunctions, and failing to file required corporate filings, provide accurate information to shareholders, provide audited financials or other required information, failing to bring FTE into compliance with its filings with the Securities and Exchange Commission and the New York Stock Exchange, among other things.

260.   Appointment of a custodian and/or receiver is appropriate pursuant to NRS 78.347.

261.   Innovativ has been forced to retain counsel and is entitled to an award of its reasonable attorney fees and costs.

28

WHEREFORE, INNOVATIV prays for relief as follows:

1.     For an order compelling FTE to permit Innovativ to inspect its shareholder list;

2.     For an order declaring that the Bylaws Amendment is valid;

3.     For an order declaring that the Second Bylaws Amendment is valid;

4.     For an order declaring that FTE's, Beys' and De Silva's purported cancellation of stock is invalid and void under Nevada law;

5.     For an order declaring that the issuance of stock to FC-RET, Apava and the Leider Trust and/or any additional stock issued to the Lateral Entities is void and invalid;

6.     For an order declaring that the March 2023 written shareholder consent is invalid and ineffective and/or that FTE's purportedly restated bylaws violate Nevada law;

7.     For an injunction prohibiting FTE, Beys and De Silva:

     a.  From issuing, transferring or cancelling any FTE stock during the pendency of this litigation to any person or entity absent this Court's approval and consent;

     b.  Taking any action pursuant to the restated bylaws until such time as this Court determines the validity of the March 2023 shareholder written consent;

     c.  Engaging in any conduct which violates the Bylaws, as amended in February 2022, in each case, until such time as this Court resolves the dispute between the parties; and

     d.  Taking any action predicated upon votes of stock issued to FC-RET, Apava and the Leider Trust.

8.     For the appointment of a receiver;

9.     For damages according to proof;

10.    For special damages in the form of attorney fees and costs as plead herein, and as will be more specifically shown according to proof; and

11.     For such other relief as this Court deems just and appropriate.

## **AFFIRMATION**

The undersigned affirms that this document does not contain the social security number of any person.

Dated:  March 29, 2023                                FENNEMORE CRAIG, P.C.

 /s/ *Therese M. Shanks*
Therese M. Shanks, Esq. (SBN 12890)
MaryJo E. Smart, Esq. (SBN 16139)
7800 Rancharrah Parkway
Reno, Nevada 89511

*Attorneys for Plaintiff*