**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FTE NETWORKS, INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>SUNEET SINGAL, TTP8, LLC, FIRST CAPITAL MASTER ADVISOR, LLC, MAJIQUE LADNIER, DANISH MIR, KHAWAJA ZARGHAM BIN AAMER, THOMAS COLEMAN, INNOVATIV MEDIA GROUP, INC., JOSEPH F. CUNNINGHAM, PETER K. GHISHAN, STEPHEN M. GOODWIN, and BRUCE M. FAHEY<br><br>      Defendants. | Case No. 1:22-cv-05960-JHR |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF ITS MOTION FOR LEAVE TO AMEND THE COMPLAINT**

**WHITE AND WILLIAMS LLP**
Shane R. Heskin
Alex D. Corey
7 Times Square
New York, New York  10036
Tel:  (212) 244-9500
heskins@whiteandwilliams.com
coreya@whiteandwilliams.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

REPLY STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................................. 3

    I.      The Amended Complaint Adequately States A Claim Against Singal and TTP8 ........... 3

        a.    Responding Defendants' Attacks on Plaintiffs' RICO Claims are Baseless .................. 3

        b.    FTE's Fraud Claim Against Singal and TTP8 Is Adequately Pled ................................ 5

    II.     Responding Defendants' *Younger* Abstention Argument Is Baseless ............................ 8

    III.   Responding Defendants' Claims of Prejudice Are Grossly Overstated and are not Legally Cognizable ........................................................................................................ 10

CONCLUSION ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Broadway 41st Street Realty Corp. v. New York State Urban Dev. Corp.*,
   733 F. Supp. 735 (S.D.N.Y. 1990) ...................................................................9

*Commander Oil Corp. v. Barlo Equipment Corp.*,
   215 F.3d 321 (2d Cir. 2000)........................................................................10

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*,
   68 N.Y.2d 954 (1986) ...................................................................................7

*Grundstein v. Vt. Bd. of Bar Examiners*,
   5:17-cv-75, 2017 U.S. Dist. LEXIS 227897 (D. Vt. Dec. 20, 2017)......................................10

*Innovativ Media Group, Inc. v. FTE Networks, Inc.*,
   No. A-22-849188-B (Clark Cnty. Nev.) ..............................................................2, 9

*Int'l Elecs., Inc. v. Media Syndication Global, Inc.*,
   02 Civ 4274 (LAK), 2002 U.S. Dist. LEXIS 15200 (S.D.N.Y. Aug. 17, 2002) .................7, 8

*Kosowsky v. Willard Mnt., Inc.*,
   90 A.D.3d 1127 (3d Dep't 2011) .................................................................6, 7

*Moreno-Godly v. Gallet Dreyer & Berkey, LLP*,
   14 Civ. 7082 (PAE) (JCF), 2016 U.S. Dist. LEXIS 137843 (Oct. 4, 2016)..........................11

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017).......................................................................12

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013).................................................................................10

*Thompson v. City of New York*,
   21-cv-8202 (MKV), 2022 U.S. Dist. LEXIS 32809 (S.D.N.Y. Feb. 24, 2022) .....................12

STATUTES

RICO .........................................................................................3, 4, 9, 10

Plaintiff FTE Networks, Inc. ("FTE", the "Company," or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Reply Memorandum of Law in response to Defendants' Suneet Singal ("Singal"), TTP8, LLC ("TTP8"), First Capital Master Advisor, LLC ("FCMA"), Majique Ladnier ("Ladnier"), Innovativ Media Group, Inc. ("Innovativ"), and Thomas Coleman ("Coleman", collectively "Responding Defendants") opposition to Plaintiff's motion for leave to amend its Complaint (the "Motion").[1]

## PRELIMINARY STATEMENT

As set forth in Plaintiff's moving papers, Plaintiff moved to amend its Complaint in April 2023 to add additional detail to its existing Third Cause of Action for fraud against Singal, and new Sixth Cause of Action against TTP8 for breach of contract against TTP8, after securing declarations for key witnesses who confirmed the merit of these additional claims (allowing FTE to now plead these facts with particularity as required by federal rules).  Specifically, in March 2023, FTE secured declarations from witnesses who managed companies that held debt in FTE, which Singal and his company TTP8 represented and contractually promised to FTE they had acquired and would extinguish in exchange for more than 4 million shares of FTE common stock. These witness declarations confirmed what FTE had suspected—as mentioned but not affirmatively pled as a cause of action in the original Complaint—that these representations were knowingly false and breached the contract memorializing the transfer of the shares from FTE to TTP8.  Because this fraud was part of Defendants' larger scheme to utilize wire fraud to unlawfully acquire tens of millions of shares of FTE's common stock, these recently confirmed facts were also added to FTE's existing First Cause of Action for RICO violations against Singal and Second Cause of Action for RICO conspiracy violations against all Defendants.

---

[1] Unless otherwise stated, all defined terms herein shall have the same meaning and import as set forth and defined in Plaintiff's moving papers.  *See* [DE 69-71].

In opposing Plaintiff's Motion, Responding Defendants, tellingly, do not even attempt to dispute the veracity of the new allegations; nor could they because the evidence FTE has presented in the form of the witness declarations are well supported and truthful. Instead, Responding Defendants resort to grossly misrepresenting the rulings in (i) a marginally related Nevada state action, *Innovativ Media Group, Inc. v. FTE Networks, Inc.*, No. A-22-849188-B (Clark Cnty. Nev.) (the "Nevada Action"); and (ii) a recent Supreme Court decision which on its face pertained to the wholly irrelevant legal situation of deprivation of "potentially valuable economic information," which has no bearing on any of FTE's claims concerning Defendants' attempts to unlawfully take over the Company through wire fraud. In addition, Responding Defendants make superficial attacks on the pleadings to further argue their pending motions to dismiss the Complaint without even addressing the new allegations themselves. Finally, Responding Defendants complain of prejudice of an imagined "delay" of one-month between FTE finally securing the evidence it needed to amend the Complaint, and the bringing of this Motion, which is patently insufficient as a matter of law to deny a motion to leave, particularly one, such as this, that was filed before Defendants have answered the Complaint and while motions to dismiss are pending.

For these reasons, and set forth fully below, there is no merit to Responding Defendants' arguments and Plaintiff's should be freely granted leave to amend its Complaint.

## REPLY STATEMENT OF FACTS

Responding Defendants to not offer any factual dispute to the new allegations contained in the Amended Complaint, thus Plaintiff incorporates by reference its factual statement from its moving papers, [DE 70] at 2-5, and the new allegations in the proposed Amended Complaint, [DE 71-2], which are wholly uncontested. Plaintiff will add, however, that shortly after filing this Motion, Plaintiff's counsel obtained a copy of Innovativ's bank statement for May 2020, attached hereto as Exhibit 1 to the Reply Declaration of Shane Heskin, dated July 1, 2023 ("Reply Heskin

Decl."). As evidenced by this bank statement, Innovativ had no business activity in May 2020 other than purchasing shares from FTE common stock from TTP8 on May 20, 2020. *Id.* at 4. As set forth in the Amended Complaint, TTP8 obtained these shares sold to Innovativ by defrauding FTE, along with Singal, into exchanging over 4 million shares of FTE common stock by misrepresenting that it had obtained and cancelled millions of dollars' worth of FTE's debt held by third parties. Innovativ's bank statements are significant, therefore, in that they: a) confirm the original Complaint and Amended Complaint's allegation that Innovativ obtained FTE shares from TTP8 that were obtained fraudulently; b) Defendants used interstate wires as part of this scheme; and c) Innovativ is a shell company, controlled by Defendant Coleman, with no business purpose other than to acquire shares of FTE in furtherance of Defendants' RICO conspiracy. Evidence such as this Innovativ bank statement highlights that Plaintiff's claims in its proposed Amended Complaint have merit, and demonstrate that there is a wealth of discoverable information that will substantiate Plaintiff's RICO conspiracy claims once this Action progresses to discovery.

## ARGUMENT

### I.   The Amended Complaint Adequately States A Claim Against Singal and TTP8

#### a.   *Responding Defendants' Attacks on Plaintiffs' RICO Claims are Baseless*

Plaintiff's proposed Amended Complaint focuses almost exclusively on asserting new facts to Plaintiff's existing fraud claim and adding a new cause of action for breach of the Note Exchange Agreement whereby TTP8 warranted that it had acquired and would extinguish FTE's debt held by Suwyn and TBK, which was proven to be untrue through declarations FTE secured from Suwyn's and TBK's managers in March 2023. *See generally* [DE 71-2]. Tellingly, Responding Defendants begin not by addressing the actual merits of the proposed Amended Complaint, but instead rehash their motion to dismiss arguments to attack Plaintiff's RICO causes of action. *See* Responding Defendants Memorandum of Law [DE 85] ("Defs. Memo.") at 6-7.

Even these recycled arguments are, however, totally baseless and do nothing to disturb the fact that leave to amend in this pre-answer context is to be granted liberally.

For instance, Responding Defendants argue that the "predicate acts are not sufficiently alleged and do not span the minimum two-year period required to plead a closed-ended pattern of predicate acts as required." *Id.* at 6. Responding Defendants already made this argument in their pending motions to dismiss the Complaint, and Plaintiff refuted it by showing that the predicate acts began on October 22, 2019, and ended on February 3, 2022, thereby satisfying a close-ended period of more than 2-years. *See* [DE 75] at 19-21. Quite the contrary to Responding Defendants' arguments raised here, the proposed Amended Complaint actually *substantially expands* this close-ended period, while also demonstrating an open ended risk of continuing RICO violations, by alleging new predicate acts including, but not limited to, (i) Cunningham's March 2023 refusal to cancel the more than 4 million shares of FTE's common stock issued to TTP8 despite confirmation by that point that TTP8 acquired these shares fraudulently; and (ii) Defendants' second attempt to pass *ultra vires* amendments to FTE's bylaws, also in March 2023. [DE 71-2] ¶¶ 240-45. Thus, if anything, the Amended Complaint only strengthens Plaintiff's existing RICO claims, and Responding Defendants have nothing to offer to refute these allegations other than superficial recitations of their previous debunked arguments advanced in their motions to dismiss.

Rather than address the actual merits of the proposed Amended Complaint and the RICO claims asserted therein, Responding Defendants brazenly misrepresent the recent Supreme Court decision, *Ciminelli v. United States*, issued by Justice Thomas, as holding that "when the object of a wire or mail fraud scheme is intangible – like control over a company – rather than money or property as required by statute, the fraud is not actionable mail or wire fraud." Defs. Memo. at 6. This is a grossly dishonest representation of the *Ciminelli* holding, which solely concerned "the

right-to-control theory" where a "defendant is guilty of wire fraud if he schemes to deprive the victim of 'potentially valuable economic information' 'necessary to make discretionary economic decisions.'" [DE 84-1] at 4.  Unsurprisingly, Responding Defendants do not even quote a single word from the *Ciminelli* opinion because it is wholly inapplicable to this case concerning Defendants' use of wire and mail to defraud FTE of millions of shares of its common stock and then use those shares to try to take control of the Company.  Responding Defendants should be admonished for such a deliberate misrepresentation of a Supreme Court decision that they have used wrongly both to further bolster their doomed motions to dismiss through a bad faith letter of supplemental authority, *see* [DE 84], and in using this decision again in bad faith here.

> **b.**    ***FTE's Fraud Claim Against Singal and TTP8 Is Adequately Pled***

As set forth in the original Complaint, FTE has already asserted a fraud claim against Singal for his role in duping FTE into entering into the Vision Purchase Agreement whereby FTE spent millions of dollars and issued millions more of shares of its common stock to the Szkaradeks in exchange for a liability-laden and debt-ridden real estate portfolio that Singal helped cover up in order to facilitate the sale.  [DE 71-1] ¶¶ 175-183.  This fraudulent scheme began with Singal making fraudulent representations during an October 2019 FTE board meeting, and during that same board meeting, Singal made further fraudulent representations that he intended to acquire and discharge several million dollars' worth of FTE's debt held by Suwyn and TBK in exchange for more than 4 million share of FTE common stock.  [DE 71-1] ¶¶ 8, 45.  After FTE secured declarations from Suwyn's and TBK's managers in March 2023, included with Plaintiff's Motion papers, Plaintiff added a second theory of fraud against Singal for his representations concerning this debt-cancellation for shares proposal in the Amended Complaint.  [DE 71-3] ¶¶ 215-223.

Responding Defendants argue that "the economic loss rule prevents FTE from seeking to recover its contract damages through a tort action."  Defs. Memo. at 7.  This is argument is wrong

for a variety of reasons.  First, Singal is not a party to the Note Exchange Agreement, and thus his wrongdoing in connection with duping FTE into giving more than 4 million shares in common stock in exchange for a false promise that TTP8 would extinguish millions of FTE's debt cannot be covered by the existing breach of contract claim against TTP8.  *See*, *Kosowsky v. Willard Mnt., Inc.*, 90 A.D.3d 1127, 1129 (3d Dep't 2011) (rejecting duplicative argument regarding contract and fraud claim where neither fraud claim defendant "are named parties to the lease, the breach of contract claim is not directed against Wilson and cannot be considered duplicative as to him").

Second, as set forth in the Complaint, the debt-cancellation fraud went beyond a mere breach of the eventual Note Exchange Agreement.  As is clear from the copy of the Note Exchange Agreement attached to Plaintiff's moving papers, this agreement was entered into on December 13, 2019.  [DE 71-7].  As alleged in the Amended Complaint, however, Singal's fraud concerning the transfer of more than 4 million shares of FTE common stock began well before this contract was ever entered into.  Rather, in October 2019, Singal represented to FTE's board that TTP8 would cancel approximately $3,900,000 of FTE's debt held by TBK and Suwyn in exchange for, what was at that time, more than 5.4 million shares of FTE common stock.  [DE 71-1] ¶¶ 215-216. Thereafter, on or about November 15, 2019, Goodwin—a long-time associate of Singal and fellow co-conspirator—issued the 5.4 million FTE shares of common stock to TTP8, *well before the Note Exchange Agreement was even created*.  *Id.* ¶ 217.  Thus, the harm caused by Singal's fraud is sufficiently independent of the ultimate contract entered into between FTE and TTP8 since it pre-dates the Note Exchange Agreement and caused the harm alleged—the loss of FTE's stock—before the Agreement even existed.  Where, as here, the defendant of a fraud claim made false representations beyond just the representations made before and after the time of the contract, New York courts find that both a contract claim and fraud claim can exist as non-duplicative.  *Kosowsky*,

at 1129 ("Here, however, the fraud claim is not wholly duplicative of the breach of contract claim. Plaintiffs do not merely allege that defendants falsely represented their intent to pay . . . they claim that, after the contract was entered into, defendants repeatedly misrepresented or concealed existing facts").

Third, because Singal had already represented that TTP8 had discharged the debt and caused FTE harm by securing millions of shares of FTE common stock by the time the Note Exchange Agreement was entered into, there is no basis for the two causes of action being duplicative. As the New York Court of Appeals has noted, a misrepresentation "of present fact, not future intent . . . which was the inducement for the contract, [is] neither duplicative of the second counterclaim [for breach of contract]." *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986). Here, indistinguishable from the facts in *Deerfield*, the Amended Complaint alleges that "in reliance on Singal's steadfast representations that TTP8 had discharged the approximately $3,900,000 debt held by TBK and Suwyn, FTE entered into a recission agreement concerning the prior issuance of 5,468,379 FTE shares to TTP8 and entered into a superseding note exchange agreement." [DE 71-2] ¶ 219. Stated differently, when Singal continued to falsely represent that TTP8 had already discharged FTE's debt before the Note Exchange Agreement was executed, he "breached a duty of candor independent from [his] duty to perform under the contract in that [he] had superior knowledge unavailable to plaintiffs and knew plaintiffs were relying on the information [he] supplied." *Kosowsky*, at 1129; *see also*, *Int'l Elecs., Inc. v. Media Syndication Global, Inc.*, 02 Civ 4274 (LAK), 2002 U.S. Dist. LEXIS 15200, *6 (S.D.N.Y. Aug. 17, 2002) (similar).

Fourth, the damages from Singal's fraud, which originally duped FTE into issuing more than 5.4 million shares to TTP8 rather than the adjusted 4.1 million under the Note Exchange

Agreement, resulted in unique damages that are not recoverable under the Note Exchange Agreement. *Int'l Elecs.*, at \*5-6 ("There are circumstances, however, in which a claim for fraud may arise in relation to a breach of contract, viz. where . . . resulting injury that is not recoverable under the contract measure of damages"). As set forth in the Amended Complaint, in November 2019—a month before the Note Exchange Agreement was entered into—FTE transferred more than 5.4 million shares of its common stock to Singal based on his representation that TTP8 had already acquired and discharged the debt held by TBK and Suwyn. [DE 71-2] ¶ 49. This share issuance "represented more than 20% of FTE's stock and thereby triggered NYSE regulations and reporting rules, which Goodwin failed to adhere to." *Id.* ¶ 50. FTE self-reported this violation and, as a result, NYSE suspended the trading of FTE's stock on December 11, 2019 (again before the Note Exchange Agreement was entered into), *Id.* ¶¶ 51-52, thereby creating unique injuries from Singal's fraudulent representation.

For these reasons, there is no basis to dismiss FTE's new theory of fraud against Singal because: (a) he is not a party to the breached contract; (b) the fraud was committed before the contract was formed; (c) Singal's fraud involved misrepresentations of present fact used to induce FTE into entering into the contract in breach of Singal's duty of candor; and (d) Singal's fraud resulted in special damages not recoverable from TTP8 under a breach of contract claim.

## II.    Responding Defendants' *Younger* Abstention Argument Is Baseless

Responding Defendants contend that this Court should deny Plaintiff leave to file its Amended under the *Younger* abstention doctrine because the issue of "the validity of the FTE stock issuance to TTP8 in exchange for debt cancellation including whether Singal and/or TTP8 owned the debt and actually cancelled it," and "the validity of TTP8's subsequent transfer of FTE stock to Innovativ" are presently before the court in the Nevada Action. Defs. Memo. at 9. This is a disingenuous argument because, first and foremost, neither TTP8 nor Singal are parties to the

Nevada Action, nor is there a pending claim in the Nevada Action seeking damages related thereto. *See* Heskin Reply Aff. Exs. 2 and 3 (copies of pleadings in Nevada Action). This was already made obvious by Plaintiff's own supplemental authority letter, which quoted the Nevada Court as noting explicitly that "FTE has not identified any court order from any jurisdiction finding that there was fraud involved in [the TTP8 and FTE debt-cancellation] transaction, **nor is there evidence in the record before this Court of claims that have been asserted by these-third parties against TTP8**." [DE 82] at 1 (emphasis added).

"The central inquiry which courts have pursued, in deciding whether to abstain under the *Younger* doctrine, is whether the state proceedings afford an adequate opportunity to litigate issues **subsequently** brought to federal court." *Broadway 41st Street Realty Corp. v. New York State Urban Dev. Corp.*, 733 F. Supp. 735, 739 (S.D.N.Y. 1990) (emphasis added). The Amended Complaint would be the first time these claims are asserted against TTP8 and Singal, who are already parties to this Action and are not parties to the Nevada Action, and may not even be subject to jurisdiction in Nevada. Moreover, as both the original Complaint and Amended Complaint makes clear, while FTE's claims against Singal and TTP8 for the fraudulent representations and subsequent breach of the Note Exchange Agreement can stand-alone, they are also part of a broader RICO conspiracy that cannot be litigated as part of the Nevada Action. It would turn the *Younger* doctrine on its head to preclude claims first brought against these Defendants already a party to this Action on grounds that there is an existing state action where neither these claims are asserted nor are even the parties they could be asserted against parties to the state action. This is particularly true where, as here, the Nevada Court has expressly stated it is not adjudicating the claims against TTP8 and Singal that comprise the impetus and content of proposed Amended Complaint.

Applying the *Younger* abstention doctrine here would not, as Responding Defendants contend, avoid parallel litigations and conserve judicial resources.  Rather, Responding Defendants hope that this Court will mis-apply the *Younger* abstention doctrine so that they may never face these claims in any forum.  "The *Younger* abstention doctrine 'is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction," and it only applies to three categories of actions, two inapplicable situations of criminal proceedings and "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Grundstein v. Vt. Bd. of Bar Examiners*, 5:17-cv-75, 2017 U.S. Dist. LEXIS 227897, *8 (D. Vt. Dec. 20, 2017) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)).  Consequently, applying it here to claims that are not pending against Defendants in any state court action in Nevada or anywhere else, and claims which are inextricably linked to RICO claims that have a significant nexus to New York, would be a perversion of the *Younger* doctrine that would only serve to help Singal and TTP8 escape liability on serious allegations without any resolution on the merits.

## III. Responding Defendants' Claims of Prejudice Are Grossly Overstated and are not Legally Cognizable

As set forth in Plaintiff's moving papers, for prejudice to be grounds to deny a motion for leave to amend, which is generally freely and liberally granted, there must be significant burdens placed on the opposing parties; typically reserved for delays of many years, motions to amend brought after the close of discovery, or motions to amend to include surprise claims wholly divorced from the prior pleadings.  *See* [DE 70] at 8-9; *see also*, *Commander Oil Corp. v. Barlo Equipment Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (holding no abuse of discretion in grant of leave to amend after seven-year delay).

-10-

Here, Plaintiff secured the evidence it needed, in the form of witness affidavits from the debtholders who Singal and TTP8 falsely represented they had acquired the debt from in exchange for more than 4 million shares of FTE common stock, in March 2023.  The next month, April 2023, Plaintiff brought this Motion.  Responding Defendants bemoan this one-month turn around between securing evidence and making the motion as somehow unreasonable, and demand that Plaintiff explain itself for taking approximately one month from securing evidence to drafting a proposed 60-plus page proposed verified Amended Complaint.  As an initial matter, it is not Plaintiff's burden to give a valid explanation for such a small delay of approximately one month. *Moreno-Godly v. Gallet Dreyer & Berkey, LLP*, 14 Civ. 7082 (PAE) (JCF), 2016 U.S. Dist. LEXIS 137843, *12 (Oct. 4, 2016) (noting that offering a "valid explanation for the delay" is only applicable when "a motion to amend comes after a lengthy delay").  To the extent a valid excuse is needed, Plaintiff did not wish to rush an imperfect or inaccurate proposed verified Amended Complaint, and took sufficient, but not an undue, amount of time to secure affidavits from both witnesses, confirm with its counsel over drafts of the proposed amended pleadings, and finalize a well-pled Amended Complaint, all in approximately one month from securing the second of the two affidavits that substantiate the merit of the proposed amendments.

Responding Defendants take issue that this Motion was brought during their pending motions to dismiss the original Complaint; but this is both legally irrelevant and simply a function of when evidence became available, not any gamesmanship on Plaintiff's part.  As Plaintiff's pointed out in their moving papers, when a motion to amend is filed during the pendency of motions to dismiss, "the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave."  *Thompson v. City of New York*, 21-cv-8202 (MKV), 2022 U.S. Dist. LEXIS 32809, at

-11-

*2 (S.D.N.Y. Feb. 24, 2022).  Here, Defendants brought their motions to dismiss the Complaint on February 1, 2023, s*ee* [DE 57-58], which was more than a month prior to Plaintiff securing either declaration concerning the fraudulent debt-cancellation, and over a month prior to Defendants' second *ultra vires* amendments to FTE's bylaws.  *See* Heskin Decl. [DE 71] Exs. 4-5 (witness declarations dated March 7, 2023, and March 17, 2023); proposed Amended Complaint [DE 71-2] ¶ 20 (describing March 11, 2023 second *ultra vires* bylaws amendment).  It is disingenuous for Responding Defendants to argue Plaintiff should have brought its Motion before they filed their motions to dismiss the original Complaint when the proposed amendments clearly concern evidence and facts that were secured and occurred, respectively, well *after* their motions were filed.  Responding Defendants' arguments, if adopted, would create a perverse situation where a defendant can prevent a plaintiff from bringing claims for wrongs discovered or occurring after the initiation of a lawsuit as long as defendant had already filed a motion to dismiss the original pleading.

Finally, Responding Defendants' arguments concerning the costs they incurred in briefing their motion to dismiss that is now rendered moot by Plaintiff's instant motion are simply not grounds to deny this motion.  It is well-settled that "litigation expense" is not a valid basis to deny a motion to amend.  *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion").  Considering that leave to amend is freely given in instances of years of discovery, and after parties have actually answered the original complaint, it is patently insufficient for Responding Defendants to contend their litigation expenses related solely to their motions to dismiss are sufficient grounds to deny this Motion.  What is more, Responding Defendants were given the opportunity to avoid these expenses as Plaintiff sought their consent for the proposed amendments, which they refused.

Heskin Decl. Ex. 8.  Finally, it was Responding Defendants' decision to file a reply on their motions to dismiss after this Motion was filed and, even so, Responding Defendants can avoid additional litigation expense by resting on their existing motions to dismiss should they choose and have those apply to the Amended Complaint.

At bottom, Responding Defendants have presented no basis for any legally cognizable prejudice that exists such that this Motion should be denied.  Rather, the record is clear that Plaintiff acted as swiftly and as diligently as reasonably possible to bring this Motion after it secured the evidence it needed to substantiate these claims, and plead them with particularity.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in Plaintiff's moving papers, Plaintiff's Motion should be granted in its entirety.

June 1, 2023

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By:  _____

Shane R. Heskin
Alex D. Corey
7 Times Square, STE 29
New York, NY 10036
(215) 864-7000
heskins@whiteandwilliams.com